**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In Re Federal National Mortgage Association Securities, Derivative and "ERISA" Litigation | MDL No. 1668 |

| | |
|---|---|
| In Re Fannie Mae Securities Litigation | Consolidated Civil Action No. 1:04-cv-01639 <br><br> Judge Richard J. Leon |

**DEFENDANT FRANKLIN D. RAINES'S MOTION TO HOLD**
**THE OFFICE OF FEDERAL HOUSING ENTERPRISE OVERSIGHT IN CONTEMPT**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure and the Court's inherent

authority, and for the reasons stated in the accompanying memorandum of law, Defendant

Franklin D. Raines moves for an order holding the Office of Federal Housing Enterprise

Oversight ("OFHEO") in contempt of the Court's discovery orders.

Pursuant to Local Civil Rule 7(m), counsel for Mr. Raines conferred with counsel for

OFHEO prior to filing this motion.  Counsel were not, however, able to resolve the issues raised

herein.  Accordingly, Mr. Raines seeks the requested relief from the Court.

A proposed order is attached.

Dated:  August 21, 2007

Respectfully submitted,

/s/ Kevin M. Downey
Kevin M. Downey (D.C. Bar No. 438547)
Alex G. Romain (D.C. Bar No. 468508)
Daniel N. Marx (D.C. Bar No. 496786)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005
(202) 434-5614 (telephone)
(202) 434-5029 (facsimile)
*Counsel for Defendant Franklin D. Raines*

**CERTIFICATE OF SERVICE**

I certify that on August 21, 2007, I electronically filed the foregoing Defendant Franklin D. Raines's Motion to Hold the Office of Federal Housing Enterprise Oversight in Contempt with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

/s/ Alex G. Romain
Alex G. Romain

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In Re Federal National Mortgage Association Securities, Derivative and "ERISA" Litigation | MDL No. 1668 |

| | |
|---|---|
| In Re Fannie Mae Securities Litigation | Consolidated Civil Action No. 1:04-cv-01639 |
| | Judge Richard J. Leon |

<u>MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT FRANKLIN D. RAINES'S MOTION TO HOLD
THE OFFICE OF FEDERAL HOUSING ENTERPRISE OVERSIGHT IN CONTEMPT</u>

The Court is well familiar with the procedural history leading to this motion. As the Court knows, OFHEO represented that it has produced all non-privileged documents responsive to the narrowed requests made by Defendants Franklin D. Raines, J. Timothy Howard and Leanne G. Spencer (collectively, the "Individual Defendants") in their February 18, 2007 letter to the agency ("February 18 Requests").

We regret to say that the sworn deposition testimony of OFHEO's Deputy General Counsel, David A. Felt, demonstrates that this representation is inaccurate. Mr. Felt's testimony reveals that OFHEO has not even searched for, much less produced, certain electronically stored information ("ESI") responsive to the Individual Defendants' February 18 Requests.

The delay in OFHEO's document production, coupled with the agency's obfuscation, threatens the pace of this litigation. Such conduct demands court intervention, and the Court possesses broad discretion to take appropriate action. Thus, we respectfully propose that the Court enforce its prior discovery orders compelling OFHEO's subpoena compliance by (i) holding OFHEO in contempt of the Court's prior orders, (ii) setting a strict fifteen-day

deadline for OFHEO to produce all documents that have not yet been produced but that are responsive to the February 18 Requests, and (iii) finding that OFHEO, by its misconduct, has waived the right to withhold any of these documents as privileged.

## I.   OFHEO HAS NOT PRODUCED ALL OF THE DOCUMENTS RESPONSIVE TO THE INDIVIDUAL DEFENDANTS' NARROWED REQUESTS.

### A.   The Individual Defendants' February 18, 2007 Requests.

As of February 2007, eight months after Defendants Raines and Howard served their subpoenas on OFHEO, four months after the Court ordered OFHEO to comply with those subpoenas, and only one month before the Court's final deadline for OFHEO's document production,[1] OFHEO's production of ESI had barely begun.  Although OFHEO had produced about 30,000 pages of examination workpapers, which had been maintained in electronic form, it had not yet produced a single page of responsive e-mail from any current or former employee.

The Individual Defendants, consistent with the Court's instructions, sought to facilitate OFHEO's subpoena compliance by prioritizing certain narrowed requests for responsive ESI. Preliminarily, the Individual Defendants asked OFHEO to produce e-mail (and attachments) from ten specific custodians within discrete date ranges.  Proposed search terms were also provided to assist OFHEO in collecting responsive documents.  *See* Letter from Alex G. Romain to John C. Truong (Feb. 18, 2007) ("February 18 Letter") (attached as Ex. 1).[2]

---

[1] In its November 6, 2006 Order, the Court set a final deadline of March 12, 2007 for OFHEO's document production.  That deadline was subsequently extended, at OFHEO's request, until April 30, 2007.  Although the extended deadline passed almost four months ago, OFHEO's ESI discovery remains on-going, with many documents left to be produced.

