UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re Federal National Mortgage Association Securities, Derivative and "ERISA" Litigation** | MDL No. 1668 |
| **In re Fannie Mae Securities Litigation** | Consolidated Civil Action No. 1:04-cv-01639<br><br>Judge Richard J. Leon |

**NON-PARTY OFHEO'S OPPOSITION TO INDIVIDUAL DEFENDANTS'**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

**I.   INTRODUCTION**

The Office of Federal Housing Enterprise Oversight ("OFHEO") opposes Individual Defendants' gambit to undermine the Court's September 27, 2007 Stipulated Order ("Stipulated Order") (Dkt. No. 525) and divert attention from the real issues in this litigation. The Stipulated Order exempts OFHEO from producing documents that (1) relate solely to Freddie Mac, (2) discuss Fannie Mae's remedial measures if created after December 31, 2004, and (3) pertain solely to Fannie Mae's compliance with certain regulatory agreements if created after December 31, 2004. Stip. Ord. ¶ 6. OFHEO determined approximately 30,000 documents to be exempt under the Stipulated Order during its privilege review. Individual Defendants argue that they are entitled to the production of these 30,000 *exempt* documents because OFHEO has, in their view, not adequately described why those documents are not subject to the Court's January 22, 2008 Contempt Order ("Contempt Order") (Dkt. No. 580).

Through a creative series of *non sequiturs*, Individual Defendants attempt to shift the burden to OFHEO to prove that OFHEO has properly withheld these *exempt* documents from production. The Court has not imposed, and should not impose, such an extraordinary

1

requirement. Neither parties nor nonparties are required to explain why they are withholding documents that are not responsive or, in this case, explicitly exempt from production by the Court. Moreover, this Court, in both its Stipulated Order and its Contempt Order, specifically exempted these 30,000 documents from production and logging. Accordingly, Individual Defendants' Motion to Compel the production of exempt documents or, in the alternative, to compel a Rule 30(b)(6) deposition, should be denied.

## II.     BACKGROUND

The underlying litigation arises after a special examination conducted by OFHEO, which culminated in a May 2006 Report of the Special Examination of Fannie Mae (the "Report"). In the Report, OFHEO detailed gross misconduct by Fannie Mae and its former executives – Franklin Raines, Leanne Spencer, and J. Timothy Howard. Class actions were filed against Fannie Mae and its former executives, accountants, and lawyers after OFHEO released the Report. These lawsuits were consolidated before this Court.

Defendants Raines, Howard, and Spencer (the "Individual Defendants") served subpoenas on OFHEO for massive amounts of documents and electronically stored information. Despite repeated objections by OFHEO to limit what it argued to be irrelevant and unduly burdensome and expensive requests, this Court declined to narrow the requests. After a series of motions culminating in a motion to hold OFHEO in contempt by Defendant Raines (Dkt. No. 499) and joined by Defendants Howard and Spencer (Dkt. No. 500), OFHEO and the Individual Defendants came to an agreement embodied in the Court's September 27, 2007 Stipulated Order (Dkt. No. 525).

### A. The Court's September 27, 2007 Stipulated Order

OFHEO agreed to restore email back-up tapes and produce emails from those back-up tapes for a total of 35 employees (referred to as document "custodians"). Paragraph 6 of the Stipulated Order describes OFHEO's obligation to search for and produce electronic documents:

> 6. OFHEO will search for and produce all non-privileged Outlook-related files and contents (with attachments) for the custodians and the specified search terms and extracted from the active data and restored data (i.e., backup tapes) . . . .

The same paragraph of the Stipulated Order also provides specific exemptions from the production obligations:

> 6. . . . OFHEO will not produce the following documents:
>
> a. documents relating exclusively to Freddie Mac;
>
> b. documents created after December 31, 2004, that discuss remedial measures taken or to be taken by new management to address any accounting practices or policies or other allegations identified by OFHEO during the course of its Special Examination or in other examination reports produced after that date; and
>
> c. documents created after December 31, 2004, that pertain solely to Fannie Mae's ongoing compliance with or implementation of Fannie Mae's September 27, 2004 and March 7, 2005 Regulatory Agreements.

