# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 10, 2008        Decided January 6, 2009

No. 08-5014

IN RE: FANNIE MAE SECURITIES LITIGATION,

———

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01639)

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED    JAN    6 2009

CLERK

———

*Nicholas J. Bagley*, Attorney, U.S. Department of Justice, argued the cause for appellant. With him on the briefs were *Gregory G. Katsas*, Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, *R. Craig Lawrence* and *John C. Truong*, Assistant U.S. Attorneys, and *Mark B. Stern* and *Michael S. Raab*, Attorneys. *Sarang V. Damle* and *Mark R. Freeman*, Attorneys, entered appearances.

*Alex G. Romain* argued the cause for appellees. With him on the brief were *Kevin M. Downey*, *Steven M. Salky*, *Eric R. Delinsky*, and *David S. Krakoff*.

Before: TATEL and KAVANAUGH, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: The Office of Federal Housing Enterprise Oversight (OFHEO) appeals a district court order

2

holding it in contempt for failing to comply with a discovery
deadline to which it agreed. Though we appreciate OFHEO's
efforts to comply, we conclude that it ultimately failed to do
so and find no abuse of discretion in the district court's
contempt finding or choice of sanction.

## I.

Appellant Office of Federal Housing Enterprise
Oversight regulates the Federal National Mortgage
Association ("Fannie Mae") and the Federal Home Loan
Mortgage Corporation (for some reason "Freddie Mac")—
both government-sponsored enterprises participating in the
secondary mortgage market. This case concerns OFHEO's
responsibilities for Fannie Mae.

In 2003 OFHEO opened a special review of Fannie
Mae's accounting and financial practices, ultimately
concluding that the enterprise had departed from generally
accepted accounting principles in order to manipulate its
reported earnings and inflate executive compensation.
Although OFHEO has since closed its investigation and
concluded its enforcement actions, its preliminary
investigation report prompted several private civil actions
against Fannie Mae, its senior executives, and others. These
actions have been consolidated into multidistrict litigation in
the United States District Court for the District of Columbia.

Although OFHEO is not itself a party to the multidistrict
litigation, the parties have subpoenaed records it collected in
performing its oversight functions and preparing its
investigation report. This appeal concerns a dispute over
subpoenas issued by appellees, three individual defendants in
the multidistrict litigation who were senior executives at
Fannie Mae: former chairman and CEO Franklin Raines,

3

former CFO J. Timothy Howard, and former senior vice president and controller Leanne Spencer.

In the summer of 2006, Howard and Raines subpoenaed over thirty categories of documents from OFHEO. *See* Fed. R. Civ. P. 45(c)(2)(B)(ii) (governing subpoenas to non-parties). They claimed that the documents would aid their defense by showing that they "had been completely transparent with OFHEO," Appellees' Br. 5; that "OFHEO had approved Fannie Mae's accounting and compensation practices," *id.*; and that OFHEO's investigation "was politically motivated and biased," *id.* at 6. Arguing that Howard and Raines should have instead sought these documents pursuant to its disclosure regulations, OFHEO moved to quash the subpoenas, and the individual defendants moved to compel compliance. On November 6, 2006, the district court ruled for the individual defendants and directed OFHEO to comply during the next four months.

Although OFHEO began producing documents, it asked Howard and Raines (now joined by Spencer, the third appellee) to limit their requests for electronically stored information in order to minimize the burden on OFHEO. Responding by letter dated February 18, 2007, the individual defendants revised their initial requests for such information, limiting them for the time being to certain email communications stored on OFHEO's network and backup tapes. Shortly thereafter, OFHEO filed a motion with the district court seeking an approximately one-month extension of the time to comply. Representing that the parties had "agreed that the Court's November 6, 2006 Order did not apply to the ESI [i.e., electronically stored information]," OFHEO's motion proposed extending the deadline only for paper documents. OFHEO's Mot. for Extension 4, Mar. 9, 2007. OFHEO explained that it was providing electronically

4

stored information voluntarily and not pursuant to the court's order.

The court granted OFHEO's motion, but the individual defendants objected, claiming that they had never agreed that the order left out electronically stored information. At an April 2007 status conference, the district court confirmed that its November 6, 2006 order covered such information and that, in approving OFHEO's proposed extension order, it hadn't intended to limit the new deadline to paper documents. It granted OFHEO's request for a further one-month extension to produce the outstanding information.

