**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re Fannie Mae Securities Litigation | ) ) ) ) ) | Consolidated Civil Action No. 1:04CV01639 (RJL) |
| Fannie Mae,<br>      *Plaintiff*,<br>v.<br>KPMG LLP,<br>      *Defendant*. | ) ) ) ) ) ) ) ) ) ) | Case No. 1:06CV02111 (RJL) |

**FANNIE MAE'S MOTION TO COMPEL KPMG'S PRODUCTION OF DOCUMENTS RELATED TO THE PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD**

For the reasons set forth in the attached Memorandum, Plaintiff Fannie Mae hereby moves the Court to compel Defendant KPMG, LLP's production of documents related to the Public Accounting Oversight Board. Pursuant to Local Rule 7(m), counsel for Fannie Mae and counsel for Defendant KPMG have conferred, and counsel for KPMG opposes the relief requested in this motion.

Dated: March 13, 2009                                   Respectfully submitted,


  /s/ Jerome L. Epstein
Jerome L. Epstein (DC Bar #412824)
Joshua M. Segal (DC Bar #975949)
JENNER & BLOCK LLP
1099 New York Avenue, N.W.
Suite 900
Washington, D.C. 20001
202-639-6062 (voice)
202-639-6066 (fax)
jepstein@jenner.com

Ronald L. Marmer
C. John Koch
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611-7603

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re Fannie Mae Securities Litigation | ) ) ) ) | Consolidated Civil Action No. 1:04CV01639 (RJL) |
| Fannie Mae,<br>　　*Plaintiff*,<br>v.<br>KPMG LLP,<br>　　*Defendant*. | ) ) ) ) ) ) ) ) ) ) | Case No. 1:06CV02111 (RJL) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF FANNIE MAE'S MOTION TO COMPEL KPMG'S
PRODUCTION OF DOCUMENTS RELATED TO THE
PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD**

Pursuant to Rules 26(b)(5) and 37(a)(1) of the Federal Rules of Civil Procedure, Fannie Mae respectfully submits this memorandum in support of its motion to compel KPMG to produce documents related to investigations and inspections of KPMG by the Public Company Accounting Oversight Board (the "PCAOB-Related Documents"). These documents fall into two categories.

- KPMG has withheld 248 documents relating to the PCAOB's investigation of KPMG in connection with KPMG's audits of Fannie Mae. KPMG asserts that these documents are privileged by virtue of a provision of the Sarbanes-Oxley Act.

- KPMG has withheld the complete versions of certain inspection reports prepared by the PCAOB, as well as related documents such as KPMG's internal discussions of the PCAOB's findings concerning KPMG audits (the "Inspection Report Documents"). KPMG has refused to produce the full versions of the Inspection Report Documents on the grounds that they are privileged by virtue of

the same Sarbanes-Oxley provision.  KPMG also contends the Inspection Report Documents are irrelevant.[1]

Fannie Mae asks this Court to hold that the Sarbanes-Oxley Act does not create a privilege that KPMG can invoke to withhold relevant documents in its possession.  KPMG should be ordered to produce all documents related to the PCAOB's investigation of KPMG, as well as the Inspection Report Documents.[2]

## ARGUMENT

**I.   THE SARBANES-OXLEY ACT DOES NOT ENTITLE KPMG TO WITHHOLD PCAOB-RELATED DOCUMENTS IN KPMG'S POSSESSION.**

Invoking Section 105(b)(5)(A) of the Sarbanes-Oxley Act of 2002, KPMG has withheld 248 documents directly related to the PCAOB's investigation of KPMG's services to Fannie Mae.  These documents consist principally of transcripts of testimony by KPMG witnesses and correspondence between KPMG and the PCAOB.[3]  In addition, KPMG recently advised Fannie Mae of its position that the Inspection Report Documents are also protected from disclosure by the same Sarbanes-Oxley provision.

---

[1] Apparently based on its objection to their relevance, KPMG has not included the Inspection Report Documents in a privilege log.

[2] Fannie Mae and KPMG have engaged in multiple meet-and-confer sessions covering numerous disputed discovery issues.  Although Fannie Mae and KPMG resolved many of their disputes, the issues in this memorandum involve threshold questions of law that both parties agree require judicial resolution.  Pursuant to the Scheduling Order entered by the Court on March 4, 2009, March 13 is the deadline for privilege disputes involving threshold questions of law.  Fannie Mae has also raised with KPMG questions about the sufficiency of KPMG's privilege logs on issues unrelated to the PCAOB, and the propriety of some of KPMG's individual privilege log claims; those issues will be addressed in a separate motion.

