**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE FANNIE MAE SECURITIES LITIGATION | No. 1:04-cv-01639 (RJL) |
| FRANKLIN MANAGED TRUST *et al.*, <br><br> *Plaintiffs*, <br> v. <br><br> FEDERAL NATIONAL MORTGAGE ASSOCIATION *et al.*, <br><br> *Defendants*. | No. 1:06-cv-00139 (RJL) |

**KPMG LLP'S MOTION TO COMPEL FANNIE MAE
AND PAUL WEISS TO PRODUCE MATERIALS FROM
PAUL WEISS'S SPECIAL INVESTIGATION OF FANNIE MAE**

KPMG LLP ("KPMG") respectfully moves this Court to compel Fannie Mae and Paul, Weiss, Rifkind, Wharton, and Garrison LLP to produce (1) all documents for which Fannie Mae asserts privilege that were disclosed to, or received from, Paul Weiss in connection with Paul Weiss's special investigation of Fannie Mae; (2) all interview memoranda (or, in the absence of memoranda, notes) for which Paul Weiss asserts privilege that were created during the course of its special investigation of Fannie Mae; and (3) all documents for which Paul Weiss asserts privilege that contain substantive communications with Fannie Mae during the course of the same special investigation.

DATED: March 13, 2009

Respectfully submitted,

/s/ F. Joseph Warin
F. Joseph Warin (D.C. Bar No. 235978)
Scott A. Fink (*pro hac vice*)
John Sturc (D.C. Bar No. 914028)
Michael F. Flanagan (D.C. Bar No. 435942)
Andrew S. Tulumello (D.C. Bar No. 468351)
David Debold (D.C. Bar No. 484791)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Defendant KPMG LLP*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE FANNIE MAE SECURITIES LITIGATION | No. 1:04-cv-01639 (RJL) |
| FRANKLIN MANAGED TRUST *et al.*, <br><br> *Plaintiffs*, <br> v. <br><br> FEDERAL NATIONAL MORTGAGE ASSOCIATION *et al.*, <br><br> *Defendants*. | No. 1:06-cv-00139 (RJL) |

## KPMG LLP'S MEMORANDUM IN SUPPORT OF
## MOTION TO COMPEL FANNIE MAE AND PAUL WEISS TO PRODUCE
## <u>MATERIALS FROM PAUL WEISS'S SPECIAL INVESTIGATION OF FANNIE MAE</u>

KPMG LLP respectfully requests that the Court compel Fannie Mae and Paul, Weiss, Rifkind, Wharton, and Garrison LLP to produce (1) all documents for which Fannie Mae asserts privilege that were disclosed to, or received from, Paul Weiss in connection with Paul Weiss's special investigation of Fannie Mae; (2) interview memoranda (or, in the absence of memoranda, notes) for which Paul Weiss asserts privilege that were created during the course of its special investigation of Fannie Mae and which it has selectively declined to produce; and (3) all documents for which Paul Weiss asserts privilege that contain substantive communications with Fannie Mae (including its Board of Directors, Board Committees, or Board members) during the course of the same special investigation.

In 2004 Fannie Mae agreed with the Office of Federal Housing Enterprise Oversight (OFHEO), Fannie Mae's former regulator, to hire independent outside counsel and accountants to review matters related to its accounting. By agreement between OFHEO and Fannie Mae, OFHEO was given broad access to the work performed by the law firm that OFHEO ultimately approved for this independent review—Paul Weiss—and the access did not require the further consent or involvement of Fannie Mae. In addition, Fannie Mae affirmatively chose to make Paul Weiss's investigation transparent to federal regulators, and to that end Paul Weiss regularly briefed federal authorities on the progress of its independent review. At the end of the investigation, Fannie Mae also elected to provide the entirety of Paul Weiss's report (a report on the results of its work) to Congress and the general public. Fannie Mae has also disclosed all but a select few of the interview memoranda or notes created during Paul Weiss's investigation. Not only did Congress make the Paul Weiss investigation and report the subject of public hearings, but federal regulators relied on them in considering whether to bring charges against Fannie Mae, ultimately using the work product of the Paul Weiss investigation to obtain a substantial settlement from Fannie Mae.

