UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | MDL No. 1668 (RJL) |

| | |
|---|---|
| In re Fannie Mae Securities Litigation | Consolidated Civil Action No. 1:04-cv-01639 (RJL) |

## PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP'S MEMORANDUM IN OPPOSITION TO KPMG LLP'S MOTION TO COMPEL MATERIALS FROM PAUL, WEISS'S SPECIAL INVESTIGATION OF FANNIE MAE

Non-party Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss")

respectfully submits this memorandum in opposition to KPMG LLP's ("KPMG's")

Motion to Compel Fannie Mae and Paul, Weiss to Produce Materials from Paul Weiss's

Special Investigation of Fannie Mae (the "Motion") (Docket No. 708).

### PRELIMINARY STATEMENT

In October 2004, the Special Review Committee of the Board of Directors

of Fannie Mae ("SRC") retained Paul, Weiss to conduct an independent investigation into

certain allegations of accounting improprieties that were raised in an interim report issued

by the Office of Federal Housing Enterprise Oversight ("OFHEO") in September 2004

(the "OFHEO Interim Report"). Paul, Weiss served as investigative counsel to the SRC

throughout the entirety of its nearly 18-month-long engagement, and maintained a

confidential, privileged, attorney-client relationship with the SRC. During the course of

the investigation, Paul, Weiss collected millions of pages of documents, and generated

thousands of internal work product documents.  As the investigation proceeded, the SRC authorized Paul, Weiss to release certain limited work product materials – memoranda of interviews conducted by Paul, Weiss, among others – to certain regulators that had begun investigations of Fannie Mae following the release of the OFHEO Interim Report.  At the conclusion of its investigation, Paul, Weiss prepared a final written report with accompanying exhibits.  The SRC authorized the release of Paul, Weiss's final report and accompanying exhibits to the general public.  Finally, the SRC authorized Paul, Weiss to release to the parties in this litigation the interview memoranda previously provided to the regulators.

   Apart from the materials described above, the SRC never authorized Paul, Weiss to release to any third party – including regulators – any documents containing attorney-client privileged communications or any work product concerning the investigation.   Nor were any regulators (or third parties) provided unrestricted access to Paul, Weiss's work product or to its confidential communications with its client.

   KPMG now seeks, for the first time, Paul, Weiss's confidential, privileged communications with the SRC, and confidential notes and memoranda that were generated in anticipation of litigation and have never been disclosed previously to any third parties.  KPMG's arguments in support of its Motion should be rejected for the following reasons:

   *First*, contrary to KPMG's suggestion, the SRC's engagement of Paul, Weiss is entitled to the protections of the attorney-client privilege and the work product doctrine.  The SRC retained Paul, Weiss as investigative counsel to obtain legal advice and to perform a legal service, and maintained a confidential, privileged relationship with

Paul,Weiss.  While Paul, Weiss was "independent" in the sense that the firm had not worked previously for Fannie Mae or its board, independence in this regard does not mean that Paul, Weiss did not or could not act as legal counsel to the SRC.  Indeed, the SRC sought Paul, Weiss's legal advice on many issues, including, for example, how best to conduct a credible internal investigation that would withstand the scrutiny of the regulators.  The SRC also never authorized Paul, Weiss to disclose, and Paul, Weiss never disclosed, any confidential attorney-client communications to third parties.  Moreover, the work performed by Paul, Weiss beginning in October 2004 was conducted with an eye toward litigation, including regulatory investigations that already had commenced prior to Paul, Weiss's engagement.

        *Second*, Fannie Mae's release of Paul, Weiss's final report and accompanying exhibits did not result in a subject matter waiver of all attorney-client privileged communications between the SRC and Paul, Weiss, or of Paul, Weiss work product previously undisclosed.  The report did not disclose any confidential attorney-client communications between the SRC and Paul, Weiss, and therefore cannot serve as a basis for subject matter waiver.  Moreover, KPMG cannot demonstrate any need, much less substantial or extraordinary need, for Paul, Weiss's work product that has not been disclosed previously to any party in this litigation.

## BACKGROUND

### A.    Paul, Weiss's Investigation

On September 17, 2004, in the midst of a Special Examination that began in July 2003, OFHEO issued its Interim Report.[1]  Following the release of the Interim Report, on September 27, 2004, OFHEO and Fannie Mae's Board of Directors entered into an agreement (the "September 2004 Agreement") that required, among other things, the Board to retain independent counsel and an accounting firm to conduct a "comprehensive review of the company's accounting policies and practices to ensure they accurately reflect the Board's objectives in complying with law and regulation and in overseeing the operations of Fannie Mae."[2]

While the engagement of independent counsel and accountants was "subject to OFHEO's approval," the September 2004 Agreement expressly stated that the firms would "report[] directly to the Board or [a] committee."[3]  The Agreement also stated that "OFHEO shall have access independent of Fannie Mae" to the work plans and product of the firms, "including receipt of interim, draft and final reports," and that the "[w]ork product of such firms shall be preserved."[4]

Pursuant to the September 2004 Agreement, and after consultation with OFHEO, the SRC engaged Paul, Weiss as outside investigative counsel effective

---

[1]    *See* OFHEO, *Report of Findings to Date of the Special Examination of Fannie Mae* (Sept. 17, 2004) ("*Interim Report*"), *available at* http://www.ofheo.gov/media/ pdf/FNMfindingstodate17sept04.pdf.

