UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | MDL No. 1668 |
| In re Fannie Mae Securities Litigation | Consolidated Civil Action No. 1:04-cv-01639<br>Judge Richard J. Leon |

**FANNIE MAE'S OPPOSITION TO KPMG LLP'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM PAUL WEISS'S SPECIAL EXAMINATION OF FANNIE MAE**

KPMG's motion to compel rests on several false premises. First, KPMG alleges that the engagement of Paul, Weiss, Rifkind, Wharton, and Garrison LLP ("Paul Weiss") by Fannie Mae's Board of Directors ("Board") did not create an attorney-client relationship. As a result, KPMG reasons, any privilege protecting documents from disclosure in this litigation was destroyed when Paul Weiss reviewed them. But the engagement letter between Paul Weiss and the Board's then-presiding director, which has been produced in this litigation and available to KPMG since June 15, 2008, flatly contradicts KPMG's characterization of the Paul Weiss engagement. Also, to be clear, Fannie Mae is not withholding from production in this litigation any non-privileged documents simply because those documents were shown to Paul Weiss. All non-privileged documents that Fannie Mae provided to Paul Weiss in the course of its investigation have been produced to OFHEO and to the parties in this litigation.

Second, KPMG seems to imply that all of the privileged documents Paul Weiss reviewed during its engagement by the Board were produced to OFHEO and other regulators because the agreement between OFHEO and Fannie Mae's Board mandated as much. This, too, is incorrect.

The 2,772 unique documents (plus duplicates and replicates) that appear on Fannie Mae's "MOU logs" that KPMG challenges here were not produced to OFHEO or any other regulator precisely because the Board, with the assistance of Paul Weiss and company counsel, determined that the risk of a finding of waiver in civil litigation was too great. OFHEO agreed that it would not seek to compel production of these documents.

Finally, KPMG makes the conclusory allegation that Fannie Mae is using the Paul Weiss Report as a "sword" in this litigation because Fannie Mae released Paul Weiss's final report publicly and Fannie Mae's then-Chairman of the Board issued a statement "embracing" it. But KPMG does not explain how that statement was or could be used offensively against KPMG in this litigation. Nor does KPMG explain how this statement allows KPMG to access the privileged materials it seeks here, which were not referenced in the Paul Weiss Report nor viewed by any regulator.

KPMG asks the Court to hold that as a matter of law, the mere fact that Paul Weiss undertook an investigation of Fannie Mae and published a report of its findings is in and of itself sufficient to effect a waiver of privilege over all documents that Paul Weiss accessed in the course of its review. KPMG further asks the Court to hold that as a matter of law, communications between Paul Weiss and its client, the Board, are not privileged based on the demonstrably false assertion that the engagement of Paul Weiss did not contemplate such confidentiality.[1] No court has found such broad waiver based on these facts, and this Court

---

[1] KPMG has also asked the Court to compel Paul Weiss to produce its handwritten notes taken during meetings with Fannie Mae's outside counsel, Wilmer Cutler Pickering Hale and Dorr, LLP ("Wilmer Hale"). These notes are protected from disclosure by the attorney work product doctrine. They have not been disclosed to any third party. Nor are they cited in Paul Weiss's final report. In fact, Paul Weiss has not shared them with anyone from Fannie Mae. Therefore, there has been no waiver, selective or otherwise. Because Fannie Mae does not possess these documents, Paul Weiss is writing separately to oppose their production. For all of the reasons set forth in those papers, the Court should deny KPMG's motion to compel production of these Paul Weiss handwritten notes.

2

should not be the first. For all of these reasons, the Court should deny KPMG's motion to compel.

