IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE FANNIE MAE SECURITIES LITIGATION | No. 1:04-cv-01639 (RJL) |
| FRANKLIN MANAGED TRUST *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION *et al.*,<br><br>*Defendants*. | No. 1:06-cv-00139 (RJL) |

**KPMG LLP'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL MATERIALS FROM PAUL WEISS'S SPECIAL INVESTIGATION OF FANNIE MAE**

Both Fannie Mae and Paul Weiss, in opposing the production of materials from Paul Weiss's independent special investigation of Fannie Mae, rest their arguments on case law, and underlying principles of attorney client privilege and work product protection, foreign to the type of investigation contemplated by—and ultimately carried out under—Fannie Mae's agreement with OFHEO. The Special Review Committee (SRC) of the Fannie Mae Board did not bring in a new law firm to give it confidential legal advice or even to conduct the sort of confidential internal investigation that many audit committees have supervised over the past few years. Instead, Paul Weiss was brought in to perform a non-confidential investigation—an investigation conducted in plain view of the regulators from the planning stages through to the final report. Despite Fannie Mae's best efforts to portray Paul Weiss's special investigation as the product of a traditional attorney-client relationship, it was not.

This unique role for Paul Weiss is reason enough to reject claims of privilege over materials it reviewed, prepared, and relied upon in first conducting its investigation at Fannie Mae and then reporting its findings and conclusions. Fannie Mae elected to release the full report of Paul Weiss's independent review, but has only disclosed a select few of the documents that Paul Weiss either received or prepared in the course of its work. But Fannie Mae cannot have it both ways—trumpeting the Rudman Report as an exhaustive review of issues that are relevant to this litigation, while continuing to withhold the materials that Paul Weiss reviewed in order to form and present its conclusions. Fair access to such materials is needed in this very case to counter a number of those conclusions. This Court should grant such access based on the rule in this Circuit that selective waiver of otherwise privileged materials is not permitted.

### I. Paul Weiss's Work As Independent Investigator Of Fannie Mae Was Not Cloaked With The Protections Of Either The Attorney-Client Communications Privilege Or The Work Product Doctrine.

The basic premise of Fannie Mae's and Paul Weiss's opposition to production of documents is wrong. This engagement was not the same as any other, and this investigation was not the same as any other. Attorneys entering into a confidential relationship do not give government regulators "access independent of" the client to "meet with and review work plans and product of" the attorney. *See* KPMG Mot. at 6 (quoting Exh. 2: OFHEO/Fannie Mae Agreement). And such attorneys are not required to be "transparent" with third parties, much less to maintain that transparency "through the entire period" of the attorneys' work. *See* KPMG Mot. at 7 (quoting Exh. 5: Statement of Fannie Mae's Board Chairman to Congress). An attorney conducting an investigation for a client is not normally required from the outset of the engagement to share "interim" and "draft" reports with third parties. OFHEO/Fannie Mae Agreement at 7. In short, the client in a confidential attorney-client relationship, and the attorney

2

performing work in anticipation of that client's litigation, do not normally waive—from the very outset of the relationship—the right to keep the attorney's processes and results confidential.

This Circuit has made clear that "[c]ourts need not allow a claim of privilege when the party claiming the privilege seeks to use it in a way that is not consistent with the privilege." *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982). As in that case, Fannie Mae's agreement to cooperate with OFHEO "in determining the facts" was "intended to alter the adversary relationship." *Id.* at 825. And here, as in *In re Sealed Case*, "[t]ogether the parties were to seek the truth." *Id.*[1]

---

[1] *See* Exh. 2 to KPMG Mot. (OFHEO/Fannie Mae Agreement) at I, ¶ 4(a) ("The Board shall cause to be conducted a review of accounting policies and other corporate policies to ensure that they accurately reflect the Board's objectives in complying with law and regulation and in overseeing the operations of Fannie Mae."), *id.* at III ("The Board shall cause to be conducted an independent review of organizational, structural and staffing and control issues . . .and fostering a culture of adherence to proper corporate policies . . . ."), *id.* at VI ¶ 2(a) ("The Board . . . shall hire . . . an independent counsel and an independent accounting firm . . . [to] immediately commence a comprehensive review of the company's accounting policies and practices to ensure they accurately reflect the Board's objectives in complying with law and regulation and in overseeing the operations of Fannie Mae.").

