UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
In re Fannie Mae Securities Litigation  )   Consolidated Civil Action
                                        )   No. 1:04CV01639 (RJL)
                                        )
_____)
                                        )
Fannie Mae,                             )
      *Plaintiff*,                      )   Case No. 1:06CV02111 (RJL)
                                        )
v.                                      )
                                        )
KPMG LLP,                               )
      *Defendant*.                      )
_____)

**REPLY MEMORANDUM IN SUPPORT
OF FANNIE MAE'S MOTION TO COMPEL KPMG'S
PRODUCTION OF DOCUMENTS RELATED TO THE
PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD**

**INTRODUCTION**

In its opening brief, Fannie Mae demonstrated that the Sarbanes-Oxley Act cannot be invoked by an auditor to protect PCAOB-related documents in the auditor's possession. Otherwise, the Act's structure and language as a whole would make no sense. KPMG, in response, offers a variety of arguments to support its effort to withhold documents reflecting what it told its regulator about audits of Fannie Mae, and what its regulator concluded about KPMG audit weaknesses. None of those responses has merit.

KPMG's main argument, that the "plain language" of the statute supposedly supports its position, is contradicted not only by the Act's language as a whole, but also by KPMG's own conduct in this case. Put simply, the statute cannot possibly mean what KPMG contends — that any workpaper or other audit document "received by" the Board is absolutely exempt from

1

discovery no matter who else has copies. If that were true, then KPMG would not have produced workpapers regarding Fannie Mae in this case. As the statute as a whole makes clear, only documents in the hands of the Board are exempt from discovery.

KPMG also speculates that the production of transcripts in civil litigation under a protective order will make audit firms reluctant to cooperate with the PCAOB. However, KPMG fails to explain that the PCAOB has subpoena power, unlike its predecessor, the Public Oversight Board ("POB"). And KPMG does not even attempt to address the fact that issuers and auditors regularly cooperate with the SEC even though they know that SEC transcripts are routinely produced in private litigation. KPMG does not argue, for instance, that it was reluctant to provide truthful information to the SEC about its audits of Fannie Mae even though it knew the SEC transcripts could be (and ultimately were) produced in litigation. There is no policy reason to treat transcripts of testimony taken by the PCAOB, which reports to the SEC, any differently.

Turning to the PCAOB Inspection Report Documents (as opposed to the investigative documents), KPMG argues that Fannie Mae is seeking to embark on a "fishing expedition." But seeking production of the full versions of reports already released to the public in partial form – reports that refer to KPMG audit problems with the *same* accounting standards at issue in the instant litigation – is hardly a "fishing expedition." It is undisputed that the documents exist and discuss KPMG's audits of accounting issues such as hedge accounting, and KPMG has not argued that producing the complete versions would be the least bit burdensome.

Fannie Mae's motion to compel therefore should be granted.

## ARGUMENT

### I. THE SARBANES-OXLEY ACT DOES NOT ENTITLE KPMG TO WITHHOLD PCAOB-RELATED DOCUMENTS IN ITS OWN POSSESSION.

Fannie Mae's opening brief demonstrated that the Sarbanes-Oxley Act does not confer upon KPMG the right to withhold PCAOB-related documents in KPMG's possession. KPMG's principal response is to claim that the plain meaning of Section 105(b)(5)(A) of the Act compels the conclusion that the documents at issue here – including testimony by KPMG about the events at the heart of this litigation – are protected from discovery not just in the hands of the Board, but also after the transcripts have been released to KPMG. *See* KPMG's Opposition to Fannie Mae's Motion to Compel Production of Documents Related to the Public Company Accounting Oversight Board 7-8 ("KPMG Br.") (Case 1:04-cv-1639-RJL, D.E. 712). None of KPMG's contentions withstands scrutiny.

**KPMG's "plain language" argument.**

KPMG's contention that the "plain language" of the statute supports its view is contradicted not only by the very language upon which it relies, but also by KPMG's own conduct in this case. According to KPMG, the statute is clear that all documents "received by," "prepared by," or "prepared for" the Board are exempt from discovery, *regardless of who possesses them*. Thus, in KPMG's view, as long as copies of the transcripts and other items sought here were at some point prepared for, prepared by, or received by the Board, they are absolutely protected from discovery — and not only when they are in the hands of the Board, but also when they are in the hands of the entity that created them or that received them from the Board or from a court reporter.

