## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————— |
In re Federal National Mortgage      |     **MDL No. 1668**
**Association Securities, Derivative and**   |
**"ERISA" Litigation**           |
———————————————————— |
                          |     **Consolidated Civil Action**
                          |     **No. 1:04-cv-01639 (RJL)**
**In re Fannie Mae Securities Litigation**   |
                          |
———————————————————— |

## OFHEO'S CONSOLIDATED OPPOSITION TO THE MOTIONS
## OF THE INDIVIDUAL DEFENDANTS AND KPMG TO COMPEL
## THE PRODUCTION OF PRIVILEGED DOCUMENTS

The Office of Federal Housing Enterprise Oversight ("OFHEO" or the "agency") submits its Consolidated Opposition to the Individual Defendants' Motion to Compel the Federal Housing Finance Agency to Produce Documents After *in Camera* Review (Dkt. No. 720) and KPMG LLP's Motion to Compel the Office of Federal Housing Enterprise Oversight to Produce Documents from the Court-Ordered Quick Peek Review (Dkt. No. 722). OFHEO respectfully requests that the Court deny the motions to compel the production of privileged documents.

## I.    __INTRODUCTION__

Under settled law, agency decisionmakers are entitled to conduct deliberations with staff to obtain opinions and advice to aid in their decision-making process. To maintain the privilege, an agency need not identify a final agency decision, if any even exists, in connection with the document. Rather, a document is protected by the privilege where the agency identifies what deliberative process is involved and the role played by the information in the documents at issue in the course of that process. Each of the documents at issue in the motions to compel falls squarely within the government's deliberative process privilege.

When considering the type and source of these documents, their predecisional and deliberative nature is clear.  The documents reflect information that was exchanged during the fluid decision-making process of individuals working at the agency, and the draft letters and draft memoranda that were attached to such emails.  None of the documents reflect the final, official position of the agency regarding any matter presented in the documents.  Rather, the documents reflect the opinions and recommendations of individual agency employees -- precisely the content that the deliberative process privilege was designed to protect.

In their motion, the Individual Defendants concede that many of the documents at issue are pre-decisional and deliberative.  *See, e.g.*, Individual Defs.' Mot. at Ex. 1 (arguing only "substantial need" regarding 30 of 68 documents).  For these documents, the only real issue for the Court to decide is whether the limited exceptions to the deliberative process privilege apply. They do not.  The Individual Defendants and KPMG argue that they have a substantial need for these documents to substantiate their purported legal defense that they reasonably relied on OFHEO's regulatory conclusions and, as such, that they lacked the scienter requisite to sustain plaintiffs' claims.  The claim of substantial need is completely discounted by the fact that OFHEO already produced its annual examinations and Special Examination of Fannie Mae containing the agency's conclusions, as well as the documents relied on to reach those conclusions.  Those documents are not at issue in these motions.  It has long been known to the parties in this litigation that the conclusions reached in the Special Examination departed from the conclusions of the earlier annual examinations.  Thus, there is no substantial need for privileged documents where the facts that the defendants purportedly need are already available to them.  Moreover, an *in camera* review of the documents will reveal that, in several instances, the documents pertain to topics, like internal personnel management, that are wholly irrelevant to

this litigation.  In any event, these documents were sent to only agency officials and consultants

and advisors of the agency, and these documents could not possibly have been relied upon by the

defendants.

The Individual Defendants and KPMG also argue that they are entitled to the documents,

over the application of the privilege, because these documents will help them establish a defense

rooted in allegations of government misconduct and political motivation.  As a threshold matter,

no misconduct occurred and these documents establish no such thing.  Further, the government

misconduct exception to the deliberative process privilege is well-defined in the caselaw and is

limited to cases where the cause of action is directed at the government.  That is not the case

here.  Third-party discovery is a grossly inappropriate means to explore causes of action that the

defendants speculate they might have against the government which have not been brought in

this case, and, indeed, could not be brought in this case.  Last, the defendants' arguments

presume, as a matter of law, that the government's alleged misconduct constitutes a valid legal

defense.  Whether the defendants may rely on their regulator as a defense for their own alleged

misconduct has not yet been decided in this case, but such a defense is contrary to an unbroken

line of established precedent.  Thus, there can be no "substantial need" for these documents, nor

can the documents be relevant, until it is determined as a matter of law that the proposed defense

is valid.  Otherwise, the Court may compel the production of privileged information, thereby

exposing the personal opinions of individual agency employees and placing those individuals on

trial (rather than the defendants), in violation of Rule 45 and the relevant caselaw.  The

Individual Defendants have long sought to divert this case away from their own conduct and to

put individual agency decisionmakers and their advisors on trial.  KPMG now seeks to join in

that strategy.  The Court should not countenance such a fishing expedition for an unfounded and impermissible defense by allowing the production of privileged information.

## II.  __RELEVANT BACKGROUND__

Currently at issue are 96 privileged documents that the Court compelled OFHEO to produce on a "sneak peek" basis pursuant to the terms of the Orders of January 22, 2008, (Dkt. No. 580) and of March 11, 2009 (Dkt. No. 706).  The resolution of the parties' challenges to these documents was placed on an expedited schedule in the March 11 Order.

