# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
|
In re Federal National Mortgage    |     **MDL No. 1668**
Association Securities, Derivative and    |
"ERISA" Litigation
_____|
|
|     **Consolidated Civil Action**
|     **No. 1:04-cv-01639 (RJL)**
In re Fannie Mae Securities Litigation    |
|
_____|

## ORDER

Upon consideration of the Individual Defendants' Motion to Compel the Federal Housing Finance Agency to Produce Documents Due to Waiver of Privilege (Dkt. No. 721), the response thereto of the Office of Federal Housing Enterprise Oversight, and the entire record, it is this _____ day of _____, 2009

ORDERED that the motion to compel (Dkt. No. 721) is hereby DENIED.

SO ORDERED.

_____
Judge Richard J. Leon

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
|
In re Federal National Mortgage    |    **MDL No. 1668**
**Association Securities, Derivative and**    |
**"ERISA" Litigation**    |
_____|
|
|    **Consolidated Civil Action**
|    **No. 1:04-cv-01639 (RJL)**
**In re Fannie Mae Securities Litigation**    |
|
_____|

**OFHEO'S OPPOSITION TO THE INDIVIDUAL DEFENDANTS'**
**MOTION TO COMPEL DUE TO WAIVER OF PRIVILEGE**

The Office of Federal Housing Enterprise Oversight ("OFHEO" or the "agency") submits

its Opposition to the Individual Defendants' Motion to Compel the Federal Housing Finance

Agency to Produce Documents Due to Waiver of Privilege (Dkt. No. 721). OFHEO respectfully

requests that the Court deny the motion to compel the production of privileged documents.[1]

I.    **INTRODUCTION**

Defendants Franklin Raines, Timothy Howard, and Leanne Spencer (collectively, the

"Individual Defendants" or "Defendants") filed the instant motion to compel on April 17, 2009.

The motion challenges 134 documents. OFHEO has asserted the attorney-client privilege over

six of these documents (three of which are also covered by the attorney work product doctrine

and the deliberative process privilege). The remaining 128 documents are protected exclusively

by the deliberative process privilege.

_____

[1] OFHEO's statutory mandate to ensure the safety and soundness of Fannie Mae has been
assumed by the Federal Housing Finance Agency ("FHFA"). While OFHEO will be dissolved
by statute in August 2009, the privileges asserted by OFHEO now apply with equal force to
FHFA. Nevertheless, neither FHFA nor OFHEO is a party to this action.

As is set forth in greater detail below, OFHEO instituted a reasonable process to review, produce, and log privileged documents in response to the subpoenas issued by the Individual Defendants.  As demonstrated by the fact that Defendants seek by this motion only six (6) documents that are subject to the attorney-client privilege and a relatively small portion of the deliberative process documents, this review process worked reasonably well.  When the Individual Defendants informed OFHEO that an inadvertent production of privileged documents may have occurred, OFHEO had a procedure in place to review each document identified and respond in a timeframe reasonable under the circumstances.  This process is normal in large and ongoing document productions and is reasonable, especially here, given the circumstances of the review, *i.e.*, OFHEO is a nonparty; tight deadlines; hundreds of thousands of documents; most documents at issue are internal email correspondence increasing the likelihood that the information is privileged; complex subject matters requiring specific knowledge of the agency and the Enterprises to assert certain privileges; and numerous and newly-trained contract personnel hired exclusively to review documents under the Court's orders.  All of these factors, and others discussed below, weigh in favor of finding that OFHEO has not waived any privilege over the documents referenced in the motion.

Further militating against a finding of waiver, the Individual Defendants' motion is based on several faulty premises, that the Defendants themselves highlighted in bullet points on the first page of their motion.

First, the Individual Defendants incorrectly assert that OFHEO "produced documents *without first reviewing the documents*. . . ."  Ind. Defs.' Mot. at 1 (emphasis in original).  This is demonstrably false, and it misrepresents the testimony of an OFHEO official.  OFHEO's document review process since 2007 is now well documented and never has OFHEO or any of

