UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivate, and "ERISA" Litigation | MDL No. 1688 |
| In re Fannie Mae Securities Litigation | Consolidated Civil Action No. 1:04-cv-01639 (RJL) |

**REPLY IN SUPPORT OF THE INDIVIDUAL DEFENDANTS' MOTION
TO COMPEL THE FEDERAL HOUSING FINANCE AGENCY
TO PRODUCE DOCUMENTS DUE TO WAIVER OF PRIVILEGE**

The Federal Housing Finance Agency ("FHFA") spends almost no time in its opposition addressing the evidence presented by the Individual Defendants that demonstrates the agency's failure to take reasonable steps to safeguard its privileges. FHFA does not explain its multi-month delay in providing any response to many of the Individual Defendants' notifications of potential inadvertent productions; it merely labels this delay "reasonable." Opp. at 15. The agency does not explain how its "thoughtful" production methodology, *id.* at 5, resulted in the production of thousands of privileged documents. FHFA does not explain why it did not systematically recall its "wealth of privileged material," *id.* at 17, from the various other parties who had access to that material; rather, it tries to characterize this as the Individual Defendants' wrongdoing. FHFA also does not explain why it felt justified in relying on the Individual Defendants to guard it from inadvertent productions; it instead asserts that the Individual Defendants—whom the agency prosecuted in an administrative proceeding—are not its adversaries. *Id.* at 3. The agency does not offer any evidence to show the adequacy of the privilege review it conducted prior to the September 27, 2007 Stipulated Order (Dkt. No. 525), even in the face of an agency representative's statement that "we were not able to review each document that went out," Roberts Dep. 201:9-10 (Mar. 16, 2009) (Opp. Exh. A (May 1, 2009)

(Dkt. No. 728-2)); it merely asserts that his testimony has been "grossly mischaracterize[d]," Opp. at 3.

Instead—as it did in its opposition to the Individual Defendants' Motion to Compel After *In Camera* Review ("*In Camera* Review Motion")—FHFA tries to change the subject.[1]

First, FHFA spends a considerable amount of time asking the Court to consider as relevant factors the volume of documents the agency was "compelled" to produce in a tight timeframe, Opp. at 10, and the "thoughtful, expedited" process employed by the agency to make that production, *id.* at 5. The agency has apparently forgotten that this "thoughtful, expedited" process ultimately resulted in contempt of court, and that the timeframes at issue were not

---

[1] FHFA's various arguments about its status as a party and its relationship to OFHEO are inconsistent and irreconcilable. On October 17, 2008, FHFA asked for permission to intervene in this case, arguing that FHFA "is an appropriate party to the above-captioned matters." *See* Mot. of FHFA to Intervene at 2 (Oct. 17, 2008) (Dkt. No. 676) (emphasis added). The Court granted the motion. *See* Minute Order (Nov. 5, 2008). Nevertheless, last week, in its opposition to the *In Camera* Review Motion, FHFA asserted that whether or not it is a party is a "complex issue." *In Camera* Opp. at 21 n.8 (Apr. 27, 2009) (Dkt. No. 724). And then, only four days later, the agency asserted that "neither FHFA nor OFHEO is a party." Opp. at 1 n.1. The agency's haphazard attempts to distinguish FHFA from OFHEO are similarly inconsistent. Both the instant opposition and the opposition to the *In Camera* Review Motion purport to be submitted on behalf of OFHEO. *See* Opp. at 1; *In Camera* Opp. at 1. Yet both briefs are signed by FHFA's outside counsel as "Attorneys for the Federal Housing Finance Agency," Opp. at 21, *In Camera* Opp. at 25, and both briefs purport to assert privileges applicable to FHFA, *see* Opp. at 1 n.1 ("[T]he privileges asserted by OFHEO now apply with equal force to FHFA." (emphasis added)), *In Camera* Opp. at 9 ("The assertions made about the deliberative processes of OFHEO now apply with equal force to the deliberations of FHFA." (emphasis added)). Indeed if OFHEO were truly the agency before the Court on these motions, it—unlike FHFA—could not be represented by outside counsel. *See* 5 U.S.C. § 3106 ("Except as otherwise authorized by law, the head of an Executive department . . . may not employ an attorney or counsel for the conduct of litigation . . . ."). *Compare* 12 U.S.C.A. § 4513(c)(1) (West 2009) (establishing FHFA's authority to litigate "through the Director's own attorneys") *with* 12 U.S.C. § 4515 (2006) (establishing OFHEO personnel provisions without reference to Director's retention of outside counsel). The most likely explanation for these inconsistencies is that the agency simply makes whatever argument is most convenient at the time, without regard for the relevant legal principles. When it is convenient for it to be a party (to seek a stay, for example), then it claims to be a party. When it is convenient to be a non-party (in order to seek interlocutory appeal, for example), then it claims to be a non-party.

