IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE FANNIE MAE SECURITIES LITIGATION | No. 1:04-cv-01639 (RJL) |
| FRANKLIN MANAGED TRUST *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION *et al.*,<br><br>*Defendants*. | No. 1:06-cv-00139 (RJL) |

**KPMG LLP'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL OFHEO CHIEF ACCOUNTANT AND DEPOSITION WITNESS WANDA DeLEO TO ANSWER QUESTIONS RELATED TO OFHEO'S PUBLIC STATEMENTS ON EXPERT DISAGREEMENT OVER FAS 133 ACCOUNTING**

KPMG LLP respectfully moves this Court to compel Wanda DeLeo, Chief Accountant at the Federal Housing Financing Agency ("FHFA"), to answer questions to which she invoked the deliberative process and bank examination privileges at her recent deposition. Her refusals to answer centered on a public acknowledgement by the Office of Federal Housing Enterprise Oversight ("OFHEO") earlier this year that experts do not agree on the FAS 133 accounting treatments that play a major role in Lead Plaintiffs' complaint. The testimony that KPMG seeks is directly relevant to scienter.

OFHEO's public acknowledgement appeared in an April 30, 2009 *Wall Street Journal* article, which quoted a February 2008 report on Freddie Mac that the Kroll firm prepared at OFHEO's request. Former SEC Chief Accountant Lynn Turner participated in Kroll's review, which concluded that Freddie Mac's "inappropriate application" of accounting rules for

derivative contracts—"hedge accounting" under FAS 133—"enabled Freddie to defer billions of dollars of losses incurred from 2001 through 2004." *See* Exhibit A, James R. Hagery and Evan Perez, *FBI Looks Into Losses at Freddie*, Wall St. J., April 30, 2009 at C3.  Mr. Turner also served as OFHEO's consultant during the Special Examination of Fannie Mae, a review likewise concluding that Fannie Mae inappropriately applied the same accounting rules for derivative contracts during the same four-year period (which coincides with the class period in Lead Plaintiffs' complaint).  Lead Plaintiffs rely heavily on OFHEO's conclusion in their complaint.

The article quoted OFHEO's spokesperson, who stated that despite Kroll's findings, OFHEO "decided early last year 'not to take issue with the accounting'" for derivatives at Freddie Mac.  *Id.*  The spokesperson "cited 'disagreement among the experts' and Freddie's defense of its accounting" as the reasons it did not require Freddie Mac to recognize nearly $4 billion in deferred losses from hedge accounting during the class period.  *Id.*

KPMG sought to learn at Ms. DeLeo's deposition why OFHEO did not require Freddie Mac to restate financial statements that cover the same time period and involve purportedly "inappropriate" accounting for the same types of financial instruments.  Her testimony could establish that OFHEO had no basis to "take issue" with Fannie Mae's accounting either given "disagreement among the experts."  But OFHEO's counsel asserted privilege and instructed Ms. DeLeo not to answer these questions.

There is good cause for overriding these qualified privileges.  The information that OFHEO seeks to shield is highly probative of scienter.  In addition, ordering disclosure will not chill agency deliberations, especially now that OFHEO itself has publicly disclosed substantial parts of its assessments of Fannie Mae's and Freddie Mac's FAS 133 accounting.

**BACKGROUND**

A key issue in this case is whether Fannie Mae's application between 2001 and 2004 of the rules that govern accounting for derivatives was the product of an intent to defraud. Section 10(b) imposes no liability on those who engaged in a good-faith, reasonable application of FAS 133. *SEC v. Steadman*, 967 F.2d 636, 641-42 (D.C. Cir. 1992) (holding that scienter requires "an *extreme* departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.") (emphasis added).

Over the past five years hundreds of public companies, audited by all four of the major U.S. accounting firms, have restated their financial statements after encountering significant difficulties applying FAS 133's complicated requirements for derivatives. Lead Plaintiffs allege, on the other hand, that Fannie Mae's FAS 133 accounting was so obviously inappropriate that defendants must have intended to defraud shareholders. Central to their theory are OFHEO's conclusions in its 2004 Special Examination, which Lead Plaintiffs cite extensively in their complaint as supposed evidence of defendants' bad intent. *See, e.g.*, Second Amend. Compl. ¶¶ 370-71, 373, Dkt. No. 204 (Aug. 14, 2006) (relying on OFHEO reports).