[2] As we have previously explained, "the purpose" of the February 18 Letter "was to get a process, that had not been moving, moving."  Hr'g Tr. at 40:24–42:21, Apr. 26, 2007 (excerpts attached as Ex. 2).

The Individual Defendants requested that OFHEO produce e-mail for these ten custodians from specific locations in the agency's information technology ("IT") system, including particular sources of active data and also back-up tapes.  *See id.* at 4 (identifying the "[l]ocations to be searched" by OFHEO).  Active data is stored on employees' laptops or desktops, various network drives, the e-mail exchange server and in other readily accessible locations.  *See* Duane Morris OFHEO E-Discovery Plan at 5 (attached as Ex. 3).  Back-up tapes, as their name suggests, are physical tapes that preserve data from OFHEO's entire IT system.  *See id.* at 6.  Back-up tapes typically contain data, such as deleted or sent e-mails, that cannot be found in any source of active data on OFHEO's IT system.

The Individual Defendants unambiguously requested that OFHEO search its back-up tapes.  *See* February 18 Letter at 1 (requesting "email communications . . . stored on backup tapes"); *id.* at 4 (identifying "PST files stored on back-up tapes" as a "location to be searched" for responsive e-mail).  And OFHEO clearly understood that the Individual Defendants had requested responsive e-mail from "all back-up tapes."  Second Declaration of David A. Felt in Support of OFHEO's Motion for an Extension of Time to Comply with Order Requiring Responsive Production in Connection with Certain Subpoenas Duces Tecum (Mar. 9, 2007) ("Second Felt Decl.") ¶ 13 (complaining, in sworn affidavit filed with the Court, that Individual Defendants had asked OFHEO to search "all back-up tapes") (attached as Ex. 4).

**B.     OFHEO's May 31, 2007 ESI Production.**

On May 31, 2007, OFHEO produced 5,214 documents, both e-mails and attachments, in response to the Individual Defendants' February 18 Requests.  The inadequacy of the production was immediately apparent.  For example, from the custodial file of former Director Armando Falcon, OFHEO produced only six e-mails that had been sent by Mr. Falcon during the more-than-five-year period from January 1, 1999, to January 31, 2005.  From the custodial file of

former Deputy Director Stephen Blumenthal, OFHEO produced only four e-mails that had been sent by Mr. Blumenthal during that same period.

The production was similarly sparse with regard to other employees, including those still with the agency.  For example, from the custodial file of Ms. Deirdre Kvartunas, a principal agency examiner who participated in both prior annual examinations of Fannie Mae and OFHEO's special examination, OFHEO produced only nine e-mails that had been sent by Ms. Kvartunas.  Ms. Kvartunas had primary responsibility for overseeing Fannie Mae's implementation and application of FAS 133, arguably the most important accounting standard in this litigation.  Yet, for 2000 and 2001, the years immediately before and after the implementation of FAS 133, OFHEO produced no e-mails—zero—sent by Ms. Kvartunas, from either own her custodial file or from that of any other agency employee.[3]

Put simply, OFHEO's production in this litigation is incredible, even according to the standard that the agency itself applied to Fannie Mae's production in the special examination.[4]

---

[3] Notwithstanding the fact that Mr. Felt receives "about two hundred e-mails a day," Deposition of David A. Felt (July 25, 2007) ("Felt Dep.") at 21:17–18 (excerpts attached as Ex. 5), he testified that the implausibly low volume of e-mail in OFHEO's production raised no concerns at the agency.  Mr. Felt speculated that certain employees, such as Ms. Kvartunas, may not have used e-mail very much.  *See id.* at 178:11–22.  But Mr. Kelly J. Kuchta, of Forensic Consulting Solutions ("FCS"), the e-discovery vendor retained by Duane Morris LLP to assist in OFHEO's document production in this litigation, testified that the ten custodians at issue were never interviewed to determine how they used OFHEO's IT system or whether they complied with the agency's IT policies.  *See* Deposition of Kelly J. Kuchta (July 25, 2007) ("Kuchta Dep.") at 83:19–22 (excerpts attached as Ex. 6).  Notwithstanding FCS's representation in the Duane Morris OFHEO E-Discovery Plan that "[e]ach custodian would be interviewed," Duane Morris OFHEO E-Discovery Plan at 4, that simply was not done.