Stip. Ord. ¶ 6. The 30,000 documents sought by the Individual Defendants in their motion are *exempt* from production under this provision of the Stipulated Order.

Under the Stipulated Order, OFHEO was to produce by November 30, 2007 all non-privileged and non-exempt documents for the first 21 custodians, along with a "detailed privilege log" for all documents withheld as privileged. Stip. Ord. ¶ 8. OFHEO was to produce by January 4, 2008, all non-privileged and non-exempt documents for an additional nine custodians, along with a "detailed privilege log" for all documents withheld as privileged. Stip. Ord. ¶ 9.

The Individual Defendants also reserved the right to name an additional five custodians.[1]  Stip. Ord. ¶ 10.

      **B.**      **OFHEO's Document Review Process**

OFHEO's outside vendor began the document production process by collecting all Outlook-related files and contents (*e.g.*, email, email attachments, and calendar entries) for the first 21 custodians.  This data was loaded onto an Attenex database capable of quickly handling word searches of large numbers of electronic documents.  On November 8, 2007, when the list of over 400 search terms was finalized, the search terms were applied to all of the documents.  All documents containing at least one search term were segregated within Attenex for an initial review of the documents ("the first review").[2]

The first review was designed to quickly cull through a large volume of documents.  The goal was to separate documents that could easily be identified as produceable, so they could be promptly produced, from those documents that were either exempt or potentially privileged.  Although the Stipulated Order was issued on September 22, 2007, it took the Individual Defendants until November 8, 2007 to finalize the search terms.  Even after paring down their initial list, the final list of over 400 search terms resulted in an unexpectedly large number of documents to be reviewed. This delay left OFHEO only three weeks to review the documents

---

[1]  Only one such additional custodian was named, however.  Documents from that custodian were subsequently processed along with the documents from the additional nine custodians referenced in the text.

[2]  A document was captured by the search if any part of that document contained at least one search term.  That is, even if an email (the "parent" document) did not contain a search term, but the email attachment (the "child" document) did contain a search term, the entire document family, or compound document, was exported.

before the November 30, 2007, interim deadline for the production of documents from the initial 21 custodians.

During the first review, the following document categories were used: Non-responsive, Responsive, Privileged, Pending, Unreadable, Unreadable Resolved.[3] After the first review, the documents marked by the review attorneys in Attenex as "Responsive" were converted to TIFF images and immediately produced to the Defendants. No second review was conducted of those released documents. The documents marked by the review attorneys in Attenex as "Non-responsive" consisted of only those documents exempt from production under subsections a, b, and c of Paragraph 6 of the Stipulated Order.[4] The documents marked by the review attorneys in Attenex as "Privileged" were exported from the original platform, Attenex, into iConect for a second review ("the second review").[5]

For the second review of documents marked "Privileged," the following document categories were used: Responsive-Produce, Not Responsive, Privileged/Withhold. iConect allowed the reviewing attorneys to specify which privilege or privileges applied, if any (*i.e.*, attorney/client, work product, deliberative process, examination). As the second review was undertaken in iConect, all documents that had been provisionally identified as "Privileged" in Attenex were individually re-reviewed and re-categorized. Then, based upon which of the three iConect document categories in which they were placed, the documents were either produced to Defendants ("Responsive-Produce"), logged on a privilege log ("Privileged/Withhold"), or

---

[3] Attorneys reviewed and "marked" each document with the goal of all documents eventually being marked as Non-responsive, Responsive, or Privileged.

[4] Those documents were not exported to iConect because there was no reason to do so.