During the summer of 2007, OFHEO reported to the court that it had produced all documents requested by the February letter. But skeptical of the limited production, the individual defendants sought and obtained a Rule 30(b)(6) deposition, which confirmed that OFHEO had failed to search all of its off-site disaster-recovery backup tapes. *See* Fed. R. Civ. P. 30(b)(6) (providing for depositions of organizations through designated representatives). According to OFHEO, it never understood the February letter's request for communications on backup tapes to apply to its disaster-recovery backup tapes, but nonetheless voluntarily undertook to search them for certain of the requested documents.

In August of 2007, the individual defendants moved to hold OFHEO in contempt. In response, the district court, stating that it had "no doubt" that the OFHEO disaster-recovery backup tapes were "going to be looked at," scheduled a contempt hearing in order to assess the burden that examination of such tapes would impose on OFHEO. Hr'g Tr. at 76 (Sept. 19, 2007). Following the first day of the hearing, OFHEO and the individual defendants entered into a stipulated order that held the contempt motions in abeyance

5

and required OFHEO to conduct searches of its disaster-recovery backup tapes and provide all responsive documents and privilege logs by January 4, 2008. In language central to the issue before us, the stipulated order's fifth paragraph states:

> OFHEO will work with the Individual Defendants to provide the necessary information (without individual document review) to develop appropriate search terms. By October 19, 2007, the Individual Defendants will specify the search terms to be used.

Stipulated Order ¶ 5, Sept. 27, 2007.

Pursuant to the stipulated order, the individual defendants submitted over 400 search terms, which covered approximately 660,000 documents. OFHEO objected on the grounds that the stipulated order limited the individual defendants to "appropriate search terms," but the district court disagreed, ruling on November 2, 2007 that the stipulated order gave the individual defendants sole discretion to specify search terms and imposed no limits on permissible terms. Although the district court made this ruling in an off-the-record chambers conference, the parties agree on its meaning.

OFHEO undertook extensive efforts to comply with the stipulated order, hiring 50 contract attorneys solely for that purpose. The total amount OFHEO spent on the individual defendants' discovery requests eventually reached over $6 million, more than 9 percent of the agency's entire annual budget.

On November 29, 2007, the day before an interim deadline for production of several categories of material, OFHEO informed the district court that it would be unable to

6

meet that deadline and moved for an extension until December 21, assuring the court that it could meet that extended deadline. The court granted the motion, but two days before the extended deadline, OFHEO informed the court not only that its previous assurances had been based on insufficient data, but also that it had only recently hired the necessary number of contract attorneys. OFHEO told the court that it would be unable to comply with the extended interim deadline, and that although it could produce all non-privileged documents by the ultimate January 4, 2008 deadline, it would be unable to produce all the required privilege logs until February 29.

The individual defendants renewed their motions to hold OFHEO in contempt. On January 22, the district court granted the motions. The court recognized OFHEO's efforts at compliance, but deemed them "not only legally insufficient, but too little too late," stating:

> [T]he Court is cognizant of the large number of attorneys, contract attorneys, and OFHEO personnel working to comply with the subpoenas and the resulting costs of this compliance. Nevertheless, OFHEO has treated its Court-ordered deadlines as movable goal posts and has repeatedly miscalculated the efforts required for compliance and sought thereafter to move them.

Hr'g Tr. at 19 (Jan. 22, 2008). As a sanction, the court ordered production of all documents withheld on the sole basis of the qualified deliberative process privilege and not logged by the January 4, 2008 deadline. Contrary to the individual defendants' requests, however, the court made clear that production was to be made only to counsel and would not waive the privilege. Although OFHEO says that it

7

provided the non-privileged documents by January 4 and the privilege logs by the end of February, the individual defendants claim that approximately 20,000 documents remain unaccounted for.

OFHEO appeals the contempt finding, arguing that the stipulated order limited the individual defendants to specifying "appropriate" search terms and did not unambiguously compel it to process inappropriate terms. In the alternative, OFHEO argues that it substantially complied with the stipulated order, rendering a finding of contempt inappropriate, and that in any event the district court abused its discretion by compelling compliance with the subpoenas in the first place. OFHEO also appeals the district court's choice of sanction, which this court stayed pending appeal. Exercising our appellate jurisdiction due to the finding of contempt, *see U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988), we review both the contempt finding and the sanction for abuse of discretion, *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1016 (D.C. Cir. 1997).