[3] KPMG designated its PCAOB log, on which these 248 documents are listed, as "confidential," a designation that would require it to be filed under seal.  To avoid burdening the file with sealed documents, and because this motion concerns threshold legal questions that apply to KPMG's PCAOB-related privilege claims as a group, Fannie Mae has not attached KPMG's log.  Fannie Mae will provide the log to the Court if the Court wishes to examine it.

KPMG's assertion of privilege seeks to cloak from discovery what KPMG told one of its regulators, the PCAOB, about the events at issue in this litigation. Such a result is fundamentally at odds with how discovery and depositions have been conducted by all parties to the litigation. As this Court is aware, the accounting issues at Fannie Mae spawned investigations by OFHEO and the SEC, and those investigations included sworn interviews with more than 60 witnesses from Fannie Mae and KPMG. Fannie Mae and KPMG (as well as individual defendants and third parties) have produced transcripts of those interviews. At depositions, all parties have had the benefit of the transcripts to cross-examine deponents and determine if testimony in the litigation is consistent with testimony provided to the regulators. And at trial, the parties will surely do the same.

KPMG nonetheless contends that it alone should be entitled to keep secret what its witnesses told a regulator about the accounting and audits at issue in the litigation. If KPMG's position were correct, its witnesses could contradict their sworn testimony to the PCAOB without fear of adverse consequences in this litigation.

KPMG's position is that, inexplicably, transcripts of testimony before the PCAOB should receive dramatically more protection than transcripts of testimony before the SEC, the very agency that oversees the PCAOB. When the SEC conducts an investigation, third parties typically cannot obtain a transcript of a witness's testimony (or other investigative materials) by serving the SEC with a subpoena. *See* 17 C.F.R. § 240.0-4; *see also* 15 U.S.C. § 78u(a). But when the SEC releases to a witness a transcript of his or her own testimony, that transcript is subject to disclosure through ordinary civil discovery. *See, e.g.*, *LaMorte v. Mansfield*, 438 F.2d 448, 450-52 (2d Cir. 1971); *In re Woolworth Corp. Sec. Class Action Litig.*, 166 F.R.D. 311, 312-13 (S.D.N.Y. 1996); *In re Penn Central Commercial Paper Litig.*, 61 F.R.D. 453, 462 n.20

3

(S.D.N.Y. 1973) (explaining that "regulations that insure privacy in non-public SEC investigations . . . are for the benefit of the Commission and not for witnesses who may appear before it"). There is no principled reason to treat transcripts voluntarily released to a witness by the PCAOB differently from transcripts voluntarily released to a witness by the SEC.

In KPMG's view, Sarbanes-Oxley Section 105(b)(5)(A) creates this anomalous result by protecting documents from disclosure not only when they are in the PCAOB's hands, but even when they are in the hands of the regulated party after the PCAOB has voluntarily released them. Section 105(b)(5)(A) of the Sarbanes-Oxley Act provides that "all documents and information prepared or received by or specifically for the Board, and deliberations of the Board and its employees and agents, in connection with an inspection under section 7214 of this title or with an investigation under this section, shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court or administrative agency, and shall be exempt from disclosure, in the hands of an agency or establishment of the Federal Government, under the Freedom of Information Act . . . or otherwise." 15 U.S.C. § 7215(b)(5)(A). To our knowledge, no court has interpreted the scope of this provision. Yet careful analysis reveals that it cannot be used to avoid disclosure of material in the possession of a regulated entity.

Section 105(b)(5)(A), by its terms, applies to "documents and information prepared or received by or specifically for the Board." *Id.* If the provision truly applied to documents provided to a regulated party, one would expect the statute to refer to material "received from" the PCAOB. The statute contains no such reference.