Fannie Mae and Paul Weiss have asserted that a large number of documents that Fannie Mae either provided to or received from Paul Weiss as well as those that Paul Weiss created during the course of the special investigation are shielded by the privilege that protects confidential discussions made for the purpose of obtaining legal advice. Fannie Mae and Paul Weiss also seek to withhold some of the same documents (and more) on the ground that they contain attorney work product prepared in anticipation of litigation.

Those assertions of attorney-client privilege and attorney work product protection are baseless. Documents that Fannie Mae shared with its outside, independent investigator lost any

privileged or protected status that they otherwise may have had.  Moreover, by affirmatively

relying on Paul Weiss's report to defend itself in this very litigation, and by selectively releasing

certain of the purportedly privileged and protected documents that it either had made available to

or received from Paul Weiss, Fannie Mae has waived its privilege.  It is axiomatic that a party

may not strategically claim privilege for certain documents from a group where it has declined to

assert privilege for a number of other documents in that same group.

KPMG asks the Court to compel Fannie Mae and Paul Weiss to produce those documents

that Fannie Mae either disclosed to or received from Paul Weiss in connection with the Special

Investigation and for which it continues to assert privilege; those documents that reflect

substantive communications between Paul Weiss and Fannie Mae; and the remaining witness

memoranda (or, in the absence of memoranda, notes) created in connection with Paul Weiss's

special investigation of Fannie Mae for which it continues to assert privilege.[1]

### FACTUAL BACKGROUND

On September 27, 2004, shortly after OFHEO released its Report of Findings-to-Date

Special Examination of Fannie Mae ("Interim Report"), Fannie Mae entered into an agreement

with OFHEO that, among other things, committed Fannie Mae to hire independent counsel and

---

[1]  KPMG has met and conferred with both Fannie Mae and Paul Weiss in an effort to resolve
this dispute.  Both by letter and telephone conference, counsel for Fannie Mae stated that
"there are a number of instances where either Paul Weiss or Fannie Mae asserted work
product over documents that were not cited in the [Rudman] report or shared with the DOJ or
SEC" and that those documents are protected from disclosure.  *See* Letter from Kimberly A.
Newman, counsel, Fannie Mae to Charles Wm. McIntyre, counsel, KPMG, dated Sept. 5,
2008 at 2 (attached as Exhibit 1).

As for the subpoena to Paul Weiss, KPMG agreed to limit the original twelve categories of
subpoenaed documents to interview memoranda or notes for the interviews of approximately
three witnesses and substantive communications between Paul Weiss and Fannie Mae in
connection with Paul Weiss's Special Investigation.

an independent accounting firm to review its accounting policies and procedures.  *See* Sept. 27, 2004 OFHEO Agreement ("OFHEO/Fannie Mae Agreement") at 1, 7 (stating that Fannie Mae's Board of Directors or compliance committee will hire "an independent counsel and an independent accounting firm, subject to OFHEO's approval, reporting directly to the Board or committee, to conduct reviews called for in this agreement"), attached as Exhibit 2.  On October 5, 2004, OFHEO approved Fannie Mae's selection of Paul Weiss to conduct the independent review.  *See* A Report to the Special Review Committee of the Board of Directors of Fannie Mae ("Rudman Report") at 7, attached as Exhibit 3.[2]

As the terms of the OFHEO/Fannie Mae Agreement make clear, Paul Weiss was not counsel for Fannie Mae in the sense commonly understood for purposes of an attorney-client relationship.  For one thing, Paul Weiss was not Fannie Mae's legal adviser.  Paul Weiss was not hired to represent Fannie Mae in proceedings against OFHEO or another third party.  Instead, Paul Weiss was explicitly required to act *independently* of Fannie Mae.  OFHEO was given "access independent of Fannie Mae to the [sic] meet with and review work plans and product of firms including receipt of interim, draft and final reports."  OFHEO/Fannie Mae Agreement at 7.  Fannie Mae expressly agreed to give Paul Weiss and the independent accounting team from Huron Consulting Group "access to all documents irrespective of any claims of privilege [Fannie Mae] may have over the materials."  Rudman Report at 14.  This arrangement was not something Fannie Mae chose to do on the advice of Paul Weiss.  Paul Weiss's special non-legal-advisor role was established before Paul Weiss was even hired.