[2]    OFHEO and Fannie Mae, *Agreement*, at 7 (Sept. 27, 2004) (the "September 2004 Agreement"), *available at* http://www.ofheo.gov/media/pdf/fnmagreement92704.pdf.

[3]    *Id.*

[4]    *Id.*

October 1, 2004.[5]  The retainer agreement between the SRC and Paul, Weiss expressly
stated that the firm was being engaged "in connection with matters concerning the
[OFHEO Interim Report] and a related inquiry by the [United States Securities and
Exchange Commission ("SEC")]," and that Paul, Weiss was to "provide services of a
strictly legal nature."[6]  Finally, the retainer agreement stated that "all of [Paul, Weiss's]
communications with Fannie Mae, with the Board of Directors, and with the [SRC] are
intended to be privileged and confidential to the maximum extent permitted by law," and
that Paul, Weiss "will do everything in [its] power to preserve these privileges and
confidences."[7]

   From the outset, Paul, Weiss was instructed by the SRC to cooperate fully
with OFHEO, Fannie Mae's primary regulator, as well as with the SEC and the U.S.
Attorney's Office for the District of Columbia ("DOJ"), which had begun an
investigation of Fannie Mae following the release of the OFHEO Interim Report.[8]  For
this purpose, over the course of its investigation, Paul, Weiss provided to the regulators,
among others:  (1) selected documents that it discovered in the course of the investigation
that were relevant to the issues under investigation; and (2) selected memoranda that

---

[5] *See* Ltr. from Hon. Warren B. Rudman to Hon. Ann McLaughlin Korologos dated
October 1, 2004 (the "Engagement Letter"), attached as Exhibit A to the Declaration
of Alex Young K. Oh ("Oh Decl.").

[6] *Id*. at 1, 4.

[7] *Id*. at 2.

[8] The Public Company Accounting Oversight Board ("PCAOB") also initiated an
investigation of KPMG, Fannie Mae's outside auditor during the relevant time period.

summarized witness interviews.[9]  To date, Paul, Weiss has produced to all parties in this

litigation – including KPMG – all of the documents and interview memoranda that have

been provided to the regulators.[10]

**B.    KPMG's Subpoena**

KPMG served its subpoena *duces tecum* on Paul, Weiss on December 26,

2007, after Paul, Weiss already resolved the subpoenas served by other parties and

produced most of the materials described above.  KPMG originally sought numerous

additional categories of documents from Paul, Weiss, but, following various meet and

confer discussions, the categories have been narrowed to the following:  (1) all

"substantive" communications with the SRC, and (2) any interview memoranda or notes

that were prepared by Paul, Weiss, but have not been disclosed previously.[11]

---

[9]    The interviews conducted by Paul, Weiss were not transcribed or recorded.  Paul, Weiss attorneys took notes at the interviews and incorporated the notes into interview memoranda.

[10]   Beginning in mid-2006, Paul, Weiss received four subpoenas *duces tecum* from parties in this litigation to produce various categories of documents collected or generated in the course of its investigation.  Without waiver of objections and in satisfaction of the various subpoenas, Paul, Weiss has produced approximately 31,000 pages of documents, including:  all interview memoranda that were produced to the regulators; all communications with Deloitte & Touche; documents concerning meetings with certain outside consultants of Fannie Mae, including Hildebrandt International, Inc., Mercer Oliver Wyman, Semler Brossy Consulting Group, LLC and Roger Brossy; all documents provided to Paul, Weiss by certain anonymous sources; and volumes of communications with various regulators.  *See* Ltr. from J. Kilduff to S. Salky, J. Cummins, and R. Parker, dated Dec. 4, 2006, attached as Exhibit C to Oh Decl.

[11]   In its Motion, KPMG seeks a third category of documents from Fannie Mae – all documents that Fannie Mae provided to, or received from, Paul, Weiss, but are being withheld under a claim of privilege (the "MOU" documents) – on the theory that by disclosing such documents to Paul, Weiss, Fannie Mae waived any underlying privilege.  *See* Motion at 3.  Paul, Weiss submits that KPMG's argument is unsupported by the facts or the law; however, for the sake of avoiding duplication,

With respect to the substantive communications between Paul, Weiss and its client, KPMG's counsel initially requested only that Paul, Weiss prepare a log of all such communications, in recognition of the fact that such materials are privileged. In response, Paul, Weiss explained that searching for, and creating a log of, all such privileged communications for a matter that is now more than three years old, would be extremely burdensome and costly.[12] In a meet-and-confer discussion on February 24, 2009, Paul, Weiss, again in an effort to find a middle ground, requested KPMG to explain its reasons for asking Paul, Weiss to create a burdensome privilege log, so that Paul, Weiss could determine whether there is any additional information that could be provided short of a log to satisfy KPMG.[13] KPMG's counsel replied that he would get back to Paul, Weiss; instead of getting back, however, KPMG filed this Motion.