## STATEMENT OF FACTS

In September 2004, OFHEO published an Interim Report of Findings to Date (hereinafter, "Interim Report").[2] During the September 20, 2004 meeting of Fannie Mae's Board of Directors, OFHEO provided the Board with a copy of and a briefing on its Interim Report. *See* Sept. 20, 2004 Board Minutes, at 3 (attached as Ex. 1). OFHEO also proposed an agreement between OFHEO and the Board to address issues raised by OFHEO. *See id.* At this meeting, the Board approved a resolution to "retain Paul, Weiss, Rifkind, Wharton & Garrison LLP as independent counsel to assist the Board in addressing issues raised in the OFHEO Report." *See id*. at 4. The same resolution "instruct[ed] management and the company's advisors, including KPMG, Wilmer Cutler Pickering Hale and Dorr, LLP and Ernst & Young to fully and expeditiously cooperate with Paul, Weiss, Rifkind, Wharton & Garrison LLP." *See id.*

The Board engaged Paul Weiss and entered into an agreement which provided that Paul Weiss "will provide services of a strictly legal nature," that the "attorney-client relationship is with, and this duty of confidentiality is owed" to the Board and Fannie Mae, and that "all of [Paul Weiss's] communications with Fannie Mae, with the Board of Directors, and with the Review Committee are intended to be privileged and confidential to the maximum extent permitted by law." *See* Letter from Warren B. Rudman to Ann M. Korologos (Oct. 1, 2004) ("Engagement Letter"), at 2, and Paul Weiss Terms of Engagement ("Terms of Engagement"), ¶¶ 1, 9 (attached as Ex. 2). With Paul Weiss's assistance, the Board immediately set about devising a work plan to address the concerns OFHEO raised in its Interim Report. *See* Sept. 21,

---

[2] OFHEO's final Report of the Special Examination of Fannie Mae was published in May 2006.

2004 Board Minutes (attached as Ex. 3). The Board charged a Special Review Committee ("the Special Review Committee")[3] with responsibility "to oversee the Board's response to OFHEO's Special Examination of Fannie Mae Report of Findings to Date and to the inquiry of the Securities and Exchange Commission regarding the same matter." *See* Sept. 21, 2004 Board Minutes, at 3. The Board authorized the Special Review Committee "to oversee the independent counsel's [Paul Weiss's] work in connection with the issues raised by the Report and the Securities and Exchange Commission inquiry." *See id.*

OFHEO requested a "formal binding enforceable agreement" with the Board regarding the steps that the Board would take to review and, where appropriate, redress the issues that OFHEO raised in its Interim Report. *See* Sept. 23, 2004 Board Minutes, at 1-2 (attached as Ex. 5). The Board directed Wilmer Hale and Fannie Mae's General Counsel "to negotiate a potential agreement with OFHEO." *See id.* at 2. The Company worked with OFHEO to draft a mutually acceptable agreement. *See* Sept. 26, 2004 Board Minutes (attached as Ex. 6). The agreement that was executed on September 27, 2004 provided that "[t]he Board or its compliance committee shall hire within 45 days an independent counsel and an independent accounting firm, subject to OFHEO's approval, reporting directly to the Board or committee, to conduct reviews," including a "comprehensive review of the company's accounting policies and practices." *See* Sept. 27, 2004 Agreement, VI.2(a) (attached as Ex. 7).

The Board next entered into a formal engagement agreement with Paul Weiss. This agreement provided that Paul Weiss "will provide services of a strictly legal nature," that the "attorney-client relationship is with, and this duty of confidentiality is owed" to the Board and

---

[3] The Special Review Committee Charter states: "The purpose of the Committee shall be . . . to oversee the independent reviews conducted by independent counsel and its consultant(s) as required in the agreement between the corporation and the Office of Federal Housing Enterprise Oversight ('OFHEO') dated September 27, 2004 (the 'Agreement')." *See* Special Review Committee Charter, at 1 (attached as Ex. 4).

Fannie Mae, and that "all [Paul Weiss's] communications with Fannie Mae, with the Board of Directors, and with the Review Committee are intended to be privileged and confidential to the maximum extent permitted by law." *See* Terms of Engagement, ¶¶ 1, 9; Engagement Letter, at 2. In part due to the privileged and confidential nature of Paul Weiss's engagement, the Board granted Paul Weiss "complete access to all Fannie Mae personnel and records as [it might] deem necessary during the course of the review." Mem. from Mike Williams to Senior Leadership Team, *Paul Weiss Review* (Oct. 12, 2004) (attached as Ex. 8); *see also* Message from Ann McLaughlin Korologos to All Fannie Mae Employees (Nov. 29, 2004) (attached as Ex. 9).