These circumstances of Paul Weiss's relationship with Fannie Mae sharply distinguish Paul Weiss from counsel hired to represent a client in litigation or in anticipation of litigation. Indeed, Fannie Mae had (and continues to have) separate counsel for those purposes. Paul Weiss was hired to play an entirely different role, unrelated to preparing Fannie Mae for litigation. *See, e.g., In re The Leslie Fay Cos., Inc., Sec. Litig.*, 161 F.R.D. 274, 279-81 (S.D.N.Y. 1995) (rejecting work product protection for documents created in connection with a report, commissioned by the board of directors and provided to several government investigators, because the report was prepared primarily for non-litigation purposes, *i.e.*, determining the magnitude of a fraud; implementing new financial structure, organization, reporting, and internal control systems, making personnel decisions, and reassuring interested parties that the persons culpable and the suspect internal policies were being vigorously sought and rooted out). It is plainly the case that, "had there been no ongoing or anticipated litigation," Fannie Mae "would have conducted an investigation anyway." *Id*. at 281 (reaching that conclusion because, while "potential legal liability played a part in the investigation's undertaking, significant other factors were clearly present"). *Id.*

Inserting a handful of self-serving statements into the documents does not and cannot change these facts. *See, e.g., Permian Corp. v. United States*, 665 F.2d 1214, 1222 (D.C. Cir. 1981) (the party's sharing of documents was incompatible with continued survival of the privilege "[r]egardless of [the party's] intent to preserve the privilege as against" an adversary agency). Not surprisingly, neither Fannie Mae nor Paul Weiss can find a case where a court upheld a privilege claim in these circumstances—it is quite likely that there never has been a situation quite like this one. Instead, they fall back on citing several cases—mostly from other districts and circuits—for broad propositions about internal investigations. None upheld a claim of privilege where the client promised the regulator access to the attorney (independent of and unimpeded by the client) at every step of the investigation. KPMG Mot. at 6 & exh. 2 at 7. Those facts alone set this case apart from all of the others on which Paul Weiss and Fannie Mae rely. *Cf. In re: Cardinal Health, Inc. Sec. Litig.*, No C2 04 575 ALM, 2007 WL 495150 (S.D.N.Y. Jan. 26, 2007), *Lawrence E. Jaffee Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412 (N.D. Ill. 2006).

Any claim that Paul Weiss's relationship with Fannie Mae was the same as any other attorney-client relationship, or that its investigation was the same as any other internal investigation, is mere talk. Companies do not routinely run investigations in full view of the government. Law firms representing clients in connection with regulatory investigations, or in anticipation of litigation, do not give the clients' regulators and other potential adversaries regular updates and information about their investigation of the client. *See, e.g.*, PW 00025329, Exhibit 1 (filed under seal) (E-mail from Paul Weiss to OFHEO, providing draft index of first installment of documents to be provided to OFHEO); PW 9049, Exhibit 2 (filed under seal) (E-mail from Paul Weiss to the SEC, DOJ, and OFHEO providing a list of interviews for the

4

upcoming week with the name of each interviewee and topics to be covered).  Having done so (and done so for its own purposes, as the next section explains), Fannie Mae cannot turn around and claim that this relationship was "confidential" from KPMG.  As a result, the documents Paul Weiss considered or prepared during its investigation are not protected by any privilege.