The problem for KPMG is that the statute cannot mean that, as KPMG's own conduct in this case demonstrates. If the statute meant what KPMG now says, then auditing firms could

3

insulate from discovery their workpapers, internal correspondence, and audit analyses by the simple expedient of sending copies to the PCAOB – because those documents would then be "received by" the Board. Indeed, auditors such as KPMG would be delighted to send every conceivable paper associated with their audits to the PCAOB because, under KPMG's theory, the instant the document hits the Board's hands, all copies of that document, whether held by KPMG or anyone else, automatically become non-discoverable in any litigation in the United States.

KPMG's conduct belies its "plain language" argument. KPMG has produced in this litigation workpapers and other audit-related documents involving Fannie Mae that it also produced to – and that were "received by" – the PCAOB. KPMG does not even attempt to assert that those documents are immune from civil discovery on the ground that they were "received by" the PCAOB.

The reason why KPMG does not display the courage of its convictions is because the Act's language means no such thing. Under a plain meaning approach to statutory interpretation, courts must look not only to "the particular statutory language at issue," but also "the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Thus, even assuming that the documents at issue here are understood to have been "prepared or received by or specifically for the Board," the extent of their "confidential and privileged" status cannot be determined in isolation from the remainder of the statute.

The remainder of the statute demonstrates why the result urged by KPMG makes no sense. Section 105(b)(5)(B), which provides that documents can be provided to certain agencies without the loss of their status as "confidential and privileged in the hands of the Board," confirms that the "confidential and privileged" status set forth in Section 105(b)(5)(A) is not

universal, but instead applies only when documents are "in the hands of the Board." Moreover, if the materials described in Section 105(b)(5)(A) truly retained their "confidential and privileged" status regardless of whom the Board gives them to, then Congress would not have had to specify that the PCAOB may give those materials to certain enumerated entities (such as the SEC and state attorneys general) "[w]ithout the loss of [their] status as confidential and privileged." 15 U.S.C. § 7215(b)(5)(B); *see Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 698 (1995) (noting "reluctance to treat statutory terms as surplusage"). Finally, the fact that Congress omitted audit firms from the list of entities confirms that those materials, when given to an audit firm, *do* lose their status as confidential and privileged. *See* Fannie Mae's Motion to Compel KPMG's Production of Documents Related to the Public Company Accounting Oversight Board 6 ("Fannie Mae Br.") (Case 1:04-cv-0169-RJL, D.E. 707).

KPMG's response treats that provision as a nullity. According to KPMG, Section 105(b)(5)(B) merely gives the PCAOB the *power* to disclose documents to the agencies listed. KPMG Br. 12-13. But that does not explain why the statute provides that disclosure to those agencies will not result in the "loss of [the documents'] status as confidential and privileged," 15 U.S.C. § 7215(b)(5)(B), for if those documents remain privileged no matter who possesses them, Congress would have had no need to include this language. Under KPMG's interpretation, it is "surplusage." *Babbitt*, 515 U.S. at 698.

What is more, to avoid the implications of being omitted from the list of entities that may receive PCAOB documents "without the loss of [their] status as confidential and privileged," 15 U.S.C. § 7215(b)(5)(B), KPMG is forced to argue that the statute includes an implicit provision allowing audit firms to receive documents without the loss of their privileged status. KPMG Br.

5

13.  But the PCAOB release it cites addresses only whether the PCAOB is allowed to disclose those documents to audit firms, not whether they remain privileged after disclosure.  *See* PCAOB Release No. 2003-015, at A2-38 (Ex. A to Fannie Mae Br.) ("Rule 5108(b) reflects our understanding that the Act *authorizes the Board and its staff to disclose documents and information* (even if otherwise covered by Section 105(b)(5)(A)) as reasonably necessary to execute the Board's authority and responsibility to conduct fair investigations." (emphasis added)).  In arguing for an implicit addition of audit firms to the narrower list Congress selected in Section 105(b)(5), KPMG effectively abandons its reliance on the "plain language" of the statute.