On April 6, 2009, the Individual Defendants provided a list of documents they anticipated challenging.  That list consisted of 263 documents.  After reviewing the documents, OFHEO agreed not to maintain its privilege assertion over 156 of those documents.  Similarly, KPMG provided a list of 44 documents on April 6, 2009, and after reviewing the documents, OFHEO agreed not to maintain its privilege assertion over 16 of those documents and provided four others in redacted form.

Under the March 11, 2009, Order, the Individual Defendants filed a motion contesting 68 privileged documents (Dkt. No. 720) and KPMG filed a motion contesting 28 privileged documents (Dkt. No. 722).  Pursuant to the Order, OFHEO was afforded 10 days to respond to those motions.  After further review of the documents, OFHEO determined that it will not maintain its privilege assertion over seven (7) of the documents challenged under the Court-ordered "sneak peek" production.  OFHEO determined that it was possible to redact privileged information from several of the challenged documents and OFHEO provided the defendants with its proposed redactions to those documents.  OFHEO also identified three (3) documents from the defendants' "sneak peek" challenges that were inadvertently produced documents over which OFHEO is asserting the attorney-client privilege.  Thus, 86 documents challenged under the

4

March 11, 2009, Order are at issue and available to the Court for *in camera* review, if the Court should decide to review them.

The Individual Defendants have also attempted to challenge OFHEO's long-standing assertion of privilege over 60 additional documents that are not subject to the Court's March 11, 2009, Order. As the Individual Defendants admit, OFHEO previously logged on a privilege log and withheld these 60 documents pursuant to the deliberative process privilege. The production of these documents and the corresponding privilege logs pre-dates the Court's January 22, 2008, Contempt Order, which was issued to address OFHEO's failure to log documents on a privilege log by a Court-ordered deadline. These 60 documents have been identified on the agency's privilege logs for well over a year. The Individual Defendants, in fact, filed and withdrew a motion to compel over 600 documents in July 2007, which included 50 of the 60 documents they now challenge in their new motion to compel.[1] The Individual Defendants identified these documents on April 9, 2009, as part of a list of 326 documents they anticipated challenging in addition to the "sneak peek" documents.[2] The Individual Defendants never informed the Court or OFHEO that they had previously filed a motion challenging these documents. After an expedited review of the documents as part of the meet and confer process, OFHEO decided that it will not maintain its privilege assertion over 78 of the 326 documents. Of the remaining documents, the Individual Defendants then chose to challenge 60 in their motion to compel. After further review of the 60 documents, OFHEO has decided not to maintain its privilege assertion over 3 of those documents.

---

[1]    Although the defendants' challenges to these documents are not subject to the expedited briefing schedule set forth in the Court's March 11, 2009, Order, OFHEO responds herein to those challenges at this time.

[2]    The Individual Defendants previously included the 326 documents as part of a list of over 7,600 documents provided to the agency on April 2, 2009.

In all, there remain a total of 143 documents that are challenged in the motions to compel of the Individual Defendants (120 documents) and of KPMG (23 documents).

### III.     PROPOSED METHOD AND SCHEDULE TO RESOLVE THE CHALLENGES

In light of the above background, OFHEO respectfully proposes that the Court conduct an *in camera* review of the 86 documents subject to the Court's "sneak peek" orders of January 22, 2008, and March 11, 2009, along with a review of the Second Declaration of Alfred M. Pollard, FHFA General Counsel, in Support of the Assertion by OFHEO of the Deliberative Process Privilege, attached hereto as Exhibit A (the "Second Pollard Declaration").  The Second Pollard Declaration explains how each of these documents fits within the agency's decision-making process.  The Individual Defendants have not articulated why the specific documents they challenge are needed and the reason for the defendants' challenge to numerous documents is not identifiable from a review of the documents.  Without any articulation on a document by document basis, the defendants' stamps and notations on the individual documents themselves ring hollow.

Regarding the other 60 documents identified by the Individual Defendants, those documents were challenged in the motion to compel filed in July 2007, to which OFHEO responded with the detailed declaration of Alfred M. Pollard, OFHEO General Counsel (Dkt. No. 471-5).  Here, the agency has again supplemented its assertion of the deliberative process privilege with the Second Declaration of Mr. Pollard.  We suggest that the Court may decide whether specific documents should be released based on Mr. Pollard's declaration and the document descriptions attached thereto, and the privilege logs.  Should the Court wish to conduct an *in camera* review of any of these documents, OFHEO will provide them for such review with an appropriate order to allow for the continuing protection of the privilege.

In order to assist in the Court's analysis, OFHEO has provided a chart, attached as Exhibit B, that lists all of the documents placed at issue by the Individual Defendants and KPMG and cross-references the defendants' document numbers with the Second Pollard Declaration and its attached exhibits, which summarize each of the documents over which OFHEO has asserted privilege and which the defendants challenge.

## IV.   OFHEO HAS PROPERLY WITHHELD DOCUMENTS PURSUANT TO THE DELIBERATIVE PROCESS PRIVILEGE

The party asserting a privilege bears the initial burden of establishing the *prima facie* elements of the privilege.  Fed. R. Civ. P. 45.  Once those elements are established, the burden shifts to the party seeking production of the privileged information to prove that an exception to the privilege applies.  Here, OFHEO has met its burden to establish the necessary elements of the deliberative process privilege.