its representatives stated that OFHEO released documents "without first reviewing the documents."  The Defendants purport to rely on the deposition of Kyle D. Roberts, OFHEO Deputy Chief Examiner, for their assertion.  The Individual Defendants grossly mischaracterize this testimony.  Contrary to Individual Defendants' mischaracterization, Mr. Roberts's testimony clearly sets forth, consistent with OFHEO's pleading of March 4, 2009, and the declaration of James Jordan, OFHEO Counsel (Mar. 4, 2009, Dkt. No. 704-2), that OFHEO performed a first and second level of review of the documents OFHEO produced pursuant to the September 27, 2007 Stipulated Order.  *See, e.g.,* Kyle D. Roberts Dep. 150:6 – 153:1 (Mar. 16 and Apr. 1, 2009) (Roberts Dep.) (excerpts attached as Exhibit A).  He also testified that the review process prior to the Stipulated Order was very similar.  *Id.* at 198:19 – 199:18.  When questioned about the *quality check* (rather than the first review phase) prior to the Stipulated Order, Mr. Roberts testified that there was some sampling and spot-checking of documents before they were ultimately produced.  *Id.* at 200:9 – 203:7.  A full reading of the deposition testimony and the record make clear that the Individual Defendants' assertion that OFHEO never reviewed the documents it produced is not only baseless but false.

Second, the Defendants claim that OFHEO has relied wholly on "***its adversaries***" to protect its privileges.  Ind. Defs.' Mot. at 1 (emphasis in original).  Also untrue.  OFHEO followed clear procedures to review, produce, and withhold documents pursuant to a claim of privilege.  That the Defendants point to the inadvertent production of only six documents over which OFHEO asserted the attorney-client privilege and the relatively small portion of deliberative process documents that they seek by this motion demonstrates that OFHEO's procedures worked reasonably well.  OFHEO is not a party to this case and is not in an adversarial posture with the Defendants.  Defendants chose to serve OFHEO with subpoenas

3

under Rule 45. Thus, any duty that the Defendants have under the civil and ethical rules was

brought upon by themselves not because OFHEO "relied" on them to protect its privileges.

Third, the Defendants claim that privilege is waived as to these 134 documents because,

although OFHEO notified the Individual Defendants regarding inadvertent productions, OFHEO

did not notify all other parties to this litigation. OFHEO was under no obligation to do so. As is

discussed below, OFHEO fulfilled its obligations pursuant to Rule 45 of the Federal Rules of

Civil Procedure and notified the party to whom OFHEO produced documents, *i.e.*, the Individual

Defendants.[2]

OFHEO, as a non-party, does not have access to the shared database used by the parties

and is not familiar with those discovery requests the parties may have propounded amongst

themselves. Thus, OFHEO is required to provide only the Individual Defendants to whom it

produced the documents with notice of an inadvertent production. Rule 45 and Rule 26 require

the Individual Defendants to "take reasonable steps to retrieve the information if the party

disclosed it before being notified." Fed. R. Civ. P. 45, 26. The Defendants' arguments confirm

that they took no steps to retrieve the information from those other parties to whom they may

have disclosed it.[3] That is the Individual Defendants' failure, not OFHEO's, and the Court

should not reward such failure by finding waiver has occurred. That the Defendants may have

had a separate duty to produce documents produced to it by third parties does not relieve the

Defendants of this obligation.

---

[2] OFHEO was recently ordered by the Court, on March 11, 2009, to provide to KPMG and
Plaintiffs a "sneak peek" of the documents it withheld under the deliberative process privilege.

[3] OFHEO is now considering the implications of Individual Defendants' representations
regarding their failure to abide by Rules 45 and 26.

As discussed below, OFHEO's procedure for reviewing, producing, and logging documents was thoughtful, expedited, and worked reasonably well.[4]

## II.    OFHEO HAS NOT WAIVED ITS PRIVILEGE ASSERTIONS OVER THE 134 DOCUMENTS CHALLENGED IN THE INDIVIDUAL DEFENDANTS' MOTION

### A.    Federal Rule of Evidence 502(a) Applies to All Documents Identified in the Individual Defendants' Motion

Subject to the caveats described below, the Individual Defendants and OFHEO are in general agreement that Rule 502 of the Federal Rules of Evidence applies to OFHEO's inadvertent production of documents protected by the attorney-client privilege and the attorney work product privilege. Individual Defendants and OFHEO disagree as to whether the law articulated through Rule 502, in conjunction with Rules 45 and 26 of the Federal Rules of Civil Procedure, applies to OFHEO's inadvertent production of documents protected by the deliberative process privilege. For the reasons discussed below, any determination of waiver of any privilege known in federal law must be grounded in the procedure and law set forth in Rule 502.