"compelled" but were the result of a <u>voluntary stipulation</u> between the agency and the Individual Defendants. *See In re Fannie Mae Sec. Lit.*, 552 F.3d 814, 822 (D.C. Cir. 2009) ("Having stipulated to a schedule for complying with the subpoenas, OFHEO can hardly complain now about being held to its agreement."). In any event, the argument is irrelevant. No one is disputing that the agency (eventually) worked hard to produce documents. The issue is whether the agency took adequate steps to safeguard its claims of privilege. It did not.

<u>Second</u>, FHFA argues that the number of documents in dispute—only 134 documents—is evidence of the "efficacy of OFHEO's review processes." Opp. at 14. But the number of documents in dispute has nothing to do with the quality of the agency's review process. The reason only a small number of documents are in dispute is because the Individual Defendants chose to challenge only a select number of documents. The <u>total</u> number of documents inadvertently produced by the agency, however, exceeds 3,000. That number is indeed a testament to the inefficacy of the agency's review process.

<u>Third</u>, FHFA attempts to shift the focus to the Individual Defendants by accusing them of failing to take reasonable steps to retrieve documents recalled by the agency. The charge is baseless—as the agency well knows, each time it notified the Individual Defendants of an inadvertent production, the Individual Defendants promptly notified the litigation support vendor that hosts the documents for this litigation, instructing it to destroy the documents at issue and notify all other parties of the inadvertent production. By making this reckless accusation, FHFA only underscores the fact that, although it has had no problem consuming the time and resources of this Court, the D.C. Circuit, and the parties to this litigation with its privilege disputes, it has not bothered to take basic steps to ascertain what was actually happening to the documents it claims are "rich with privileged material." Opp. at 17.

I.    **FHFA's Production Waived the Deliberative Process Privilege.**

It is undisputed that the D.C. Circuit has traditionally held that even an inadvertent disclosure of privileged documents results in a waiver. *See SEC v. Lanvin*, 111 F.3d 921, 929 (D.C. Cir. 1997); *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989). It is also undisputed that Rule 502 of the Federal Rules of Evidence speaks only to the attorney-client privilege and attorney work product doctrine, and so, to the extent it overrules D.C. Circuit precedent, it is only with respect to those privileges. Nevertheless, FHFA asks this Court to ignore this Circuit's traditional rule on waiver with respect to the 128 other documents[2] in order to be "consistent" with the "laudable policy rationale" behind Rule 502. Opp. at 8. The Court should decline this invitation to extend Rule 502 beyond its statutory language, and FHFA should be required to produce the 128 documents which it claims were inadvertently produced but not subject to either the attorney-client or attorney work product privileges.[3]

---

[2] FHFA asserts that, of the 134 documents at issue in this motion, the agency asserted either attorney-client or attorney work product privileges as to 6 of the documents, and deliberative process privilege as to 128. *See* Opp. at 1. This is not the case: the agency asserted deliberative process privilege as to 114 of these documents. This is because of the 134 documents at issue, *see* Mot. Exh. 1, the agency never asserted any privilege for 14 documents [Nos. 2, 10, 13, 18, 19, 20, 21, 24, 27, 28, 29, 31, 38, and 44] until April of 2009. *See* Mem. at 6. For Nos. 2 and 38, the agency requested return of the documents but did not specify any particular privilege as the basis for the return, and for the remaining 12 documents, the agency <u>never</u> responded to the Individual Defendants. Notably, FHFA makes <u>no</u> argument as to why these 14 documents—for which no privilege was asserted by the agency until now—should not be produced.