As the Court knows, OFHEO's 2004 interim report was a significant about-face that has significant implications for scienter. During and before the class period OFHEO undertook annual examinations of Fannie Mae, including the manner in which it used derivatives and accounted for them under FAS 133. In its 2002 Report to Congress, for example, OFHEO expressly stated that "OFHEO evaluates the appropriateness of GAAP accounting for derivatives" and observed that "FAS 133 implementation [at Fannie Mae] has been deliberate and well-documented with the necessary investments made to provide systems needed to ensure

3

ongoing compliance." OFHEO, *Report to Congress* at 29 (June 15, 2002) *available at* http://www.fhfa.gov/webfiles/2187/ar61402.pdf. Just two years later, however, OFHEO issued reports critical of these same policies, triggering the events that led to this lawsuit.[1]

The *Wall Street Journal*'s April 2009 article revealed OFHEO's latest public position—a position that threatens to undermine the Special Exam conclusions on which Lead Plaintiffs rely. After some of the same experts consulted during OFHEO's Special Exam of Fannie Mae concluded that Freddie Mac's FAS 133 accounting during the same time period was also inappropriate,[2] OFHEO decided "not to take issue with the accounting," citing "disagreement among the experts" and the company's ability to defend its approach. *FBI Looks Into Losses at Freddie*, Wall St. J. at C3.

At Ms. DeLeo's deposition, held September 21 & 22, 2009, defense counsel sought to establish the extent to which OFHEO had changed positions yet again. Ms. DeLeo's testimony could show that there is no basis to "take issue" with Fannie Mae's accounting given "disagreement among the experts" about how to account for derivatives and legitimate defenses to the accounting that was employed.

---

[1] For example, OFHEO's interim report from its Special Exam declared that Fannie Mae's "misapplications of GAAP [*e.g.,* FAS 133] are not limited occurrences, but appear to be pervasive and reinforced by management whose objective is to reduce earnings volatility at significant cost to employee and management integrity." OFHEO, *Report of Finding to Date Special Examination of Fannie Mae* at 82 (Sept. 17, 2004).

[2] *See* Wanda DeLeo deposition transcript ("Trans.") at 170-71 & 202-05. Due to the protective order in this case, we are submitting the deposition transcript to the Court under seal.

OFHEO's counsel repeatedly objected and instructed Ms. DeLeo not to answer, asserting that the information was protected by the deliberative process and bank examination privileges.[3] Ms. DeLeo was not allowed to testify about the accuracy of several statements in the article, such as whether Kroll concluded that Freddie Mac failed to qualify for hedge accounting and therefore should have recognized losses earlier (similar to OFHEO's assessment of Fannie Mae's FAS 133 accounting); whether OFHEO decided not to take issue with Freddie Mac's accounting in 2008 despite Kroll's conclusions; whether that decision was based on disagreement among the experts or Freddie Mac's ability to defend its accounting; or even whether OFHEO notified Freddie Mac in 2008 that no restatement would be required. Trans. at 209-13.

**ARGUMENT**

I.  **Many Of The Questions That Ms. DeLeo Declined To Answer Seek Non-Deliberative Material And Therefore Are Not Covered By Either Privilege.**

To satisfy its burden that either the deliberative process or the bank examination privilege applies to the testimony that KPMG seeks, OFHEO must demonstrate that Ms. DeLeo's answers would reveal deliberative communications—*i.e.*, "agency opinions and recommendations." *Schreiber v. Soc'y for Savings Bancorp, Inc.*, 11 F.3d 217, 2120 (D.C. Cir. 1993) (also noting that the party asserting the privilege bears the burden); *see also In re Providian Fin. Corp. Secs. Litig.*, 222 F.R.D. 22, 26 (D.D.C. 2004). Many of the questions that Ms. DeLeo did not answer,

---

[3] For example, defendants asked Ms. DeLeo to state the reasons cited in the Kroll report for concluding Freddie Mac misapplied FAS 133 between 2001 and 2004 (Trans. at 172-73); whether Kroll cited some of the same particular items that OFHEO identified as reasons to disqualify Fannie Mae's accounting treatment (*e.g.*, the accounting treatment for swaps, inadequate or insufficient hedge documentation, and the manner in which ineffectiveness was measured) (Trans. at 173-74); and, more generally, whether there was any similarity in the reasons cited in the two reviews or examinations (Trans. at 175). OFHEO asserted privilege each time.

however, called for factual, non-deliberative information falling outside the privileges' protections; the information therefore "must be produced." *Schreiber*, 11 F.3d at 220.

KPMG asked several questions at the deposition in an effort to determine whether the accounting issues identified in the Kroll report are the same as (or substantially similar to) the accounting issues involved in this litigation. OFHEO's counsel repeatedly objected and instructed Ms. DeLeo not to answer:

> MR. TULUMELLO: Did the reasons that Kroll cited in concluding that Freddie Mac had misapplied FAS 133 bear any similarity to the reasons that in 2004 OFHEO said Fannie Mae had misapplied FAS 133?
>
> MR. ARONICA: Same objection [*i.e.*, examination privilege]. Same direction [not to answer].
>
> BY MR. TULUMELLO:
>
> Q. Were they, in fact, the very same reasons?
>
> MR. ARONICA: Same objection. Same direction.