[4] Ironically, one of the few e-mails that OFHEO has produced was sent by Ms. Kvartunas to OFHEO's General Counsel, reporting on Fannie Mae's document production in the special examination.  The e-mail notes that, for one particular Fannie Mae custodian, the company had produced only six e-mails.  It then goes on to state:  "It is hard to believe, given the scope of this individual's responsibilities, that he would have only six e-mails."  Hr'g Tr. at 11:9–10, July 19,

One reason, as the Individual Defendants would later learn, *see* Part I.D. *supra*, was that OFHEO

had not searched or produced any e-mails from the vast majority of its back-up tapes.

### C.      OFHEO's Representations Regarding Its Production.

At the July 19, 2007 status conference, counsel for OFHEO repeatedly and—in the

Court's words—"unequivocally" represented that "*we have produced everything that the*

*Defendants asked us to produce*."  Hr'g Tr. at 43:6–7, July 19, 2007 (emphasis added); *see also*

*id*. at 44:9–14; 51:11–13.  When pressed by the Court, counsel stood by that representation:

> COURT:      They [the Individual Defendants] say that you
> [OFHEO] have not produced all that they have
> requested.  They question the credibility of the
> Government's representation since it's the
> Department of Justice that's making the
> representation to the Court; it's the Government.
> OFHEO, of course—you are relying on your client,
> in saying that we have produced everything that we
> have in our possession, everything consistent with
> the Court's earlier Order and the request by the
> Defendants who narrowed the field of what
> otherwise had to be produced in order to spare the
> Government the expense of producing it.  Are you
> saying, we have produced everything there is.
> That's it, right?
>
> COUNSEL:    That's correct, your Honor.
>
> COURT:      It's as simple as that?
>
> COUNSEL:    *We produced everything* –
>
> COURT:      In your possession.
>
> COUNSEL:    *– that the Defendants have asked us to do, as*
> *narrowed in their February 18, 2007 letter to us.*

---

*Continued . . .*

2007 (excerpts attached as Ex. 7).  (Because OFHEO has designated this e-mail as
"confidential," under the protective order, we have not described its contents, beyond what was
already discussed with OFHEO's consent in open court at the July 19, 2007 hearing.)

* * * * *

COURT:        I am talking about all non-privileged documents, ESI
              and paper, that are responsive to the narrowed request
              by the defense.  The position of OFHEO is, we have
              produced everything that we have in our possession.
              Very simple, right?  And that's what you said.

COUNSEL: That's correct, Your Honor.

COURT:        Very good.  *I will hold you to that.*

*Id.* at 44:19–45:11; 55:13–19 (emphasis added).

Although the Department of Justice represented OFHEO at the July 19, 2007 hearing,

also present were attorneys from OFHEO's General Counsel's Office, including Mr. Felt, who

has supervised OFHEO's subpoena compliance in this litigation.  *See* Second Felt Decl. at 1 ("I

supervise the personnel who are assigned to produce documents in the instant litigation.").  As

the Court noted on the record, the OFHEO attorneys affirmed—by their silence—the

representations made by the Department of Justice about OFHEO's production of ESI.

COURT:        You heard him [Mr. Truong, as counsel for
              OFHEO] say in unequivocal terms, unequivocal,
              with no hesitancy, *no one from OFHEO sitting at
              that table there [Messrs. David Felt and Kyle
              Roberts] reached up and grabbed him by the elbow
              to change his words*.  His words were unequivocal.
              You heard him say it.  All that we have in our
              possession responsive to your narrowed demand,
              electronic and paper, both have been produced.
              That was unequivocal. . . .

Hr'g Tr. at 56:15–21, July 19, 2007 (emphasis added).  OFHEO did not object or make any

effort to correct the record, at that time or at any time since the hearing.

### D.      OFHEO's Contradictory Deposition Testimony Regarding Its Production.[5]

Despite the repeated and unequivocal representations by OFHEO's counsel that the agency has produced all non-privileged documents in its possession that are responsive to the Individual Defendants' February 18 Requests, OFHEO's Deputy General Counsel, when examined under oath as the agency's Rule 30(b)(6) representative, said otherwise.

Mr. Felt testified that OFHEO has not, in fact, produced all responsive e-mails from the agency's back-up tapes, as the Individual Defendants explicitly requested.[6]  Indeed, for most of the custodians (7 of the 10) identified in the February 18 Letter, OFHEO did not search *any* of its back-up tapes for responsive e-mails.  The contrast between OFHEO's representations—i.e., it has produced "everything" that the Individual Defendants requested—and OFHEO's sworn deposition testimony could hardly be more stark.