[5] Thus, the only documents that were subject to a secondary review in iConect were documents that were initially believed to be privileged following a first review of the documents in Attenex.

withheld as exempt under the Stipulated Order ("Not Responsive").  Privilege logs and supplemental documents were produced to Individual Defendants on a rolling basis.

Review attorneys conducting both the first and second reviews of the documents were specifically instructed to mark as "Not Responsive" (*i.e.*, exempt) all documents meeting the descriptions in subsections a, b, and c of Paragraph 6 of the Stipulated Order.  *See* Affidavit of James P. Jordan ("Jordan Aff.") at 2-3, attached as Exh. A.  However, review attorneys were *explicitly* instructed that documents dealing with both Fannie Mae and Freddie Mac were not exempt from production.  *Id.* at 2-3.  Documents marked "Not Responsive" were withheld from production.  *Id.* at 3.  Such documents were not included, and were not required to be included, on the privilege logs.  The approximately 30,000 documents determined to be exempt during the second review are the documents upon which the Individual Defendants' motion to compel is based.

    **C.**    **OFHEO's Document Production**

OFHEO's Document Production for the first 31 custodians took place over a year ago – between November 2007 and February 2008.[6]  On November 29, 2007, OFHEO filed a status report with the Court seeking a forbearance of the November 30, 2007 interim deadline for producing documents for the first 21 custodians.[7]  The Court held a hearing on December 3, 2007, and granted an extension of the interim deadline to December 21, 2007 for the first 21 custodians.

---

[6] It is impossible now to reconstruct in detail the day-to-day events of the production.  It resulted in the production of over 400,000 documents and thousands of pages of privilege logs.  It involved over 50 review attorneys, and it cost the agency over six million dollars.

[7] At that time, OFHEO was unable to make a determination of the number of documents that would ultimately need to be put on a privilege log.

Subsequently, on December 13, 2007, OFHEO sought consent from the Individual Defendants for an extension of time for the production of the "detailed privilege logs" required by the Stipulated Order for the first 21 custodians. *See* Letter from J. Truong, December 13, 2007 (Dkt. Nos. 558-2 and 561-2). By that date, OFHEO had completed its first review and had begun the second review of those documents marked "Privileged." Upon completion of the first review, OFHEO realized that the number of documents needing a second review (approximately 177,000) had greatly exceeded expectations.

OFHEO informed the Individual Defendants that OFHEO had "provisionally determined that approximately 177,000 of the documents collected for the first 21 custodians are privileged under the attorney-client communication, attorney work product, and/or deliberative process privilege." *Id.* at 2. OFHEO further advised the Individual Defendants that "OFHEO expects to supplement its production to the extent it determines, upon further review, that it will not assert privilege over certain documents." [8] *Id.* at 2.

Individual Defendants rejected OFHEO's request on December 18, 2007. *See* Letter from A. Romain, December 18, 2007 (Dkt. Nos. 558-3 and 561-3). On the same day, Individual Defendants filed a motion for sanctions. The motion was based upon OFHEO's representations in its December 13, 2007 letter. *See* Ind. Defs.' Mot. for Sanctions Against OFHEO (Dkt. No. 558).

On December 19, 2007, OFHEO filed a request for forbearance of the deadline for providing privilege logs. *See* Mem. Regarding Status of OFHEO's Production of Documents

---

[8] Although OFHEO was prepared to meet the December 21, 2007 deadline for producing the documents it had identified as responsive, OFHEO could not conduct a second review and log the 177,000 documents within a little over a week.

and Req. for Forbearance of Deadline for Completion of Privilege Logs (Dkt. No. 561).
OFHEO advised the Court that it had determined that approximately 177,000 documents from the first 21 custodians would be withheld as privileged and that OFHEO would need more time to review and log this unexpectedly large number of documents. *Id.* at 1, 3-4 n.1. OFHEO also advised that it estimated it could provide all privilege logs by February 29, 2008. *Id.* at 1.