## II.

We begin with OFHEO's principal argument: that paragraph five of the stipulated order limits the individual defendants to specifying only "appropriate" search terms, and that by transgressing this limitation, the individual defendants relieved OFHEO of its obligation to process the search terms and to produce the corresponding documents and privilege logs by the stipulated order's deadline. We disagree.

Although OFHEO characterizes paragraph five's use of the phrase "appropriate search terms" as a protection it bargained for, it presented no extrinsic evidence for this claim. As a consequence, we interpret the meaning of the

8

stipulated order based on the document itself. *See Segar v. Mukasey*, 508 F.3d 16, 22 (D.C. Cir. 2007) ("[C]onstruction of a consent decree is essentially a matter of contract law." (internal quotation marks omitted)). On its face, paragraph five's first sentence uses the phrase "appropriate search terms" to describe an obligation on OFHEO, not the individual defendants, and its second reserves full discretion to the individual defendants to specify search terms:

> OFHEO will work with the Individual Defendants to provide the necessary information (without individual document review) to develop appropriate search terms. By October 19, 2007, the Individual Defendants will specify the search terms to be used.

Stipulated Order ¶ 5. OFHEO describes paragraph five as "[c]onfining defendants to 'appropriate search terms,'" Appellant's Opening Br. 23, but it quotes neither sentence in full and its opening brief never so much as mentions the second sentence. This omission is striking given that on its face the second sentence imposes no limitation on the terms the individual defendants may specify. To defeat such a clear statement, the remainder of the stipulated order would need to provide a correspondingly persuasive indication that the individual defendants are somehow limited in their choice of search terms. It does not.

Paragraph five's reference to "appropriate search terms," on which OFHEO exclusively relies, imposes no limitation on the individual defendants. The paragraph directs OFHEO and the individual defendants to work together, but only to facilitate OFHEO's provision of information to assist in developing search terms. The phrase "to develop appropriate search terms" indisputably modifies "the necessary information"; it is not an independent obligation on the

9

parties. *See* Stipulated Order ¶ 5 ("OFHEO will work with the Individual Defendants to provide the necessary information . . . to develop appropriate search terms."). That is, the phrase serves only to define the type of information OFHEO must provide—that information necessary for the development of appropriate search terms. Nothing in paragraph five's text gives OFHEO any role in actually developing those search terms.

Although paragraph five defines the information OFHEO must provide, it nowhere limits the search terms the individual defendants ultimately specify to those based on this information. If the individual defendants wished to specify search terms based on information obtained from other sources at their disposal, nothing in the paragraph precludes that. Nor is there any logical reason why it would—after all, the individual defendants undoubtedly acquired voluminous information from the parties to the multidistrict litigation during discovery, and it's quite unlikely that they and OFHEO would have ruled out search terms based on this wholly independent source of information. Thus the phrase "appropriate search terms," which relates only to the information OFHEO must provide, imposes no restrictions on the search terms the individual defendants end up *specifying*, which may be based on wholly independent information.

OFHEO argues that reading the stipulated order to allow the individual defendants full discretion to specify search terms would render the phrase "to develop appropriate search terms" surplusage. Again, we disagree. Clearly the whole phrase isn't surplusage: without it, the agreement would only impose the maddeningly nebulous requirement that OFHEO "provide the necessary information," giving no hint as to what type of information that might be.

10

Even if some variant of the *phrase* is essential, might the *word* "appropriate" still be surplusage under our plain reading? We think not. The word plays a valuable role: it sharpens OFHEO's obligations to the individual defendants. Without that word, the "necessary information . . . to develop search terms" might consist of nothing more than minimally useful information, such as the technical specifications of OFHEO's data retrieval software. But paragraph five requires OFHEO to provide more: it must furnish that information necessary to formulate search terms that are not just minimally sufficient, but actually appropriate to the task of retrieving relevant documents. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 106 (1993) (defining "appropriate" as "specially suitable"). The inclusion of such detail is understandable given the difficulties OFHEO and the individual defendants experienced resolving their discovery disputes up to that point.