4

Moreover, PCAOB Rule 5108,[4] which implements that statutory section, provides: "Informal inquiries and formal investigations, and any documents, testimony or other information prepared or received by or specifically for the Board or the staff of the Board in connection with such inquiries and investigations, shall be confidential *in the hands of the Board,* unless and until presented in connection with a public proceeding or released in accordance with Section 105(c) of the Act . . . ." (emphasis added).  When the PCAOB originally proposed that rule, commenters – including PricewaterhouseCoopers ("PwC") and the American Institute of Certified Public Accountants ("AICPA") – expressed concern.  The PCAOB explained that one commenter specifically requested that the rule be amended to "expressly provide for confidentiality of documents in the hands of [audit] firms," and included as an example "originals and copies of transcripts."[5]  After noting that the rule was not intended to change the reach of the statute, the PCAOB pointedly *declined* to modify or even clarify the rule as requested.  The PCAOB refused to adopt the position of PwC and AICPA and instead declined to express any view on whether the statute extended as far as the commenters had argued.[6]  The critical point is that if the PCAOB had been concerned about discovery of documents in the possession of the audit firms, it no doubt would have seized the opportunity to modify the rule exactly as requested – to make explicit that the privilege applied equally to documents in the possession of the firms.  Instead, the PCAOB rejected the requested change.

Equally important, the next subparagraph of the statute, Section 105(b)(5)(B), provides

---

[4] PCAOB Bylaws and Rules, Rule 5108, at 74-75 (Oct. 1, 2008), *available at* http://www.pcaobus.org/Rules/Rules_of_the_Board/All.pdf.

[5] PCAOB Release No. 2003-015, at A2-39 (Sept. 29, 2003), *available at* http://www.pcaobus.org/rules/docket_005/release2003-015.pdf (excerpts attached as Exh. A).

[6] *Id.* at A2-40.

that the PCAOB may make "all information referred to in subparagraph (A)" available to a limited set of third parties – specified government agencies – "[w]ithout the loss of its status as confidential and privileged in the hands of the Board." 15 U.S.C. § 7215(b)(5)(B). That provision demonstrates that Congress did not intend to allow the documents to be "confidential and privileged" no matter who receives them. Instead, Congress specifically enumerated entities to which the PCAOB could provide otherwise privileged information without affecting their privileged status. Its list did *not* include audit firms.

Subparagraph (B) also confirms Fannie Mae's interpretation for another reason. As noted above, subparagraph (B) provides that, even if the PCAOB makes the information in question available to certain government agencies, it remains "confidential and privileged in the hands of the Board." 15 U.S.C. § 7215(b)(5)(B). Thus, the relevant confidentiality and privileged status bestowed by subparagraph (A) does not attach to the documents without regard to who possesses them; rather, as subparagraph (B) makes clear, the information described is "confidential and privileged" only when it is "in the hands of the Board" – not in the hands of an auditor that has been the subject of an investigation or inspection. Thus, documents in KPMG's possession related to either the PCAOB investigation of KPMG or the PCAOB periodic inspections must be produced.[7]

Finally, it is unclear whether KPMG is also claiming a privilege under Section 105(b)(5)(A) for internal KPMG documents that refer or relate to the PCAOB investigations or inspections, but which were not prepared for and given to the PCAOB, such as KPMG internal

---

[7] The Protective Order governing these proceedings can readily address any concerns that KPMG may have about confidentiality. That order has provided ample protection for the myriad SEC and OFHEO transcripts that the parties, including both Fannie Mae and KPMG, have produced. There is no reason to think that the Protective Order would inadequately safeguard any PCAOB-related documents that KPMG now seeks to withhold.

analyses of the PCAOB's findings. There would be no conceivable basis for KPMG to assert that its internal documents concerning the investigations and inspections were "prepared or received by or specifically for the Board."

## II. PCAOB INSPECTION REPORT DOCUMENTS ARE RELEVANT TO THE CLAIMS AND DEFENSES IN THE LITIGATION.

With respect to the Inspection Report Documents (but not the investigation-related documents on the KPMG's privilege log), KPMG has taken the alternative position that these documents need not be produced because they are not relevant to this litigation. This Court should reject that contention because the Inspection Report Documents plainly are "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), and are "reasonably calculated to lead to the discovery of admissible evidence," *id*. As discussed below, the standard of liability in the malpractice action is mere negligence; criticisms by KPMG's regulator of KPMG's audits and controls concerning many of the same accounting and audit standards at issue here are plainly relevant to the question of KPMG's negligence.

Separate from its investigative functions, the PCAOB conducts regular inspections of registered public accounting firms, such as KPMG, "to assess the degree of compliance of each registered public accounting firm and associated persons of that firm with [the Sarbanes-Oxley] Act, the rules of the Board, the rules of the [Securities and Exchange] Commission, or professional standards, in connection with its performance of audits, issuance of audit reports, and related matters involving issuers." 15 U.S.C. § 7214(a). For each such inspection, the PCAOB issues a written report of its findings. *Id.* § 7214(g). To date, the PCAOB has issued no fewer than five reports on its inspections of KPMG.