---

[2] Former Senator Warren B. Rudman, of counsel at Paul Weiss, was responsible for overseeing the Special Investigation.  The resulting report has been referred to at various times as the Rudman Report or the Paul Weiss Report.

During the course of its independent investigation, Paul Weiss also served as a conduit for the transmission of information about Fannie Mae to OFHEO and other government agencies, including the United States Department of Justice and the Securities and Exchange Commission.  *See* Executive Summary of Rudman Report at 3 ("Almost immediately after our retention . . . we met with and regularly briefed the regulatory agencies on the progress of our investigation."), attached as Exhibit 4.  In fact, as then-Fannie Mae Board Chairman Stephen Ashley has explained, "[t]he Board directed that the work of Paul, Weiss be transparent to OFHEO, the SEC, and the Department of Justice through the entire period of review."  *The OFHEO Report of the Special Examination of Fannie Mae: Hearing Before the S. Comm. on Banking, Housing and Urban Affairs*, 109th Cong.  (June 15, 2006) *available at* http://banking.senate.gov/public/_files-ashley.pdf (Statement of Stephen B. Ashley), attached as Exhibit 5.

The culmination of Paul Weiss's investigation was a 616-page report based on facts gleaned from over 700,000 documents produced by Fannie Mae; more than 240 interviews of Fannie Mae employees; interviews of third parties, including Wilmer, Cutler, Pickering, Hale & Dorr LLP attorneys (who were counsel for Fannie Mae); and documents that Paul Weiss received from Wilmer Hale, KPMG and others.  Rudman Report at 13-14.  Senator Rudman testified before Congress describing the Special Investigation's work (*see Review of the Rudman Report on Fannie Mae: Hearing Before the H. Comm. on Fin. Serv.*, 109th Cong. 77 (2006) (statement of Warren B. Rudman**),** attached as Exhibit 6), and Fannie Mae decided to publicize the Rudman Report and its executive summary even though it was not contractually or otherwise obligated to do so.  Moreover, it has produced a large number of the interview memoranda that provided the basis for the Rudman Report, withholding a select few.

In addition to its discovery requests to Fannie Mae, on January 25, 2008, KPMG issued a subpoena requesting twelve categories of documents from Paul Weiss. *See* KPMG's Rule 45 Subpoena Duces Tecum to Paul Weiss (Jan. 25, 2008), attached as Exhibit 7. Through the meet and confer process, KPMG narrowed the requests made of Paul Weiss to: (1) the remaining interview memoranda, (or notes, in the absence of memoranda) from the interviews of witnesses during the course of Paul Weiss's investigation of Fannie Mae[3]; and (2) substantive communications between Paul Weiss and Fannie Mae (including the Board of Directors, committees of the Board and individual Board members) during the relevant time period.

Despite Paul Weiss's independence from Fannie Mae, and despite the absence of a traditional attorney-client relationship between the two for the purpose of providing confidential legal advice, Fannie Mae has asserted that communications between Fannie Mae and Paul Weiss were privileged under the doctrine that protects confidential communications between lawyer and client undertaken for the purpose of seeking legal advice, and it has also asserted that materials it either provided to or received from Paul Weiss are attorney work product prepared by or at the direction of Fannie Mae's counsel in anticipation of litigation. These claims of privilege and protection extend to thousands of documents.[4] Paul Weiss also continues to refuse to provide the documents requested by this subpoena. It has also declined to provide a log.[5]

---

[3] KPMG's request includes the interview memoranda (or, in the absence of memoranda, notes) not yet made available to KPMG. Paul Weiss, through the meet and confer process represents that the only memoranda or notes outstanding are for the interviews of Gregory Baer, Russell Bruemmer, and David Luigs, all at Wilmer Hale.

[4] Because of the nature of the privilege logs it is difficult to identify an exact number of Paul Weiss related documents for which privilege is asserted. The privilege logs Fannie Mae produced during the regulatory phase identify 2,807 documents, all of which were likely

[Footnote continued on next page]

## ARGUMENT

I.      **Paul Weiss and Fannie Mae Did Not Enter Into The Confidential Attorney-Client Relationship Required For The Attorney-Client Communications Privilege or The Attorney Work Product Doctrine To Apply.**

Paul Weiss and Fannie Mae plainly did not enter into the type of confidential attorney-client relationship that triggers either attorney-client privilege or the attorney work product doctrine. As a threshold matter, both the attorney-client communications privilege and the attorney work product doctrine require the parties to intend that their communications and work product will remain confidential. Paul Weiss and Fannie Mae entered into their relationship with the stated purpose of providing information to an adverse party. For that reason, neither the attorney-client communications privilege nor the attorney work product doctrine is applicable.