In addition to the privileged communications, KPMG seeks the handwritten notes of three interviews from Paul, Weiss that were never produced to any third parties. During the course of its investigation, Paul, Weiss interviewed approximately 151 individuals, many of them several times.[14] Virtually all of the interviews conducted by Paul, Weiss were memorialized in interview memoranda that were produced to the regulators and to the parties in this litigation. For three interviews –

---

Paul, Weiss will not address this argument separately in this memorandum, and joins in the arguments made by Fannie Mae in its separate opposition to the Motion. To the extent that this third category of documents includes Paul, Weiss's communications with the SRC or Paul, Weiss's work product, they would be covered by the arguments contained in this memorandum.

[12] *See* Ltr. from A. Oh to M. Flanagan dated Feb. 5, 2009, attached as Exhibit D to Oh Decl.

[13] Oh Decl. at ¶ 12.

[14] *Id.* at ¶ 5.

the interviews of Greg Baer, Russell Bruemmer and David Luigs (the "WilmerHale

Interviews") – Paul, Weiss did not prepare interview memoranda.  The reason was that

the WilmerHale attorneys served as counsel to Fannie Mae during the relevant time

period, and Fannie Mae did not consent to waiver of privilege over the substance covered

during the WilmerHale Interviews.[15]  Accordingly, Paul, Weiss did not prepare final

interview memoranda of the WilmerHale Interviews, never disclosed the substance or

notes of the interviews to any third parties, and did not cite to those interviews in its

report.[16]

## ARGUMENT

I.     **THE SRC RETAINED PAUL, WEISS AS OUTSIDE INVESTIGATIVE
       COUNSEL, AND THEREFORE THE RELATIONSHIP AND THE
       MATERIALS GENERATED IN THE COURSE OF THE ENGAGEMENT
       ARE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE AND
       THE WORK PRODUCT DOCTRINE**

KPMG claims that Paul, Weiss and the SRC "did not enter into the type of

confidential attorney-client relationship that triggers either attorney-client privilege or the

attorney work product doctrine," because the SRC purportedly hired Paul, Weiss as a

"third party investigator" to conduct an adversarial investigation, and provided Fannie

Mae's regulator "unrestricted access" to Paul, Weiss's internal review.[17]  KPMG's

argument is without merit.

---

[15]   *Id*. at ¶ 6.

[16]   Based on a review of its files, Paul, Weiss is unable to locate interview memoranda
       for the following additional individuals:  Mehmood Nathani, Jose Villareal, and
       Chandler Williams.

[17]   Motion at 9, 11-12.

**A.     An Attorney-Client Relationship Existed Between the SRC and Paul, Weiss**

The "attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey*, 148 F.3d 1100, 1103 (D.C. Cir. 1998). "The privilege also protects communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'" *Tax Analysts* v. *I.R.S.*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)). "The purpose of the privilege 'is to encourage full and frank communication between attorneys and their clients . . . .'" *United States ex rel. Fago* v. *M&T Mortgage Corp.*, 238 F.R.D. 3, 11 (D.D.C. 2006) (*quoting Upjohn Co.* v. *United States*, 449 U.S. 383, 389 (1981)). Paul, Weiss's relationship with the SRC amply satisfies the above requirements for attorney-client privilege.

Paul, Weiss was retained by the SRC as its outside investigative counsel to provide legal advice and services. As specified in the retainer agreement between Paul, Weiss and the SRC, the SRC retained Paul, Weiss "in connection with matters concerning the September 2004 [OFHEO report] and a related inquiry by the [SEC],"[18] instructed Paul, Weiss to "preserve [all] privileges and confidences" in connection with its communications with the SRC,[19] and to "provide services of a *strictly legal nature*."[20] Among other things, Paul, Weiss advised its client on how to conduct a credible investigation that would withstand the scrutiny of regulators. And Paul, Weiss treated the

---

[18]    Engagement Ltr. at 1.

[19]    *Id*. at 2.

[20]    *Id*. at 4 (emphasis added).

SRC in the same manner it would treat any other client, and took all measures to safeguard the applicable privileges pertaining to the engagement.

The September 2004 Agreement, on which KPMG relies, does not prove otherwise. The September 2004 Agreement, while directing the Board to "hire . . . an independent counsel," specifically stated that such counsel would report "directly to the Board or [a] committee."[21] The Agreement neither dictated the terms of the relationship between Paul, Weiss and the SRC, nor precluded Paul, Weiss from providing legal advice to the SRC. Paul, Weiss never had worked previously for Fannie Mae or its board, and nothing more was required by OFHEO to satisfy the "independence" requirement.

Courts routinely find that relationships similar to that between the SRC and Paul, Weiss are protected by the attorney-client privilege and the work product doctrine. *See, e.g., In re Cardinal Health, Inc. Sec. Litig.*, No. C2 04 575 ALM, 2007 WL 495150 (S.D.N.Y. Jan. 26, 2007) (granting outside counsel's motion to quash a subpoena on privilege and/or work product grounds for documents relating to counsel's internal investigation on behalf of a company's Audit Committee); *Lawrence E. Jaffe Pension Plan* v. *Household Int'l, Inc.*, 244 F.R.D. 412, 426 (N.D. Ill. 2006) (acknowledging privileged attorney-client relationship where company's Audit Committee hired outside counsel to provide legal advice in response to formal SEC inquiry); *see also In re LTV Sec. Litig.*, 89 F.R.D 595, 618-21 (N.D. Tex. 1981) (recognizing a hybrid privilege protecting attorney-client and work product information where an internal investigation is conducted by a Special Officer on behalf of the Audit Committee in the wake of an SEC consent decree).