Prior to the issuance of its Interim Report and continuing throughout the course of the Special Examination, OFHEO demanded access to all documents responsive to its numerous document requests, regardless of whether they were protected by the attorney-client privilege or the attorney work product doctrine. OFHEO made clear to Fannie Mae that OFHEO could mandate compliance with its requests without waiving any privilege pursuant to OFHEO's statutory examination authority. Despite OFHEO's statutory authority, the Company was concerned that production of privileged material without qualification could later be deemed a waiver in subsequent civil litigation.[4] For that reason, Fannie Mae and OFHEO entered into a non-waiver agreement on February 25, 2004 pursuant to which OFHEO agreed that it "will not assert that Fannie Mae's production of certain Privileged Materials to OFHEO constitutes a waiver of the protection of the attorney work product doctrine, the attorney-client privilege, or any other applicable privilege." Letter from Ann M. Kappler to Alfred M. Pollard, at 1 (Feb. 24, 2004) (attached as Ex. 10). The Company subsequently produced certain privileged documents

---

[4] Because the question of waiver is fact-specific, the Company wanted to ensure that its privileged materials retained the maximum protections afforded by law against waiver with respect to third parties. As this motion makes clear, there is always a risk that private litigants like KPMG will seek to argue waiver in order to access protected materials in civil litigation.

5

to OFHEO pursuant to that non-waiver agreement.  OFHEO allowed the Company to use its discretion to determine which privileged documents it would produce pursuant to the non-waiver agreement and which it would continue to withhold due to heightened sensitivities regarding potential claims of waiver by third parties.

Fannie Mae, the Special Review Committee on behalf of Fannie Mae's Board, and Paul Weiss provided OFHEO with logs of privileged documents withheld from production.  The Board instructed Paul Weiss to review the withheld documents.  If Paul Weiss believed that the documents should be produced to OFHEO despite the privilege designations originally made by the Company and its counsel and despite company counsel's recommendation to withhold the document from production, Paul Weiss would bring the issue to the Special Review Committee for resolution.  In March 2005, the full Board decided to memorialize this practice in a formal agreement with OFHEO.  "[A] lengthy discussion between the Board of Directors, Paul, Weiss, and OFHEO" resulted in the Special Review Committee, on behalf of the Board, and OFHEO entering into a Memorandum of Understanding ("MOU") (attached as Ex. 11), "which sought to balance OFHEO's need for access to all information at Fannie Mae to conduct its safety and soundness review, against Fannie Mae's legitimate interest in protecting confidential privileged information against disclosure to any third parties."  *See* Paul Weiss Report at 582.

On April 8, 2005, the Board adopted a resolution amending the Special Review Committee's charter to provide that "[i]n the event Paul, Weiss and Company counsel do not agree that [a] privileged communication should be released to OFHEO and/or other governmental entities, the Committee, following due deliberations (including such consultations with counsel as the Committee deems necessary) shall have the authority to authorize Paul Weiss to release such privileged communications to OFHEO and/or other governmental entities."  *See*

6

Apr. 8, 2005 Board Minutes and Resolution (attached as Ex. 12).  The Board further authorized the Committee to enter into the MOU and "following such consultation with the Board as the Committee deems necessary (if any), to make the determinations specified in the MOU and to take any other actions with respect to the MOU that the Committee deems appropriate."  *See id*.