> II. **Fannie Mae's Selective Waiver Of Privilege Also Requires Disclosure Of The Remaining Materials Reviewed Or Prepared By Paul Weiss During Its Independent Investigation.**

Even if any privilege could have applied to the contested documents during the course of Paul Weiss's investigation, such protection was waived by Fannie Mae's selective disclosure of privileged material.  Under this Circuit's established waiver rule, selective disclosures require production of materials covering the same subject matter as those that were disclosed.  These principles apply as well to materials for which work product protection is asserted, because this Circuit does not tolerate strategic abuse of the work product doctrine.  *See In re: Sealed Case* 676 F.2d at 819.[2]

---

[2] Paul Weiss seeks to excuse its failure to provide a privilege log.  It suggests that one was unnecessary, and that it therefore can be forgiven for neglecting to prepare it, because, "in recognition" that the communications between the SRC and Paul Weiss were privileged, KPMG initially sought only a log and not the documents for which Paul Weiss continues to assert privilege. Paul Weiss Opp. at 7.  That is incorrect.  KPMG has always sought the documents themselves on the ground that there is no legitimate basis for withholding them. It requested a log in the more recent meet-and-confer communications because Paul Weiss made clear that it would continue to assert privilege.  But Paul Weiss declined even to create a log.  On February 13, 2009 and February 18, 2009, KPMG sent letters reiterating its position, and added that it was trying to identify any status or interim reports and/or presentations from Paul Weiss to the SRC, repeating that it only requested a log of substantive communications—not every email or phone message.  *See* Letter from M. Flanagan, Counsel, KPMG, to A. Oh, Paul Weiss (Feb. 13, 2009), attached as Exhibit 3; Letter from M. Flanagan, Counsel, KPMG, to A. Oh, Paul Weiss (Feb. 18, 2009), attached as Exhibit 4.  Despite these efforts by KPMG to assist in identifying and limiting the types of documents that needed to be logged, Paul Weiss still has not provided a log or filed a request

[Footnote continued on next page]

Fannie Mae and Paul Weiss admit that the SRC, with Paul Weiss's assistance, picked and chose which purportedly privileged materials would be disclosed to various regulatory bodies, the parties in this litigation, and the public. *See, e.g.*, Fannie Mae Opp. at 6-7, and Paul Weiss Opp. at 12. Paul Weiss explains that as the investigation proceeded, the SRC authorized Paul Weiss to release "certain limited work product materials"—memoranda of interviews conducted by Paul Weiss, among others—to certain regulators. Paul Weiss Opp. at 2. Pursuant to its instructions to "cooperate fully" with OFHEO and other government agencies investigating Fannie Mae at the time, Paul Weiss also provided "selected documents" that it discovered in the course of the investigation, and "selected memoranda" that summarized witness interviews. *Id.* at 5-6. Not only was a "selected" set of these materials provided to a number of regulators, they were provided to the parties in this litigation.

That Fannie Mae seeks the kind of strategic waiver refused by the courts is perhaps best illustrated by the continued refusal to produce notes or memoranda of interviews of three WilmerHale attorneys—Gregory Baer, Russell Bruemmer, and David Luigs. *See* KPMG Mot. at 15-16; Paul Weiss Opp. at 20-24; FM Opp. at 2 n.1. Paul Weiss interviewed 151 individuals during its investigation. Paul Weiss Opp. at 7. It memorialized each one with notes, a memorandum of interview, or both. Memoranda for the interviews of 145 of these witnesses have been produced in this litigation.[3] Also produced in this litigation is a 17-page letter from

---

[Footnote continued from previous page]
   to be excused from that obligation based on supposed undue burden. Paul Weiss's refusal to provide a log has made it more difficult to frame the issues for the Court.

[3] Paul Weiss states that it cannot locate its interview memoranda for three of the witnesses. Paul Weiss Opp. at 8 n.16 (Mehmood Nathani, Jose Villareal, and Chandler Williams). Presumably it intended to treat these witnesses the same as it treated the other 145, and

[Footnote continued on next page]

WilmerHale, which is discussed in the Rudman Report. *See* KPMG Mot. at 15-16. In this letter, WilmerHale explains what its lawyers (including those whose notes or memoranda of interview are being withheld) told Paul Weiss in these interviews. *See* Letter from William R. McLucas and Charles E. Davidow, Counsel To Fannie Mae, To Warren B. Rudman (Dec. 23, 2005) ("Wilmer Hale Letter"), Exhibit 5 (filed under seal; discussing statements by Mr. Baer and Mr. Bruemmer to Paul Weiss) (FM SRC 01397348-364; PW 13846-862).