**KPMG's Rule 5108 argument.**

KPMG fails to acknowledge the significance of the fact that the PCAOB, in promulgating Rule 5108 (which provides that investigation-related material shall be confidential "in the hands of the Board"), had every opportunity to adopt KPMG's reading of the statute but declined to do so.  KPMG characterizes Fannie Mae as "relying on unadopted comments from a regulatory rulemaking."  KPMG Br. 10.  However, what is significant is not the comments but the PCAOB's response to those comments.  Rather than allaying commenters' concerns by stating that the statute protects materials in an auditor's possession, as KPMG contends here, the PCAOB responded to the comments by expressly declining to confirm that the statute protects such materials.  KPMG offers no reason why the *agency's* view of its organic statute, expressed in the course of a rulemaking, is not entitled to any weight.

Moreover, in rejecting the commentators' proposed changes, the PCAOB demonstrated that it did not deem disclosure of investigation-related documents so antithetical to its goals that a change to its Rule was warranted.  If the PCAOB truly believed that it could not adequately

conduct investigations if materials given to audit firms were subject to civil discovery, it surely would have said so. The PCAOB's response contradicts KPMG's view that an audit firm's ability to invoke the Sarbanes-Oxley privilege is critical to the Board's successful functioning.

Moreover, in an attempt to suggest that the PCAOB in fact adopted KPMG's broad view of the scope of the privilege, KPMG quotes the PCAOB's statement that Rule 5108 "omits the Act's reference to an evidentiary privilege because . . . [t]he statute does not require an implementing rule." KPMG Br. 11 (quoting PCAOB Release No. 2003-015, at A2-40 (Sept. 29, 2003), *available at* http://www.pcaobus.org/rules/docket_005/release2003-015.pdf (ellipsis added by KPMG). But that statement by the PCAOB does not help KPMG: what the PCAOB stated, in full, was that Rule 5108 "omits the Act's reference to an evidentiary privilege because, *as to materials and information in the Board's hands*, any evidentiary privilege *the Board would assert* would necessarily be based on the Act. The statute does not require an implementing rule *in order for the Board to assert the privilege*." PCAOB Release No. 2003-015, at A2-40 (emphasis added). Quite clearly, the PCAOB's statement about the lack of a need for an implementing rule regarding documents "in the Board's hands" says nothing about whether anyone other than the Board can assert the privilege granted by Section 105(b)(4)(A).

**KPMG's legislative history argument.**

KPMG also seeks support from snippets of the legislative history of the Sarbanes-Oxley Act. KPMG Br. 3-5. But these are of little or no help to KPMG's position. As an initial matter, statements of individual witnesses at a committee hearing are the weakest sort of legislative history. *See Public Citizen v. Farm Credit Admin.*, 938 F.2d 290, 292 (D.C. Cir. 1991). In addition, the statements that KPMG cites, even if taken at face value, provide little support for its argument. KPMG quotes committee hearing testimony about, among other things, the need "to

7

keep the information gathered out of the hands of the litigating lawyers." KPMG Br. 4. But KPMG quotes only part of the sentence in question. In fact, referring to the "new agency," the witness stated that "*it must have the ability* to keep the information gathered out of the hands of the litigating lawyers." *Accounting Reform and Investor Protection: Hearing on S. 2763 Before the S. Comm. on Banking, Housing, and Urban Affairs*, 107th Cong. 377 (2002) (statement of John H. Biggs, CEO, TIAA-CREF) (emphasis added). That statement actually supports *Fannie Mae's* position, namely, that the privilege in Section 105(b)(5)(A) can be invoked only by the PCAOB to protect material in its own hands. And KPMG does not even mention the testimony of the POB's then-Chair, in the same hearing, that "[t]he POB recommends giving *the IIA* [the Independent Institute of Accountancy, a working name for what eventually became the PCAOB] the privilege of confidentiality." *Id.* at 942 (statement of Charles Bowsher) (emphasis added). Nor does it mention the statement in a POB "white paper" introduced in the same hearing that "[p]rivilege would give *the investigative entity* the authority to protect information it uncovers from outside demands." *Id.* at 987 (*The Road to Reform: A White Paper from the Public Oversight Board on Legislation to Create a New Private Sector Regulatory Structure for the Accounting Profession*) (emphasis added). None of the materials cited by KPMG addresses the issue here: whether documents in an auditor's possession or voluntarily released by the PCAOB to an audit firm are immune from civil discovery.