To assert the privilege, the government must establish that the information in the documents in question is both pre-decisional and deliberative.  *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) ("In deciding whether a document should be protected by the privilege we look to whether the document is 'predecisional' whether it was generated before the adoption of an agency policy and whether the document is 'deliberative' whether it reflects the give-and-take of the consultative process."); *Judicial Watch, Inc. v. U.S. Dept. of Commerce*, 90 F. Supp. 2d 9, 14 (D.D.C. 2000) ("To prove the applicability of the deliberative process privilege, an agency must show that the information sought is predecisional and deliberative.") (citing *Access Reports v. United States Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991)).  An agency need not identify a final agency decision taken, if any exists, in connection with a pre-decisional, deliberative document. *Judicial Watch, Inc.*, 90 F. Supp. 2d at 14 ("[A]n agency need not identify a specific final agency decision.  Instead, it is sufficient to

establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'") (quoting *Coastal States Gas Corp.*, 617 F.2d at 868); *see also Vaughn v. Rosen*, 523 F.2d 1136, 1146 (D.C. Cir. 1975) ("We are not saying that a 'final decision' is necessary for there to be a 'deliberative process' . . . ."). Rather, the information's role within the deliberative process provides its protection. *See Coastal States Gas Corp.*, 617 F.2d at 868 (citing *Vaughn*, 523 F.2d at 1144 ("pre-decisional materials are not exempt merely because they are pre-decisional; they must also be a part of the agency give-and-take of the deliberative process by which the decision itself is made.").[3]

When a government agency asserts the deliberative process privilege, courts in this Circuit have required that the agency supplement its logs with (1) a declaration by an agency official having control over the requested information asserting a formal claim of privilege; (2) assertion of the privilege based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege is claimed with an explanation why it properly falls within the scope of the privilege. *Landry v. FDIC*, 204 F.3d 1125, 1135 (D.C. Cir. 2000); *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988); *see also Schreiber v. Society for Savings Bancorp., Inc.*, 11 F.3d 217, 220 (D.C. Cir. 1993) (holding that district court may require submission of an index that correlates the agency's assertions of privilege to the information protected by the deliberative process privilege).

Here, OFHEO has met its obligations under Rule 45 and the applicable caselaw. OFHEO has created a detailed privilege log entry for each document withheld pursuant to the deliberative

---

[3]    Defendants imply that the deliberations or personal opinion that each privileged document contains must necessarily culminate in a final, agency law or policy. Mot. at 4. Defendants ignore the caselaw cited above that clearly explains that an agency need not identify a final agency decision in order for the privilege to apply. The rule proposed by Defendants discounts the reality of government decision-making recognized by countless courts and by this Circuit, *i.e.*, that every internal deliberation will not necessarily lead to a formal agency action or policy.

process privilege. Under the Stipulated Order, OFHEO created numerous privilege logs and

expended considerable resources to create them. OFHEO created logs for each of the 35 agency

personnel who were custodians of documents produced or withheld under the Stipulated Order.

Rather than burden the Court with literally thousands of privilege log entries, OFHEO has

created composite logs of only those documents challenged in the Individual Defendants' and

KPMG's instant motions to compel. The composite logs contain the same information provided

in the original logs and are attached hereto as Exhibits C, D, and E. Further, as discussed below,

the agency's assertions of privilege are supplemented by the Second Declaration of Alfred M.

Pollard, FHFA General Counsel. The Second Pollard Declaration further establishes that the

documents are pre-decisional and deliberative.[4]

While the emails and attached draft documents at issue were generated and maintained by

OFHEO, that agency's statutory mandate to ensure the safety and soundness of Fannie Mae has

since been assumed by the Federal Housing Finance Agency, ("FHFA"). The supervisory duties,

authorities and responsibilities of OFHEO with respect to Fannie Mae are now discharged by

FHFA personnel. The assertions made about the deliberative processes of OFHEO now apply

with equal force to the deliberations of FHFA officials. While OFHEO will be dissolved by

statute in August 2009, the privileges asserted by OFHEO remain critically important, since

release of privileged OFHEO documents would chill the deliberations of the FHFA employees

---

[4] The Individual Defendants assert in a footnote that the log entries are insufficiently detailed, in violation of Rule 45, and that the lack of detail constitutes an independent basis to compel the production of these specific documents. Individual Defs.' Mot. at 4, n.4. This assertion is not accompanied by any discussion or reference to the allegedly vague log entries and it appears that this is not a serious contention of the Defendants. In any event, the law in this Circuit is clear that the sanction for lack of detail in a privilege log is to require the agency to provide more robust information, not the wholesale waiver of the deliberative process privilege. *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 153 (D.C. Cir. 2006) (requiring the FDA to provide a more detailed explanation of its privilege entries). The remedy proposed by the Individual Defendants is draconian and not supported by caselaw. *Id.*; *see also Alexander I*, 186 F.R.D. at 112-113 (citing numerous deficiencies with party's privilege assertions and logs and ordering party to either produce documents in question or "fully support the claim that the document is privileged").

that are now performing the examination and supervisory duties once performed by OFHEO.

Indeed, many of the employees of OFHEO during the relevant period are now employees of

FHFA.  Failure to protect the privileged discussions and deliberations of OFHEO would have a

significant chilling effect on FHFA personnel, and would impede the ability of FHFA to carry

out its statutory responsibilities.

### A.    The Deliberative Process Privilege

The deliberative process privilege is a well established privilege unique to governmental

entities that acknowledges the need for government officials to engage in frank and uninhibited

exploration of agency matters.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975) ("long-

recognized privilege"); *Wolfe v. Dep't of Health and Human Servs.*, 839 F.2d 768, 773 (D.C.