The question of whether OFHEO has waived privilege regarding the documents protected by the attorney-client privilege and the attorney work product privilege should be decided through application of Rule 502, in conjunction with Rules 45 and 26 of the Federal Rules of Civil Procedure. Rule 502 provides:

---

[4] The Individual Defendants also challenged Document No. 52 (OFHEO_FAL_00007575 to 7577) in the separate motion to compel they filed on April 17, 2009, challenging OFHEO's assertion of the deliberative process privilege and claiming that they have a substantial need for the documents. Other than that one document, the documents at issue in this motion (Dkt. No. 721) appear to be separate and distinct from the 128 documents challenged by the Individual Defendants in their other motion to compel (Dkt. No. 720). In that other motion, the Individual Defendants argued that they have a substantial need for certain privileged documents. Here, on the other hand, there is presumably no substantial need for the challenged documents. Consequntly, the Court should not be dealing with nor finding any waiver.

> [a] disclosure does not operate as a waiver in a Federal or State proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b). The Rule also sets forth a non-exhaustive list of factors courts might consider when deciding whether the disclosing party's inadvertent disclosure constituted a waiver.[5] That list includes:

> (1) "the number of documents to be reviewed;"
>
> (2) "the time constraints for production;"
>
> (3) the use of "advanced analytical software applications and linguistic tools [when] screening for privilege;"
>
> (4) "the reasonableness of precautions taken;"
>
> (5) "the time taken to rectify the error;"
>
> (6) "the scope of discovery;"
>
> (7) "the extent of disclosure;" and
>
> (8) "the overriding issue of fairness."[6]

Fed. R. Evid. 502(b) advisory committee's notes. Contrary to statements made by the Defendants, the Rule makes clear—that when considering the "reasonable steps to rectify the error"—the disclosing party is not required "to engage in a post-production review to determine whether any protected communication or information has been produced by mistake." *Id.* Rather, OFHEO is required only to "follow up on any obvious indications that a protected communication or information has been produced inadvertently." *Id.* As discussed in detail

---

[5] There is no dispute that OFHEO's productions of privileged material have been inadvertent.

[6] OFHEO notes that the Individual Defendants' list of factors is misleading because they omit several factors the advisory committee articulated.

herein, there is no question that, under this standard, OFHEO took reasonable steps to prevent inadvertent disclosure and to rectify errors.

The law and procedure articulated through Rule 502, in conjunction with Rules 45 and 26 of the Federal Rules of Civil Procedure, should also govern whether OFHEO's inadvertent production of documents protected by the deliberative process privilege constitutes a waiver. Rule 502 recognizes and attempts to mitigate the still burgeoning cost of privilege reviews in the age of electronic discovery.[7]  In so doing, Congress and the advisory committee took aim at and explicitly rejected "the result in *In re Sealed Case*, 877 F.2d 976 (D.C. Cir. 1989), which held that inadvertent disclosure of documents during discovery automatically constituted a . . . waiver."[8]  28 U.S.C. § 2074; 110 S. Rpt. 264 ("Outdated law affecting inadvertent disclosures coupled with the stark increase in discovery material has led to dramatic litigation cost increases."); 154 Cong. Rec. H. 7817, 7818 (same); Fed. R. Evid. 502(a) advisory committee's notes.  Hence, the all-or-nothing approach embodied in *In re Sealed Case*, 877 F.2d 976, does not reflect the current state of the law regarding waiver.

Such an all-or-nothing approach is incompatible with the policy rationale articulated by Congress: to provide "a predictable and consistent standard to govern the waiver of privileged information" while limiting "the consequences of inadvertent disclosure."  110 S. Rpt. 264; Fed.

---

[7]  Particularly, the Rule addresses the concern that the high costs associated with privilege reviews in electronic discovery "may lead to the federal courts becoming the exclusive litigation playground of the super rich [(and/or those with D/O insurance coverage)] who may be the only ones who can afford a privilege review of their computer systems."  Magistrate Judge John M. Facciola, *Sailing on Confused Seas: Privilege Waiver and the New Federal Rules of Civil Procedure*, 2006 Fed. Cts. L. Rev. 6 (Sept. 2006).

[8]  The procedural protections identified in Rule 502 "is sort of a back-up protection.  This is your guarantee.  This is an assistance to the idea of protecting privilege.  This is extremely important, in that vast majority of documents exchanged in discovery, in some cases running to the millions of pages, ultimately prove to be of no interest."  154 Cong. Rec. H. 7817, 7819.