[3] FHFA is wrong that there is no dispute that its productions were inadvertent. Opp. at 6 n.5. For example, as described below, on one occasion FHFA expressly informed the Individual Defendants that certain documents were not privileged only to recant that statement five months later. FHFA continues to assert privilege over 18 of these documents, *see* Mem. at 6 n.5 [Nos. 7, 8, 9, 11, 12, 14, 15, 16, 17, 22, 23, 25, 26, 30, 32, 33, 34, and 35]. Thus, there is evidence that FHFA made affirmative, knowing decisions to produce some of the documents which it now wishes to claim were "inadvertently" produced.

## II.     FHFA Does Not Dispute Its Most Critical Failures.

Even under Rule 502(b)'s more lenient standard, it is clear that FHFA's actions have waived privilege over the documents at issue. Indeed, it is striking that FHFA's opposition makes little or no effort to dispute the agency's principal failings under Rule 502(b), namely, its failure to take <u>prompt</u> steps to rectify its production errors, as well as the glaring deficiencies with its initial privilege review process. *See Business Integration Servs. v. AT&T Corp.*, 251 F.R.D. 121, 129-30 (S.D.N.Y. 2008) (noting that in application of multifactor test, "the courts give great significance to the promptness of measures taken to rectify the disclosure" (quoting 3 Jack B. Weinstein & Margaret A. Berger, <u>Weinstein's Federal Evidence</u> § 503.42[4] (2d ed. 2005)).

In their opening brief, the Individual Defendants explained how FHFA frequently waited months before making any response to the Individual Defendants' notifications of potentially inadvertently produced material. *See* Mem. at 6. FHFA does not dispute this. To the contrary, the agency acknowledges that it "almost uniformly" took "approximately one or two months" to respond to the Individual Defendants' notices of potential inadvertent production. Opp. at 15. FHFA merely claims that this interval was "timely." *Id.* at 16. That assertion notwithstanding, there is no conceivable basis for concluding that waiting one or two <u>months</u> (let alone six) before acting to prevent further use or disclosure of the material at issue constitutes "<u>promptly</u> [taking] reasonable steps to rectify the error." Fed. R. Evid. 502(b) (emphasis added); *see also Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D. Ill. 1996) (finding waiver and noting that Harmony Gold had "dragged its feet in taking appropriate corrective action after learning of its inadvertent disclsoure" by waiting two weeks to request return of documents); *United States v. Ary*, 518 F.3d 775, 783-84 (10th Cir. 2008) (finding a six-week delay in

asserting privilege protection sufficient to constitute waiver).[4]  Even if FHFA needed that amount of time to make final determinations with respect to the documents at issue—a claim the agency does not support with any evidence—there was still nothing preventing the agency from taking minimal steps to prevent any further disclosure or use while it considered its options.  FHFA, however, did nothing.  It did not ask for the documents to be temporarily set aside; it did not ask for distribution to be limited; it apparently did not make any effort to limit other parties' use of the documents; it did not even take the minimal step of calling or e-mailing counsel for the Individual Defendants to acknowledge receipt of their correspondence and ask for time to respond.  Even the Individual Defendants' Rule 45 obligations, which FHFA suggests provided it some level of protection, are not triggered until <u>after</u> there is notification of a claim of privilege.  *See* Fed. R. Civ. P. 45(d)(2)(B).  Thus, during the months that FHFA did nothing in response to the Individual Defendants' notices, the agency, by its own inaction, received none of the protections of Rule 45.  In short, upon being notified that it had potentially disclosed its privileged information, the agency would let <u>months</u> elapse without taking the most basic steps to protect its "wealth of privileged material."[5]  Opp. at 17.  It is difficult to see how the agency

---

[4] FHFA tries to brush aside the holdings of these cases as somehow overruled by Rule 502 or factually inapposite.  Opp. at 16 n.16.  The argument is desperate.  The cases apply the factors ultimately adopted in the advisory committee note to Rule 502, and stand for the relevant—and obvious—point that waiting weeks, let alone months, to respond does not constitute prompt action.  *See Harmony Gold U.S.A.*, 169 F.R.D. at 117 (applying same five-factor test as found in Rule 502 advisory committee's note); *Ary*, 518 F.3d at 783-84 (noting courts have looked to timeliness of identification of protected material, as well as whether party pursued all reasonable means of preserving confidentiality, in considering whether privilege is waived).