Trans. at 486-87.[4] Having Ms. DeLeo state which FAS 133 accounting problems Kroll identified in its evaluation of Freddie Mac would not reveal OFHEO's internal deliberations.

OFHEO would not even allow Ms. DeLeo to state whether OFHEO's spokesperson gave accurate information to the *Wall Street Journal*. The article quotes the spokesperson as stating that the agency decided in early 2008 "not to take issue with the accounting" at Freddie Mac during 2001 through 2004. *FBI Looks Into Losses at Freddie*, Wall St. J. at C3. It also quotes

---

[4] The *Wall Street Journal* article states that Kroll identified particular problems with Freddie Mac's hedge accounting, but OFHEO's counsel would not allow Ms. DeLeo to reveal whether these involved such things as Freddie Mac's "treatment for swaps," "the way in which Freddie Mac did or did not measure ineffectiveness," or "the manner in which Freddie Mac assessed effectiveness." Trans. at 491.

her as stating that this was because of "disagreement among the experts" and Freddie Mac's ability to defend the validity of its accounting. *Id.* OFHEO's counsel instructed Ms. De Leo not to testify whether either of the spokesperson's public statements was true. Trans. at 523-24. Because such questions also did not probe at confidential internal deliberations, the testimony is not privileged.[5]

## II. The Likelihood That Ms. DeLeo's Testimony Would Establish A Good-Faith Basis For Fannie Mae's FAS 133 Accounting Is More Than Sufficient Reason To Override Any Privilege That OFHEO Asserts.

To the extent either privilege applies to the questions that Ms. DeLeo refused to answer, the Court should still compel her to testify. The withheld testimony would show whether OFHEO reviewed accounting decisions by Freddie Mac that were substantially the same as those that Fannie Mae made in this case. It would also show whether OFHEO, after conducting the Freddie Mac review, found that Freddie Mac had a valid basis not to make a retroactive change in its accounting. Because that testimony is directly relevant to KPMG's scienter (*i.e.*, whether there was a reasonable basis for Fannie Mae's accounting during the class period), and because OFHEO has already made public statements on the same topic, there is good cause to require Ms. DeLeo to testify.

---

[5] The bank examination privilege is an outgrowth of the deliberative process privilege. *See, e.g., Principe v. Crossland Sav., FSB*, 149 F.R.D. 444, 447 (E.D.N.Y. 1993). One of the recognized purposes of the deliberative process privilege is to "protect against misleading the public or confusing the issues by the dissemination of documents suggesting the reasons or rationales for a course of action which were not the ultimate reasons for the agency's decision." *Heggestad v. United States DOJ*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000). OFHEO's assertion of privilege in this case seeks to turn that rationale on its head. After OFHEO made a statement to the media explaining "the ultimate reasons for" its decision not to take issue with Freddie Mac's accounting, OFHEO now refuses to state whether it made such a decision or whether the reasons its spokesperson previously gave for the decision are accurate.

The rule in this Circuit is clear: "Even when asserted to protect deliberative material, the [bank examination] privilege may be overridden where necessary to promote 'the paramount interest of the Government in having justice done between litigants.'" *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d F.2d 630, 634 (D.C. Cir. 1992) (citation omitted). Courts compel disclosure where there is "good cause." *Providian Fin. Corp.*, 222 F.R.D. at 26. Good cause is assessed by balancing the same five factors that govern assertion of the deliberative process privilege:

> "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."

*Id.* at 220-21 (quoting *Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d at 634); *Cobell v. Norton*, 213 F.R.D. 1, 5 (D.D.C. 2003) (same five factors determine whether to override the deliberative process privilege).

This Court has previously ordered OFHEO to produce documents—withheld under claims of deliberative process privilege—showing how OFHEO arrived at its decision to approve Fannie Mae's accounting during the class period. Under a proper balancing of the same factors that the Court previously considered, the Court should allow KPMG to question OFHEO's Chief Accountant about the agency's recent decision not to take issue with Freddie Mac's accounting during the class period given disagreement among experts.

*First*, the testimony is highly relevant. The existence of an intent to defraud is in serious tension (if not incompatible) with the conclusion that experts reasonably disagree whether pertinent applications of FAS 133 were permissible during the class period. This would be so even if Lead Plaintiffs, through their reliance on OFHEO's 2004 Special Exam Report, had not made OFHEO's FAS 133 findings central to their case. KPMG is entitled to know, at the very

8

least, the extent to which OFHEO's conclusions about Freddie Mac's FAS 133 accounting during the class period also apply to Fannie Mae's FAS 133 accounting for the very same period.