> Q:      Did OFHEO provide all responsive non-privileged e-mail communications [responsive to the February 18 Requests] that were stored on its back-up tapes?
>
> A:      No.
>
> Q:      Why not?
>
> A:      We didn't search all of the back-up tapes.

---

[5] Although the deposition transcripts excerpted in this memorandum and attached as Exhibits 5 and 6 are marked "confidential," that designation was not made at OFHEO's request. Apparently, Fannie Mae alone designated as "confidential" certain portions of the transcripts which are not here at issue.  Moreover, counsel for OFHEO has agreed that none of the portions of the transcripts quoted in or attached to this motion is confidential.

[6] At the July 19, 2007 hearing, counsel for OFHEO made the misleading statement to the Court that "[t]here is no such thing as back-up tape data or back-up tapes at OFHEO."  Hr'g Tr. at 48:4, July 19, 2007.  Mr. Felt initially took the same line in his deposition, claiming that OFHEO had no back-up tapes, but only "disaster recovery tapes."  Felt Dep. at 63:8–82:7.  Only after 20 pages of questioning did OFHEO finally concede—and stipulate—that back-up tapes and so-called disaster recovery tapes are the same thing.  *See id.* at 81:17–18.

* * * * *

Q:      So your testimony is that you thought that [the February 18
        Letter] allowed OFHEO to determine on its own which
        back-up tapes it ought to review for responsive e-mails.  Is
        that correct?

A:      Yes.

* * * * *

Q:      You don't have any documentation that would suggest that
        the Defendants approved OFHEO's approach or said it was
        fine for OFHEO to choose which back-up tapes ought to be
        searched and for which custodians, do you?

A:      No.

Felt Dep. at 99:12–17; 104:18–22; 110:16–21.  Put simply, the Individual Defendants' February

18 Requests required OFHEO to produce responsive e-mail for the ten identified custodians from

the agency's back-up tapes.  Counsel for OFHEO told the Court that the agency had done so.

But, when deposed, the Deputy General Counsel effectively admitted that OFHEO's

representations to the Court were untrue.

## E.      The Importance of OFHEO's Back-Up Tapes.

OFHEO has two main sources of ESI:  active data and back-up tapes.  Active data, which

are readily accessible on OFHEO's IT system, are like office files which can be pulled from a

filing cabinet or an employee's desk drawer.  Back-up tapes, which are maintained off-site, are

like archives which must be recalled from a warehouse.  Essentially, despite the Individual

Defendants' request that OFHEO produce responsive documents from its warehouse (back-up

tapes), OFHEO has refused.  No amount of IT jargon about "disaster recovery tapes" can alter

the undisputed fact that responsive documents, which have not yet been produced, are still sitting

in OFHEO's electronic warehouse.

To fully appreciate OFHEO's failure to search its back-up tapes, it is necessary to distinguish among the ten current and former employees identified in the Individual Defendants' February 18 Requests.  For three of these custodians (Barton, Calhoun and Falcon), OFHEO possesses responsive e-mail only on back-up tapes.  But for the other seven (Blumenthal, Connolly, DeLeo, Dickerson, Doherty, Kvartunas and McNaughton), OFHEO possesses responsive e-mail both in its active data and also on back-up tapes.  Yet with respect to these seven custodians, for whom the agency possesses active data in addition to back-up tapes, OFHEO has not searched a single back-up tape for responsive e-mails, as Mr. Felt readily admitted.  It simply has not gone to the warehouse.

Initially, Mr. Felt professed ignorance about whether OFHEO had searched its back-up tapes for e-mail from all ten custodians identified in the February 18 Letter.

> Q:    . . . Now, the Defendants requested that you search for each of the referenced personnel, the PST files stored on the back-up tapes.  Did OFHEO do that?
>
> A:    I don't know whether or not we searched for anyone other than the people who left [Barton, Calhoun and Falcon].

Felt Dep. at 106:20–107:3.  Mr. Felt's recollection was refreshed, however, when he was confronted with the transmittal letter that accompanied the agency's May 31, 2007 production of ESI.  That letter plainly indicates that OFHEO searched its back-up tapes for email only from Messrs. Barton, Calhoun and Falcon.  *See* Letter from Kyle D. Roberts to Alex G. Romain (May 31, 2007) at 1–2 (attached as Ex. 8).  After having read OFHEO's own letter, Mr. Felt conceded:

> Q:    . . . OFHEO did not, in fact, search the back-up tapes for the remaining seven custodians [identified in the February 18 Letter], other than Mr. Falcon, Mr. Barton and Mr. Calhoun.  Correct?
>
> A:    Apparently, not, yes.