On January 3, 2008, OFHEO filed an opposition to the motion for sanctions. In its opposition, OFHEO advised that "OFHEO is in the process of conducting a second-level review of documents initially identified as privileged and hopes to reduce the total number of documents over which the agency will assert privilege." OFHEO's Resp. to Ind. Defs.' Request for Sanctions at 2 (Dkt. No. 565).

By January 4, 2008, OFHEO had completed its first review and completed production of non-privileged and non-exempt documents for the additional ten custodians. By that date, OFHEO had also completed its second review of many, but not all, of the provisionally privileged documents for the first 21 custodians. As explained above, those documents were carefully reviewed by attorneys and marked, as appropriate, as "Responsive-Produce," "Privileged/Withhold," or "Not Responsive" under the Stipulated Order. Based upon OFHEO's best then-current information, there were, as of January 4, 2008, a total of more than 170,000 documents for all 31 custodians withheld as provisionally privileged and pending for a second review but not yet listed on a privilege log.

On January 22, 2008, the Court granted Individual Defendants' motion for sanctions. In its Contempt Order, the Court required OFHEO to produce by February 5, 2008,

> all documents that are (i) *responsive* to Individual Defendants' requests for ESI as specified in the Stipulated Order (Dkt. #525, Sept. 27, 2007), but (ii) have been withheld by the agency on the

8

>basis of the deliberative process privilege but not logged by the
>January 4, 2008 deadline.

Contempt Ord. at 1 (Dkt. No. 580) (emphasis added). The Contempt Order further required that OFHEO provide privilege logs for documents it withheld on the basis of the attorney-client and work product privileges by February 29, 2008. *Id.* at 2.

OFHEO produced thousands of pages of privilege logs containing a total of approximately 54,000 entries on a rolling basis through February 29, 2008. During the same timeframe, OFHEO also supplementally produced 103,866 documents over which it determined, after second review, that it would not assert any privilege. In addition, during the course of its second review, OFHEO determined that approximately 30,000 of the documents provisionally withheld as privileged were actually exempt from production under Paragraph 6 of the Stipulated Order. Because those documents were exempt under both the Stipulated Order and the Contempt Order (which explicitly compelled only "responsive" documents), OFHEO withheld them from production.[9]

## III. ARGUMENT

As demonstrated above, OFHEO has properly withheld documents as exempt from the Stipulated Order and the Contempt Order. Individual Defendants have raised no valid reason to doubt OFHEO's "exemption" determinations and no valid reason to justify the court-compelled production of the properly withheld documents.

Given the incomplete state of the document review process at the time, OFHEO provided its best estimate of the documents subject to the Contempt Order. Regardless of

---

[9] The "approximately 30,000" documents referenced in OFHEO's February 25, 2009 letter to the Court, Letter from J. Truong, February 25, 2009, attached as Exh. 1 to Mot., total 29,551 documents.

whether OFHEO included the number of exempt documents in its estimates, OFHEO properly reviewed and re-categorized approximately 30,000 of the provisionally privileged documents as exempt. Such facts do not warrant the compelled production of all documents that OFHEO withheld as explicitly exempted from production under the Stipulated Order.

### A. OFHEO Properly Withheld 30,000 *Exempt* Documents

As demonstrated above, OFHEO fully disclosed the nature of its two-level review process. OFHEO advised both the Court and the Individual Defendants that the number of documents OFHEO withheld as provisionally privileged would likely be reduced as a result of its second review. The tight deadlines necessitated a quick first review to ensure that non-privileged and non-exempt documents were produced as quickly as possible. As anticipated and explicitly predicted by OFHEO, the second review resulted in OFHEO producing significant numbers – over 100,000 – of additional documents. Similarly, the second review also resulted in additional documents – approximately 30,000 – being identified as Not Responsive because they were explicitly exempt under the Stipulated Order.