The word "appropriate" would be surplusage only if the information necessary to develop appropriate search terms was of no value whatsoever to the individual defendants. In that case it would have made no sense for paragraph five to obligate OFHEO to do something that the individual defendants couldn't possibly want. But of course such information is quite valuable to the individual defendants. They want to retrieve the relevant documents as efficiently as possible, and appropriate search terms, by definition, do so better than minimally adequate search terms. Since the first sentence's requirement that OFHEO do something valuable for the individual defendants is hardly remarkable, we create no surplusage when we take at face value its plain text, which sets forth only OFHEO's obligation to provide information at the outset, not any limitation on the individual defendants' discretion to choose search terms.

11

The language surrounding paragraph five strongly supports this straightforward reading. Unlike paragraph five, the remainder of the stipulated order includes several provisions that unmistakably protect OFHEO. For example, paragraph six protects OFHEO from having to produce certain categories of documents by stating simply, "OFHEO will not produce the following documents," and enumerating in detail three protected categories. Stipulated Order ¶ 6. Other provisions in the stipulated order expressly limit the individual defendants to identifying fifteen backup tape sets to restore out of over 1,000 backup tapes in OFHEO's possession, *id.* ¶ 1; cap the number of OFHEO record custodians subject to the requests, *id.* ¶ 2; specify the relevant time period for the individual defendants' requests, *id.* ¶ 3; and provide deadlines that effectively extend OFHEO's time to comply by several months, *id.* ¶¶ 8–9. Tellingly, even the very sentence in paragraph five that contains the word "appropriate" unambiguously includes a specific protection for OFHEO: its obligation to provide information does not extend to "individual document review." *See id.* ¶ 5 ("OFHEO will work with the Individual Defendants to provide the necessary information (without individual document review) to develop appropriate search terms."). Each of these protections is specifically set forth in the stipulated order and each clearly protects OFHEO. The contrast to the word "appropriate"—appearing without elaboration in a sentence defining OFHEO's obligations—is revealing.

Urging us to find some contractual limitation on the individual defendants' discretion, OFHEO argues that allowing the individual defendants to specify every word in the dictionary as a search term would be absurd. Indeed it would. But OFHEO's protection against such an abusive list of search terms comes not from the word "appropriate" but

12

from the general contractual duty of good faith and fair dealing. *See United States v. Jones*, 58 F.3d 688, 692 (D.C. Cir. 1995) (noting that all contracts "include[] an implied obligation of good faith and fair dealing"). We have no doubt that even given the full discretion paragraph five affords the individual defendants, a request for every word in the dictionary would have been in bad faith and invalid. *See id.* at 690, 692 (holding that a prosecutor's decision whether to move for leniency could be reviewed for bad faith even where the plea agreement stated that the government "retain[ed] its discretion" regarding whether to make such a motion).

OFHEO insists that the individual defendants' list of search terms was tantamount to a request for the dictionary, resulting as it did in the retrieval of approximately 80 percent of the office's emails. Oral Arg. at 30:20–:40. But far from showing bad faith, that figure may simply indicate that most of the emails actually bear some relevance, or at least include language captured by reasonable search terms. More fundamentally, OFHEO does not argue that the individual defendants exercised their contractual rights in bad faith; it argues only that they violated a textual limitation on those rights. As described above, however, that limitation appears nowhere in the stipulated order.

As a fallback defense to contempt, OFHEO insists that the stipulated order is at least ambiguous, rightly emphasizing that contempt is appropriate only for violation of a "clear and unambiguous" order. *Armstrong v. Executive Office of the President, Office of Admin.*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (internal quotation marks omitted). To be sure, there may be some issues as to which the order might be ambiguous. For example, had OFHEO withheld some information on the ground that it was unnecessary for the development of appropriate search terms, the text might not

13

have unambiguously resolved *that* dispute. But paragraph five unambiguously resolves the dispute that *is* before us: its second sentence reserves to the individual defendants unrestricted discretion to "specify the search terms to be used," Stipulated Order ¶ 5, and its first sentence unambiguously applies the phrase "appropriate search terms" only to OFHEO's obligation to provide the individual defendants with information at the outset. Thus, whatever other ambiguities may lurk in the stipulated order, it unambiguously requires OFHEO to process the search terms the individual defendants specify.

In sum, the stipulated order obligated OFHEO to process the search terms the individual defendants specified and to meet the corresponding deadlines, and the office violated the order by failing to produce privilege logs on time.