The inspection reports that the PCAOB has released to the public – and that Fannie Mae has been able to view – are not the complete versions. While noting numerous problems with

7

KPMG's audits, the publicly released versions of the reports exclude some of the findings of the PCAOB.  For example, the public versions of the reports do not include information concerning "criticisms of, or potential defects in, a firm's quality control systems" if those criticisms or defects were "addressed to the Board's satisfaction within 12 months" of the reports' issuance. PCAOB Release No. 104-2004-001, at 5 (Aug. 26, 2004) (attached as Exh. B).

KPMG, by contrast, has received the full versions of the reports.  As the PCAOB has explained, in addition to the public versions of the reports, the PCAOB "also transmit[s] to each firm a copy of the report of that firm's inspection" and "does not view the statutory provisions … as restricting a registered public accounting firm from disclosing any portion of a report." *Id*. at 4 & n.9.

Against that background, Fannie Mae served its First Request for Production of Documents on KPMG on July 2, 2007, which included requests directly related to Fannie Mae's malpractice claims against KPMG.  Several requests called for documents relating to evaluations of the quality of KPMG audits.  Request No. 4, for example, asked for all documents "concerning KPMG's compliance or lack of compliance with GAAS [Generally Accepted Auditing Standards],"[8] Request No. 9 sought all documents concerning "KPMG's compliance with policies, procedures, or guidelines governing KPMG's performance of audits," and Request No. 12 called for all documents "concerning any changes to KPMG's policies, procedures, or

---

[8] GAAS requires adherence by an auditor to numerous rules and standards.  Among other things, Statement of Audit Standards No. 1, AU § 230, requires that an auditor plan and perform its audit with due professional care, including the exercise of professional skepticism.  ("AU" is a citation convention for GAAS that refers to AICPA rules.)  AU § 326 requires an auditor to obtain and to evaluate sufficient competent evidential matter to afford a reasonable basis for its opinion.  AU §§ 310 and 311 require the auditor to adequately plan and supervise the work of its staff and to establish and carry out procedures designed to search for and detect the existence of material misstatements. AU §§ 161 and 210 require staff to be properly trained and require the auditor to adopt practices and procedures to ensure that properly trained persons conduct the audit.

8

guidelines as a result of, arising out of, or in the wake of, PCAOB inspections of KPMG." Plaintiff's First Request for Production of Documents at 8-9 (July 2, 2007) (excerpts attached as Exh. C). These requests clearly encompass copies of Inspection Report Documents. KPMG, however, has refused to produce them on the ground that they do not specifically address the audits of Fannie Mae.

KPMG's view of relevance is impermissibly narrow. The PCAOB Inspection Report Documents are highly "relevant to any party's claim or defense" in this litigation, Fed. R. Civ. P. 26(b)(1), because they are likely to shed light on key issues alleged in Fannie Mae's Amended Complaint in the malpractice action. The PCAOB's publicly released inspection reports for the periods immediately prior to KPMG's termination as Fannie Mae's auditor faulted KPMG for its performance in multiple accounting and audit areas similar or identical to those at issue in the malpractice action.[9] For example, Fannie Mae alleges that KPMG's negligence in auditing Fannie Mae extended to the areas of derivatives accounting (FAS 133), amortization accounting (FAS 91), accounting for investments in securities (FAS 115), and consolidation of special purpose entities (FAS 125 and FAS 140). *See, e.g.,* Amended Complaint ¶¶ 1, 6, 9, 11, 60, 100, 125-129, 135-144, 159-165, 173-186 (Case 1:06-cv-02111-RJL, D.E. 37) ("Am. Compl."). The PCAOB, for its part, identified problems with KPMG's audits relating to those same issues. Am. Compl. ¶¶ 101-102.[10]

---

[9] Fannie Mae limits its request concerning Inspection Reports to the PCAOB Inspection Reports that cover audit years 2004 and earlier, when KPMG served as Fannie Mae's auditor. The PCAOB reports that cover those years were issued in August 2004, September 2005, and January 2007. Fannie Mae also seeks production of documents relating to those reports, such as discussions of the PCAOB's observations and findings.