---

[Footnote continued from previous page]

reviewed by Paul Weiss. (Two of these logs contain a column with Paul Weiss's recommendation regarding whether or not to produce the document.) The privilege logs produced during the litigation also contain references to Paul Weiss, attorneys affiliated with Paul Weiss, and unidentified "outside counsel," who could be from Paul Weiss, but whose identity cannot be determined based on the privilege log representation. Finally, 4,865 entries on the "04 02 08" log contain internal Bates numbers that contain the letters "SRC." Because of Paul Weiss's relationship with the Fannie Mae Board of Directors' Special Review Committee, it is also possible that Paul Weiss reviewed or provided these documents.

[5] Paul Weiss's failure to produce a privilege log setting forth a *prima facie* claim of privilege for each withheld document is a sufficient basis for an order compelling production. Paul Weiss has done nothing more than baldly assert privilege to resist KPMG's subpoena despite having had sufficient opportunity to prepare a log. That response to a subpoena is insufficient. *See Avery Dennison Corp. v. Four Pillars*, 190 F.R.D. 1, 1 (D.D.C. 1999) ("[T]he general objection that . . . a request for production of documents calls for the production of documents which are privileged is condemned as insufficient.") (citing *First American Corp. v. Al-Nahyan*, 2 F. Supp. 2d 58, 63 n.5 (D.D.C. 1998)). Rather, a privilege log has become the universally accepted means of asserting privilege in discovery in federal courts. *See Avery*, 190 F.R.D. at 2; *see also* Rule 26(b)(5). Under this Court's precedent, the Court should deem the privilege waived for the un-logged documents and order their production. *See id.* at 2 (citing *American Corp. v. Al-Nahyan*, 2 F. Supp. 2d at 63 n.5 and *Bregman v. District of Columbia*, 182 F.R.D. 352, 363 (D.D.C. 1998)).

The attorney-client privilege is designed to enable counsel to provide candid legal advice to the client by preserving the confidentiality of communications made for the purpose of seeking and giving that advice.  Such protections are therefore reserved for situations where, at a minimum, a confidential relationship with counsel for the purpose of providing legal advice is established and maintained.  *See United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (noting that the attorney-client privilege "exists to protect confidential communications, to assure the client that any statement he makes in seeking *legal advice* will be kept strictly confidential" (emphasis added)).  Any disclosure outside of the confidential attorney-client relationship destroys the privilege.  *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982).  Similarly, the attorney work product doctrine is designed to promote interests central to an adversary system and is inapplicable where the work is not done in anticipation of litigation.  *See In re: Subpoena Duces Tecum*, 738 F.2d 1367, 1371 (D.C. Cir. 1984).

Fannie Mae engaged Paul Weiss for a reason foreign to the attorney-client privilege—to conduct an independent, third-party investigation of the issues raised by OFHEO.  Paul Weiss was *not* hired to provide confidential legal advice to Fannie Mae in its dealings with outside parties such as OFHEO.  To the contrary, Fannie Mae agreed to seek its regulator's approval of its choice for an independent investigator, and Fannie Mae explicitly waived the right to keep confidential any information it exchanged with that investigator.  OFHEO/Fannie Mae agreement at 7 (providing that OFHEO shall have access to the independent law firm and that firm's work product, independent of Fannie Mae).[6]  OFHEO's unrestricted access to Paul Weiss

---

[6] In this regard, Paul Weiss is no different from independent counsel hired under a deferred prosecution agreement to perform an internal investigation, where attorney-client privilege and work-product protection are unavailable because the understanding from the outset is

[Footnote continued on next page]

in the latter's role as special investigator of Fannie Mae forecloses any possible claim that communications between Paul Weiss and Fannie Mae—much less pre-existing documents that Fannie Mae disclosed to Paul Weiss—remain confidential.