---

[21]  September 2004 Agreement at 7.

KPMG nonetheless argues that an attorney-client relationship did not arise between Paul, Weiss and the SRC because "Paul Weiss and [the SRC] entered into their relationship with the stated purpose of providing information to an adverse party,"[22] and agreed to provide OFHEO "unrestricted access" to Paul, Weiss's work.[23]  KPMG distorts the September 2004 Agreement, and is mistaken about the facts of Paul, Weiss's relationship with the SRC.

First, the September 2004 Agreement does not state anywhere that OFHEO would have "unrestricted access" to Paul, Weiss's internal review.  The only provision that is relevant to KPMG's argument is Section VI.2.(c), which states:

> OFHEO shall have access independent of Fannie Mae to . . . meet with and review work plans and product of [Paul, Weiss], including receipt of interim, draft and final reports, required to be engaged under this agreement and may require meetings of the Board or Fannie Mae with such [Paul, Weiss] where OFHEO is present.  Work product of [Paul, Weiss] shall be preserved.[24]

The above provision in no way suggests that Paul, Weiss will not maintain a confidential relationship with the SRC or Fannie Mae, or that OFHEO will have *unrestricted* access to Paul, Weiss's investigation.  Indeed, the provision spells out only few items to which OFHEO may have access, including the work plans and any interim, draft or final reports.[25]

---

[22]  Motion at 9.

[23]  Motion at 4.

[24]  September 2004 Agreement at 7.

[25]  Paul, Weiss's work plans were provided to the regulators and produced to all parties in this litigation.  Paul, Weiss did not produce any interim or draft reports, and the final report and accompanying exhibits were publicly released by the Board.

More importantly, KPMG's argument fails to take into account the actual facts and circumstances of Paul, Weiss's engagement by the SRC. "Whether an attorney-client relationship existed is to be determined by the fact finder based on the circumstances of each case." *In re Bernstein*, 707 A.2d 371, 375 (D.C. 1998); *see In the Matter of Michael S. Lieber*, 442 A.2d 153, 156 (D.C. 1982). The facts here establish that the SRC maintained a confidential relationship with its outside investigative counsel. Paul, Weiss did not provide to OFHEO – or to any third party – "unrestricted" access to its investigative files. Indeed, Paul, Weiss declined OFHEO and other agencies' requests to be present at interviews conducted by Paul, Weiss on grounds, among others, of privilege.[26] The regulators did receive a very small set of privileged materials from Paul, Weiss, but only after their release was authorized by the SRC. Moreover, such materials did not reveal any confidential communications between Paul, Weiss and its client.[27] And, even this limited release was pursuant to negotiated agreements that restricted the agencies from further disseminating the materials, or from arguing that the limited disclosure constituted waiver of applicable privileges.[28] In short, no third party received "unrestricted access" to Paul, Weiss's work.

Finally, KPMG's attempt to liken Paul, Weiss's role to that of a court-appointed "independent monitor" is misguided. In the case cited by KPMG – *Computer Associates* – the company, through its audit committee, expressly waived in the deferred prosecution agreement the right to assert "any claims of attorney-client privilege or

---

[26]  Oh Decl. at ¶ 7.

[27]  September 2004 Agreement at 6.

[28]  *See, e.g.*, Exhibit B to Oh Decl.

attorney work-product doctrine as to any documents, records, information or testimony" in relation to the investigating governmental entities.[29]  The September 2004 Agreement contains no such waiver provision.

In these circumstances, an attorney-client relationship plainly existed between the SRC and Paul, Weiss, and therefore the communications between the SRC and Paul, Weiss are protected from disclosure by the attorney-client privilege.[30]

### B.    Paul, Weiss's Investigative Files Are Entitled to Work Product Protection

KPMG next argues that Paul, Weiss "may not assert attorney work product protection for any documents it created during the course of [its] special

---

[29]  *See United States* v. *Computer Assocs. Int'l, Inc.*, Deferred Prosecution Agreement at ¶ 6, Crim. No. 04-837 (E.D.N.Y. Sept. 22, 2004), *available at* http://www.usdoj.gov/dag/cftf/chargingdocs/compassocagreement.pdf.

[30]  KPMG contends, in a footnote, that Paul, Weiss's failure to prepare a privilege log waived privilege with respect to the unlogged documents.  *See* Motion at 9 n.5.  This argument is disingenuous.  As noted, Paul, Weiss believed it was still engaged in meet-and-confer discussions with KPMG about the privilege log when this Motion was filed.  *See supra* at 7.  Moreover, Paul, Weiss has met the requirements of Rule 26(b)(5)(A) for purposes of KPMG's Motion, which challenges the existence *vel non* of the privilege between the SRC and Paul, Weiss.  Such a challenge would not have been materially benefited by a document-by-document description of the specific privilege being asserted.  While a privilege log is a common way to satisfy Rule 26(b)(5)(A), courts "retain some discretion to permit less detailed disclosure in appropriate cases" where "(a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party."  *SEC* v. *Thrasher*, No. 92 CIV. 6987, 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996); *see also First Am. Corp.* v. *Al-Nahyan*, 2 F. Supp. 2d 58, 63 n.5 (D.D.C. 1998) ("[T]he degree of specificity required [of a privilege log] is dictated by the needs of the case."); *In re Imperial Corp. of Am.*, 174 F.R.D. 475, 479 (S.D. Cal. 1997) (stating that assertion of privilege does not always require production of document-by-document privilege log when such a log would be unduly burdensome and inappropriate).

investigation"[31] because Paul, Weiss's "role was not to prepare Fannie Mae for anticipated litigation."[32]  KPMG's argument fails.