      The MOU established a balanced process through which Paul Weiss, with the assistance of an appointed Special Counsel and the Special Review Committee, could determine to withhold from production to OFHEO certain privileged documents that related to legal advice and work product regarding pending or threatened litigation.  Pursuant to the MOU, Paul Weiss would "determine if a privileged document [was] in whole or in part of interest to the Special Examination or internal reviews."  *See* MOU ¶ 4(b).  Such determination was to consider "the Agreements made by the Board with OFHEO, Paul, Weiss/Huron work plans, requests made by OFHEO as well as whether documents or other materials, in whole or in part, contain information that would be of interest to OFHEO as part of its supervisory responsibilities."  *See id.*

      Pursuant to the MOU, Paul Weiss was also to "consider whether the material contains legal advice or work product concerning or created in connection with the defense of any current or potential civil or criminal litigation, investigation or regulatory proceeding or other privileged material, provided however, where documents for which privilege is claimed contain information that may be of interest to OFHEO, then, the document will be provided to OFHEO with redactions of privileged materials determined to be withheld."  *See id.*  Throughout its engagement, Paul Weiss reviewed Fannie Mae's documents and advised the Special Review Committee on the issue of whether certain privileged documents should be disclosed to regulators in response to their document requests.  The Special Review Committee, however,

7

retained ultimate discretion as to whether a privileged document would be produced to OFHEO. *See* MOU ¶ 4(c). The MOU explicitly stated that "[n]othing in this MOU or Fannie Mae's production of documents hereunder shall be deemed to constitute a waiver of the attorney client privilege, work product privilege or any other applicable privilege." *See* MOU ¶ 8.

On March 13, 2009, KPMG moved to compel production of the documents appearing on Fannie Mae's MOU logs.

## ARGUMENT

The mere fact that Paul Weiss, in its capacity as counsel to the Board, reviewed a privileged document during its engagement, does not effect a waiver of that privilege. Indeed, the record shows that the Board took extraordinary steps to ensure that all of Fannie Mae's privileged documents that Paul Weiss received were reviewed in a privileged setting throughout the MOU process. At the direction of the Board, none of the documents KPMG now seeks were shared outside of that privileged setting – with OFHEO, any other regulator, or any third party – and they remain protected from disclosure on privilege grounds today.

I. **KPMG IS NOT ENTITLED TO PRIVILEGED DOCUMENTS THAT WERE PROVIDED TO PAUL WEISS PURSUANT TO THE MOU PROCESS.**

KPMG offers two mistaken theories of waiver. First, KPMG contends that Paul Weiss did not have an attorney-client relationship with Fannie Mae, and that 1) Paul Weiss's review of privileged documents effected a waiver of the attorney-client and attorney work product privileges, and 2) communications between Paul Weiss and its client, the Board, are not privileged. Second, KPMG appears to imply that Paul Weiss and Fannie Mae shared the privileged documents that KPMG now seeks with regulators. Neither theory has any basis in fact or law.

### A. **Paul Weiss entered into an attorney-client relationship with Fannie Mae's Board of Directors.**

It is beyond dispute that Paul Weiss entered into an attorney-client relationship with Fannie Mae's Board of Directors. The express terms of Paul Weiss's engagement agreement with the Board, conveniently ignored by KPMG in its moving papers, state that Paul Weiss "will provide services of a strictly legal nature," and will "provid[e] the Review Committee with advice." *See* Terms of Engagement, ¶ 1; Engagement Letter at 1. The letter further states that "[i]t is our understanding that all of our communications with Fannie Mae, with the Board of Directors, and with the Review Committee are intended to be privileged and confidential to the maximum extent permitted by law." *See* Engagement Letter at 2. Both Paul Weiss and the Board understood that there were *limited* circumstances under which certain privileged materials or communications may have to be disclosed, *see id.*, but those instances were to be the exception and not the rule.

It goes without saying that both confidential information shared with counsel and confidential advice received from counsel are protected from disclosure by the attorney-client privilege. *See In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) ("Communications from attorney to client are shielded if they rest on confidential information obtained from the client." (citing *Mead Data Central, Inc. v. United States Department of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977))). Because the record indisputably shows that Paul Weiss and the Board entered into an engagement that contemplated the sharing of confidential information in a privileged setting, KPMG's motion to compel production of all privileged communications between Paul Weiss and its client must fail.