Neither Fannie Mae nor Paul Weiss offers a principled basis for treating notes or memoranda of the final 3 witnesses differently than the other 148. Paul Weiss claims it "made no 'testimonial' use of the information obtained during the WilmerHale interviews in its report." Paul Weiss Opp. at 22. In the first place, the claim is incorrect. Not only did Paul Weiss "consider[] the information obtained from the WilmerHale Interviews" in reaching its conclusions, Paul Weiss Opp. at 22, the Rudman Report specifically mentions the topics that Paul Weiss's attorneys discussed with the WilmerHale attorneys during their interviews. *See* Rudman Report at 582-587 (Feb. 23, 2006), attached as Exhibit 6.[4]

---

[Footnote continued from previous page]
would have produced their interview memoranda had the memoranda not been misplaced. KPMG therefore requests any notes and summaries that Paul Weiss has of these interviews.

[4] The letter, which Paul Weiss and Fannie Mae have disclosed rather than try to withhold on privilege grounds, includes even more. For example, pages 10 through 14 contain a section in which the WilmerHale lawyers describe their distinct recollection, which is directly contrary to the recollections of others as set forth in the Rudman Report, that experts from another accounting firm opined in 2004 that Fannie Mae's accounting was based on defensible judgments and that no restatement was necessary. Wilmer Hale Letter at 12. The statements of the witnesses from WilmerHale are therefore of great importance to KPMG's case. For Fannie Mae and Paul Weiss to refuse to provide notes of the recollections expressed by WilmerHale's lawyers when they were interviewed by Paul Weiss is nothing short of calculated, selective waiver.

More importantly, trying to maintain a privilege by deciding which materials to make "testimonial use" of, and which ones not to, is precisely the type of practice this Circuit's attorney work product waiver rules disallow. Attorney work product protection is designed to balance the needs of an adversary system. *See Hickman v. Taylor*, 329 U.S. 495, 508-512 (1947). In cases of inadvertent disclosure, only the disclosed documents lose their protection. *See* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024 (2d ed. 1987). But there is nothing inadvertent or limited here. When an "objective consideration of fairness negates [the] assertion of privilege," waiver of the privilege (if there ever was one) can and should be found. *In re: Subpoenas Duces Tecum*, 738 F.2d at 1371 (internal quotations omitted) (finding, *inter alia*, implied waiver because the party claiming protection sought to use it in a way that was not consistent with the purpose of the privilege). As this Circuit has held, the adversary system "would not be well served by allowing [parties] the advantages of selective disclosure." *Id.* at 1372.

Waiver is not, as Paul Weiss would have it, limited to those documents mentioned in a disclosed report. *See* Paul Weiss Opp. at 19 n.41. In *In re Sealed Case*—consistently reaffirmed precedent in this Circuit—the court of appeals affirmed the district court's application of the doctrine of implied waiver. The district court found that privilege was waived as to certain undisclosed items because, although much of the information found in the items had already been disclosed, the undisclosed information "exposed the enchanted nature of [the] tale" found in the report that the company's special committee submitted to the regulator. 676 F.2d at 817. As the D.C. Circuit explained, the issue is whether one would consider the items "necessary to a fair evaluation of the report." *Id.* at 821 (also noting that under the applicable disclosure program,

"anyone reading the report could . . . expect it to reflect any relevant material in files that Y should have provided to the investigators").

Fannie Mae and Paul Weiss cannot avoid the waiver rule articulated in *In re Sealed Case*. In that case the party—a public company—voluntarily submitted a report to its regulator and then tried to hand-pick the underlying documents it would disclose. In finding waiver, the Court considered the "express assurances [the c]ompany offered regarding the completeness of the final report" and the "importance of specific documents for a fair evaluation of [the c]ompany's voluntary disclosure." *Id.* at 818. Fannie Mae, like the company in that case, made a conscious decision to cooperate with its regulator in generating a purportedly unvarnished report about conduct at the company. And, like the company there, Fannie Mae cannot shield documents of its own choosing.