      **KPMG's Section 104(g)(2) argument.**

KPMG also seeks support from Sarbanes-Oxley Section 104(g)(2), which provides that each PCAOB inspection report shall be made public in a redacted form:

> A written report . . . shall be . . . made available in appropriate detail to the public (subject to [Section 105(b)(5)(A)], and to the protection of such confidential and proprietary information as the Board may determine to be appropriate, or as may be required by law), except that no portions of the inspection report that deal with

>criticisms of or potential defects in the quality control systems of the firm under inspection shall be made public if those criticisms or defects are addressed by the firm, to the satisfaction of the Board, not later than 12 months after the date of the inspection report.

15 U.S.C. § 7214(g)(2). To begin with, it is important to emphasize that this section does not relate to the PCAOB's *investigative* functions or the core issue addressed above: the ability of an audit firm to shield copies of deposition transcripts, such as the ones listed on KPMG's PCAOB log, from civil discovery when given to the audit firm. Rather, this section deals only with PCAOB *inspections*.[1] With respect to inspection reports, as the text makes clear, the PCAOB is required to make the reports public "subject to [Section 105(b)(5)(A)]"; that is, in releasing the public version of a report, the PCAOB may not include information that Section 105(b)(5)(A) prohibits it from disclosing.

The remainder of Section 104(g)(2) provides KPMG with no additional support. Most fundamentally, the "no portions . . . shall be made public" language merely limits the contents of the reports that the PCAOB releases to the general public on its website pursuant to its obligation under Section 104(g)(2). It does not even purport to place a limit on producing anything in civil discovery pursuant to a protective order, *i.e.*, a disclosure that is not public. For purposes of this case, the language in question is a red herring.

Moreover, even assuming that Section 104(g)(2)'s "no portions . . . shall be made public" language *does* provide protection from discovery, that language relates to only a narrow category of PCAOB findings. To create the impression that the inspection process requires all criticism to be cloaked in secrecy, KPMG asserts that Section 104(g) bars the PCAOB from disclosing "portions of the inspection report that deal with criticisms of . . . the firm under inspection."

---

[1] The same is true of the PCAOB's "supervisory" approach, its focus on "constructive engagement," and its preference for "the correction of quality control problems over the exposure of them." PCAOB Release 104-2006-077, at 2 (March 21, 2006), *available at* http://www.pcaobus.org/inspections/2006-03-21_release_104-2006-077.pdf.

KPMG Br. 14 (quoting 15 U.S.C. § 7214(g)(2); ellipsis added by KPMG).  That is a misstatement of the law: with a strategically placed ellipsis, KPMG has obscured the fact that Section 104(g) in fact bars the PCAOB from making public only a limited category of information, namely, "portions of the inspection report that deal with criticisms of *or potential defects in the quality control systems of* the firm under inspection . . . if those criticisms or defects are addressed by the firm, to the satisfaction of the Board, not later than 12 months after the date of the inspection report."  15 U.S.C. § 7214(g)(2) (emphasis added).  It is not all "criticisms of the firm" that are not publicized but, rather, only criticisms of the firm's quality control systems – and, even then, only when they are corrected within twelve months.  Section 104(g)(2) therefore does not reflect any sort of general congressional policy against disclosing PCAOB criticisms of an audit firm.  Indeed, for confirmation of the fact that many "criticisms of the firm" are routinely made public, one need only look to the partial criticisms of KPMG that the PCAOB's public reports set forth on various accounting and audit issues, including some of the very issues at the center of this litigation.  *See* Fannie Mae Br. 9-10.