Cir.1988) ("[T]he purpose of Exemption 5 is to encourage the 'frank discussion of legal and

policy issues.' ") (quoting S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)); *Judicial Watch, Inc.*,

90 F. Supp. 2d at 14 ("the privilege protects candid discussions within an agency"); *Cofield v.

City of LaGrange*, 913 F. Supp. 608, 615 (D.D.C. 1996) ("The deliberative process privilege,

which is well established in the law.").  The "privilege is predicated on the recognition that the

quality of administrative decision-making would be seriously undermined if agencies were

forced to operate in a fish bowl." *Judicial Watch, Inc.,*  90 F. Supp. 2d at 13-15 (quoting *Dow

Jones & Co. v. U.S. Dep't of Justice*, 917 F.2d 573 (D.C. Cir. 1990)).  Consequently, the

privilege is "grounded in a desire to encourage open, frank discussions on matters of policy

within the agencies, to protect against public confusion from premature disclosure of proposed

policies, and to protect the integrity of the decision-making process." *Judicial Watch, Inc. v.

Reno*, No. 00-CIV-723, 2001 U.S. Dist. LEXIS 25318, *6 (D.D.C. March 30, 2001).

The purpose of the privilege is threefold:  "First, the privilege protects candid discussions

within the agency.  Second, it prevents public confusion from premature disclosure of agency

opinions before the agency established its final policy. Third, it protects the integrity of an agency's decision; the public should not judge officials based on information they considered prior to their final decisions." *Judicial Watch, Inc.*, 90 F. Supp. 2d at 13-14 (quoting *Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 12 (D.D.C. 1995)).

The types of information meriting protection under the deliberative process privilege include "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Judicial Watch, Inc. v. Dep't of Commerce*, 90 F. Supp. 2d at 13-15 (quoting *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150 (1975)). Drafts, analyses, recommendations, proposals, internal deliberations and discussions, commentary, candid personal comments, and the like are included within the protection of the deliberative process privilege. *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 18-19 (D.D.C. 2004). Factual material within deliberative documents must be disclosed unless it is inextricably intertwined with the deliberative material, *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 17-18 (D.D.C. 2004), or disclosure of the factual material may itself disclose agency deliberations. *Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Human Servs.*, 844 F. Supp. 770, 782 (D.D.C. 1993) (citing *Mead Data Central, Inc. v. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1997)).

**B.    The Second Declaration of Alfred M. Pollard, General Counsel of FHFA, in Support of OFHEO's Assertions of the Deliberative Process Privilege**

OFHEO has supplemented its privilege logs with the Second Pollard Declaration, in which Mr. Pollard provides further detail on the nature of the documents withheld and why each document is subject to the agency's deliberative process privilege. Even assuming, *arguendo*, that OFHEO's privilege logs standing alone are deficient (which they are not), the Second Pollard Declaration provides the Court with more than a reasonable basis to evaluate OFHEO's

11

claims of privilege.  *See Judicial Watch, Inc. v. FDA*, 449 F.3d at 146 (requiring consideration of both privilege log and declaration from government official).  Moreover, the documents are available for an *in camera* review by the Court.

The Second Pollard Declaration places each of the documents challenged by Defendants into one of ten (10) categories.  Those categories include:

> (A) executive compensation-related documents reflecting interpretations of statutory terms and the scope of OFHEO's executive compensation oversight activity;
>
> (B) executive compensation-related documents reflecting OFHEO's exercise of its statutory responsibility to prohibit excessive compensation under 12 U.S.C. § 4518;
>
> (C) executive compensation-related documents reflecting the retention of outside consultants to perform executive compensation studies and reviews;
>
> (D) documents related to accounting issues outside the scope of the Special Examination or any of the Annual Examinations of Fannie Mae;
>
> (E) internal memoranda and other documents related to, and draft versions of, OFHEO's Special Examination Report dated May 2006;
>
> (F) documents related to the OFHEO Derivatives Working Group;
>
> (G) internal emails and other documents related to OFHEO's duty to issue capital classifications;
>
> (H) internal emails, draft documents, and other documents related to congressional inquiries and media, OFHEO testimony, and public statements of OFHEO officials;
>
> (I) internal emails, draft documents, and other documents related to OFHEO's exercise of the statutory examination obligations set forth in section 1371(a) of the Federal Housing Enterprises Financial Safety and Soundness Act of 1992; and
>
> (J) a miscellaneous category for several challenged documents that do not fit the other categorical descriptions set forth in the declaration.

The Second Pollard Declaration provides a description of each subject matter generally, a further description of each document in that category in addition to the document description

contained in OFHEO's privilege logs, and it explains how each document fits into the agency's decision-making process.

### C.     The Deliberative Process Privilege Applies to the Challenged Documents

The defendants are incorrect where they argue that the documents at issue are not predecisional and/or not deliberative.  For example, KPMG argues that documents 17 and 18 demonstrate that "OFHEO routinely and repeatedly approved Fannie Mae's accounting and financial reporting systems and even expressly approved Fannie Mae's FAS 133 accounting." KPMG Mot. at 9.  This argument is meritless.  Both documents are clearly drafts and do not reflect any final decision of the agency.  It should go without saying that the agency does not make final pronouncements regarding the Enterprises in internal emails and draft documents. That KPMG would assert to the Court that these documents are evidence that OFHEO approved Fannie Mae's accounting is a gross mischaracterization of the documents.  Moreover, KPMG's argument regarding these documents -- meritless as it may be -- only undermines its claim of substantial need.  As OFHEO has repeatedly stated, internal agency emails and draft documents are simply not needed to establish the results of OFHEO's examinations of Fannie Mae because the documents that contain those conclusions have already been produced.