R. Evid. 502 advisory committee's notes.  Congress rejected the *In re Sealed Case*, 877 F.2d

976, approach and expressly adopted the majority rule regarding "whether a disclosure operates

as a waiver of the privilege."  154 Cong. Rec. H. 7817, 7818.  It is fundamentally inconsistent

with that laudable policy rationale to apply different standards to different privileges recognized

in federal common law.  Further, given the factors identified by the advisory committee, the

deliberative process privilege should fall within the ambit of the process articulated in Rule 502

because documents protected by this privilege may not be easily identified through the use of

electronic search terms or phrases or by agency-outsiders hired on an ad hoc basis to satisfy

broad third-party subpoena requests.  Thus, review for pre-decisional, deliberative material is

cumbersome, expensive, and potentially error-prone -- precisely the type of factors that the

drafters of Rule 502 sought to address.  Accordingly, the only standard on waiver that this Court

could apply to be consistent with Congress's direction regarding waivers of privilege is the Rule

502 standard.

For the reasons stated below, applying the standard articulated in Rule 502, OFHEO took

reasonable steps to prevent inadvertent disclosure and to rectify errors regarding its documents

protected by the deliberative process privilege.

### B.    OFHEO Employed Reasonable Methods under the Circumstances to Avoid Inadvertent Disclosures

When balancing the numerous factors identified in the law articulated through Rule 502,

it is clear that OFHEO did not waive its privileges.  From November 2007 to February 2008,

OFHEO produced hundreds of thousands of documents.  Its privilege logs were thousands of

pages long.  The effort involved, *inter alia*, responding to broad subpoena requests that

encompassed custodians and subject matters from every agency office, the hiring of over 50

review attorneys, and cost the agency over six million dollars.  OFHEO's efforts, under the circumstances, militate in favor of finding OFHEO's privileges preserved.

### 1.    OFHEO Reviewed and Produced an Extraordinary Number of Documents

There is no dispute that OFHEO reviewed over 540,000 documents, many of which are internal emails, Outlook-related files, and attachments, under the Stipulated Order.  OFHEO withheld and logged approximately 55,000 of these documents (*i.e.*, approximately one in ten) under a claim of privilege.  OFHEO produced over 430,000 documents pursuant to the Stipulated Order for the first 31 document custodians.

The extraordinary number of documents that OFHEO reviewed and/or produced and the extraordinary number of documents in which a privilege was found demonstrates the burden placed on OFHEO by the subpoenas.  In light of this burden, the measures OFHEO took to avoid inadvertent disclosures were reasonable.

### 2.    OFHEO Operated Under Extremely Tight Time Constraints

Given the time constraint on OFHEO's productions, OFHEO's efforts to preserve its privileges were reasonable.  OFHEO was often faced with requests for massive productions, within relatively short periods, and expedited those productions through producing in numerous waves.  Significantly, the time periods associated with Individual Defendants' complaints regarding OFHEO's inadvertent disclosures are the same periods when OFHEO's time constraints were more challenging.  Furthermore, the number of inadvertent disclosures increased in direct proportion to the time challenges OFHEO faced.  This relationship demonstrates that OFHEO's procedures for protecting its privileges were reasonable under the circumstances.

OFHEO's series of tight time deadlines for production began on November 6, 2006, when the Court ordered OFHEO to produce "all" responsive documents. As part of that order, OFHEO's document production was divided into four installments – or tranches – of documents and privilege logs. Each tranche had a specified deadline.

Thereafter, OFHEO reviewed and produced electronically stored information (ESI), including emails and other files for 10 agency custodians chosen by the Individual Defendants. On May 31, 2007, OFHEO produced such information and on June 5, 2007, OFHEO provided privilege logs.[9]

The tight deadlines continued when, on September 27, 2007, OFHEO was compelled (1) to produce ESI found on its inaccessible disaster recovery tapes, (2) for a total of 35 OFHEO custodians chosen by the Defendants, (3) using search terms chosen by Defendants, (4) by aggressive production deadlines. Under the Stipulated Order, OFHEO was to produce by November 30, 2007, all non-privileged and non-exempt documents for the first 21 custodians, along with a privilege log for all documents withheld as privileged. Stip. Ord. ¶ 8. OFHEO was to produce by January 4, 2008 all non-privileged and non-exempt documents for an additional nine custodians, along with a privilege log for all documents withheld as privileged. Stip. Ord. ¶ 9.

To comply with the terms of the Stipulated Order, OFHEO employed (through a commercial discovery firm) 50 contract attorneys.[10] These attorneys required training regarding,

---

[9] OFHEO is briefly summarizing the events of several years ago because the Individual Defendants' motion challenges documents that were produced several years ago, in addition to the documents challenged under the Court's Stipulated Order of September 27, 2007.

[10] But before these contract discovery attorneys legally could be given access to the government data, applicable federal security protocols required a background check and clearance of each individual through the Federal Bureau of Investigation.