[5] The agency applauds itself for an instance in which it took only twenty-five days to respond to a notification concerning 42 documents.  Opp. at 15.  Ironically, with respect to 25 of those documents, the agency confirmed that it had intended to produce them, and then, <u>five months later</u>, attempted to claim privilege over those documents.  *See* Mem. at 6 n.5.  Thus, that situation is in fact one in which the agency waited nearly six months before claiming privilege over documents that it not only had produced, but over which it had affirmatively disclaimed any privilege.

can now claim to be entitled to Court protection of that material.  Indeed, it is difficult to see what possible harm to FHFA will result from a finding of waiver given the amount of time the agency knowingly allowed all parties months of access to this potentially privileged material.

Moreover, even when FHFA did notify the Individual Defendants of allegedly inadvertent productions, it did not systematically notify other parties who had access to the documents.  FHFA responds to this point by accusing the Individual Defendants of not fulfilling their obligation to retrieve documents.  As explained below, that accusation is false.  But it is also not responsive.  Whether or not the Individual Defendants fulfilled their obligations to take reasonable steps to retrieve privileged material (they did), it is telling that FHFA did not take systematic action to retrieve its privileged material.  FHFA knew full well that its material had been disclosed to other parties; in fact, it consistently instructed the Individual Defendants to make such productions.  *See*, *e.g.*, Letter from John C. Truong to Alex Romain (Jan. 4, 2008) ("As with previous productions, please distribute the documents to other interested parties.") (attached as Exhibit A).  And FHFA had a right under Rule 45 to demand recall of privileged documents from all parties.  *See* Fed. R. Civ. P. 45(d)(2)(B) ("[T]he person making the claim may notify any party that received the information . . . [and the] party must promptly return, sequester, or destroy the specified information . . . .") (emphasis added).  The Individual Defendants, by contrast, while under an obligation to take reasonable steps to retrieve privileged materials, could not compel other parties to comply with a destruction request, a fact they made very clear to FHFA.  *See*, *e.g.*, Letter from Alex G. Romain to Kenneth Adebonojo at 1-2 (Feb. 11, 2009) ("As we have previously noted in much of our correspondence, we cannot make any representations about the conduct of other counsel who had access to these documents prior to their removal from the shared database.") (attached as Exhibit B).  Nevertheless, knowing full

well that other parties were in possession of its purportedly privileged material and having a clear mechanism for protecting that material, the agency apparently failed to take appropriate action.

Similarly, as noted in the Individual Defendants' opening brief, FHFA took no additional measures to prevent or locate additional inadvertent productions after being informed of its initial inadvertent productions, Mem. at 5, something the agency now acknowledges that Rule 502(b) required it to do, *see* Opp. at 6 (noting Rule 502(b) required the agency to "follow up on any obvious indications that a protected communication has been produced"). FHFA does not dispute this failure; it does not even address it. Nor does FHFA offer anything to contradict the sworn testimony of its Deputy Chief Examiner Kyle Roberts, who testified that the agency effectively relied on the Individual Defendants—its adversaries—to protect the agency from the harm from inadvertently produced documents. Mem. at 7-8; *see also Victor Stanley, Inc. v. Creative Pipe Inc.*, 250 F.R.D. 251, 263 (D. Md. 2008) (finding it "noteworthy" that receiving party, not producing party, made discovery of inadvertent disclosure). The only response FHFA musters to this argument is the incredible assertion that the Individual Defendants are not its adversaries.

The agency also ignores clear evidence that its initial review process could not have included "reasonable steps to prevent disclosure." Fed. R. Evid. 502(b). As explained in the Individual Defendants' opening brief, when pursuant to this Court's Contempt Order (Jan. 22, 2008) (Dkt. No. 580) FHFA produced approximately 41,000 documents over which FHFA asserted the deliberative process privilege, the Individual Defendants discovered that the agency had <u>already produced at least 7,352 of those documents</u>, some as many as 25 times. *See* Mem. at

4-5.[6] In other words, whatever production process FHFA had in place, it allowed nearly 20% of the documents that were on its privilege logs as subject to the deliberative process privilege to go out the door.[7] The agency's opposition does not adequately explain this incredible failure.[8]