The context for such discovery is important. OFHEO's criticisms of Fannie Mae's accounting in the 2004 Special Exam Report were based on a view of FAS 133 that cannot be reconciled with OFHEO's more recent Freddie Mac statements. It is particularly appropriate to question Ms. DeLeo about that recent development because she did not hesitate to make public her earlier categorical views. In her testimony to Congress, she criticized Fannie Mae for using hedge accounting outside the "very specific criteria you must meet to do that," such as derivative transactions with "matched terms" that are "perfectly effective." Testimony before the House Financial Services Committee, Subcommittee on Capital Markets, Insurance, and Government Sponsored Enterprises (Oct. 6, 2004).

*Second*, KPMG cannot obtain this information elsewhere. The information's probative value derives in substantial part from the fact that Ms. DeLeo's agency is the one that originally approved Fannie Mae's accounting, the one that soon thereafter switched to criticizing the same accounting (to such an extent that the criticism gave rise to several of the key allegations in Lead Plaintiffs' complaint), and also the one that permitted Freddie Mac (the only other subject of OFHEO's regulatory authority) to continue deferring losses that were reported on financial statements from the class period.[6]

---

[6] Moreover, OFHEO has objected to giving defendants access to the Kroll report itself or to any of the related documents. *See* Individual Defendants' Motion to Compel FHFA, Dkt. No. 781 (Sept. 15, 2009).

The next two factors also weigh in favor of disclosure.  The Court is well aware of the significance of this litigation (the *third* factor), and OFHEO has certainly played a central role in this litigation on both the merits of Lead Plaintiffs' claims and in discovery (the *fourth* factor).

*Finally*, OFHEO has no legitimate basis for believing that disclosure of the narrow category of information sought through this motion would cause government employees to become more timid.  A protective order is in place, and this Circuit has explained that such a device "largely . . . alleviate[s]" the "chilling effect" that disclosure might have.  *Schreiber*, 11 F.3d at 222.  Moreover, the bank examination privilege is primarily intended to protect the extensive and informal lines of communication between the bank and the regulator.  *Subpoena Served upon Comptroller of Currency*, 967 F.2d at 634.  The FAS 133 issue is discrete; it involves accounting treatments used more than five years ago; and it has already been the subject of formal, publicized reviews involving both companies.  OFHEO's FAS 133 accounting reviews have been extensively explored in this litigation and elsewhere—indeed, OFHEO itself chose to make a significant part of its assessments a matter of public record.  The only thing that might be chilled by an order that requires OFHEO to complete the picture of these assessments is an agency's deliberate decision to take patently inconsistent positions.  There is nothing legitimate for this Court to shield from the disclosure—limited in nature and subject to a protective order—that KPMG now seeks.

OFHEO put its FAS 133 determinations in the public realm when its spokesperson told a *Wall Street Journal* reporter why the agency did not take issue with Freddie Mac's accounting and did not require it to issue corrected financial statements.  OFHEO may not make public comments confirming and explaining that policy decision, then argue in litigation that testifying about the same decision would prejudice its ability to carry out its mission.

**CONCLUSION**

For the reasons explained above, there is more than good cause for requiring Ms. DeLeo to answer the questions posed at her deposition regarding: (1) the degree of similarity between FAS 133 issues at Fannie Mae and those at Freddie Mac (including those raised in the Kroll report); (2) the nature and extent of expert disagreement regarding the accounting treatments used by Freddie Mac and Fannie Mae; and (3) the differences (if any) between Freddie Mac and Fannie Mae that would account for OFHEO's decision not to take issue with Freddie Mac's accounting or require it to restate once Kroll concluded that Freddie Mac's FAS 133 accounting was also inappropriate.

DATED: September 29, 2009

                                          Respectfully submitted,

                                          /s/ Andrew S. Tulumello
                                        F. Joseph Warin (D.C. Bar No. 235978)
                                        Scott A. Fink (*pro hac vice*)
                                        Michael F. Flanagan (D.C. Bar No. 435942)
                                        Andrew S. Tulumello (D.C. Bar No. 468351)
                                        David Debold (D.C. Bar No. 484791)
                                        GIBSON, DUNN & CRUTCHER LLP
                                        1050 Connecticut Avenue, N.W.
                                        Washington, D.C.  20036
                                        Telephone: (202) 955-8500
                                        Facsimile: (202) 467-0539

                                        *Counsel for Defendant KPMG LLP*