Felt Dep. at 108:16–20; *see also id.* at 116:22–117:3.  Mr. Felt ultimately testified that he himself

decided that OFHEO would not search any back-up tapes for these seven custodians, despite the

Individual Defendants' explicit request that the agency do so.

> Q:      Mr. Felt, who made the decision not to review the back-up
>           tapes as requested by the Defendants in their February 18th
>           letter for the seven custodians who had active data?
>
> A:      Who made the decision not to review the back-up tapes?
>
> Q:      Yes.
>
> A:      *I did.*

*Id.* at 111:21–112:5 (emphasis added); *see also id.* at 118:11–16.  Mr. Kuchta, of FCS, confirmed

that, for the seven custodians with active data, OFHEO had not produced any e-mail from its

back-up tapes.

> Q:      [O]ther than those three individuals [Barton, Calhoun and
>           Falcon], did you search back-up tapes for PST files stored
>           on those back-up tapes [as requested in the Individual
>           Defendants' February 18 Letter]?
>
> A:      No, we did not.

Kuchta Dep. at 75:17–20; *see also id.* at 80:12–13.  And in a moment of remarkable candor, Mr.

Kuchta revealed that ". . . . really, when it came down to it, *the question never really got raised,*

you know, *should we look [on back-up tapes] for these other additional seven custodians*."  *Id.*

at 78:1–3 (emphasis added).  Apparently, OFHEO never even considered doing what it told the

Court it had done.

   In deciding not to search any back-up tapes for e-mails from these seven custodians,

OFHEO effectively decided not to produce some untold number of responsive e-mails that the

Individual Defendants have requested.  Despite the agency's efforts to downplay the importance

of its back-up tapes (e.g., by characterizing back-up tapes as containing mostly duplicative data),

its e-discovery expert, Mr. Kuchta, testified that, in many cases, "deleted e-mails would not . . .
be on the active data but would be on back-up data."  Kuchta Dep. at 111:20–112:2.  The same is
true, according to Mr. Kuchta, with regard to sent e-mails.  Those, too, "would be unlikely . . . to
be found on active data . . . and, therefore, would only be found on the backup tapes."  *Id.* at
112:15–20; *see also id.* 107:14–108:15.

Meanwhile, with regard to the three custodians without any active data (because all three
had left the agency), OFHEO merely "sampled" its collection of back-up tapes.  Rather than
comprehensively search its back-up tapes for all responsive e-mail, as the Individual Defendants
had requested, OFHEO picked two tapes per custodian from dates two months prior to each
respective custodian's departure from the agency.[7]  For example, for Mr. Scott Calhoun,
OFHEO's former Chief Examiner, who left the agency on June 1, 2004, OFHEO searched only
two tapes that were created on March 28, 2004.  Such "sampling" is grossly inadequate in two
respects:  it fails to capture (1) *all* responsive e-mail in the agency's possession from January 1,
1999, the beginning of the relevant date range, to March 28, 2004, or (2) *any* responsive e-mail
from March 28, 2004, to June 1, 2004.

According to Mr. Felt, the agency did not search tapes during the two-month period prior
to an employee's separation because OFHEO surmised that there would be no relevant e-mail.

> Q:     Mr. Felt, . . . you made a determination that during the last
> two months of Mr. Calhoun's tenure at OFHEO, which was
> within the dates ranges specified by the Defendants'
> [February] 18th letter, that there would be no relevant e-
> mail.  Is that correct?

---

[7] OFHEO has never disclosed to the Individual Defendants the total number of back-up tapes in
its possession.  Nevertheless, based on OFHEO's representation that it has created sets of back-
up tapes on a weekly basis since late 2002 or early 2003, we understand the six tapes OFHEO
reviewed in total to represent less than 1% of the tapes in the agency's possession.

> A:      That it would be unlikely that there would be any relevant
>         e-mail.
>
> Q:      And so, therefore, you made a decision that it was not
>         necessary to search for the last two months of his tenure?
>
> A:      Yes.

Felt Dep. at 127:21–128:13.  That rationale, however, was shown to be inaccurate during Mr.

Felt's deposition, when counsel for Mr. Raines confronted Mr. Felt with an admittedly

responsive e-mail from Mr. Calhoun's last two months at OFHEO,[8] one which the agency had

not produced in response to any subpoenas in this litigation but rather was received by counsel

for Mr. Howard in response to a FOIA request.  When asked whether OFHEO had failed to

"search a back-up tape which would, in fact, contain this e-mail which [Mr. Felt had] already

described as responsive to [the Individual Defendants] requests," Mr. Felt casually conceded:

"*That appears to be the case, yeah.*"  *Id*. at 133:6–11 (emphasis added).[9]

---

[8] The document was "responsive" to the February 18 Requests because it was (i) from Mr. Calhoun, an identified custodian; (ii) within the relevant date range; and (iii) included at least one of the proposed search terms.  In other words, OFHEO should have produced the e-mail in response to the Individual Defendants' narrowed requests.