Even if OFHEO overestimated the number of documents that were privileged and subject to production under the Contempt Order (by including in that estimate the nearly 30,000 exempt documents), the exempt documents are not subject to either the Stipulated Order or the Contempt Order.[10] Review attorneys carefully reviewed each and every one of the approximately 30,000 documents marked as exempt and determined that they are within the descriptions laid out in subsection a, b, or c of paragraph 6 of the Stipulated Order. *See* Jordan Aff., Exh. A at 2-3

---

[10]   Some of the 30,000 exempt documents may contain deliberative process privilege, attorney client privilege, or attorney work product. Once the documents were identified as *exempt* under the Stipulated Order, OFHEO made no further privilege assessment of those documents.

(describing instructions given to review attorneys). Because these approximately 30,000 documents are not responsive under the Stipulated Order, they are also exempt under the Contempt Order. The Contempt Order requires OFHEO to produce documents that are, among other things, "responsive to Individual Defendants' requests for ESI as specified in the Stipulated Order (Dkt. #525, Sept. 27, 2007) . . . ." Contempt Ord. at 1. Accordingly, the Contempt Order does not require the production of the 30,000 exempt documents.

      **B.**      **Individual Defendants Raise No Valid Reason To Compel Production of Documents Explicitly Exempted by the Court from Production**

Individual Defendants have raised no legal or factual basis to compel the production of the exempt documents. Indeed, there is no such basis here. A litigant simply has no legal right to obtain non-responsive documents merely because the producing party reviewed them while searching for responsive documents. That is especially the case here because the Court *explicitly* exempted these documents from the Stipulated Order.

In analogous document searches, an agency responding to a FOIA request is under a duty to conduct a reasonable search for responsive records. *Oglesby v. United Sates Department of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Weisberg v. United States Department of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983). The adequacy of the search is "dependent upon the circumstances of the case." *Truitt v. Department of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68; *see also SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200-01 (D.C. Cir. 1991) (agency's affidavits are ordinarily afforded a presumption of good faith). The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate."

11

*Steinberg v. Department of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  Based upon the review process described above, OFHEO has established its good faith efforts to review and re-review its documents.  Indeed, OFHEO's search was more than adequate.

Nevertheless, Individual Defendants baldly assert that "the agency is withholding without basis 30,000 documents that are undisputably responsive to the Individual Defendants' requests pursuant to the Stipulated Order . . . ."  Mot. at 8.  Instead of raising any valid reason to doubt the actual exemption calls made by OFHEO, Individual Defendants seek to raise doubt in the efficacy of OFHEO's review process by raising a confused interpretation of OFHEO's February 25, 2009 letter to the Court.  In its February 25, 2009 letter, OFHEO explained as follows:

> OFHEO also has withheld a total of approximately 30,000 documents as exempt from the September 2007 Stipulated Order. See Sept. 2007 Stipulated Order at Para. 6.  After the February 20 hearing, OFHEO asked its vendor to search the exempt documents using the search term "Freddie Mac" or a variant. The result of that search confirmed that approximately 19,400 documents are Freddie Mac documents and exempt under the September 2007 Stipulated Order.

Letter from J. Truong, February 25, 2005, attached as Exh. 1 to Ind. Defs.' Motion ("2/25/05 Letter").  OFHEO's explanation was provided in response to an inquiry by counsel for Mr. Raines and subsequently from the Court during a status conference on February 20, 2009. Individual Defendants now argue that they should be entitled to production of the exempt documents because OFHEO's explanation in response to the Court's request was insufficient and because its explanation somehow proves that its review methodology was flawed.  *See* Individual Defendants' Motion to Compel Production of Documents from the Office of Federal Housing Enterprise Oversight ("Mot.") at 5-7.  Individual Defendants are wrong.