## III.

OFHEO makes two additional challenges to the district court's contempt finding: it argues that the district court abused its discretion by compelling compliance with the subpoenas in the first place, and that in any event it substantially complied with the stipulated order in good faith. We address each argument in turn.

Federal Rule of Civil Procedure 45 requires courts to safeguard non-party subpoena recipients from significant expense resulting from compliance. *See Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007). According to OFHEO, the district court violated Rule 45 by compelling compliance without considering cost-shifting, narrowing the scope of the requests, or "find[ing] that defendants demonstrated good cause for forcing OFHEO to retrieve its inaccessible data." Appellant's Opening Br. 31–32. Whatever the merits of these claims, OFHEO abandoned them by entering into the

14

stipulated order. Indeed, OFHEO's trial counsel agreed to the stipulation in the middle of a hearing scheduled for the very purpose of considering OFHEO's objections to the subpoenas. Had OFHEO wanted review of the district court's initial order to compel compliance with the subpoenas, it could have completed the hearing and attempted to convince the court to reconsider. Failing that, it could have defied the adverse ruling and appealed any ensuing contempt finding. *See U.S. Catholic Conference*, 487 U.S. at 76. Instead, it chose to sign the stipulated order, which ended the hearing and unquestionably settled the discovery dispute. Having stipulated to a schedule for complying with the subpoenas, OFHEO can hardly complain now about being held to its agreement.

Seeking to revive the dispute it settled, OFHEO objects to the district court's off-the-record November 2, 2007 ruling interpreting the stipulated order. As OFHEO sees it, this ruling amounts to a second order compelling compliance with the subpoenas and shares the same flaws as the first. But in this ruling, the district court merely restated the obligations imposed by the stipulation. It didn't determine anew that OFHEO had to provide documents; *OFHEO* already determined that by stipulating to do so.

Alternatively, OFHEO insists that even if it was properly subject to the stipulated order, it substantially complied in good faith. The parties agree that contempt may be inappropriate when a party in good faith substantially complies with a court order. *See Food Lion*, 103 F.3d at 1017. Here OFHEO undeniably made extensive efforts to produce the documents and privilege logs in accordance with the timetable set forth in the stipulated order. It hired 50 contract attorneys, eventually spending a substantial portion of its budget attempting to comply with the subpoenas.

15

Were we deciding this matter in the first instance, we might not have held OFHEO in contempt. But our review is for abuse of discretion, and OFHEO has given us no basis for concluding that the district court abused its discretion by finding it in contempt for failing to comply with the stipulated order's deadlines. As the district court explained, even two and a half weeks after the final deadline set forth in the stipulated order, OFHEO had produced just six of the required thirty-one privilege logs. Not until after the district court held OFHEO in contempt did it provide the remaining logs, and according to the individual defendants even these are incomplete.

District judges must have authority to manage their dockets, especially during massive litigation such as this, and we owe deference to their decisions whether and how to enforce the deadlines they impose. *See Berry v. District of Columbia*, 833 F.2d 1031, 1037 n.24 (D.C. Cir. 1987). Though we recognize OFHEO's strenuous efforts to comply, the district court found them to be "too little too late," Hr'g Tr. at 19 (Jan. 22, 2008), and determined that the office's compliance was inadequate, *id.* at 21. In making this assessment, the court placed great weight on the long history of the discovery dispute and on OFHEO's repeated requests for extensions, ultimately concluding that OFHEO had requested one extension too many and that strict enforcement of its deadline was warranted. Given the district court's intimate familiarity with the details of the discovery dispute, the scale of the production requested, and the progress of the multidistrict litigation as a whole, we are ill-positioned to second-guess that assessment. Were we on this record to overturn the district court's fact-bound conclusion that OFHEO dragged its feet until the eleventh hour, we would

16

risk undermining the authority of district courts to enforce the deadlines they impose.

## IV.

This brings us to OFHEO's final argument: that even if contempt is appropriate, the district court abused its discretion in its choice of sanction. After finding that OFHEO's failure to meet the deadline placed it in contempt of the stipulated order, the district court directed the office to provide the actual documents withheld on the basis of the deliberative process privilege and not logged by the deadline. The district court described the sanction as "designed to move the [d]iscovery process forward and to allow for [a] more targeted, and therefore more truncated, privilege litigation process." Hr'g Tr. at 26 (Jan. 22, 2008). The district court therefore specified that the compulsory disclosure would not waive the privilege with respect to further disclosure; directed that the documents be provided only to individual defendants' counsel; and created a mechanism for OFHEO to recover documents found to be privileged.