[10] *See* PCAOB Release No. 104-2004-004 (Aug. 26, 2004), *available at* http://www.pcaobus. org/Inspections/Public_Reports/2003/KPMG.pdf (excerpt of publicly released version of PCAOB report on 2003 inspection of KPMG, attached as Exh. D); PCAOB Release No. 104-

9

Fannie Mae also alleges that KPMG failed to obtain and evaluate sufficient competent evidential matter to support its conclusions, as required by GAAS. Am. Compl. ¶¶ 86, 88, 110, 118. The PCAOB likewise faulted KPMG for failing to evaluate sufficient evidential matter to support its conclusions in multiple audit engagements. Am. Compl. ¶ 102. And Fannie Mae alleges that KPMG failed to adequately evaluate the strength of the company's internal controls, as required by GAAS; the PCAOB similarly concluded that KPMG had insufficiently assessed the strength of internal controls in multiple audit engagements. Am. Compl. ¶¶ 30, 77, 98, 102. The PCAOB's findings are plainly relevant to Fannie Mae's claims that KPMG lacked the skill and care to perform Fannie Mae's audits in accordance with applicable professional standards.

KPMG's defenses also confirm the relevance of the Inspection Report Documents. KPMG contends that Fannie Mae's accounting was erroneous not because of any fault on KPMG's part, but because Fannie Mae purportedly did not provide complete information to KPMG. As difficult as it is to imagine that KPMG lacked knowledge of the relevant facts for all of the thirty-plus accounting issues Fannie Mae had to restate – after all, KPMG was on-site at Fannie Mae virtually every day for thirty years, the relevant accounting policies were found in KPMG's files, and KPMG represented to Fannie Mae's Board of Directors that KPMG had approved Fannie Mae's accounting policies – KPMG nonetheless contends in both the malpractice action and the securities action that it lacked full knowledge of the policies. *See, e.g.*, KPMG LLP's Answer to Fannie Mae's Amended Complaint, Affirmative Defenses ¶¶ 2, 13, 14, and 20 (April 10, 2008) (Case 1:06-cv-02111-RJL, D.E. 39); Defendant KPMG's Amended Cross-Claims Against Fannie Mae ¶¶ 1-3, 17-18, 25, 30-64 (Feb. 25, 2008) (Case

---

2005-088 (Sept. 29, 2005), *available at* http://www.pcaobus.org/Inspections/Public_Reports/ 2005/KPMG_LLP.pdf (excerpt of publicly released version of PCAOB report on 2004 inspection of KPMG, attached as Exh. E).

10

1:04-cv-01639-RJL, D.E. 622).  To rebut KPMG's defense in the malpractice action and cross-claims in the securities action, Fannie Mae should have the opportunity to show that KPMG performed inadequately on other audits on the same issues.

The public versions of the PCAOB reports provide only partial descriptions of the audit problems identified in the PCAOB's inspections of KPMG.  The complete versions, in addition to revealing details of KPMG's compliance with professional standards, bear directly on the issue of KPMG's repetition of past audit failures in its audits of Fannie Mae.

In light of the Protective Order entered by this Court, the fact that Fannie Mae and other parties have produced a wide range of highly sensitive business information under that Protective Order, and the fact that KPMG has injected into both the malpractice case and the securities case the issue whether its approval of erroneous accounting was caused by Fannie Mae's conduct, KPMG should be required to produce the full, non-public versions of the PCAOB inspection reports, as well as documents related to those reports.

## CONCLUSION

For the foregoing reasons, Fannie Mae respectfully requests that this Court compel KPMG to produce the documents listed in the PCAOB Log and to produce the Inspection Report Documents.  Section 105(b)(5)(A) of the Sarbanes-Oxley Act offers no protection for documents in KPMG's possession, and KPMG cannot credibly claim that the Inspection Report Documents are irrelevant to the claims and defenses at issue in this case.

Respectfully submitted,

_____/s/_____

JENNER & BLOCK LLP

Jerome L. Epstein (DC Bar #412824)
Joshua M. Segal (DC Bar #975949)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, D.C. 20001
(202) 639-6000 (voice)
(202) 639-6066 (fax)

Ronald L. Marmer
C. John Koch
JENNER & BLOCK LLP
330 N. Wabash Avenue
Suite 4400
Chicago, IL 60611
(312) 222-9350

Dated: March 13, 2009

## CERTIFICATE OF SERVICE

      I certify that on March 13, 2009, I electronically filed the foregoing Motion and Memorandum Of Points And Authorities In Support Of Fannie Mae's Motion To Compel KPMG's Production Of Documents Related To The Public Company Accounting Oversight Board; and [Proposed] Order with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF.

                                                                      /s/  Jerome L. Epstein
                                                                        Jerome L. Epstein