Fannie Mae therefore may not withhold production of documents even if they contained legal advice that remained confidential before Fannie Mae produced them to Paul Weiss. For example, Fannie Mae asserts such a claim for documents prepared by its Office of General Counsel. Because Paul Weiss was hired as an independent third-party investigator with a mandate to be transparent with the government, Fannie Mae waived any such privilege by voluntarily exchanging those documents with a party outside of the confidential attorney-client relationship. *In re Sealed Case*, 676 F.2d at 818. For the same reason, Paul Weiss may not withhold, as privileged, substantive communications it had with Fannie Mae during the course of its special investigation. *See id.*

Similarly, Fannie Mae may not assert attorney work product protection for any documents it provided to, or received from, Paul Weiss. The cornerstone of the attorney work product doctrine is the confidentiality of an attorney-client relationship entered into for the purpose of providing legal advice and assisting in the defense against third parties in anticipated litigation. *See Hickman v. Taylor*, 329 U.S. 495 (1947). Paul Weiss's role was not to prepare Fannie Mae for anticipated litigation. And a party may not assert attorney work product

---

[Footnote continued from previous page]
  that anything that comes into the hands of independent counsel is subject to later production and review by the government. *See, e.g., United States v. Computer Assocs. Int'l, Inc.*, Deferred Prosecution Agreement, Crim. No. 04-837 (E.D.N.Y Sept. 22, 2004) (*available at* http://www.usdoj.gov/dag/cftf/chargingdocs/compassocagreement.pdf), attached as Exhibit 8; *see also* Statement of Warren B. Rudman 8 (stating that, while it is unusual for an attorney to speak of a professional representation before a congressional committee, "[i]n this instance, Fannie Mae's Board of Directors, through its Special Review Committee, instructed us at the outset of our engagement to be open and transparent to governmental authorities.").

protection in civil litigation if it discloses the material to anyone lacking "common interests in developing legal theories and analyses of documents." *Id.* at 817 (quoting *United States v. AT&T*, 642 F.2d 1285, 1300 (D.C. Cir. 1980)). The critical inquiry is whether the disclosure "is inconsistent with the maintenance of secrecy from the disclosing party's adversary." *AT&T*, 642 F.2d at 1299. Because OFHEO had unrestricted access to Paul Weiss's internal review, and because Fannie Mae separately instructed Paul Weiss to communicate the results of its independent investigation with multiple government agencies, its actions cannot possibly be interpreted as consistent with the maintenance of secrecy. Fannie Mae knew—at the time it instructed Paul Weiss to keep government regulators apprised of its investigation—that government regulators were considering the possibility of taking action against Fannie Mae. Fannie Mae knowingly allowed, and in fact encouraged, its adversaries to gain access to materials that it now claims to be confidential attorney work product, thereby eviscerating any attorney work product protection over documents it made available to, or received from, Paul Weiss.

Simply put, Paul Weiss also may not assert attorney work product protection for any documents it created during the course of the special investigation. The attorney work product doctrine is designed "to balance the needs of the adversary system[.]" *See In re: Subpoena Duces Tecum*, 738 F.2d at 1371. Paul Weiss was not retained to prepare for litigation, but rather to perform, and keep government regulators apprised of, its investigation.

Fannie Mae, during the meet and confer process, has claimed that it may withhold such documents from KPMG on the basis that they are protected by the attorney work product doctrine, as purportedly set forth in its Agreement with OFHEO. That assertion is incorrect as a matter of both fact and law. The Agreement states, in relevant part: "Work product of [the as-

yet unselected legal and accounting firms] shall be preserved." *See* OFHEO Agreement at 7.
The plain language imposed an *obligation* on Fannie Mae and the independent legal and
accounting firms; it did not accord them a *privilege*. They were required to keep copies of (*i.e.*,
preserve) those firms' work product, making it available for OFHEO to inspect under an
agreement that gave OFHEO unrestricted access to those outside firms' independent review of
Fannie Mae. The Agreement does not purport to imbue the documents created by the
independent law and accounting firms with attorney work product protection.