> In the D.C. Circuit, "[t]he work product privilege . . . applies to material 'obtained or prepared by an adversary's counsel' in the course of his legal duties, *provided that the work was done 'with an eye toward litigation.'"  In re Sealed Cas*e, 676 F.2d 793, 809 (D.C. Cir. 1982) (emphasis added).  "[T]he testing question is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  *Senate of Puerto Rico* v. *U.S. Dep't of Justice*, 823 F.2d 574, 586 n.42 (D.C. Cir. 1987) (internal quotation and citation omitted); s*ee generally* Fed. R. Civ. P. 26(b)(3)(A).  Work product protection may be overcome under Rule 26(b)(3)(A)(ii) only upon a showing that the party seeking discovery "has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent by other means."  Moreover, "to the extent that work product reveals the opinions, judgments, and thought processes of counsel, it receives some higher level of protection, and a party seeking discovery must show *extraordinary* justification."  *In re Sealed Case*, 676 F.2d at 808-10 (emphasis added); *Dir. of the Office of Thrift Supervision* v. *Vinson & Elkins, LLP*, 168 F.R.D. 445, 446 (D.D.C. 1996) (same).

> The WilmerHale Interview notes fall squarely in the heartland of work-product protection, in addition to other applicable privileges.[33]  In *United States ex rel.*

---

[31]    Motion at 12.

[32]    *Id*. at 11-12.

*Fago* v. *M&T Mortgage Corp.*, 238 F.R.D. 3 (D.D.C. 2006), this Court held that outside

counsel's interview notes taken in the course of an internal investigation are "classic

opinion work product" because "they reveal who counsel thought important to interview,

what questions counsel thought important to ask, and what information counsel thought

important to memorialize." *Id.* at *7; *see also Dir., Office of Thrift Supervision* v. *Vinson*

*and Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997) ("At some point, . . . a lawyer's

factual selection reflects his focus; in deciding what to include and what to omit, the

lawyers reveals his view of the case") (*citing In re Sealed Case*, 124 F.3d 230, 236-37

(D.C. Cir. 1997)).[34]

        There can be no dispute that the notes of the WilmerHale interviews were

prepared against the backdrop of possible litigation.  By the time the SRC engaged Paul,

Weiss on October 1, 2004, OFHEO and the SEC had commenced regulatory

investigations of Fannie Mae.  Indeed, it was in direct response to OFHEO's Special

Examination that the SRC retained Paul, Weiss to conduct an independent investigation.

In this context, Paul, Weiss's investigation plainly was conducted in anticipation of

possible civil and criminal litigation.  *See Merrill Lynch & Co., Inc.* v. *Allegheny Energy,*

---

[33]    The substance of the WilmerHale Interviews include attorneys' legal advice to Fannie Mae.  That information is protected from disclosure for the reasons set forth in Fannie Mae's separate opposition.

[34]    More recently, in *In re Healthsouth Corp. Securities Litigation*, the Court held that interview notes at issue in that case qualified for protection as fact work product, but not opinion work product.  250 F.R.D. 8, 10 (D.D.C 2008) (*citing In re Sealed Case*, 676 F.2d 793, 811 (D.C. Cir. 1982)).  *Healthsouth*, however, is distinguishable because the notes at issue in that case were notes of a meeting with a third party, the FBI.  *Id.* at 12.  As the court explained, "'the agenda of the interview[s] was set by the FBI'" and "[the] attorneys were merely observers" who "did not shape the topics that were covered and did not frame the questions that were asked." *Id.*  This is unlike the situation here, where the attorneys led the questioning, including the selection of topics and documents for use in questioning.

*Inc.*, 229 F.R.D. 441, 445 (S.D.N.Y. 2004) (holding that a report of an internal investigation conducted while the company was the subject of a criminal investigation was "prepared in anticipation of litigation.") (citations omitted); *In re Woolworth Corp. Sec. Class Action Litig.*, No. 94 Civ. 2217, 1996 WL 306576, at *3 (S.D.N.Y. June 7, 1996) (noting that when government regulators request information, civil and possibly criminal actions are a practical certainty).[35]

KPMG ignores this context and relies solely on isolated language of the September 2004 Agreement to argue that Paul, Weiss's "role was not to prepare Fannie Mae for anticipated litigation."[36] As an initial matter, KPMG adds a "preparation" prerequisite for work product protection that is not found in the prevailing "prospect of litigation" standard applied in this Circuit. *See Senate of Puerto Rico*, *supra* at 14.