KPMG's remaining waiver arguments should also be rejected. It is well-settled that the "power to invoke or waive the [company's] privilege lies in the corporate client acting through

9

its board of directors *or* management." *In re O.P.M. Leasing Servs., Inc.*, 670 F.2d 383, 386 (2d Cir. 1982) (emphasis added). *See also Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49, 349 n.4 (1985) ("[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors."). KPMG cites to no case that counters the well-settled principle that a company's management and its board of directors can share privileged materials with each other without waiving privilege as to third parties. This zone of privilege extends by definition to outside lawyers representing a company and its board of directors, even if those lawyers do not work at the same law firm and even if they are engaged to perform different tasks. *See Weintraub*, 471 U.S. at 346-50.

Here, pursuant to the terms of the MOU, the Special Review Committee of Fannie Mae's Board directed its outside counsel, Paul Weiss, to review certain privileged documents to "determine if a privileged document is in whole or in part of interest to the Special Examination or internal reviews." *See* MOU ¶ 4(b). The fact that the Board asked counsel to review the Company's privileged materials is not enough to effect a waiver as to third parties. Indeed, the Board was careful to retain control of the privilege. It did not provide Paul Weiss with the unfettered discretion to disclose privileged materials to third parties. Rather, that determination rested with the Special Review Committee acting on behalf of the Board. *See* MOU ¶ 4(c). Finally, the MOU unambiguously stated that "[n]othing in this MOU or Fannie Mae's production of documents hereunder shall be deemed to constitute a waiver of the attorney client privilege, work product privilege or any other applicable privilege." *See* MOU ¶ 8.

### B. None of the documents KPMG seeks were produced to any regulator.

Because the MOU process itself ensured that privileged materials could be shared by and among the Company, the Board, and its counsel without waiver as to third parties, KPMG's only

10

remaining argument is that because Fannie Mae's agreement with OFHEO called for transparency, "Fannie Mae explicitly waived the right to keep confidential any information it exchanged with" Paul Weiss. *See* KPMG's Motion to Compel at 10. But none of the documents KPMG seeks here that were shared with Paul Weiss were produced to any regulator. All of the privileged documents that Fannie Mae produced to the SEC, DOJ, and PCAOB, and the vast majority of the documents that Fannie Mae produced to OFHEO have been produced in this litigation and are not at issue in this motion.

To the extent that KPMG contends that Fannie Mae has waived privilege over documents produced only to OFHEO and not other regulators, KPMG has already argued and lost this point. On February 6, 2008, KPMG moved to compel production of all privileged documents previously produced to government regulators pursuant to a non-waiver agreement. Fannie Mae subsequently produced all but 4,866 of those documents (plus duplicates and replicates), which it continued to withhold on the ground that they had only been produced to OFHEO, and that OFHEO had compelled their production pursuant to its statutory examination authority. Because production of these privileged documents was not voluntary, Fannie Mae argued that the privilege protecting them from disclosure to third parties had not been waived. The Court agreed with Fannie Mae and denied KPMG motions to compel on the ground "that Fannie Mae's involuntary production of documents to OFHEO did not constitute a waiver of the privileges Fannie Mae has asserted over those documents." *See* Order Denying Motions to Compel Production of Documents, *In re Fannie Mae Securities Litigation*, Case No. 04-1639 (D.D.C. May 14, 2008). Fannie Mae continues to withhold these documents, and KPMG has not offered any new grounds to compel the production of these documents at this time. Therefore, these 4,866 privileged documents that Fannie Mae produced to OFHEO only are not currently at issue

11

in this motion. Because none of the documents at issue here have been disclosed to any regulator, there has been no waiver, and the Court should deny KPMG's motion to compel.