Even more, Fannie Mae has consistently relied on the thoroughness of Paul Weiss's investigation to defend its conduct in the eyes of its regulators and others. *See* Tr. of Fannie Mae Investor/Analyst Conference Call, at 2 (Feb. 23, 2006) ("Our Board gave Paul, Weiss unrestricted authority to take this investigation wherever it led and to leave no stone unturned. Paul, Weiss's team . . . did exactly that. There were over four million documents reviewed[.]"); *see also* OFHEO Report of the Special Examination of Fannie Mae: Hearing Before the S. Comm. on Banking, Housing and Urban Affairs, 109th Cong. (June 15, 2006) ("The Board directed that the work of Paul, Weiss be transparent to OFHEO, the SEC and the Department of Justice through the entire period of review.") The report itself declares that Paul Weiss "made over 400 document requests of the Company and its agents," and that "during the course of the investigation . . . Paul, Weiss and Huron professionals reviewed over 2 million pages of

9

hardcopy documents and approximately 2 million electronic documents," in addition to on-site inspections. *See* Rudman Report at 13.

Fannie Mae cannot enjoy the benefits that came with giving Paul Weiss unrestricted authority to take its investigation wherever it would lead with no stone unturned, while at the same time refusing to accept that Paul Weiss necessarily relied on the privileged materials it now seeks to avoid producing. *See, e.g.,* Fannie Mae Opp. at 14 ("KPMG points to no evidence that Paul Weiss relied upon any of the privileged documents that it seeks here to support the findings in its report."); *see also* Paul Weiss Opp. at 18. The validity of Paul Weiss's findings and conclusions depends just as much on its judgment to credit some of the information it considered as it does on its judgment not to credit other information. Given Fannie Mae's decisions, it may not assert privilege for either category of materials.

## **CONCLUSION**

For the reasons stated above and in the motion, KPMG respectfully seeks an order compelling Fannie Mae and Paul Weiss to produce all documents Fannie Mae provided to, or received from, Paul Weiss in connection with Paul Weiss's Special Investigation of Fannie Mae; all substantive communications between Paul Weiss and Fannie Mae during the course of the investigation; and the remaining, selectively withheld interview memoranda (or, in the absence of memoranda, notes) memorializing the Paul Weiss interviews conducted during its investigation.

DATED: April 17, 2009

                                       Respectfully submitted,

                                       /s/ F. Joseph Warin
                                       F. Joseph Warin (D.C. Bar No. 235978)
                                       Scott A. Fink (*pro hac vice*)
                                       Michael F. Flanagan (D.C. Bar No. 435942)
                                       Andrew S. Tulumello (D.C. Bar No. 468351)
                                       David Debold (D.C. Bar No. 484791)
                                       GIBSON, DUNN & CRUTCHER LLP
                                       1050 Connecticut Avenue, N.W.
                                       Washington, D.C.  20036
                                       Telephone: (202) 955-8500
                                       Facsimile: (202) 467-0539

                                       *Counsel for Defendant KPMG LLP*

**CERTIFICATE OF SERVICE**

      I hereby certify that I caused copies of the foregoing to be transmitted via electronic mail, and copies of exhibits filed under seal by United States Mail, to the following counsel:

| | |
|---|---|
| James R. Cummins<br>Melanie S. Corwin<br>Jean Marie Geoppinger<br>Waite, Schneider, Bayless & Chesley Co., L.P.A.<br>1513 Fourth & Vine Tower<br>One West Fourth Street<br>Cincinnati, OH 45202<br>*Counsel for Lead Plaintiffs* | Daniel S. Sommers<br>Cohen, Milstein, Hausfeld & Toll P.L.L.C<br>West Tower, Suite 500<br>1100 New York Ave., N.W.<br>Washington, D.C. 20005<br>*Counsel for Plaintiffs Vincent Vinci; State Teachers Retirement System of Ohio; Anne E. Flynn; Robert L. Garber* |
| Frank J. Johnson<br>Johnson Bottini, LLP<br>655 W. Broadway, Suite 1400<br>San Diego, CA 92101<br>*Counsel for Plaintiff Sassan Shahrokhinia* | Robert W. Liles<br>Liles Parker, PLLC<br>4400 MacArthur Blvd., N.W.<br>Suite 203<br>Washington, DC 20007<br>*Counsel for Plaintiff Sassan Shahrokhinia* |
| Jeffrey W. Kilduff<br>Michael J. Walsh, Jr.<br>O'Melveny & Myers LLP<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>*Counsel for Defendants Fannie Mae, Thomas P. Gerrity, Taylor C. Segue, III, William R. Harvey, Joe Pickett, Kenneth M. Duberstein, Manuel Justiz, H. Patrick Swygert, and Leslie Rahl* | Steven M. Salky<br>Eric R. Delinsky<br>Ellen D. Marcus<br>Caroline E. Reid<br>Zuckerman Spaeder LLP<br>1800 M Street, N.W., Suite 1000<br>Washington, D.C. 20036-5807<br>*Counsel for Defendant Timothy J. Howard* |
| Kevin M. Downey<br>Alex G. Romain<br>Joseph M. Terry, Jr.<br>John E. Clabby<br>Williams & Connolly LLP<br>725 Twelfth Street, N.W.<br>Washington, D.C. 20005-5091<br>*Counsel for Defendant Franklin D. Raines* | David S. Krakoff<br>Christopher F. Regan<br>Adam B. Miller<br>Heather H. Martin<br>Mayer Brown LLP<br>1909 K Street, N.W.<br>Washington, D.C. 20006-1101<br>*Counsel for Defendant Leanne G. Spencer* |

William H. Jeffress
Julia E. Guttman
Nicholas A. Brady
Baker Botts LLP
The Warner
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
*Counsel for Defendant Jamie S. Gorelick*

Rhonda D. Orin
Anderson Kill & Olick, P.C.
2100 M Street, N.W. Suite 650
Washington, D.C. 20037
*Counsel for Defendant Leslie Rahl*

John H. Doyle, III
Reed Smith LLP
599 Lexington Ave.
New York, NY 10022-7650
*Counsel for Defendant Leslie Rahl*

James D. Wareham
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W., Suite 12
Washington, D.C. 20005
*Counsel for Defendant Daniel H. Mudd*

Shannon Ratliff
Ratliff Law Firm, PLLC
600 Congress Avenue
Suite 3100
Austin, TX 78701
*Counsel for Manuel Justiz*

Barbara Van Gelder
Morgan, Lewis & Bockius LLP
111 Pennsylvania Ave., NW
Washington, DC 20004
*Counsel for Defendants Anne M. Mulcahy and Frederic V. Malek*

Cristen Sikes Rose
Edward S. Scheideman III
John J. Clarke, Jr.
DLA Piper US LLP
500 Eighth Street, N.W.
Washington, D.C. 20004
*Counsel for Defendants Stephen B. Ashley, Donald B. Marron, and Ann Korologos*

David I. Ackerman
James Hamilton
Bingham McCutchen LLP
2020 K Street, N.W.
Washington, D.C. 20006
*Counsel for Defendant Joe Pickett*

| | |
|---|---|
| Seth Aronson<br>O'Melveny & Myers LLP<br>400 South Hope Street, 15th Floor<br>Los Angeles, Ca. 90071<br>*Counsel for Defendant Fannie Mae,*<br>*Thomas P. Gerrity, Taylor C. Segue, III,*<br>*William R. Harvey, Joe Pickett, Kenneth M.*<br>*Duberstein, Manuel Justiz, H. Patrick*<br>*Swygert, and Leslie Rahl* | Ian H. Gershengorn<br>Jerome L. Epstein<br>Jenner & Block<br>1099 New York Avenue, NW<br>Suite 900<br>Washington, DC 20001-4412<br><br>*Counsel for Fannie Mae* |
| William K. Dodds<br>Neil A. Steiner<br>Dechert LLP<br>30 Rockefeller Plaza<br>New York, NY 10112<br>*Counsel for Defendant Thomas P. Gerrity* | J. C. O'Malley<br>Michael J. Avenatti<br>Eagan O'Malley & Avenatti, LLP<br>450 Newport Center Drive, 2nd Floor<br>Newport Beach, CA 92660<br>*Counsel for Fannie Mae* |
| Alex Young K. Oh<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>2001 K Street, N.W.<br>Washington, D.C. 20006 | |

                                            /s/ David Debold_____