**KPMG's other arguments.**

Much of the remainder of KPMG's brief focuses on matters that have nothing to do with whether Section 105(b)(5)(A) protects documents in an auditor's possession.  For instance, relying principally on sources that relate solely to PCAOB inspections, KPMG stresses that the PCAOB's efforts to oversee the auditing profession have proven successful.  KPMG Br. 6-7.  Whether that is true is highly debatable,[2] but it says nothing about the scope of the

---

[2] A number of commentators have concluded that the PCAOB has been ineffective, particularly with respect to audit failures by the "Big 4," and remains beholden to those firms. For example, following the recent announcement that the PCAOB's Chief Auditor and Director of Professional Standards was returning to KPMG – where he had been a partner prior to his stint with the PCAOB – a leading commentator on audit quality concluded: "Thomas Ray's

confidentiality provision of Section 105(b)(5)(B) (which, in any event, governs both inspections and investigations). Manufacturing a link between confidentiality and the PCAOB's success, KPMG maintains that "the confidentiality provisions have proven their worth by enabling the PCAOB to implement an approach of frank and constructive dialogue to improve auditor oversight," *id.* at 7. In fact, the speech on which KPMG relies for this point generally praises the "supervisory model" employed by the PCAOB for its *inspection* program (and *not* its investigations). It does not even mention confidentiality or privilege, let alone attribute PCAOB's successes to the confidentiality provisions. *See* Mark W. Olson, Chairman, PCAOB, The PCAOB Supervisory Approach and Current Market Challenges (Dec. 8, 2008), http://www.pcaobus.org/news_and_events/events/2008/speech/12-08_olson.aspx (describing "supervisory model" as one in which "[t]he PCAOB relies on its inspection teams to identify deficiencies and track remediation efforts").[3]

    KPMG also stresses that the confidentiality provision was intended to ensure that the PCAOB function more effectively than its predecessor, the POB. *See* KPMG Br. 3. In so arguing, KPMG seeks to create the impression that Fannie Mae's position amounts to a

---

triumphant return to KPMG, after exile at the PCAOB doing the profession's bidding, just about says it all on the subject of the effectiveness of the PCAOB and its willingness to enforce standards of audit quality, professional and ethical standards, and auditor independence." Francine McKenna, *Looking Out for Me, Myself, and I,* Re: the Auditors, *available at* http://retheauditors.com/2009/03/looking-out-for-me-myself-and-I (last visited April 14, 2009). With regard to an auditor's statements to the PCAOB, subjecting the statements to more rigorous examination in civil litigation may well be far more effective in encouraging higher quality audits and truthful testimony to the regulator. This motion should not, however, turn on policy debates about how best to prevent future audit failures; the point here is that KPMG's claim that audit quality will improve only if transcripts released to the auditor are kept secret from all others should be viewed with a heavy dose of skepticism.

[3] The so-called Center for Audit Quality ("CAQ"), an organization of accounting firms, has filed a motion for leave to file an amicus brief in support of KPMG's position. Fannie Mae is filing a separate opposition to that motion, noting, among other things, the close relationship between KPMG and KPMG's counsel, on the one hand, and the CAQ, on the other.

continuation of the old regime. Notably absent from KPMG's brief, however, is any description of what the POB actually was: not a statutorily created entity at all, but a private sector organization established by the accounting profession as part of its self-regulatory framework. *See, e.g.*, POB Charter (Feb. 9, 2001), http://www.publicoversightboard.org/charter.htm. The PCAOB is a separate organization that reports to the SEC and has the power of subpoena. What is more, with no statutory charter, the POB enjoyed no special privilege at all, and there would have been no impediment to seeking discovery of its own deliberative discussions in its possession.

In the end, KPMG recognizes that the scope of Section 105(b)(5)(A) is an issue of first impression, and it cites no case holding that a regulated party may refuse to produce transcripts showing what it told its own regulator about the events at issue in pending litigation. At a loss for parallels, KPMG is forced to cite two state law cases addressing privileges attaching to the results of hospital infectious disease committees' "self-evaluative processes" (KPMG Br. 8 n.8), even though a PCAOB investigation of auditor misconduct is not supposed to be "self-evaluative."[4] But if there is any relevant analogy, it is to the fact that when a party receives the transcript of his own testimony before the SEC – the very agency responsible for overseeing the PCAOB – that transcript becomes discoverable. *See* Fannie Mae Br. 3-4. That analogy confirms what the text and structure of the statute make clear, *i.e.*, that KPMG cannot invoke Section 105(b)(5)(A) to avoid discovery of documents in its possession.