KPMG also challenges documents 10 and 11 claiming that "the thoughts expressed in the notes were not intended to contribute to any decision-making process," claiming that OFHEO's assertion of the deliberative process privilege over these documents "borders on the offensive." KPMG Mot. at 9, 10.  Again, KPMG mischaracterizes the information in the documents.  The information in the documents clearly reflect the personal opinions and recommendations

presented by one OFHEO employee to higher ranking agency officials during a decision-making

process.[5]  In short, the information in the documents is both predecisional and deliberative.

## V.  DEFENDANTS HAVE FAILED TO ESTABLISH THAT ANY EXCEPTION TO THE DELIBERATIVE PROCESS PRIVILEGE APPLIES

### A.  Defendants Have Failed to Demonstrate that They Have a Substantial Need for the Documents Protected by OFHEO's Deliberative Process Privilege

The Individual Defendants and KPMG assert that their need for OFHEO's privileged

documents far outweighs OFHEO's interests in protecting those documents from disclosure.

The D.C. Circuit has identified five factors that should be considered when determining whether

a litigant's interest in disclosure outweighs the government's deliberative process privilege: (i)

the relevance of the evidence sought; (ii) the availability of other evidence; (iii) the seriousness

of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v)

the possibility of future timidity by government employees who will be forced to recognize that

their secrets are violable.  *Schreiber*, 11 F.3d at 220-21 (internal quotes omitted); *In re Subpoena*

*Served on the Comptroller of Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992).  An analysis of the

five factors indicates that the defendants do not have a substantial need for documents that reflect

OFHEO's predecisional, deliberative decision-making process.

First, the claims of the Individual Defendants and KPMG regarding the relevance of these

documents fall into two categories.  On the one hand, the defendants argue that the documents

are relevant to help them establish a defense rooted in allegations of government misconduct and

---

[5]      The defendants also challenge, *inter alia*, documents reflecting OFHEO's exercise of its statutory responsibility to prohibit excessive compensation under 12 U.S.C. § 4518.  In each case, OFHEO has already produced its conclusions related to its reviews of executive compensation plans at Fannie Mae.  The defendants are aware that OFHEO has never determined that the Enterprise's executive compensation plans, on their face, constituted excessive compensation when compared with the executives' peer groups.  *See, e.g.*, *Brendsel v. OFHEO*, 339 F. Supp. 2d 52, 63 (D.D.C. 2004) (Leon, J.) (distinguishing OFHEO's statutory review of excessive compensation versus unearned compensation or unjust enrichment).  Again, any claim of substantial need for such information is belied by the facts.

political motivation. Individual Defs.' Mot. at 5; KPMG Mot. at 12. The defendants' flawed theory of government misconduct is discussed below in the next section.

On the other hand, the defendants argue that the documents are relevant to their claims that they lacked the scienter requisite to sustain the plaintiffs' claims, *i.e.*, that they were entitled to rely on OFHEO's conclusions regarding its annual examinations of Fannie Mae. Individual Defs.' Mot. at 5; KPMG Mot. at 12. The defendants' arguments highlight the contradictions between the defendants' alleged need for relevant information to support their legal defenses and the subject matter of these documents. For example, as noted above, KPMG *concedes* that the information it substantially needs is not privileged--such information has already been produced: "The fact that Fannie Mae's safety and soundness regulator approved Fannie Mae's FAS 133 accounting is substantial evidence in KPMG's defense." KPMG Mot. at 12. Even if that assertion were true, final agency decisions regarding Fannie Mae's FAS 133 accounting have already been produced. Hence, KPMG does not require privileged information to substantiate that defense, if such a defense is permissible.

The documents that OFHEO withheld pursuant to its deliberative process privilege are the documents that reflect the agency's iterative and candid decision-making process. These documents include draft correspondence, draft internal memoranda, incomplete and predecisional opinions of individual examiners, and off-the-cuff remarks. These documents will not lead to admissible evidence concerning class certification, scienter, loss causation, or damages because the universe of final agency actions has been produced. In other words, the production of this information cannot lead to anything that has not already been produced. By the very nature of these issues, the plaintiffs or defendants must have known the information in order to rely on it or for that information to affect their mental states at the time they committed

the conduct alleged in the complaint.  Moreover, none of these documents could have been relied

upon by the defendants, because they were purely internal documents that could not have been

seen by, or even known of, by the defendants.

Second, any relevant information is already available to the defendants and all parties to

the litigation.  OFHEO has already produced the documents that contain the agency's

conclusions in its annual examinations and Special Examination of Fannie Mae, as well as the

documents relied on to reach those conclusions.  There is no substantial need for privileged

documents where the purportedly relevant information is available in documents that are not

privileged.[6]  Thus, as discussed above, where KPMG complains that it has a substantial need for

documents relating to OFHEO's conclusions regarding Fannie Mae's FAS 133 accounting

policy, KPMG only belies its arguments by claiming it requires privileged information that does

not contain the agency conclusions that KPMG claims are so vital to its defense.