*inter alia*, the facts of the litigation, the agency (to build familiarity with personnel, practices, and the issues), and the computer software used to host and review OFHEO's document. *See* Roberts Dep. 40:2 – 44:11 (discussing the thorough training of the document review attorneys). To standardize that training, each of these attorneys received a voluminous binder containing the training/reference materials tailored to the particulars of this document production. Once the 406 search terms were finalized and applied to the data, OFHEO then had approximately three weeks to review over half a million documents that contained at least one of the search terms. The initial review was to cull out privileged documents. To meet the first deadline for production, the training schedule for the newly hired contract attorneys was especially tight because they were, understandably, unfamiliar with the governmental deliberative process privilege. There is no dispute that at least 540,000 documents were reviewed under the Stipulated Order. In light of this burden, the measures OFHEO took to avoid inadvertent disclosures was reasonable.

### 3.     Use of Technology

To assist in its production of ESI, the agency hired, at its own expense, two outside experts. Renew Data LLP was responsible for acquiring data from OFHEO's disaster recovery tapes. Forensics Consulting Solutions, Inc. (FCS) handled many other aspects of OFHEO's production of ESI. Through FCS, OFHEO had access to state of the art software (Attenex and iConect) designed to host and review massive amounts of data. OFHEO utilized the expertise of those outside experts (with whom the Individual Defendants' experts consulted) to assist it in order to avoid inadvertent disclosures.

### 4.     OFHEO Took Reasonable Steps to Prevent Inadvertent Productions

Contrary to the Individual Defendants' disingenuous arguments, OFHEO employed numerous methodologies to prevent inadvertent disclosures. The steps OFHEO took were conceived and implemented to be reasonable given the number of documents, the type of

documents, and the time constraint governing any particular document review and production. Specifically, the recent testimony of OFHEO personnel and its outside technology experts confirmed OFHEO's two-step process for reviewing document and searching for privileged material.[11]

During the first review, the following document categories were used: Non-responsive, Responsive, Privileged, Pending, Unreadable, Unreadable Resolved.[12] After the first review, the documents marked by the review attorneys in Attenex as "Responsive" were converted to TIFF images and immediately produced to the Defendants. No second review was conducted of those released documents. The documents marked by the review attorneys in Attenex as "Non-responsive" consisted of only those documents exempt from production under subsections a, b, and c of paragraph 6 of the Stipulated Order.[13] The documents marked by the review attorneys in Attenex as "Privileged" were exported from the original platform, Attenex, into iConect for a second review ("the second review"). Thus, the only documents that were subject to a secondary review in iConect were documents that were initially believed to be privileged following a first review of the documents in Attenex.

For the second review of documents marked "Privileged," the following document categories were used: Responsive-Produce, Not Responsive, Privileged/Withhold. IConect allowed the reviewing attorneys to specify which privilege or privileges applied, if any (*i.e.*,

---

[11] OFHEO will not restate a complete description of its thorough review process here. The review process is described in detail in OFHEO's March 4, 2009 filing (Dkt. 704) and the Declaration of James Jordan in support of that filing (Dkt. 704-2).

[12] Attorneys reviewed and "marked" each document with the goal of all documents eventually being marked as Non-responsive, Responsive, or Privileged.

[13] Those documents were not exported to iConect because there was no reason to do so.

attorney-client, work product, deliberative process, examination).  As the second review was

undertaken in iConect, all documents that had been provisionally identified as "Privileged" in

Attenex were individually re-reviewed and re-categorized.  Then, based upon which of the three

iConect document categories in which they were placed, the documents were either produced to

Defendants ("Responsive-Produce"), logged on a privilege log ("Privileged/Withhold"), or

withheld as exempt under the Stipulated Order ("Not Responsive").  Privilege logs and

supplemental documents were produced to Individual Defendants on a rolling basis.

     Nevertheless, the Individual Defendants claim erroneously that the above facts are

contradicted in the deposition testimony of Kyle D. Roberts.  Individual Defs.' Mot. at 1, 4.  The

Individual Defendants make the unequivocal assertion that "[OFHEO] produced documents

***without first reviewing the documents***. . . ."  *Id.* at 1 (emphasis in original).  Later in their

motion they limit their assertion to only those documents "produced prior to the Stipulated

Order."  *Id.* at 4.  As demonstrated herein, neither assertion is true.  The Individual Defendants

have mischaracterized Mr. Roberts's testimony.

     At his deposition, Mr. Roberts described in detail the two phases of review for documents

produced by OFHEO pursuant to the Stipulated Order.  *See, e.g.*, Roberts Dep. 150:6 – 153:1.