---

[6] After being informed of this enormous inconsistency of at least 7,352 documents both withheld as privileged and produced pursuant to the Contempt Order, FHFA claimed that, in fact, approximately 4,418 had been improperly designated as privileged. *See* Letter from Joseph J. Aronica to Alex G. Romain (Apr. 13, 2009) (excerpts attached as Exhibit C); Letter from Joseph J. Aronica to Alex G. Romain (Apr. 14, 2009) (excerpts attached as Exhibit D); Letter from Joseph J. Aronica to Alex G. Romain (Apr. 17, 2009) (excerpts attached as Exhibit E). That itself is an amazing admission given that those documents constituted a significant portion of the privileged documents over which the agency had litigated for more than a year before this Court and the D.C. Circuit.

[7] FHFA actually tries to blame the Individual Defendants for its inability to identify privileged documents consistently, on the theory that the Individual Defendants did not allow OFHEO to utilize global de-duplication of electronic documents thereby depriving OFHEO of the ability to use "known technological enhancements." Opp. at 18. This argument ignores the facts. Although the Individual Defendants did not consent to global de-duplication—i.e., the deletion of duplicate documents—they did consent to the suppression of duplicates for review purposes, an approach that "would allow OFHEO to review only unique e-mails and documents, but still produce full, per-custodian documents sets." Letter from Alex G. Romain to John C. Truong at 4 (Nov. 6, 2007) (attached as Exhibit F). The agency—not the Individual Defendants—decided not to take advantage of this technological capability. If anything, this fact is evidence of the agency's failure to use technological means to prevent inadvertent production of privileged documents.

[8] FHFA's inability to protect its purportedly privileged material continues to this day. On April 13, 2009, FHFA stated it would release redacted versions of seventeen, previously unreleased, documents that the Individual Defendants had identified as subject to potential challenges. The agency then proceeded to produce versions of these documents that were, for all practical purposes, unredacted (the documents contained light markings presumably indicating areas for future redaction). The Individual Defendants promptly notified the agency of the production, and the agency claimed it was "inadvertent." *See* Letter from Alex G. Romain to Joseph J. Aronica at 2 (Apr. 24, 2009) (attached as Exhibit G); Letter from Joseph J. Aronica to Alex G. Romain (Apr. 29, 2009) (attached as Exhibit H). The Individual Defendants respectfully submit that the agency's recent actions have waived their claim of privilege. The Individual Defendants informed FHFA of their intent to raise this issue in this reply, but the agency declined to address the issue in its opposition. *See* Letter from Alex G. Romain to Joseph J. Aronica (Apr. 29, 2009) (attached as Exhibit I). (Of these documents, 13 are challenged in the *In Camera* Review Motion, *see In Camera* Review Motion, Exh. 2 (Dkt. No. 720-5) [Nos. 1, 2, 3, 4, 6, 7, 24, 25, 26, 27, 28, 29, 30).

Finally, although FHFA disputes the Individual Defendants' understanding of Mr. Roberts' testimony that, in its pre-Stipulated Order production, the agency was "not able to review each document that went out," Roberts Dep. 201:9-10, the agency offers no direct evidence as to what that production process actually entailed. FHFA attempts to side-step this question by explaining in detail how its post-Stipulated Order production process worked, *see* Opp. at 12-13, and then asserting that the pre-Stipulated Order process was "very similar," *id.* at 13. The agency does not, however, offer an alternate explanation of what that "very similar" process was. In response to the testimony of Mr. Roberts quoted above, the agency asserts that the Individual Defendants' characterization of his testimony is "demonstrably false" and "grossly mischaracterized," *id.* at 2-3, and that "it is clear from the testimony" that Mr. Roberts was referring to a process that occurred "*after* the initial first review of documents," *id.* at 14. If that is what Mr. Roberts meant, it is not at all clear from his testimony, and it is interesting that the agency offers no evidence to clarify this point in its opposition, such as a declaration from Mr. Roberts.[9]

## III.   FHFA's Attempts at Diversion Are Unavailing.

Rather than address the serious deficiencies with its production process and remedial steps, FHFA attempts to shift the Court's focus to: (a) additional supposedly relevant "factors," (b) the Individual Defendants' decision to challenge a limited number of documents, and (c) the