[9] OFHEO's alternative rationale for failing to search for e-mail during the last two months of a former employee's tenure was similarly speculative, yet far more disconcerting:

> Q:      And why did you decide to seek or to retrieve back-up
>         tapes that were on, that captured information two months
>         before these custodians left?
>
> A:      . . . . I thought those were good dates because there would
>         then be no question that *people in cleaning up their affairs
>         or something before they were leaving maybe deleted all of
>         their e-mails or something like that*, because two months
>         before would be, we could be reasonably sure that any e-
>         mails would be captured.

Felt Dep. at 124:12–22 (emphasis added).  That suggestion raises serious concerns not only about OFHEO's failure to produce responsive ESI but also about possible spoliation.

Mr. Kuchta's testimony established that OFHEO was equally remiss in failing to search earlier back-up tapes, dating back to the agency's first set of tapes from late 2002.  Reading directly from OFHEO's own correspondence regarding its ESI production, counsel for Mr. Raines asked Mr. Kuchta to opine, in his expert capacity, on the accuracy of OFHEO's claim that "[d]ue to the way that OFHEO's network is designed, these tapes [i.e., the select back-up tapes that OFHEO reviewed] will contain the historical data necessary to capture the e-mails requested in Defendants' February 18, 2007 letter."  Kuchta Dep. at 59:1–4 (quoting Letter from John C. Truong to Alex G. Romain (Apr. 3, 2007) at 6).

> Q:     . . . . *That's not an accurate statement, is it?*
>
> A:     If you are going to look at – to answer the question, *yes, that is not an accurate statement* when you look at it in the scenario you talked about, the deleted e-mail. . . . *You are absolutely correct. . . .*

*Id.* at 59:5–9 (emphasis added).  Mr. Kuchta further testified that, had OFHEO adopted the more robust sampling protocol that FCS recommended in the Duane Morris OFHEO E-Discovery Plan, i.e., searching the first set of back-up tapes, the last set of back-up tapes, and all interim sets of back-up tapes at regular intervals, additional responsive e-mails would have been found.

> Q:     Now, if OFHEO had, in fact, followed your recommendation in this report [the Duane Morris OFHEO E-Discovery Plan] about how to sample back-up tapes, you cannot actually state for sure that OFHEO would not have found additional responsive e-mail that were not found in the six back-up[] tapes that you looked at.  Is that correct? . . . .
>
> A:     Okay.  That is correct. . . .

*Id.* at 67:21–68:12.[10]

---

[10] Back-up tapes created on a weekly basis, as OFHEO's are, necessarily contain duplicative data because many documents on the IT system during "week one" will remain on the system in

Even if "sampling" back-up tapes was appropriate here (to minimize the burden of production), that process had to be thorough, not only because OFHEO is legally obligated to produce all responsive ESI in its possession, including from its back-up tapes, and because OFHEO has repeatedly and unequivocally represented to the Court that its has already produced all ESI responsive to the Individual Defendants' February 18 Requests, but also because, as OFHEO's own ESI expert, Mr. Kuchta, has written: "Backup tapes with e-mail records dating back five years serve no business purpose but *often provide the 'smoking gun' to opposing counsel*."  Kelly J. Kuchta, *Computer Forensics Today*, Law, Investigations & Ethics (Spring 2000) at 33 (emphasis added) (attached as Ex. 9).  How many "smoking guns" is OFHEO continuing to conceal from the Individual Defendants and the Court by refusing to search its back-up tapes and produce all of the e-mails that are responsive to the Individual Defendants' narrowed requests?

## II.   OFHEO SHOULD BE HELD IN CONTEMPT, ORDERED TO COMPLY WITH THE COURT'S DISCOVERY ORDERS, AND FOUND TO HAVE FORFEITED ITS PRIVILEGE CLAIMS.

Rule 45 provides, in relevant part:  "Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued."  Fed. R. Civ. P. 45(e).  "Under this rule, a party moving to hold another party in contempt must demonstrate by clear and convincing evidence that the alleged contemnor

---

*Continued . . .*

"week two."  But such tapes also include unique data.  For example, a document created before "week one," but deleted before "week two," will likely appear only on the back-up tape from the first week.  Meanwhile, a document created during "week two" will be found only on the back-up tape from the second week, not the first.  OFHEO often conflates, we think intentionally, the presence of duplicative data with the absence of unique data.

violated the court's prior order." *Food Lion v. United Food & Commer. Workers Int'l Union*, 103 F.3d 1007, 1016 (D.C. Cir. 1997).