OFHEO's explanation responded to the Court's request. The Court sought a written explanation from OFHEO regarding the basis for OFHEO's withholding of a number of documents that OFHEO contends are exempt "Freddie Mac documents." Specifically, the Court stated as follows:

> THE COURT: Mr. Truong, come on up. Let's be clear on one thing. If it should come to pass that you don't believe legally you have any obligation legally under existing decisions in this case by the D.C. Circuit, by this Court or by other precedent that may be binding, if you do not believe that you have any legal obligation to produce these documents upon closer review, then obviously you won't be producing them; but you will have to produce for the benefit of the individual counsel and the Court a written explanation in detail with appropriate authorities cited as to what your basis is for not producing whatever it is you are not producing come next Wednesday.

Hearing Transcript, February 20, 2009, at 31, line 3-13.

In its February 25, 2009 letter, OFHEO provided such an explanation and cited to the only appropriate authority under these circumstances: this Court's Stipulated Order. Specifically, OFHEO explained that "All documents that were determined to be privileged upon first review, but which upon second review were determined not to be privileged, were either produced by OFHEO or exempt from production under the Stipulated Order." 2/25/05 Letter at 1. OFHEO further explained that it had determined that approximately 30,000 of the documents were determined to be exempt. *Id.*

In light of OFHEO's explanation, counsel for Mr. Raines should not be heard to argue that OFHEO ought to produce the documents. In fact, counsel for Mr. Raines conceded as much during the February 20, 2009 status conference:

> THE COURT: What if it should come to pass that the documents for whatever reason, I don't know what it would be yet, but for whatever reason there is no legal obligation to produce them because of their nature, because of their content, whatever?

13

>MR. ROMAIN: Well, I think I certainly could not insist the documents they are not compelled to produce should be produced.

Hearing Transcript, February 20, 2009, at 30, lines 5-12.  In fact, counsel for Mr. Raines went on further to state: "I am not suggesting they should produce documents that are not subject to the order."  Hearing Transcript, February 20, 2009, at 30, lines 21-23.  As explained above, the 30,000 exempt documents are not subject to production under either the Stipulated Order or the Contempt Order.  Accordingly, as counsel for Mr. Raines has conceded, OFHEO should not produce the exempt documents.

Individual Defendants grossly misinterpret OFHEO's letter to mean that "OFHEO now hopes to justify its withholding of 19,400 documents based solely on a search for documents containing the term 'Freddie Mac' or any variant thereof."  Mot. at 6.  This tortured interpretation of OFHEO's letter is flatly wrong.  As explained above, during the review process, review attorneys individually reviewed each document and ultimately identified nearly 30,000 documents as exempt under the Stipulated Order.  Of the 30,000 documents, approximately 19,400 of these documents are *exclusively* related to Freddie Mac.  In preparing its letter to the Court, OFHEO sought simply to verify quickly that the 30,000 exempt documents indeed contained Freddie Mac documents.  OFHEO instructed its vendor to search for either "Freddie Mac" or a variant of "Freddie Mac" within the approximately 30,000 exempt documents.  In its February 25, 2009 letter, OFHEO clearly states that "*After* the February 20 [2009] hearing, OFHEO asked its vendor to search the *exempt documents* . . . ."  2/25/09 Letter at 1 (emphasis added).  The letter neither states nor suggests that OFHEO's 2007-2008 review process involved culling out its "Freddie Documents" by the use of word searches – and it did not do so.  Indeed, had OFHEO used such a method to cull out exempt documents (which it did not), then it would not have produced *any* "Freddie Documents."  As Individual Defendants point out in their

14

motion, however, OFHEO produced 38,389 documents containing the term "Freddie Mac." This is not surprising – those 38,389 documents were produced because they did not *exclusively* relate to Freddie Mac. The Individual Defendants' self-serving distortion of OFHEO's letter is not supported by the facts.