The parties dispute whether the district court imposed the sanction pursuant to its contempt power or its inherent authority to levy discovery sanctions. This distinction matters because unlike discovery sanctions, civil contempt sanctions may not be punitive—they must be calibrated to coerce compliance or compensate a complainant for losses sustained. *Compare Cobell v. Norton*, 334 F.3d 1128, 1145 (D.C. Cir. 2003) (civil contempt sanctions), *with Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) (discovery sanctions).

In our view, even though the district court mentioned that the individual defendants had filed *motions* for discovery sanctions that were independent of their motions for

17

contempt, Hr'g Tr. at 21–22 (Jan. 22, 2008), the structure of the order makes clear that the *sanction* functioned as a contempt sanction. The district court's consideration of the appropriate sanction followed hot on the heels of its contempt finding, making clear that it imposed the sanction for the contempt it found, not simply as a non sequitur. *Id.* at 21 ("Thus, based on the foregoing, the Court finds that OFHEO is in civil contempt of the September 27th, 2007, stipulated order. What sanctions are appropriate?"). Perhaps the sanction served as both a contempt sanction and a discovery sanction, but the parties nowhere advance this interpretation. In any event, we have no need to consider it given that the district court had ample authority to impose the sanction under its contempt power alone.

The sanction was a proper exercise of the district court's contempt power because it coerced compliance with the stipulated order and compensated the individual defendants for the delay they suffered. The stipulated order required OFHEO to disclose all documents not in fact privileged and, as the district court pointed out, the non-disclosure of the logs prevented the individual defendants from challenging OFHEO's privilege claims. *Id.* at 23. Accordingly, OFHEO's tardiness in turning over the logs has delayed the resolution of disputes over its ultimate compliance with its obligation to produce all unprivileged documents. The district court found that it could mitigate this delay by requiring OFHEO to provide certain of the privileged documents themselves, but solely for the purpose of resolving whether they were in fact privileged. That is, by facilitating faster resolution of outstanding privilege disputes, the sanction not only coerced OFHEO's compliance with its obligation to provide all documents not in fact privileged, but also compensated the individual defendants by ameliorating OFHEO's delay in disclosing the privilege logs. As it did not

18

require wholesale waiver of the privilege, the sanction was non-punitive and fit comfortably within the district court's civil contempt power.

Though it imposes some burden on OFHEO, the sanction is not so disproportionate or unreasonable as to constitute an abuse of discretion. The district court considered various possible sanctions, ranging from OFHEO's insistence on no sanction at all to the individual defendants' request for a fine and wholesale waiver of the deliberative process privilege. Recognizing that it could not let OFHEO's contempt go unaddressed, the district court nonetheless rejected fines on the grounds that they would ultimately be paid by Fannie Mae, a bystander to the discovery dispute. *See* 12 U.S.C. § 4516(a) (providing funding for OFHEO through assessments on regulated entities). It also rejected wholesale waiver, choosing instead a middle ground calculated to facilitate prompt resolution of the dispute without impairing OFHEO's ability to protect privileged communications from general disclosure.

OFHEO gives us no reason to question the district court's choice of sanction. Indeed, although insisting that the sanction amounted to an abuse of discretion, it has steadfastly refused—both in its briefs and at oral argument—to identify a single permissible sanction. And although OFHEO claims that the district court's sanction "effectively" waives the deliberative process privilege, Appellant's Opening Br. 37, its counsel conceded at oral argument that the court-ordered non-waiver disclosure will allow OFHEO to assert privilege with respect to those documents in the future, Oral Arg. at 31:40–32:09; *cf.* Fed. R. Civ. P. 26(b)(5)(B) (setting forth procedure for parties to retrieve inadvertently disclosed privileged material without allowing its use). Any documents disclosed to the individual defendants' attorneys that turn out to be

19

privileged will remain privileged and presumably will be returned to OFHEO. The district court thus took pains to ensure that the important governmental interests guarded by the deliberative process privilege remain fully protected.

## V.

Seeing no abuse of discretion in the district court's finding of contempt or choice of sanction, we affirm.

*So ordered.*