Nor could the Agreement have done so if that *was* the intent. Attorney work product
protection is not created by agreement between third parties. It exists only if core requirements
are met. The materials must be prepared by an attorney (or prepared by the client at the
attorney's direction); must be created in anticipation of litigation; and will warrant protection by
virtue of the fact that they reveal the lawyer's mental impressions regarding litigation strategy.
*See, e.g., Hickman v. Taylor*, 329 U.S. 495 (1947). Where either the attorney-client relationship
or the cloak of confidentiality are missing, the doctrine does not apply. As discussed above,
Fannie Mae did not have the sort of attorney-client relationship with Paul Weiss that would give
rise to the protections of the attorney work product doctrine.[7]

---

[7] Even if the attorney work product doctrine *could* apply to the type of materials in question,
any protection was waived. At the time the Agreement was drafted, the party with the
greatest adversity to Fannie Mae was OFHEO, the precise party to whom Fannie Mae *agreed*
to provide its documents. Hence, the cited language from the Agreement was intended to
increase, not decrease, disclosure. But apart from that purpose, an agreement to disclose
documents to an adverse party deprives those documents of whatever protection the attorney
work product doctrine might have otherwise provided. No matter how an agreement is
worded, it cannot work to deprive other future litigants of the opportunity to view relevant
documents over which the claim of protection has been waived. *See* 24 Charles Alan Wright
& Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5507.

II.    **Even If Fannie Mae and Paul Weiss Had Begun Their Relationship With A Legitimate Expectation of Confidentiality, Selective Disclosure Of The Rudman Report And Certain Underlying Documents Waived Any Protection.**

Even if Fannie Mae *had* entered into a confidential attorney-client relationship with Paul Weiss, the privilege or attorney work product protection that could have arguably applied to documents at issue would have been waived when Fannie Mae published the report that resulted from Paul Weiss's investigation.  Fannie Mae also waived any possible privilege or protections by using the Rudman Report to defend itself against allegations of improper conduct.  Put simply, because Fannie Mae's Board engaged counsel to conduct an internal investigation, Fannie Mae's later decision to publish the resulting report and its reliance on that report in litigation waived any claim of privilege as to either the report or any underlying data.  Courts time and again have applied the rule of waiver to the type of situation presented here—an independent investigation followed by publication of the investigation's results.  *See, e.g., In re: Sealed Case*, 676 F.2d at 818 (Disclosure outside of the confidential attorney-client relationship destroys the privilege.); *Zitin v. Turley*, No. Civ. 89-2061-PHX-CAM, 1991 WL 283814, at *6 (D. Ariz. June 20, 1991) (It is "unequitable for the corporation to establish a committee to issue a report . . . [and] fail to provide to plaintiffs/shareholders most of the underlying information."); *see also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433, 436 (D. Md. 2005) (finding that protections are waived when information gleaned in witness interviews is used to support public filings); *In re OM Group Sec. Litig.*, 226 F.R.D. 579, 591-93 (N.D. Ohio 2005) (finding that a presentation conveying findings of an internal investigation waives privilege); *In re Willkie Farr & Gallagher*, No. M8-85 (JSM), 1997 U.S. Dist. LEXIS 2927, at *7-10 (S.D.N.Y. Mar. 14, 1997) (finding that disclosure to outside auditor waived privilege over employee interviews); *In re Leslie Fay Cos. Sec. Litig.*, 161 F.R.D. 274, 282-84 (S.D.N.Y. 1995)

(finding that production of the audit committee's report to the SEC waived the attorney-client privilege).

Immediately after Fannie Mae published the Rudman Report on its external website, it began making public use of the report's conclusions. For example, Fannie Mae held an investor and analyst conference call the same day. *See* Tr. of Fannie Mae Investor/Analyst Conference Call, at 2 (Feb. 23, 2006) (calling the report "a detailed presentation of what went wrong, why it went wrong and what needs to be fixed," and offering assurances that "the Board and the Company accept this report completely, embraces [sic] the report, its findings and its recommendations"), attached as Exhibit 9; *see also* Form 8-K, Ex. 99.1 (Mar. 13, 2006) (reciting the report's principal conclusions and providing assurances that Fannie Mae had already "undertaken a number of significant changes" to address the issues raised by Paul Weiss's investigation and by OFHEO), attached as Exhibit 10. Yet Fannie Mae refuses to allow KPMG access to the documents it exchanged with Paul Weiss.