On the merits, KPMG's argument fails because it ignores the express terms of the retainer agreement, which state that the SRC was retaining Paul, Weiss in connection with the OFHEO Special Examination and the SEC investigation.[37] The Court should reject KPMG's narrow view of the work product doctrine. *See In re*

---

[35] *See also Abdallah* v. *Coca-Cola Co.*, No. CIV A1:98CV3679RWS, 2000 WL 33249254, at *5 (N.D. Ga. Jan. 25, 2000) (holding that the "anticipation of litigation" requirement was met even if the litigation anticipated is an investigation by a government agency); *Pacamor Bearings, Inc.* v. *Minebea Co.*, 918 F. Supp. 491, 513 (D.N.H. 1996) (stating that "[i]nvestigation by a federal agency presents more than a remote prospect of future litigation, and provides reasonable grounds for anticipating litigation sufficient to trigger application of the work product doctrine") (internal citations and quotations omitted); *In re LTV Sec. Litig.*, 89 F.R.D. at 612 ("Investigation by a federal agency presents more than a 'remote prospect' of future litigation and gives grounds for anticipating litigation sufficient for the work-product rule to apply.").

[36] Motion at 11.

[37] Engagement Ltr. at 4.

*Cardinal Health*, 2007 WL 495150, at *5 (concluding that the work product doctrine applied to audit committee counsel and that plaintiff's argument "overlooks the context in which" outside counsel was hired, including pending inquiries by the SEC and U.S. Attorney's office).[38]

## II.    THE RELEASE OF PAUL, WEISS'S FINAL REPORT AND OTHER DOCUMENTS DID NOT RESULT IN A SUBJECT MATTER WAIVER

KPMG contends, in the alternative, that even if the SRC and Paul, Weiss entered into a confidential, privileged relationship, "any claim of privilege as to either the report or any underlying data" was waived by Fannie Mae's decision to publish the report and other documents, and by its reliance on the report in this litigation.[39]   KPMG is wrong.

### A.    The Paul, Weiss Report Did Not Disclose Any Privileged Communication with the SRC and Therefore Its Release Cannot Result in Subject Matter Waiver

KPMG's broad subject matter waiver argument fails for several reasons. First, Paul, Weiss's final report and accompanying documents did not disclose any confidential attorney-client communications between Paul, Weiss and the SRC.  It is

---

[38]   KPMG's reliance on *In re Leslie Fay Cos. Inc., Securities Litigation*, 161 F.R.D. 274 (S.D.N.Y. 1995), is misplaced.  *In re Leslie Fay* is distinguishable on its facts, and is also no longer good law.  In *In re Leslie Fay*, the SEC indicated an interest in the company's accounting practices only *after* the audit committee commenced its investigation.  More importantly, the holding in *In re Leslie Fay* has been called into doubt by a subsequent Second Circuit case that held that "*a requirement that documents be produced primarily or exclusively to assist in litigation in order to be protected is at odds with the text and the policies of [Rule 26(b)(3)]*."  *United States* v. *Adlman*, 134 F.3d 1194, 1198 (2d. Cir. 1998) (emphasis added).

[39]   Motion at 14.  Non-party Paul, Weiss joins in Fannie Mae's opposition brief with respect to KPMG's argument concerning the use of Paul, Weiss's report in this litigation, *id*. at 16, and will not address it separately here.

settled law that what is protected by the attorney-client privilege is the confidential communication between client and counsel, and not the underlying facts. *See Upjohn Co.* v. *United States*, 449 U.S. 383, 395 (1981) (holding that the attorney-client "privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts"); *Brookings* v. *State*, 495 So. 2d 135, 139 (Fla. 1986) ("It is the communication with counsel which is privileged, not the facts."); *see*, *e.g.*, *Magida* v. *Continental Can Co.*, 12 F.R.D. 74 (S.D.N.Y. 1951); 1 Charles Tilford McCormick, *McCormick on Evidence* § 93 (6th ed. 2006).

The Paul, Weiss report is a summary of the underlying facts found by Paul, Weiss concerning the topics investigated, and reveals no privileged communications with Fannie Mae concerning the investigation or Paul, Weiss's advice to the SRC. Paul, Weiss cited and appended documents on which it relied in preparing the report, but did not cite, quote from, or append any privileged documents at issue here or any interview notes or memoranda.[40]

In the absence of the disclosure of any privileged communications in the report, there can be no subject matter waiver based on the release of the report. The "invocation of [the subject matter waiver] principle requires that the document on which the waiver was based was privileged in the first place; it is non sequitur to deduce a waiver from the production of a document that is not privileged." *Intervet, Inc.* v. *Merial Ltd.*, 252 F.R.D. 47, 52 (D.D.C. 2008).

---

[40]   In any event, all interview memoranda prepared by Paul, Weiss have been produced to the parties in this litigation as outlined above. *See supra* at 7.

Even if the report is deemed to have disclosed some confidential, attorney-client privileged communication, the scope of the waiver that KPMG seeks – the disclosure of *all* substantive communications between Paul, Weiss and the SRC – is unprecedented. *See, e.g., In re Sealed Case*, 676 F.2d 793, 809 n.54 (D.C. Cir. 1982); *see also In re Papst Licensing GMBH & Co., KG Litigation*, 250 F.R.D. 55 (D.D.C. 2008) ("A district court 'retains broad discretion in deciding the appropriate scope of a waiver.'") (*citing Gen. Elec. Co. v. Johnson*, No. 00-2855, 2006 WL 2616187, at *19 (D.D.C. Sept.12, 2006) (stating that broad subject matter definition advanced by the party seeking the documents was unwarranted where there was no indication that the party claiming the privilege acted in bad faith or disregarded the sanctity of the attorney-client privilege); *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 159 F.R.D. 307, 309 (D.D.C. 1994) (in its discretion, court may limit the scope of waiver to the same "specific" subject matter as that already disclosed)).[41]  KPMG has made no effort –