  **C.**  **Even if Paul Weiss did not have an attorney-client relationship with the Board, there was no waiver of privilege with respect to attorney work product.**

Even if KPMG were correct that privileged documents shared with Paul Weiss could be deemed a waiver, that waiver would not extend to documents protected from disclosure by the attorney work product doctrine.[5] The work product doctrine provides even greater protection from waiver than that afforded to attorney-client communications. *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975) (recognizing that "the work-product doctrine is distinct from and broader than the attorney-client privilege"). Disclosure of attorney work product to a third party does not automatically waive the protections of the work product privilege. *See United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980); *In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982) ("the work product privilege is not automatically waived by any disclosure to a third party"). Indeed, courts have held that a party does not waive the protections of the work product privilege when it discloses attorney work product to:

- former employees, *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, No. 03-1496, 2004 U.S. Dist LEXIS 10048, at *23 (E.D. La. June 2, 2004);

- outside contractors, *ECDC Envtl., L.C. v. New York Marine & General Ins. Co.*, No. 96-6033, 1998 U.S. Dist. LEXIS 8808, at *11-13 (S.D.N.Y. June 4, 1998);

---

[5] To the extent that the requested documents include those documents prepared by Paul Weiss in the course of its investigation and shared with Fannie Mae, they are similarly protected from disclosure. Courts have held that materials created by a committee conducting a corporate internal investigation are entitled to work-product protection. *See, e.g.*, *In re Cardinal Health, Inc. Sec. Litig.*, No. 04-575, 2007 WL 495150 (S.D.N.Y. Jan. 26, 2007); *Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508 (N.D. Ill. 2005); *In re Woolworth Corp. Sec. Class Action Litig.*, No. 94-2217, 1996 WL 306576, at *3 (S.D.N.Y. June 7, 1996). This includes the handwritten interview notes taken by Paul Weiss during interviews of three Wilmer Hale attorneys. Paul Weiss has addressed this issue more thoroughly in its separate opposition, which Fannie Mae joins.

- relatives, *United States v. Stewart*, 287 F. Supp. 2d 461, 469 (S.D.N.Y. 2003) (disclosure by Martha Stewart of work-product-protected documents to her daughter did not waive the privilege);

- an auditor during a special investigation, *Vacco v. Harrah's Operating Co, Inc.*, No. 07-0663, 2008 U.S. Dist. LEXIS 88158, at *21-22 (N.D.N.Y. Oct. 29, 2008);

- other parties during settlement negotiations, *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 45-46 (D.Md. 1974);

- parties that share a common litigation interest, *Hydranautics v. Filmtec Corp.*, No. 93-0476, 2003 U.S. Dist. LEXIS 25094, at *8-10 (S.D. Cal. Aug. 18, 2003);

- companies that share a common business interest, *Cellco P'ship v. Nextel Commc'ns, Inc.*, No. 03-725, 2004 U.S. Dist. LEXIS 12717, at *4-5 (S.D.N.Y. July 9, 2004); or

- to others "*simply because there was some good reason to show it*," *U.S. v. Adlman*, 134 F.3d 1194, 1200 n.4 (2d Cir. 1998) (emphasis added).

In short, "only if the party has voluntarily disclosed the work-product in such a manner that it is likely to be revealed to his adversary," will work product be waived. *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, Nos. 93-5298, 93-8270, 94-1317, 93-6876, 1996 U.S. Dist. LEXIS 18849, at *10 (S.D.N.Y. Dec. 19, 1996) (internal citations omitted). The documents at issue here were not shared with any potential adversary. Therefore, the protections of the work product privilege were not waived when the documents were shared with Paul Weiss pursuant to the MOU process.

KPMG also fails to show a "substantial need for the materials to prepare its case" and that it is unable "without undue hardship, [to] obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Even if it had shown as much, KPMG would not be entitled to "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" that are at issue here. Fed. R. Civ. P. 26(b)(3)(B); *see also Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981) ("such work

product [attorney's opinions and mental impressions] cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship").