---

[4] What is more, these cases do not even discuss whether the privilege attaches to records that have left the hands of the committees. *See In re K*, 561 A.2d 1063 (N.H. 1989); *Santa Rosa Mem'l Hosp. v. Superior Court*, 220 Cal. Rptr. 236 (Cal. Ct. App. 1985).

## II. THE INSPECTION REPORT DOCUMENTS ARE RELEVANT TO THE CLAIMS AND DEFENSES IN THIS LITIGATION.

In a single paragraph at the end of its brief, KPMG maintains that, independent of any privilege conferred by the Sarbanes-Oxley Act, the Inspection Report Documents are not discoverable because "they do not concern any audit of Fannie Mae." KPMG Br. 15. But KPMG's conclusory characterization of Fannie Mae's requests as a "fishing expedition," *id.*, is insufficient to place these documents outside the reach of Rule 26(b)(1). That Rule encompasses information "relevant to any party's claim or defense" as long as it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The PCAOB's publicly released inspection reports covering periods in which KPMG served as Fannie Mae's auditor criticized KPMG's performance in a wide array of accounting and audit areas. Many of those areas – such as derivatives accounting (FAS 133), amortization accounting (FAS 91), accounting for investments in securities (FAS 115), and consolidation of special purpose entities (FAS 125 and FAS 140) – are also ones in which Fannie Mae alleges that KPMG performed deficiently in its audits of Fannie Mae. *See* Fannie Mae Br. 9-10. KPMG thus severely understates the connection when it asserts that Fannie Mae's "proferred rationale" for discovery is that "that some of the accounting rules mentioned in the [inspection] reports are the same as some of the accounting rules that applied to the Fannie Mae audit." KPMG Br. 15. Given that even the public reports criticized KPMG's conduct in some of the same areas on which Fannie Mae's complaint focuses, it is hard to see how the non-public versions of those reports (as well as related documents) will not shed light on the issues at the core of this litigation.

Moreover, as Fannie Mae explained in its opening brief (Fannie Mae Br. 10-11), KPMG's defenses and counterclaims assert that it would have reached proper conclusions about Fannie Mae's accounting policies if only it had received adequate information about the policies. Although the claim that KPMG lacked knowledge of Fannie Mae's accounting policies borders on the incredible, information about how KPMG handled those same accounting issues for other audit clients plainly is relevant to these defenses and counterclaims: if KPMG dropped the ball for another client, it will be hard-pressed to explain why more information from Fannie Mae would have led it to do its job properly. KPMG's brief does not even attempt to respond to that point.

In short, the PCAOB's criticisms of KPMG's performance on other audits in the same time period are relevant to whether KPMG performed deficiently in its audits of Fannie Mae. And that conclusion is only reinforced by KPMG's injection of the argument that different information would have led it to perform properly on the Fannie Mae audit.

## CONCLUSION

For the foregoing reasons, Fannie Mae respectfully requests that this Court compel KPMG to produce the documents listed in the PCAOB Log and to produce the Inspection Report Documents.

      Respectfully submitted,

      _____/s/_____

      JENNER & BLOCK LLP

      Jerome L. Epstein (DC Bar #412824)
      Joshua M. Segal (DC Bar #975949)
      JENNER & BLOCK LLP
      1099 New York Avenue, NW
      Suite 900
      Washington, D.C. 20001
      (202) 639-6000 (voice)
      (202) 639-6066 (fax)

      Ronald L. Marmer
      C. John Koch
      JENNER & BLOCK LLP
      330 N. Wabash Avenue
      Suite 4400
      Chicago, IL 60611
      (312) 222-9350

Dated: April 17, 2009

## CERTIFICATE OF SERVICE

      I certify that on April 17, 2009, I electronically filed the foregoing Reply Memorandum in Support of Fannie Mae's Motion to Compel KPMG's Production of Documents Related to the Public Company Accounting Oversight Board with the Clerk Of Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

/s/

Jerome L. Epstein