Third, the defendants argue that this litigation is serious.  Although the seriousness of the

litigation is not in dispute, all securities class actions are serious.  This litigation is no more or

less serious than other nationwide securities class actions that derive from investigations of other

safety and soundness regulators.  And in the context of regulatory enforcement actions

themselves, the D.C. Circuit has ruled that the deliberative process privilege will not be pierced,

even where the government is the party prosecuting claims against the defendants.  *See Landry v.*

*FDIC*, 204 F.3d 1125, 1136 (D.C. Cir. 2000) (denying attempt by former bank officer to pierce

---

[6]    The extent of the agency's document production, as well as the document production of Fannie Mae, has already been documented.  OFHEO produced the agency's annual examination workpapers for the years 1998 through 2004.  During the annual examination process, OFHEO evaluated Fannie Mae on various subject matters and in each case OFHEO has produced the conclusions and bases of those examinations.  Defendants possess all documents that underlie OFHEO's examination findings and all of the documents that Fannie Mae provided to OFHEO on which OFHEO based its conclusions, including more than 24 million pages of documents from Fannie Mae.  Thus, the documents necessary to establish, as Defendants claim, that they were "fully transparent" with their regulator have already been produced.

deliberative process privilege of the FDIC following enforcement action before administrative law judge).

Fourth, the defendants argue that OFHEO's role in this litigation requires production. OFHEO's role is not unique; rather, OFHEO's role in this litigation is akin to that of other financial regulatory entities served with third-party subpoenas in civil lawsuits. *See, e.g.*, *Schreiber*, 11 F.3d at 219 (plaintiff subpoenaed various documents from third-party agencies which objected to subpoenas asserting deliberative process privilege); *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 631 (D.C. Cir. 1992) (third-party agencies objected to subpoenas of certain reports and documents claiming deliberative process privilege); *In re Providian Fin. Corp. Secs. Litig.*, 222 F.R.D. 22, 26 (D.D.C. 2004) (plaintiff moved to compel the Comptroller of Currency to comply with a subpoena commanding the production of documents; third-party agency objected). It is unremarkable that when a regulator finds evidence (which the parties possess) of accounting fraud and unsafe and unsound practices that the company's shareholders will seek damages in court. To ignore the government's important governmental privileges in this circumstance would undermine the government decision-making process and change the landscape of when and how the government may raise the deliberative process privilege. *See Landry*, 204 F.3d at 1136 (finding privilege not waived even where regulator files enforcement action).

Fifth, the defendants argue that production of the agency's privileged material poses no threat of chilling the internal give-and-take of agency decisionmakers. The defendants are wrong. This Court has held that the essence of the deliberative process is to protect from disclosure information that reflects the "give-and-take of the consultative process" and against premature disclosure of proposed policies before they have been finally formulated or adopted.

*Bloomberg*, 357 F. Supp. 2d 156, 168 (D.D.C. 2004) (Leon, J.).  Therefore, the production of

OFHEO's internal, deliberative documents would damage the ability of the Federal Housing

Finance Agency ("FHFA"), the successor agency to OFHEO, to fulfill its regulatory mission.

*See, e.g.*, Second Declaration of Alfred Pollard, ¶ 9 (Ex. A).

      The defendants, however, have failed to show any special need for the documents that

reveal OFHEO's internal decision-making processes. By contrast, OFHEO's ability to fulfill its

mission of overseeing the Federal Housing Enterprises would be significantly damaged if its

privileged documents were released.  If the deliberations of the government's individual staff

members were made discoverable, it would be difficult, if not impossible, to ensure candor and

robust debate on important issues.  That important government interest, which has been

recognized by this Court, must not be compromised here.[7]  *See, e.g.*, *Hinckley v. U.S.*, 140 F.3d

277, 285-286 (D.C. Cir. 1998) ("The deliberative process privilege would soon be meaningless if

all someone seeking information otherwise protected under the privilege had to establish is that

there was disagreement within the governmental entity at some point in the decision-making

process. One of the key insights behind this privilege is that governmental decision-makers will

frequently disagree and debate many options before they reach any final conclusion, and that

such predecisional and deliberative discussions and disputes should be protected from public

review.").

---

[7]      The Individual Defendants argue that the agency has waived any claim of harm "[t]hrough its own negligence. . . ."  Mot. at 6.  The Individual Defendants have erroneously conflated their argument concerning their purported "substantial need" for privileged documents with their argument concerning the agency's purported waiver of privilege.  The waiver argument forms the basis of a separate motion (Dkt. No. 721) that OFHEO will respond to in due course.

**B.    The Government Misconduct Exception to the Deliberative Process Privilege Does Not Apply to this Case**

Last, the Individual Defendants argue they need OFHEO's privileged documents to show that the Special Examination of Fannie Mae and the conclusions reached therein "were motivated by personal and political bias and the desire of OFHEO's leadership to push legislation to expand the agency's power and shrink Fannie Mae's size and influence." Individual Defs.' Mot. at 5.  Although the Individual Defendants have couched this assertion as part of their relevancy argument, they are actually attempting to invoke the government misconduct exception to the deliberative process privilege.  For its part, KPMG expressly raises the government misconduct exception, KPMG Mot. at 10, n.4, and alleges "examination misconduct" to challenge the documents.  The exception does not apply here.