He testified that an attorney actually reviewed each and every one of the documents for privilege

during the first review.  *See, e.g.*, *id.* 150:19 – 151:6.  He also testified that the review process

prior to the Stipulated Order was very similar.  *Id.* at 198:19 – 199:18 (stating that the review

process described in OFHEO's March 4, 2009 filing with respect to the review after the

Stipulated Order was in place prior to the Stipulated Order).  Immediately after this testimony,

counsel for the Individual Defendants asked several questions about the "quality check" process.

*Id.* at 200:9 – 203:11.  Mr. Roberts, responding directly to the questions asked, testified that there

was some sampling and spot-checking of reviewed documents before they were ultimately

produced. *Id.* at 200:9 – 203:7. It is clear from the testimony that Mr. Roberts was referring

only to the *quality review* process that occurred *after* the initial first review of the documents.

> Q.    What were you sampling for?
>
> A.    We were spot-checking basically with the volume of
>       documents that we were doing.
>
> Q.    What were you looking for in the spot-checking?
>
> A.    We were looking for documents that were produced that
>       shouldn't have been produced.

*Id.* at 201:11 – 201:18. A full reading of this deposition testimony makes clear that the

testimony of Mr. Roberts cited by the Individual Defendants was not accurately represented in

the motion and does not support the Individual Defendants' assertions. The Individual

Defendants' suggestion that a "quality check" must encompass a review of each document to be

produced is patently unreasonable and not required by the law.

*    *    *

Against this background, it is noteworthy that there are only six (6) documents at issue

subject to the attorney-client privilege (three of which are also subject to the attorney work

product doctrine and the deliberative process privilege). Given the massive amounts of

documents and the tight time constraints, six documents is a statistically insignificant number of

documents to have been inadvertently produced. This speaks to the efficacy of OFHEO's review

processes.

The fact that the Individual Defendants seek to compel only six attorney-client privilege

documents inadvertently produced also speaks to the process as it relates to deliberative process

privilege documents. Attorney-client and work product documents are infinitely more readily

identifiable than deliberative process documents. To make an assessment regarding deliberative

14

process documents, one must have knowledge of the myriad ways in which the agency seeks to ensure the safety and soundness of the Enterprises, OFHEO's management structure, and a perhaps unascertainable number of potential policies that various OFHEO personnel considered. If the process lead the Individual Defendants to put only six attorney-client documents at issue here, then the process also worked (in proportion to the difficulty in assessing the privilege) with the deliberative process documents.

### 5. OFHEO Worked with Individual Defendants to Rectify Inadvertent Productions within a Reasonable Time under the Circumstances

Notwithstanding the difficult circumstances, with respect to OFHEO's document productions prior to the Stipulated Order of September 27, 2007, OFHEO responded, almost uniformly, in approximately one or two months after receiving notice from the Individual Defendants of an alleged inadvertent production. For example, as evidenced by the Individual Defendants' Exhibit 4, OFHEO responded within 25 days and reported which documents were privileged and inadvertently produced. In numerous other cases (not identified by the Individual Defendants), OFHEO responded that documents about which it was put on notice were not inadvertently produced and were not privileged or that OFHEO was not asserting a privilege. The procedure OFHEO utilized was generally to respond as quickly as possible, after having reviewed each document called into question by the Individual Defendants.[14] OFHEO eschewed a process whereby it would respond, knee-jerk, to assert its privilege over all documents that the Individual Defendants claimed were inadvertently produced.[15]

---

[14] This procedure generally entailed re-tasking resources from OFHEO's then continuing production efforts.

[15] And for good reason. For example, in May 2007, the Individual Defendants issued a letter to OFHEO claiming that certain documents were inadvertently produced. OFHEO responded within a week and advised the Individual Defendants that the documents were *not* privileged.

(Continued…)

With respect to the documents produced pursuant to the Stipulated Order, OFHEO reviewed an incredible amount of data, in an incredibly short period of time. Still, OFHEO managed to respond to the Individual Defendants' letters in a timely manner.[16]

**6.      Given the Scope of Discovery, and the Extraordinary Amount of Privileged Documents Associated with that Scope, OFHEO Took Reasonable Steps to Avoid Inadvertent Disclosures**

There can be no dispute that the scope of the discovery demands made on OFHEO are incredibly broad—so broad that this case may present the greatest scope of a discovery production that has ever been asked of a non-party. The documents that OFHEO withheld are the documents that reflect the agency's confidential communications, its attorneys' work product, and its iterative and candid decision-making process. These documents include draft correspondence, draft internal memoranda, incomplete and pre-decisional opinions of individual examiners, recommendations, and legal strategy.