---

[9] The declaration of James Jordan, which the agency claims describes its production process, *see* Opp. at 12 n.11, says nothing about the pre-Stipulated Order production process. *See* Jordan Decl. (Mar. 4, 2009) (Dkt. No. 704-2). Moreover, Mr. Jordan acknowledged he was not involved in the document review process during that period of time. *See* James Jordan Dep. 45:12-18 (Apr. 2, 2009) (noting that he first became involved with the agency's production of documents in "[l]ate December 2007," during the Stipulated Order productions) (excerpts attached as Exhibit J).

Individual Defendants' alleged misconduct. None of these considerations advance the agency's position.

### A. The Additional Factors Cited by FHFA Are Irrelevant.

In their opening brief, the Individual Defendants recited several factors identified by the advisory committee as relevant to a Rule 502(b) analysis. Mem. at 3. The agency pounces on this recitation and accuses the Individual Defendants of being "misleading" because they did not cite <u>all</u> the factors listed by the advisory committee.[10] Opp. at 6 n.6. Yet the reason the Individual Defendants did not list all these factors is because—as FHFA's brief makes painfully clear—a walk through the non-exhaustive list of factors noted by the advisory committee does not advance the argument in this case. Here, FHFA has failed to satisfy the straightforward textual requirements of Rule 502(b): it has not taken reasonable steps to protect its privilege (as evidence by the massive amount of privileged material it produced) and it did not act promptly to rectify its errors (as evidenced by its months of delay in responding to notifications). No analysis of "factors" can change those facts, and FHFA's analysis certainly does not. *Cf. Harmony Gold U.S.A.*, 169 F.R.D. at 117 n.6 ("It seems somehow fictional to confirm the adequacy of the discovery precautions taken when obviously (as manifested by the disclosure) the precautions, almost by definition, were inadequate.").

For the most part, the agency's analysis is little more than a rehashing of the arguments it made to this Court and to the D.C. Circuit to excuse its contempt of court, namely, that any of its

---

[10] The Individual Defendants are not the only ones to have focused on only the five factors listed in their opening brief. *See, e.g.*, *Rhoads Industries, Inc. v. Building Materials Corp. of America*, 254 F.R.D. 216, 219 (E.D.Pa. Nov. 14, 2008) (acknowledging new Fed. R. Evid. 502(b) and formulating multifactor test as "the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness" (citing Fed. R. Evid 502 advisory committee's note)); 9-45 Moore's Federal Practice – Civil § 45.65 (2009) (listing same five relevant factors).

- 11 -

failings are the result of the Individual Defendants' discovery demands, not the agency's own lapses. *See* Appellant's Br. at 17 (Aug. 5, 2008) (U.S. Court of Appeals for the D.C. Circuit, No. 08-5014) ("[The Contempt] ruling was the last in a series of orders that individually and collectively marked an abdication of judicial responsibility to protect a non-party agency from abusive discovery demands.") (excerpts attached as Exhibit K).  As an initial matter, the agency's complaints about the burdens of discovery necessarily ring hollow, because to a large extent its burdens are the result of its own decisions to:  (a) mislead this Court about the nature of its production;[11] (b) enter into a stipulated order establishing the scope and nature of its discovery obligations, rather than have the Court rule on the issue of burden; and (c) wait until the last minute to staff its production adequately.  *See* Hr'g Tr. 19:23-20:23 (Jan. 22, 2008) (noting OFHEO's "unequivocal representations" made "without an adequate basis" and its "dalliance in starting its review process") (excerpts attached as Exhibit L); *In re Fannie Mae Sec. Lit*, 552 F.3d at 822-23 (affirming this Court's finding that "OFHEO dragged its feet until the eleventh hour" and noting that "OFHEO can hardly complain now about being held to its agreement"); *see also Rhoads Industries*, 254 F.R.D. at 226 (concluding "most significant factor" to support finding of waiver of privilege was that party "failed to prepare for the segregation and review of privileged documents sufficiently far enough in advance of the inevitable production of a large volume of documents").  More importantly, the burdens of production have no bearing on the agency's subsequent refusal to respond promptly to notifications of potential disclosures