"Contempts such as failure to comply with document discovery . . . impede the court's ability to adjudicate the proceedings before it and thus touch upon the core justification for the contempt power." *Int'l Union, United Mine Works of Am. v. Bagwell*, 512 U.S. 821, 833 (1994); *see Nat'l Org. of Woman v. Operation Rescue*, 37 F.3d 646, 659 (D.C. Cir. 1994) (following *Bagwell* and concluding that "[c]ontempts such as failure to comply with document discovery . . . may be treated as civil contempts"). The evidence that OFHEO has violated the Court's discovery orders could hardly be more clear or more convincing. In no uncertain terms, the Court has (i) ordered OFHEO to comply with the subpoenas served by Messrs. Raines and Howard, *see* Order (Nov. 6, 2006) at 1; (ii) clarified that its order requires OFHEO to produce ESI, *see* Hr'g Tr. at 49:10–21, Apr. 26, 2007; and (iii) ordered the agency to produce (or log) all documents responsive to the February 18 Requests by no later than May 31, 2007, *see id*. OFHEO has violated the Court's orders by failing to search for, much less produce, all ESI responsive to the February 18 Requests.

Putting Rule 45 aside, the Court also possesses the inherent power to sanction OFHEO's misconduct: "it is firmly established that 'the power to punish for contempt is inherent in all courts.'" *Chambers v. NASCO*, 501 U.S. 32, 44 (1991) (*quoting Ex Parte Robinson*, 86 U.S. 505, 510 (1873)); *see Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996) ("District courts enjoy nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders."). "'[T]he underlying concern that gave rise to the contempt power was not . . . merely the disruption of court proceedings. Rather, it was *disobedience to orders of the Judiciary*.'" *Chambers*, 501 U.S. at 44 (*quoting Young v.*

*United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987) (ellipses in original))
(emphasis added).  In this case, OFHEO not only disobeyed the Court's orders, but then tried to
conceal that disobedience by misrepresenting its document production in response to the
Individual Defendants' February 18 Requests.

That OFHEO has acted in bad faith, by misrepresenting its document production, is not
necessary for the contempt finding.  "[A] finding of bad faith on the part of the contemnor is not
required.  Indeed, the law is clear in this circuit that 'the [contemnor's] failure to comply with the
court decree need not be intentional.'"  *Food Lion*, 103 F.3d at 1016 (*quoting NLRB v. Blevins
Popcorn Co.*, 659 F.2d 1173, 1183–84 (D.C. Cir. 1981)); *see also Lee v. Dep't of Justice*, 401 F.
Supp. 2d 123, 131 (D.D.C. 2005) ("The contemnor's intent is immaterial; the Court need not
determine whether a failure to comply with its order was either willful or intentional.").

But OFHEO's bad faith may be relevant to assessing an appropriate remedy, namely, a
finding that OFHEO has forfeited its right to withhold as privileged the documents that OFHEO
misrepresented having already produced to the Individual Defendants.  "As the federal rules,
case law and commentators suggest, waiver of a privilege is a serious sanction most suitable for
cases of unjustified delay, inexcusable conduct, and bad faith."  *United States v. Philip Morris,
Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) (*quoting First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*,
902 F. Supp. 1356, 1361 (D. Kan. 1995)); *see also United States v. British Am. Tobacco
(Investments), Ltd.*, 387 F.3d 884, 890–91 (D.C. Cir. 2004)); Charles A. Wright & Arthur R.
Miller, *Federal Practice and Procedure* § 2016.1 (2d ed. 1994 & 2007 Supp.).  Here, OFHEO
has hit the trifecta.  The fact that OFHEO has yet to produce documents subpoenaed more than
one year ago establishes "unjustified delay."  OFHEO's failure to search its back-up tapes for
responsive e-mails, as the Individual Defendants explicitly requested, constitutes "inexcusable

conduct."  And OFHEO's misrepresentation to the Court that it produced everything in its possession—which it plainly has not—proves "bad faith."  Therefore, waiver of privilege, while a "serious sanction," *Philip Morris, Inc.*, 347 F.3d at 954, is an entirely appropriate remedy.