Furthermore, Individual Defendants raised two additional faulty arguments: (1) that OFHEO's search for the term "Freddie Mac" was "insufficient," and (2) that OFHEO failed to offer an explanation of the remaining 11,000 documents. Both arguments are premised upon an assumption that OFHEO must justify its responsiveness calls to the Individual Defendants. To the contrary, the Court did not seek to have OFHEO re-review these approximately 30,000 documents to be sure it properly withheld them.[11] Rather, the Court sought an explanation of (1) what they were and (2) why OFHEO withheld them. As explained above, OFHEO's review attorneys carefully reviewed the documents and determined they were Not Responsive, that is, exempt pursuant to the express terms of the Stipulated Order. The documents were properly withheld on that basis.

### C. OFHEO's Use of the 170,000 Figure Does Not Warrant the Wholesale Production of Exempt Documents

OFHEO has represented in Court filings that compliance with the Court's Contempt Order would compel the agency to produce more than 170,000 documents that had been designated as subject to privilege as of January 4, 2008, but not yet logged. The Contempt Order required production by February 5, 2008 of responsive documents withheld on the basis of deliberative process privilege but not logged by the January 4, 2008 deadline.

---

[11] A task that would have taken much more time.

OFHEO appears to have first used the 170,000 estimate in its January 31, 2008, Emergency Motion for Stay Pending Appeal filed with the U.S. Court of Appeals for the D.C. Circuit, an excerpt of which is attached as Exhibit 3 to Individual Defendants' motion.  At that time, nine days after this Court issued its Contempt Order, OFHEO sought to convey the potential harm that would be caused if the Court's Order took effect on February 5, 2008.  OFHEO represented that, absent a stay, the trial court's order would require OFHEO to produce 170,000 documents that OFHEO had marked as privileged.

At the time OFHEO was preparing its motion for stay, OFHEO had not yet completed its privilege review.  Nonetheless, each day during the privilege review, OFHEO had continued to re-categorize documents, as appropriate.  The January 22, 2008 Contempt Order required the production of "responsive" documents "withheld by the agency on the basis of the deliberative process privilege but not logged by the January 4, 2008 deadline."  Contempt Ord. at 1.  Based upon OFHEO's then best current information, there were, as of January 4, 2008, a total of more than 170,000 documents for all 31 custodians withheld as provisionally privileged for a second review but that had not yet been reviewed and listed on a privilege log.

OFHEO used the same January 4, 2008 estimate in subsequent filings without extracting out the number of documents that had since been re-categorized as exempt or produceable.  For that matter, OFHEO did not extract out attorney-client privilege or work product documents that have seen been logged.  OFHEO's inclusion of the exempt documents in that number surely should not warrant the wholesale production of the exempt documents.  There is simply no logical reason for it.  OFHEO had properly conducted a second review of its provisionally privileged documents and re-categorized approximately 30,000 of those documents as exempt

under the Stipulated Order. To compel their production would be a sanction, and such a sanction would not be warranted under these circumstances.

## IV. CONCLUSION

For all of the foregoing reasons, OFHEO respectfully requests that the Court deny Individual Defendants' motion to compel.

Dated: March 4, 2009.

                                              JEFREY A. TAYLOR, D.C. BAR #98610
United States Attorney

   /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR 434122
Assistant United States Attorney


   /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
KENNETH ADEBONOJO
JANE M. LYONS, D.C. BAR #451737
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 514- 7161 (phone)
(202) 514-8780 (fax)


Attorneys for OFHEO

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re Federal National Mortgage Association Securities, Derivative and "ERISA" Litigation** | **MDL No. 1668** |
| **In re Fannie Mae Securities Litigation** | **Consolidated Civil Action No. 1:04-cv-01639**<br><br>**Judge Richard J. Leon** |

### ORDER

Upon consideration of the Individual Defendants' Motion to Compel, OFEHO's Opposition thereto, and the entire record herein, it is this _____ day of _____, 2009,

**ORDERED** that the Individual Defendants' Motion to Compel be and is hereby DENIED.

**SO ORDERED**.

_____
U.S. District Judge