In addition to the Rudman Report that Fannie Mae made public, one of the documents produced in this very litigation covers the exact same subject matter as items being withheld by Paul Weiss. In December 2005, Wilmer Hale sent a 17-page letter to Paul Weiss containing numerous references to statements made by two of its lawyers—Gregory Baer and Russell Bruemmer—when those lawyers were interviewed by Paul Weiss. *See* Letter from William R. Lucas and Charles E. Davidow, Counsel, Fannie Mae to Hon. Warren B. Rudman (Dec. 23, 2005). This letter bears the following Bates stamps: FM SRC 01397348-964 and PW 13846-862. Yet Paul Weiss refuses to make the memoranda or notes of the interviews of those lawyers available. KPMG is entitled to access to such memoranda or notes in order to assess the accuracy and completeness of the summary provided in the produced letter. In addition to the

selective withholding of certain interview memoranda and notes, Paul Weiss refuses to produce substantive communications it had with Fannie Mae during the Special Investigation, even though those communications cover the same subject matter as the publicized Rudman Report.

In using the report as a sword to accuse KPMG of breaching its duties as auditor, Fannie Mae has forfeited the opportunity to shield related documents through invocation of attorney-client privilege or attorney work product protection. *See In re: Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y 1996) (finding waiver of a privilege by a party's "repeated injection of the substance of the report into this and other litigations and into related litigative contexts"); *see also Royal Ahold*, 230 F.R.D. at 436 (holding that public disclosure in SEC filings of results of counsel's internal investigation waives any privilege claims for material underlying conclusions from the investigation).[8]

The case law invalidating this litigation tactic is well established. *See, e.g., In re Sealed Case*, 676 F.2d at 818 (holding that an attempt to gain a tactical advantage through selective disclosure results in waiver of *all* documents relating to the same matter because "the privilege of secret consultation is intended only as an incidental means of defense and not as an independent means of attack, and to use it in the latter character is to abandon it in the former") (internal citations omitted); *Permian Corp. v. United States*, 665 F.2d 1214, 1219 (D.C. Cir. 1981) ("Any voluntary disclosure by the holder of such a privilege is inconsistent with the

---

[8] Fannie Mae previously elected to make available to other parties in this case various interview memoranda, work plans, and correspondence created or received by Paul Weiss over which Fannie Mae had previously asserted privilege claims. *See* Letter from J. Kilduff, Counsel, Fannie Mae, to Counsel for Lead Plaintiffs and Counsel for J. Timothy Howard (Dec. 4, 2006), attached as Exhibit 11. A party may not, however, waive the privilege "in circumstances where disclosure might be beneficial while maintaining it in other circumstances where non disclosure would be beneficial." *In re: Subpoenas Duces Tecum*, 738 F.2d at 1370.

confidential relationship and thus waives the privilege.") (internal citations omitted); *Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182, 1186 (E.D. Cal 2001) (holding that a party "may not selectively disclose privileged communications that it considers helpful while claiming privilege on damaging communications relating to the same subject") (internal citations omitted); *Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 257-58 (D.D.C. 2004) (holding same for attorney work product protection). By electing to make selective public disclosure of certain otherwise privileged or protected documents or communications related to Paul Weiss's investigation of Fannie Mae, any previously held right to withhold disclosure of any *other* documents or communications related to the investigation has been waived.

## **CONCLUSION**

For the reasons stated above, KPMG respectfully seeks an order compelling Fannie Mae and Paul Weiss to produce all documents Fannie Mae provided to, or received from, Paul Weiss in connection with Paul Weiss's Special Investigation of Fannie Mae; all substantive communications between Paul Weiss and Fannie Mae during the course of the investigation; and the remaining, selectively withheld interview memoranda (or, in the absence of memoranda, notes) memorializing the Paul Weiss interviews conducted during its investigation.


DATED: March 13, 2009

Respectfully submitted,

/s/ F. Joseph Warin
F. Joseph Warin (D.C. Bar No. 235978)
Scott A. Fink (*pro hac vice*)
John Sturc (D.C. Bar No. 914028)
Michael F. Flanagan (D.C. Bar No. 435942)
Andrew S. Tulumello (D.C. Bar No. 468351)
David Debold (D.C. Bar No. 484791)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Defendant KPMG LLP*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that I caused copies of the foregoing to be transmitted via electronic mail to the following counsel:

James R. Cummins
Melanie S. Corwin
Jean Marie Geoppinger
Waite, Schneider, Bayless & Chesley Co.,
L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202
*Counsel for Lead Plaintiffs*