---

[41]  None of the cases on which KPMG relies, *see* Motion at 14-15, supports such a blanket waiver.  In each case, the court authorized the release only of materials relied on or cited in the published report itself, and did not authorize the release of unrelated attorney-client communications.  *See In re Sealed Case*, 676 F.2d at 823-24 (finding waiver in grand jury context of underlying documents clearly identified in a report disclosed voluntarily to the SEC); *In re Royal Ahold N.V. Securities & ERISA Litigation*, 230 F.R.D. 433, 436 (D. Md. 2005) (ordering the release of only portions of outside counsel's interview memoranda that were relied on, or quoted in, the publicly-released report); *In re OM Securities Litigation*, 226 F.R.D. 579, 594 (N.D. Ohio 2005) (requiring disclosure of documents underlying publicly-released presentation that "relat[ed] to, referred to, or [were] relied upon in the presentation"); *In re Leslie Fay Cos., Inc. Securities Litigation*, 161 F.R.D. 274, 280-81 (S.D.N.Y. 1995) ("narrowly tailoring" the scope of waiver to allow an exception for documents that contain legal analysis or advice not contained or discussed in the report); *In re Subpoena Duces Tecum Served on Willkie Farr & Gallagher*, No. M8-85, 1997 WL 118369, at *3-4 (S.D.N.Y. Mar. 14, 1997) (stating that waiver does not extend to "privilege with respect to every single document underlying the disclosed material," and requiring release only of interview notes and other documents that formed the

because it cannot – to demonstrate how Paul, Weiss's privileged communications with the SRC are related to the factual findings contained in the report. Without such a showing, the Court should reject KPMG's request for a blanket waiver of Paul, Weiss's confidential communications with its client.

Moreover, a blanket waiver of all communications between the investigative counsel and the client based on the release of an investigative report would discourage companies from conducting internal investigations or releasing their results publicly. As stated by the court in *In re Woolworth Corp. Securities Class Action Litigation*, No. 94 Civ. 2217, 1996 WL 306576, at *2 (S.D.N.Y. June 7, 1996):

> A finding that publication of an internal investigative report constitutes waiver might well discourage corporations from taking the responsible step of employing outside counsel to conduct an investigation when wrongdoing is suspected. . . . For shareholders to obtain the benefits of investigative reports of the type at issue here, these corporate decisionmakers must know that the integrity of communications made to independent counsel will be preserved.

For these reasons, the Court should reject KPMG's blanket waiver argument over *all* substantive communications between the SRC and Paul, Weiss.

**B.     The Disclosure of a Letter Written by WilmerHale Did Not Result in Waiver of Work Product Protection Over Paul, Weiss's Internal Notes**

Lastly, KPMG contends that Paul, Weiss must disclose its notes of the WilmerHale Interviews because a copy of a letter that WilmerHale sent to Paul, Weiss that may touch on the same topics covered in the WilmerHale Interviews was referenced

---

basis for the auditor opinion the company relied on in litigation); *Zitin* v. *Turley*, No. 89-2061-PHX-CAM, 1991 WL 283814, at *5 (D. Ariz. June 20, 1991) (finding subject matter waiver only after finding that the committee and the counsel conducting the investigation lacked good faith). Any documents fitting these descriptions have already been produced in this litigation.

in the Paul, Weiss report and therefore produced in this litigation.[42]  KPMG contends that

it is "entitled to access [Paul, Weiss's] memoranda or notes [of the WilmerHale

Interviews] in order to assess the accuracy and completeness of the summary provided in

the produced letter."[43]  KPMG's argument is based on a misunderstanding of the subject

matter waiver law and the work product doctrine.

　　　　　　The WilmerHale Interview notes at issue are opinion work product

protected from disclosure.  They reflect, among other things, the topics and documents

selected by Paul, Weiss attorneys in questioning the witnesses.[44]  It is well settled that

claims of waiver of attorney work product are assessed on a case-by-case basis and,

ordinarily, disclosure waives work product protection only "as to items actually

disclosed."  *See, e.g.*, *Pittman* v. *Frazer*, 129 F.3d 983, 988 (8th Cir. 1997); *Duplan Corp.*

v. *Deering Milliken, Inc.*, 540 F.2d 1215, 1222 (4th Cir. 1976) ("[B]road concepts of

subject matter waiver analogous to those applicable to claims of attorney-client privilege

are inappropriate when applied to Rule 26(b)(3)"); *In re United Mine Workers*, 159

F.R.D. at 310-12 (production of attorney work product resulted in waiver of privilege

only as to those documents produced); 8 Charles Alan Wright & Arthur R. Miller,

*Federal Practice and Procedure* § 2024 at 367 (2d ed. 1987) ("[D]isclosure of some

documents does not destroy work product protection for other documents of the same

character.").

---

[42]　Motion at 15.  *See, e.g.*, *A Report to the Special Review Committee of the Board of Directors of Fannie Mae*, at 584 n.2234 (Feb. 23, 2006), *available at* http://download.fanniemae.com/report.pdf.