II. **THE PUBLICATION OF THE PAUL WEISS REPORT DID NOT GIVE RISE TO SELECTIVE WAIVER BECAUSE PAUL WEISS DID NOT RELY ON OR REFER TO THE WITHHELD DOCUMENTS IN ITS REPORT.**

KPMG next argues that by releasing the Paul Weiss Report to the public and by "embracing" the findings contained therein, Fannie Mae has waived privilege with respect to each and every document that Paul Weiss reviewed during its internal investigation. No case has ever found such a sweeping waiver of privilege. Indeed, it is well-settled that the publication of a report of an internal investigation waives privilege only to the report itself, and not the underlying work that went into generating the report. *See Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 518 (N.D. Ill. 2005) (concluding that a corporation did not waive work product when it released a 513-page report resulting from outside counsel's investigation into allegedly improper payments made to executives); *see also Ziner v. Cedar Crest College*, No. 04-3491, 2006 U.S. Dist. LEXIS 34858, at *16 (E.D. Pa. May 30, 2006) (holding that, although defendant's disclosure of an internal investigative report prepared by its attorney "waiv[ed] any work-product protection as to that report," the attorney's "underlying notes, communications to the college and documentary compilations" were privileged work-product documents).

Here, all of the documents that Paul Weiss cited in its report have been produced in this litigation and made available to KPMG. Many were actually attached to the public version of the report. KPMG does not and cannot point to a single document that Paul Weiss cited in its report that has not been produced. KPMG points to no evidence that Paul Weiss relied upon any of the privileged documents that it seeks here to support the findings in its report. Even if it did, that would not constitute a waiver because Paul Weiss has not disclosed their content and

14

therefore they would *still* be protected from disclosure pursuant to the reasoning set forth in the *Hollinger* and *Ziner* opinions.

Despite KPMG's assertions to the contrary, Fannie Mae has not used the Paul Weiss Report or any of the requested privileged documents as a "sword" to pursue its case against KPMG. *See Hollinger*, 230 F.R.D. at 518 (no waiver where "Hollinger has not taken affirmative steps to inject the Special Committee Report or the materials used to create it into this litigation. The Report has not been used offensively in this litigation. Hollinger has not cited the Special Committee Report in the complaint or any other pleading in this action."). KPMG offers no evidence that Fannie Mae is relying on the Paul Weiss Report itself to support Fannie Mae's claims against KPMG. Fannie Mae and KPMG are, however, equally entitled to use as they see fit in this litigation the documents that Paul Weiss used to support its own conclusions. But KPMG can cite to no actual evidence that Fannie Mae has used or intends to use the documents at issue here – those withheld from production to any third party pursuant to the MOU process – as either a sword or a shield in this litigation. Absent such evidence, KPMG's sword/shield argument must fail.

Additionally, selective waiver by its very terms requires that there have been some previous disclosure, usually to a government agency. *See e.g.*, *Permian Corp. v. United States*, 665 F.2d 1214, 1219 (D.C. Cir. 1981). The record shows that there was no such disclosure here – in fact, Fannie Mae took very careful steps to ensure that the privileged documents KPMG now seeks remained privileged throughout the MOU process. *Cf. In re Royal Ahold N.V. Securities & ERISA Litigation*, 230 F.R.D. 433, 437-38 (D. Md. 2005) (holding that a defendant company had to produce interview memoranda from an internal investigation in part because it had already disclosed information offensively to improve its position with investors and regulatory agencies).

Because the documents that KPMG seeks were never disclosed to any party to any civil or regulatory proceeding, the Court should reject KPMG's selective waiver argument.

## **CONCLUSION**

Because Fannie Mae entered into a privileged and confidential relationship with Paul Weiss and did not disclose the documents requested by KPMG to any third party, the Court should deny KPMG's motion to compel.

Dated: April 3, 2009                                                                  Respectfully submitted,


   /s/ Michael J. Walsh, Jr.
Jeffrey W. Kilduff (D.C. Bar No. 426632)
Robert M. Stern (D.C. Bar No. 478742)
Michael J. Walsh, Jr. (D.C. Bar No. 483296)
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
T: 202/383-5300
F: 202/383-5414

*Counsel to Defendant Fannie Mae*

## **CERTIFICATE OF SERVICE**

I certify that on April 3, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record in this matter who are registered on the CM/ECF.

                                                                   /s/ Michael J. Walsh, Jr.
                                                                   Michael J. Walsh, Jr.