In order for the "government misconduct" exception to the deliberative process privilege to apply, the defendants must establish that the government's conduct and subjective motivation is relevant to this litigation.  *See* Fed. R. Civ. P. 26, 45; *Alexander v. FBI*, 186 F.R.D. 154, 159 (D.D.C. 1999) (*Alexander II*) ("[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant.").  Here, the exception is unavailable to the defendants because the conduct and alleged subjective motivation of OFHEO are irrelevant to the claims in this case.  *See, e.g.*, *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997) (describing exception); *Alexander II*, 186 F.R.D. at 160 (holding that government may not invoke privilege to conceal documents regarding alleged government misconduct where alleged misconduct is the "primary nexus" between the facts at issue and the plaintiffs' allegations); *Alexander v. FBI*, 186 F.R.D. 170, 173 (D.D.C. 1999) (*Alexander III*) (same, regarding deposition testimony).

The defendants have failed to assert, much less establish, the required nexus here.  The defendants either did what the plaintiffs aver, or they did not.  There is no dispute that OFHEO did not do what plaintiffs aver the defendants did.  Moreover, the defendants' attempts to rely on the alleged political motivations of OFHEO as an affirmative defense is unavailing as a matter of law.  The motivation of an agency, even assuming an improper motive, does not excuse or justify the misconduct on the part of the company and its officers and executives that were uncovered as a result of a regulatory investigation.  *See, e.g.*, *Fed. Sav. & Loan Ins. Corp. v. Shelton*, 789 F. Supp. 1367, 1369 (M.D. La. 1992) (financial regulator owed no duty to the officers or directors to "bring to [their] attention . . . any wrongdoing during its regulatory activities"); *Resolution Trust Corp. v. Heiserman*, Civ. No. 93-B-944, 1994 WL 907409, *1 (D. Colo. Aug. 31, 1994) ("compelling public policy reasons support the conclusion that defendant directors and officers should not be allowed to avoid liability for their own negligent management by challenging the actions of government regulators, examiners, and receivers.").  Hence, even if OFHEO were motivated by the worst of intentions (which it was not), such motivation does not make it any more or less likely that the defendants did what plaintiffs aver.  Under the circumstances presented by this case and by plaintiffs' allegations, the exception is plainly inapplicable.

The D.C. Circuit has ruled that the "government misconduct" exception to the deliberative process privilege "is limited to those circumstances in which *the cause of action* is directed at the agency's subjective motivation."  *In re Subpoena Duces Tecum Served on the Office of the Comptroller of Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) (emphasis added) (clarifying that even in an ordinary action against under the Administrative Procedures Act *in which the government is the defendant*, "the actual, subjective motivation of agency decision-makers is immaterial as a matter of law – unless there is a showing of bad faith or improper

behavior") (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971)).  The

D.C. Circuit has also ruled that even where a financial regulatory agency brings an enforcement

action, as OFHEO has done in another proceeding unrelated to the instant litigation, "the

enforcement action in no way implies the [government]'s subjective motivations."  *Landry v.

FDIC*, 204 F.3d 1125, 1136 (D.C. Cir. 2000) (denying attempt by former bank officer to pierce

deliberative process privilege of the FDIC following enforcement action before administrative

law judge).

Here, there is no cause of action directed at OFHEO, a federal government agency, or at

FHFA.[8]  And, even if there were, the government's privilege would still stand unless that cause

of action were directed at the government's subjective motivation.  It would be contrary to

established precedent for the Court to find, as the defendants argue, that the conduct and alleged

subjective motivations of a federal financial regulatory agency is somehow relevant in a

securities class action lawsuit.  The cases in which a court pierced the government's deliberative

process privilege, the government was a party to the litigation and "the government's intent

[was] squarely at issue."  *See, e.g.*, *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60

F.3d 867, 884-85 (1st Cir. 1995) (plaintiffs have made a "strong showing" of arbitrariness and

discriminatory motives on the government's behalf in case involving United States' decision to

impose price controls on the sale of petroleum); *Alexander II*, 186 F.R.D. at 160 (holding that

government may not invoke privilege to conceal documents regarding alleged government

---

[8]        The Individual Defendants twice assert that OFHEO is now a party to this litigation.  Mot. at 1, 6.  This
assertion is belied by the fact that the Individual Defendants continue to invoke Rule 45, which applies to third
parties.  Further, KPMG evidently disagrees with the Individual Defendants and considers OFHEO a non-party.
KPMG Brief at 11.  In all events, whether FHFA is a party to this litigation by way of its conservatorship of Fannie
Mae is a complex issue and is not relevant to the Court's evaluation of whether the government's privilege should be
pierced.  Regardless, OFHEO is not a party to this litigation, and is not now, and never was, conservator of Fannie
Mae.  If this becomes an issue upon which a live case or controversy exists, then FHFA requests an opportunity to
brief that issue at that time.

misconduct where alleged misconduct is the "primary nexus" between the facts at issue and the plaintiffs' allegations); *Alexander III*, 186 F.R.D. at 173 (same, regarding deposition testimony); *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997).