Significantly, these documents will not lead to admissible evidence concerning class certification, scienter, loss causation, or damages because the universe of final agency actions

_____

(Continued…)

Nevertheless, the Individual Defendants filed a motion to compel the production of privileged documents arguing that OFHEO had waived its privilege assertion over the documents in question (*i.e.*, the documents that OFHEO had specifically disavowed were privileged) and all documents concerning the same subject matter. (Dkt. No. 445, later withdrawn). The Individual Defendants signaled that, one way or another, OFHEO's document production would culminate with their waiver argument.

[16] The cases cited in the Individual Defendants' brief are inapposite given their circumstances. *See* Ind. Defs.' Mot. at 6 (relying on *Harmony Gold U.S.A, Inc. v. FASA Corp.*, 169 F.R.D. 113 (N.D. Ill. 1996) and *United States v. Ary*, 513 F.3d 775 (10th Cir. 2008)). Neither case expressly applies the factors identified in Rule 502 and in the advisory committee notes as Rule 502 was not yet in effect. Further, neither case is analogous to the situation here because the cases do not concern a third party producing massive amounts of documents under Court orders, nor do they concern the assertion of the deliberative process privilege.

has been produced. However, these types of documents are rich with privileged material. The confluence of the unprecedented scope of the discovery requests and the wealth of privileged material within the scope weighs heavily in favor that OFHEO's privileges have not been waived.

### 7.    Extent of disclosure

OFHEO has acted reasonably to minimize the extent of disclosure associated with any inadvertent disclosures. First, given the large volume of documents OFHEO has produced to the Individual Defendants, the number of documents associated with inadvertent disclosures is relatively small. Second, when OFHEO has discovered an inadvertent disclosure it has, within a reasonable amount of time, invoked Rule 45 to "claw back" the privileged material. As described further in Section C, *supra.*, under Rule 45, it was then Individual Defendants' duty to minimize the extent of the disclosures they had made of OFHEO's materials. As such, OFHEO took reasonable measures to minimize the extent of disclosure associated with an inadvertent production.

### 8.    Overriding issues of fairness weigh in favor of OFHEO

Overarching considerations of fairness require a finding that OFHEO has not waived its privileges. OFHEO, a non-party, is entitled to the protections described in Rule 45(c) of the Federal Rules of Civil Procedure and Individual Defendants bear a duty to shield OFHEO from unnecessary burden and expense. Finding that OFHEO has waived its privileges is inconsistent both with OFHEO's role in this case and with Individual Defendants' duty.

Against this background, OFHEO has made extraordinary efforts to assert its privileges with only the greatest of care. OFHEO believes that the discretion it has employed when exercising its privileges has greatly reduced the areas of potential conflict—thereby preserving agency resources and lessening the use of judicial resources. However, despite OFHEO's

careful assertions, this effort has consumed a significant portion of OFHEO's resources and cost the agency untold millions of dollars. Nevertheless, a production such as the one made by OFHEO is likely unrivaled by any other federal agency responding to a Rule 45 subpoena.

Further, although it is evident that OFHEO and Individual Defendants have vastly different views on the law, there is no evidence that OFHEO has either invoked a privilege assertion or made an inadvertent production in bad faith. Rather, any inadvertent productions were born out of the magnitude of OFHEO's productions and the circumstances associated with those productions. Under the totality of these circumstances, it would be wholly unfair to find OFHEO has waived its privileges.

Considerations of fairness also militate against waiver because part of the reason OFHEO sometimes made inconsistent privilege designations was the failure of the Individual Defendants to shield OFHEO from undue burden and expense. OFHEO attempted to use technology to reduce the likelihood of potentially inconsistent determinations by its review team, but were unable to reach an agreement with the Individual Defendants.[17] Moreover, Individual Defendants demanded that their search terms under the Stipulated Order be applied to the documents from 10 custodians that OFHEO had already reviewed prior to the Stipulated Order and for whom OFHEO had produced documents (on May 31, 2007) and privilege logs (June 5, 2007)—which increased the chance of inconsistent designations without any corresponding benefit. Hence, the inability to reach an agreement with the Individual Defendants regarding known technological enhancements resulted in a different attorney reviewing duplicates of the

---

[17] To be sure, OFHEO did utilize a technological de-duplication process prior to its review, however, due to the failure to achieve an agreement with the Individual Defendants on the issue, the process was limited to de-duplicating documents *within* each custodian's documents, rather than global de-duplication across all custodians' documents.

same documents in different custodian files.[18]  Individual Defendants should not be rewarded for

having created a situation in which predictable inconsistencies born out of a human review of

over half a million documents.  Quite to the contrary, basic notions of fairness militate in favor

of preserving OFHEO's privileges.