---

[11] Even in its opposition, the agency appears incapable of accurately recounting the facts of this discovery dispute.  The agency states that on May 31, 2007, it produced information for 10 custodians identified by the Individual Defendants.  *Id.*  As the Court recalls, although the agency <u>represented</u> it had produced those documents, in fact it had not.  *See* Hr'g Tr. 12:13-16 (Jan. 22, 2008) (excerpts attached as Exhibit L).  The agency also states that on September 27, 2007, it was "compelled" to produce ESI from backup tapes.  In fact, the agency <u>agreed</u> to produce ESI from backup tapes as part of the <u>Stipulated</u> Order (Sept. 27, 2007) (Dkt. No. 525).

of privileged documents, its failure to take steps to notify other parties, and its failure to take any steps to avoid further inadvertent disclosures.

      **B.    The Individual Defendants' Decision To Limit Their Challenges Is Not Evidence of FHFA's Reasonableness.**

FHFA asks this Court to consider the fact that only 134 documents are at issue in this motion as evidence of the reasonableness of the agency's privilege review. One thing has nothing to with the other. The reason only a few documents are at issue is because the Individual Defendants chose to limit their challenges to a small subset of the universe of inadvertently produced documents, not because that universe of such documents is small. Just the opposite, FHFA has "inadvertently" produced over 3,000 documents. *See Victor Stanley, Inc.*, 250 F.R.D. at 263 (concluding that inadvertent production of 165 documents in production of tens of thousands of documents "does not present an instance of a single document slipping through the cracks" and finding privilege waived). The Individual Defendants' restraint in choosing which documents to challenge cannot mask the agency's massive failure.

      **C.    FHFA's Accusations of Wrongdoing Are False.**

If FHFA was truly concerned about protecting its privilege, it is hard to understand why it often waited months to respond to the Individual Defendants' notifications of potentially inadvertent productions and why it typically failed to notify other parties of its claims of inadvertent production.[12] The last section of the agency's brief, however, suggests that the agency may be more concerned with finding some way to accuse the Individual Defendants of wrongdoing than with protecting its privilege. Indeed, so eager is the agency to accuse the

---

[12] FHFA does not dispute that by allowing months to lapse before asserting its privileges over documents that the Individual Defendants had identified as potentially inadvertently produced, FHFA essentially relied on the Individual Defendant's ethical obligations as a substitute for FHFA's duty to safeguard its privilege. *See* Mem. at 7-8. Thus the agency concedes its abuse of the requirements of the D.C. Rules of Professional Conduct.

Individual Defendants of a rules violation and to threaten them with the "implications" of their supposed conduct, *see* Opp. at 4 n.3, that the agency completely—and irresponsibly—ignores the facts.

FHFA starts with the claim that it has only produced the documents at issue to the Individual Defendants. Opp. at 4 (stating that FHFA "notified the party to whom [it] produced documents, i.e., the Individual Defendants"). In fact, however, the Lead Plaintiffs subpoenaed the agency well before the Individual Defendants, and the agency produced some documents responsive to the Individual Defendants' subpoenas <u>directly to the Lead Plaintiffs</u>. *See*, *e.g.*, Lead Plaintiffs' Motion and Order Granting Access at 1-2 n.2 (Jan. 22, 2009) (Dkt. No. 691-2) ("Lead Plaintiffs have served formal discovery requests on OFHEO and have had—until this point—access to all documents produced by OFHEO."); Letter from Kyle D. Roberts to Alex Romain and Melanie Corwin, Lead Plaintiffs' Counsel, at 1 (May 31, 2007) ("As part of OFHEO's production in response to Defendants' subpoenas, we enclose disks containing copies of emails and attachments responsive to Defendants' subpoena requests for ESI.") (attached as Exhibit M). Similarly, when KPMG subpoenaed the agency in 2008, the agency responded by pointing to the shared database. Hr'g Tr. 75:5-8 (Feb. 1, 2008) ("And that begs the question— because if they are party to this litigation and they have access to the shared database, why are they asking for the same documents that we produced months and years ago?") (excerpts attached as Exhibit N); *see also* Letter from John C. Truong to F. Joseph Warin (Feb. 6, 2008) (objecting to KPMG's subpoena and directing KPMG to shared database) (KPMG LLP's Mot. for Order Granting Access to OFHEO Documents Made Available to Other Defendants Under the Court's Contempt Order, Exh. 1 (Jan. 21, 2009) (Dkt. No. 690-4)). Finally, when the agency made a production to the Individual Defendants, it typically instructed the Individual Defendants

to provide the documents to other parties. *See*, *e.g.*, Letter from John C. Truong to Alex Romain (Jan. 4, 2008) ("As with previous productions, please distribute the documents to other interested parties.") (attached as Exhibit O).