Even if OFHEO is not held in contempt, it has nevertheless waived any privilege claims over the documents subpoenaed by Defendants Raines and Howard in June 2006, ordered by the Court to be produced in November 2006, and specifically requested by the Individual Defendants in February 2007.  Under Rule 45, a party must timely and properly assert all privilege claims, or risk waiving its privileges and being ordered to show cause why the court should not find contempt.  *See* Fed. R. Civ. P. 45(d)(2).[11]  As the leading commentators on federal practice note: "Courts consistently have held that . . . a party [objecting to a subpoena on the basis of privilege] is required to produce a document index or privilege log, and that *the failure to produce a log of sufficient detail constitutes a waiver of the underlying privilege claim*."  Wright & Miller, *Federal Practice and Procedure* § 2458 (emphasis added) (footnote omitted); *see GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 195 (D.D.C. 2003) ("[Rule 45(d)(2)] is obviously mandatory.  Failure to comply with it 'is deemed to waive the underlying privilege claim.'" (*quoting In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001))); *see also SEC v. Lewis*, No. MC 05-0033 JB, 2006 U.S. Dist. LEXIS 29161, at *23 (D.N.M. Feb. 10, 2006)

---

[11] The Advisory Committee Notes to Rule 45 explain the risk of waiver and contempt as follows:
> A party receiving a discovery request who asserts a privilege or protection
> but fails to disclose that claim is at risk of waiving the privilege or
> protection.  A person claiming a privilege or protection who fails to
> provide adequate information about the privilege or protection claim to the
> party seeking the information is subject to an order to show cause why the
> person should not be held in contempt under subdivision (e).

Fed. R. Civ. P. 45, adv. comm. notes (1991 amends.).

(noting, in context of inadequate privilege log, that "failure to assert a privilege properly may amount to a waiver of that privilege"); *Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D. 179, 183–84 (E.D. Cal. 1991) (finding waiver due to improper privilege assertion). *A fortiori*, a party that completely ignores document requests and fails to make any production must waive its privilege claims.

If OFHEO had produced all non-privileged e-mail responsive to the February 18 Requests, but never provided any privilege log of the withheld documents, it would have waived its privilege claims.  Surely OFHEO cannot avoid that result by having failed to make the required production in the first place.  Furthermore, finding that OFHEO has forfeited its right to assert any privileges over these documents would impose an appropriate remedy for the agency's abusive discovery practices, discourage similar sharp practices by OFHEO with respect to future rounds of document production, expedite OFHEO's production of now long-overdue e-mail responsive the February 18 Requests (because OFHEO will not have to spend time reviewing the documents for privilege or logging documents withheld on that basis), and relieve the Court of the need to resolve inevitable disputes over OFHEO's privilege assertions, disputes which threaten to delay further discovery in this litigation.

Whether or not the Court is inclined to find that OFHEO, by its own misconduct, has waived its right to assert any privileges over the documents that the agency misrepresented having already produced, the Court should, at a minimum, enforce its orders compelling OFHEO's subpoena compliance by setting a strict fifteen-day deadline for OFHEO to produce

these documents.  Having delayed its discovery for more than one year, OFHEO cannot be permitted to drag its feet any longer.[12]

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court (i) hold OFHEO in contempt of the Court's discovery orders, (ii) enforce those orders by setting a fifteen-day deadline for OFHEO to produce all documents that have not yet been produced but that are responsive to the Individual Defendants' February 18 Requests, and (iii) find that OFHEO has forfeited its right to assert any privileges over these documents.

Dated:  August 21, 2007

Respectfully submitted,

/s/ Kevin M. Downey
Kevin M. Downey (D.C. Bar No. 438547)
Alex G. Romain (D.C. Bar No. 468508)
Daniel N. Marx (D.C. Bar No. 496786)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005
(202) 434-5614 (telephone)
(202) 434-5029 (facsimile)
    *Counsel for Defendant Franklin D. Raines*

---

[12] Since Messrs. Felt and Kuchta testified, OFHEO's position on its ESI discovery has apparently changed.  No longer flatly refusing to make any additional production, OFHEO has re-engaged in the meet-and-confer process.  But as before, that process has not proven productive.  Counsel for Mr. Raines made a specific proposal, identifying what OFHEO should produce (for example, from its back-up tapes) and by when.  As of this filing, however, OFHEO has not indicated whether it will accept our proposal.  OFHEO has not even stated when it will provide a response. Nothing about these inconclusive discussions affects the basis for this motion for contempt: even if OFHEO agrees to produce additional ESI, as it must, the facts remain that OFHEO has failed to comply with the Court's discovery orders and misrepresented its document production.

**CERTIFICATE OF SERVICE**

I certify that on August 21, 2007, I electronically filed the foregoing Memorandum of

Law in Support of Defendant Franklin D. Raines's Motion to Hold the Office of Federal Housing

Enterprise Oversight in Contempt with the Clerk of Court using the CM/ECF system, which will

send notification of such filing to the counsel of record in this matter who are registered on the

CM/ECF system.


/s/ Alex G. Romain
Alex G. Romain