Frank J. Johnson
Johnson Bottini, LLP
655 W. Broadway, Suite 1400
San Diego, CA 92101
*Counsel for Plaintiff Sassan Shahrokhinia*

Jeffrey W. Kilduff
Michael J. Walsh, Jr.
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
*Counsel for Defendants Fannie Mae,*
*Thomas P. Gerrity, Taylor C. Segue, III,*
*William R. Harvey, Joe Pickett, Kenneth M.*
*Duberstein, Manuel Justiz, H. Patrick*
*Swygert, and Leslie Rahl*

Kevin M. Downey
Alex G. Romain
Joseph M. Terry, Jr.
John E. Clabby
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5091
*Counsel for Defendant Franklin D. Raines*

William H. Jeffress
Julia E. Guttman
Nicholas A. Brady
Baker Botts LLP
The Warner

Daniel S. Sommers
Cohen, Milstein, Hausfeld & Toll P.L.L.C
West Tower, Suite 500
1100 New York Ave., N.W.
Washington, D.C. 20005
*Counsel for Plaintiffs Vincent Vinci; State*
*Teachers Retirement System of Ohio; Anne*
*E. Flynn; Robert L. Garber*

Robert W. Liles
Liles Parker, PLLC
4400 MacArthur Blvd., N.W.
Suite 203
Washington, DC 20007
*Counsel for Plaintiff Sassan Shahrokhinia*

Steven M. Salky
Eric R. Delinsky
Ellen D. Marcus
Caroline E. Reid
Zuckerman Spaeder LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036-5807
*Counsel for Defendant Timothy J. Howard*

David S. Krakoff
Christopher F. Regan
Adam B. Miller
Heather H. Martin
Mayer Brown LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
*Counsel for Defendant Leanne G. Spencer*

Rhonda D. Orin
Anderson Kill & Olick, P.C.
2100 M Street, N.W. Suite 650
Washington, D.C. 20037
*Counsel for Defendant Leslie Rahl*

1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
*Counsel for Defendant Jamie S. Gorelick*

John H. Doyle, III
Reed Smith LLP
599 Lexington Ave.
New York, NY 10022-7650
*Counsel for Defendant Leslie Rahl*

Shannon Ratliff
Ratliff Law Firm, PLLC
600 Congress Avenue
Suite 3100
Austin, TX 78701
*Counsel for Manuel Justiz*

Cristen Sikes Rose
Edward S. Scheideman III
John J. Clarke, Jr.
DLA Piper US LLP
500 Eighth Street, N.W.
Washington, D.C. 20004
*Counsel for Defendants Stephen B. Ashley,*
*Donald B. Marron, and Ann Korologos*

Seth Aronson
O'Melveny & Myers LLP
400 South Hope Street, 15th Floor
Los Angeles, Ca. 90071
*Counsel for Defendant Fannie Mae,*
*Thomas P. Gerrity, Taylor C. Segue, III,*
*William R. Harvey, Joe Pickett, Kenneth M.*
*Duberstein, Manuel Justiz, H. Patrick*
*Swygert, and Leslie Rahl*

William K. Dodds
Neil A. Steiner
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112
*Counsel for Defendant Thomas P. Gerrity*

James D. Wareham
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W., Suite 12
Washington, D.C. 20005
*Counsel for Defendant Daniel H. Mudd*

Barbara Van Gelder
Morgan, Lewis & Bockius LLP
111 Pennsylvania Ave., NW
Washington, DC 20004
*Counsel for Defendants Anne M. Mulcahy*
*and Frederic V. Malek*

David I. Ackerman
James Hamilton
Bingham McCutchen LLP
2020 K Street, N.W.
Washington, D.C. 20006
*Counsel for Defendant Joe Pickett*

Ian H. Gershengorn
Jerome L. Epstein
Jenner & Block
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412

*Counsel for Fannie Mae*

J. C. O'Malley
Michael J. Avenatti
Eagan O'Malley & Avenatti, LLP
450 Newport Center Drive, 2nd Floor
Newport Beach, CA 92660
*Counsel for Fannie Mae*

Alex Young K. Oh
Paul, Weiss, Rifkind, Wharton & Garrison
LLP
2001 K Street, N.W.
Washington, D.C. 20006

/s/ David Debold_____