[43]　*Id.*

[44]　*See supra* at 15.

The mere fact that Paul, Weiss's report considered the information obtained from the WilmerHale Interviews, does not result in a waiver of the notes. Such a conclusion would lead to the result that a party waives work product protection by filing a brief that incorporates the legal theories, arguments, or opinions contained in an attorney's work papers. The Supreme Court rejected that notion, acknowledging that "[c]ounsel necessarily makes use throughout trial of the notes, documents, and other internal materials prepared to present adequately his client's case, and often relies on them in examining witnesses. When so used, there normally is no waiver." *United States* v. *Nobles*, 422 U.S. 225, 239 n.14 (1975). Only "where . . . counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents." *Id.* And Paul, Weiss made no "testimonial" use of the information obtained during the WilmerHale Interviews in its report.

This Court addressed this precise circumstance in *United States ex. rel. Fago* v. *M&T Mortgage Corp.*, 238 F.R.D. 3 (D.D.C. 2006). After finding that outside counsel's interview notes constituted opinion work product, the Court went on to conclude that the company did not waive its work product protection by presenting the results of its internal investigation to a government regulator. *Id.* at 7-9. The Court rejected the notion that the company's mere referencing of documents in a presentation to the government effected a subject matter waiver for work product documents "*that were never disclosed to any third-party.*" *Id.* (emphasis in original) (*citing Rockwell Int'l Corp.* v. *U.S. Dep't of Justice*, 235 F.3d 598, 604-07 (D.C. Cir. 2001) and *In re United*

*Mine Workers*, 159 F.R.D. at 310).[45]  *See generally Rockwell Int'l Corp.* v. *U.S. Dep't of Justice*, 235 F.3d 598, 604-07 (D.C. Cir. 2001) (holding that the public release of a DOJ investigation report did not waive work product because DOJ had taken steps to maintain the confidentiality of underlying interview transcripts and documents and was selective in the portions of documents that it quoted); *Mehl* v. *U.S. Environmental Protection Agency*, 797 F. Supp. 43, 47-49 (D.D.C. 1992) (finding no waiver of privileges where the EPA released a report to the public that cited to and quoted privileged documents).

KPMG's argument fails for the independent reason that it cannot demonstrate any extraordinary, or even substantial, need for the WilmerHale Interview notes.  Even if the notes were not entitled to the "super-protection" afforded opinion work product, KPMG must demonstrate at least a substantial need for the notes under Rule 26(b)(3).  *See Dir., Office of Thrift Supervision* v. *Vinson & Elkins LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997) (holding that, although notes were only fact work product, OTS had not satisfied its burden under Rule 26(b)(3)); *see also Robinson* v. *Time Warner*, 187 F.R.D 144, 147 (S.D.N.Y. 1999) (holding that plaintiffs failed to make a showing of need under Rule 26(b)(3) for disclosure of interview notes of outside counsel).

While KPMG contends that it needs the notes of the WilmerHale Interviews in order to assess the accuracy and completeness of the assertions made in the

---

[45]  In arguing that the past disclosure of other interview memoranda also effected a subject matter waiver, KPMG erroneously relies on *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1370 (D.C. Cir. 1984), which concerned the proper scope of waiver for attorney-client communications, not work product.  Motion at 16 n.8.

WilmerHale letter,[46] they do not establish the relevance of the WilmerHale letter to the claims in this litigation.  The fact is that Paul, Weiss's factual findings already considered the information contained in the WilmerHale letter.  KPMG has not suggested that Paul, Weiss's conclusions concerning WilmerHale in the report are incomplete or misleading. In these circumstances, KPMG cannot demonstrate any need, much less substantial or extraordinary need, for the WilmerHale Interview notes.  This is not a situation where KPMG is contending the statements in the WilmerHale Interviews go to the heart of the claims against KPMG.  *Cf. In re Healthsouth Corp. Sec. Litig.*, 250 F.R.D. 8, 14 (D.D.C 2008) (allowing disclosure where attorneys' client put the substance of his interviews front and center in litigation by arguing that the attorneys' summary of the interview were more accurate than the government's); *Granite Partners*, *L.P.* v. *Bear, Stearns & Co. Inc.*, 184 F.R.D. 49, 55-56 (S.D.N.Y. 1999) (noting that interview notes were "essential" to defendants' ability to prepare an adequate defense).  Nor can KPMG show that disclosure would correct some imbalance by putting the parties on a level playing field. As noted, Paul, Weiss has not disclosed these notes to any third parties.  Accordingly, KPMG's waiver argument should be rejected.

---

[46]  *See* Motion at 15.

## CONCLUSION

For the foregoing reasons, Paul, Weiss respectfully requests the Court to

deny KPMG's Motion.

Dated: Washington, D.C.                  Respectfully submitted,
        April 3, 2009

                                         PAUL, WEISS, RIFKIND, WHARTON &
                                         GARRISON LLP

                                         By:  /s/ Alex Young K. Oh
                                             Alex Young K. Oh (Bar No. 499955)
                                             Robert P. Parker (Bar No. 404066)

                                         2001 K Street, N.W.
                                         Washington, D.C.  20006-1047
                                         (202) 223-7300

                                         *Attorneys for Non-Party Paul, Weiss,
                                         Rifkind, Wharton & Garrison LLP*