KPMG erroneously relies on *Alexander III*.  The facts before this Court are dramatically different from those in the *Alexander* cases and do not similarly warrant an order requiring the production of documents subject to the deliberative process privilege.  In the *Alexander* series of cases, the plaintiffs, former political appointees and government employees, brought suit against the FBI and Department of Defense alleging that the government had improperly released background security information to the President in violation of the plaintiffs' privacy interests. *Alexander III*, 186 F.R.D. at 171.  The government asserted the deliberative process privilege over certain documents and deposition testimony concerning the circumstances surrounding the leak.  The plaintiffs argued that the privileged information concerning the leak was discoverable over the government's objections because it provided circumstantial evidence of  the White House's link to the leak, of a cover-up of the political motivations behind it, and the White House's misuse of government files.  *Id.* at 172.  Requiring the production of privileged documents, the court ruled in favor of the plaintiffs, holding that the government could not assert privilege over information -- both documentary and testimonial -- of its alleged misconduct where the misconduct was evidence of the plaintiffs' allegations.  *Alexander II*, 186 F.R.D. at 160; *Alexander III*, 186 F.R.D. at 173.

Unlike the government defendants in *Alexander*, OFHEO is *not* a defendant in the MDL action.  Furthermore, neither OFHEO's conduct nor its alleged motivations are at issue, nor are they even circumstantial evidence of the allegations in Plaintiffs' Complaint, all of which concern the Defendants' alleged misconduct.  There is simply no "nexus" between any alleged

misconduct of OFHEO and allegations of the defendants' misconduct. To the contrary, in the *Alexander* cases in which the court pierced the government's privilege, the plaintiffs sued the government for its alleged misconduct in releasing private information, thus putting at issue other government conduct that would tend to prove or disprove the allegations of the complaint. *Alexander III*, 186 F.R.D. at 172. Moreover, the defendants' attempts to rely on the alleged political motivations of OFHEO as an affirmative defense, even if the allegations were true (which they are not), is unavailing as a matter of law. The motivation of an agency, even assuming an improper motive, does not excuse or justify the prior wrongful conduct on the part of the company and its officers and executives that was uncovered in the course of a regulatory investigation, or which may be uncovered by plaintiffs in this action. *See, e.g.*, *Shelton*, 789 F. Supp. at 1369; *Resolution Trust Corp.*, Civ. No. 93-B-944, 1994 WL 97409, *1.

## VI.    KPMG'S WAIVER ARGUMENT SHOULD BE DENIED[9]

KPMG invites the Court "to exercise its authority by rejecting *all OFHEO assertions of the deliberative process privilege*." KPMG Mot. at 15 (emphasis added). KPMG is asking the Court to revisit the Individual Defendants' motions for contempt of over two years ago. KPMG's argument is essentially asking the Court to re-open the Court's January, 22, 2008, Order and turn back time so that all the parties and OFHEO can relitigate the issue *de novo*. Where the Court determined that OFHEO had failed to log documents prior to Court-ordered deadlines, the Court has already sanctioned OFHEO by compelling the production of privileged

---

[9]    On April 17, 2009, the Individual Defendants filed a separate motion (Dkt. No. 721) arguing that OFHEO has waived privilege to certain documents through alleged inadvertent productions of privileged information. As that separate motion is not subject to the expedited briefing schedule set forth in the Court's March 11, 2009, Order, OFHEO will respond to that motion in due course. Also, the Individual Defendants' waiver motion is considerably more narrow than the relief sought by KPMG. Whereas the Individual Defendants' separate motion seeks waiver as to 128 specific documents, *KPMG seeks an order from the Court waiving all assertions of the deliberative process privilege.*

documents for a "sneak peek" under the terms of the January 22, 2008, Order. KPMG now seeks the most drastic possible expansion of the Court's sanction. By failing to make a contemporaneous objection, however, KPMG has waived any right it may have had to ask the Court to revisit that sanction and to argue that the Court's sanction was insufficient. OFHEO and the Individual Defendants have already litigated the Court's decision to sanction OFHEO. This Court expressly decided to fashion a remedy that expressly excluded a wholesale waiver of privilege based, in part, on the fact that OFHEO had expended considerable resources to produce and log documents under the extremely difficult circumstances under the Court's September 27, 2007, Order. The Court of Appeals approved that remedy.

KPMG sat on the sidelines as that litigation proceeded, failed to make a contemporaneous objection, and joined the fray only after the Individual Defendants were successful in forcing a "sneak peek" production of privileged documents. Even if KPMG were able to find several documents, or even several hundred, that may not have been properly withheld under the deliberative process privilege, that would be inconsequential given the procedural posture in which these documents were produced. The Court should reject KPMG's tardy waiver argument.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, OFHEO respectfully requests that the Court deny the motions to compel of the Individual Defendants and KPMG.

Dated: April 27, 2009                     Respectfully submitted,


                                          /s/ Joseph J. Aronica
                                          Joseph J. Aronica, D.C. Bar No. 446139
                                          DUANE MORRIS LLP
                                          505 9th Street, Suite 1000
                                          Washington, D.C. 20004
                                          Phone:  (202) 776-7825
                                          Fax:  (202) 478-1885

                                          JEFFREY A. TAYLOR, D.C. Bar No. 498610
                                          United States Attorney
                                          RUDOLPH CONTRERAS, D.C. Bar No. 434122
                                          JANE M. LYONS, D.C. Bar No. 451737
                                          Assistant United States Attorneys
                                          555 4th Street, N.W. – Civil Division
                                          Washington, D.C.  20530
                                          Phone:  (202) 514-7161

                                          Attorneys for the Federal Housing Finance Agency