### C. OFHEO Had No Duty to Provide Notice of OFHEO's Inadvertent Production to Parties that the Individual Defendants, and not OFHEO, Had Produced Documents

Individual Defendants baselessly and astonishingly assert that OFHEO was required "to

notify systematically all of the other parties to the consolidated multi-district litigation."  ID Br.

at 7.  However, the plain language of Rule 45 does not support such a contention.  Rather, Rule

45, in pertinent part, states:

> If information produced in response to a subpoena is subject to a
> claim of privilege or of protection as trial-preparation material, the
> person making the claim may notify any party that received the
> information of the claim and the basis for it. After being notified, a
> party must promptly return, sequester, or destroy the specified
> information and any copies it has; must not use or disclose the
> information until the claim is resolved; must take reasonable steps
> to retrieve the information if the party disclosed it before being
> notified; and may promptly present the information to the court
> under seal for a determination of the claim. The person who
> produced the information must preserve the information until the
> claim is resolved.

---

[18]  As a result, in some cases, a reviewing attorney making a privilege determination for a
document in the files of "Custodian A" may decide that the document is privileged.  Those
documents were properly withheld and logged.  Another reviewing attorney looking at a similar
document in the files of "Custodian B" may decide that the document is not privileged.  The fact
that there were inconsistencies is not a basis for waiver.  This is not unusual in large document
productions by a small government agency and, especially here, is reasonable given the
circumstances of the review, i.e., numerous newly trained personnel; tight deadlines; hundreds of
thousands of complex documents that require specific knowledge of the agency to assert the
deliberative process privilege and understand the scope and nuances of the privilege.

Fed. R. Civ. P. 45(d)(2)(B).  Under the plain language of Rule 45, when OFHEO notified the

Individual Defendants of a privilege claim regarding a produced document, then Individual

Defendants (not OFHEO) were required to "promptly return, sequester, or destroy the specified

material."  *Id.*; *see also* Fed. R. Civ. P. 26(b)(5)(B).  If Individual Defendants have already used

the specified information to respond to discovery requests propounded by another party to the

Individual Defendants (presumably the reason why Individual Defendants provided OFHEO

information to other parties), then the Rule clearly states that it is Individual Defendants' burden

to "take reasonable steps to retrieve the information."  Fed. R. Civ. P. 45(d)(2)(B); *see also* Fed.

R. Civ. P. 26(b)(5)(B).  No provision of the Rule 45 or any other rule places any burden on

OFHEO to provide notice to any party to which Individual Defendants may have disclosed

OFHEO information.

  For this reason, the question of whether OFHEO (or any of its employees) understood

that the Individual Defendants were producing OFHEO materials to other parties is irrelevant.

Any further production was done by the Individual Defendants—and the Rule clearly provides

that the Individual Defendants bear the burden in regard to their subsequent production.

Moreover, it is entirely inconsistent with the Individual Defendants' duty to shield OFHEO from

"undue burden or expense" to place responsibility on OFHEO for the Individual Defendants'

subsequent document productions.  Fed. R. Civ. P. 45(c).  Consequently, as a result, when

OFHEO notified the Individual Defendants of inadvertently produced privileged documents,

OFHEO satisfied its duty to reasonably protect its privileges.

III.    **CONCLUSION**

For the foregoing reasons, OFHEO respectfully requests that the Court deny Individual Defendants' Motion to Compel the Federal Housing Finance Agency to Produce Documents Due to Waiver of Privilege (Dkt. No. 721).


Dated: May 1, 2009                          Respectfully submitted,


                                        ___/s/ Joseph J. Aronica_____
                                        Joseph J. Aronica, D.C. Bar No. 446139
                                        DUANE MORRIS LLP
                                        505 9th Street, Suite 1000
                                        Washington, D.C. 20004
                                        Phone:  (202) 776-7825
                                        Fax:  (202) 478-1885

                                        JEFFREY A. TAYLOR, D.C. Bar No. 498610
                                        United States Attorney
                                        RUDOLPH CONTRERAS, D.C. Bar No. 434122
                                        JANE M. LYONS, D.C. Bar No. 451737
                                        Assistant United States Attorneys
                                        555 4th Street, N.W. – Civil Division
                                        Washington, D.C.  20530
                                        Phone:  (202) 514-7161

                                        Attorneys for the Federal Housing Finance Agency