FHFA then claims that "Defendants' arguments confirm that they took no steps to retrieve the information from those parties to whom they may have disclosed it." Opp. at 4. Nothing in the Individual Defendants' arguments "confirmed" anything of the sort. To the contrary, each time the agency notified the Individual Defendants of an inadvertent production, the Individual Defendants promptly notified the litigation support service that hosts the shared database accessible to all parties and instructed it to destroy the documents and notify all parties of the inadvertent production. Moreover, the agency's purported ignorance of this process is clearly feigned, because the Individual Defendants <u>repeatedly notified the agency of this practice</u>. *See*, *e.g.*, Letter from Alex G. Romain to John C. Truong (Oct. 19, 2007) ("All of the documents listed as inadvertently produced by OFHEO . . . have been removed by Xerox Litigation Services from the . . . shared online database.") (attached as Exhibit P). The Individual Defendants also notified the agency that the Individual Defendants could not, of course, make a representation about what other parties would do with their copies of such documents, a notification the agency apparently decided to ignore. *See*, *e.g.*, Letter from Alex G. Romain to Kenneth Adebonojo at 1-2 (Feb. 11, 2009).

In short, FHFA's accusations are unfounded. They do, however, highlight the fact that FHFA has taken little independent action to remedy its privilege disclosures. Whether or not FHFA had its own obligation to notify other parties of its inadvertent production, it certainly would have been a prudent step for an agency so concerned about the consequences of the release of its documents. The agency's refusal to expend even that minimal effort to safeguard

its privilege stands in sharp contrast to the enormous amount of judicial resources the agency has consumed defending those very same privileges before both this Court and the D.C. Circuit. This contrast demonstrates quite convincingly that this Court was correct when it observed that FHFA's arguments about the importance of its privileges do not "ring true."  Hr'g Tr. 33:8-9 (Feb. 27, 2009) (excerpts attached as Exhibit Q).

Dated:  May 7, 2009                                  Respectfully submitted,

/s/ Alex G. Romain
Kevin M. Downey (D.C. Bar No. 438547)
Alex G. Romain (D.C. Bar No. 468508)
Samuel Bryant Davidoff (D.C. Bar No. 978175)
Eun Young Choi (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
(202) 434-5164 (telephone)
(202) 434-5029 (facsimile)

*Counsel for Defendant Franklin D. Raines*

/s/ Eric R. Delinsky
Steven M. Salky (D.C. Bar No. 360175)
Eric R. Delinsky (D.C. Bar No. 460958)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
(202) 778-1800 (telephone)
(202) 822-8106 (facsimile)

*Counsel for Defendant J. Timothy Howard*

<u>/s/ Christopher F. Regan</u>
David S. Krakoff (D.C. Bar No. 229641)
Christopher F. Regan (D.C. Bar No. 433972)
Adam Miller (D.C. Bar No. 496339)
MAYER BROWN LLP
1909 K Street, NW
Washington, DC 20006
(202) 263-3000 (telephone)
(202) 263-3300 (facsimile)

*Counsel for Defendant Leanne G. Spencer*

## **CERTIFICATE OF SERVICE**

I certify that on May 7, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on CM/ECF, and I caused to be served a copy by hand on:

Joseph J. Aronica, Esq.
Duane Morris LLP
505 Ninth Street, NW, Suite 1000
Washington, DC 20004

Jane M. Lyons, Esq.
John C. Truong, Esq.
U.S. Department of Justice
555 Fourth Street, NW
Room E-4206
Washington, DC 20530

*Counsel for the Federal Housing Finance Agency*

/s/ Eun Young Choi
Eun Young Choi