<u>UNITED STATES DISTRICT COURT</u>
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | ) ) ) | MDL No. 1668 |
| | ) | |
| In Re Fannie Mae Securities Litigation | ) ) ) | Consolidated Civil Action No.: 1:04-CV-01639 Judge Richard J. Leon |
| | ) | |

**MEMORANDUM IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, APPROVING FORM AND MANNER OF NOTICE,  SETTING DATE FOR HEARING ON FINAL APPROVAL OF SETTLEMENT, AND STAYING NON-SETTLEMENT RELATED PROCEEDINGS**

Lead Plaintiffs Ohio Public Employees Retirement System ("OPERS") and State Teachers Retirement System of Ohio ("STRS") (collectively, the "Lead Plaintiffs")[1] on behalf of themselves and the Class they represent, respectfully submit this memorandum of law in support of their unopposed motion pursuant to Fed. R. Civ. P. 23(e) for preliminary approval of the proposed Settlement, authorization to provide notice, scheduling a hearing for consideration of approval of the Settlement, stay of non-settlement related proceedings, and related matters.

**I.     PRELIMINARY STATEMENT**

Lead Plaintiffs have reached an agreement with Defendant Federal National Mortgage Association ("Fannie Mae"), Defendant KPMG LLP ("KPMG") (collectively, with Fannie Mae, the "Settling Defendants"), and the Federal Housing Finance Agency ("FHFA") (as Conservator

---

[1] Capitalized terms not defined herein are as stated in the Stipulation of Settlement of Securities Action, dated May 7, 2013 ("Stipulation"), attached as Exhibit 1 to Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, Setting Date for Hearing on Final Approval of Settlement, and Staying Non-Settlement Related Proceedings.

for Fannie Mae), to settle this securities class action on the terms set forth in the Stipulation. [2] The proposed Settlement will provide a substantial monetary benefit to the Settlement Class of $153,000,000 (one hundred and fifty-three million dollars) in cash.  The Settlement, if approved, will resolve all claims asserted against the Settling Defendants in this Consolidated Action.

The Settlement is the culmination of more than eight years of litigation, and was reached at a time when the Parties to the Stipulation understood the strengths and weaknesses of their respective positions.  Specifically, Lead Plaintiffs, through their counsel, conducted an extensive investigation of their claims, filed a detailed consolidated complaint, opposed motions to dismiss, undertook significant fact discovery, and briefed and argued eight summary judgment motions.

Lead Plaintiffs and the Settling Defendants engaged in extensive arm's length settlement negotiations and participated in mediation under the supervision of Fred F. Fielding, an experienced and highly regarded mediator.  The mediation ultimately resulted in the Stipulation. Lead Plaintiffs, based upon their evaluation of the facts and applicable law and their recognition of the substantial risk and expense of continued litigation, submit that the proposed Settlement is in the best interests of the Class and will provide an immediate meaningful recovery.

Prior to the Hearing on Final Approval of Settlement (the "Settlement Fairness Hearing"), Lead Plaintiffs will submit detailed papers supporting the proposed Settlement and will ask the Court to determine whether the Settlement is fair, reasonable and adequate.  At this time, however, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class.  Specifically, Lead Plaintiffs request that the Court enter the proposed Order Granting Preliminary Approval of Class Action Settlement,

---

[2] Former individual defendants Franklin Raines, Timothy Howard, and Leanne Spencer (the "Individuals") have been dismissed from this Action.  The dismissed Individuals are signatories to the Stipulation for purposes of its release provisions, set forth in Paragraph 3 of the Stipulation.

Approving Form and Manner of Notice, Setting Date for Hearing on Final Approval of Settlement, and Staying Non-Settlement Related Proceedings, submitted herewith (and as Exhibit A to the Stipulation), which, among other things, will:

i.      Preliminarily approve the Settlement as set forth in the Stipulation;

ii.     Approve the manner, form and content of the Notice,  Summary Notice and Proof of Claim forms, attached as Exhibits A-1, A-2, and A-3 to the Stipulation, respectively;

iii.    Designate The Garden City Group, Inc. to serve as Claims Administrator;

iv.     Schedule a hearing as soon as reasonable to consider whether to finally approve the Stipulation;

v.      Establish procedures for the submission of objections to the Stipulation;

vi.     Stay all non-settlement related proceedings; and

vii.    Establish other requirements and procedures necessary to effectuate the Stipulation.

Given the immediate and substantial benefit of $153 million, the risks in establishing Settling Defendants' liability and proving damages, and the potential limitation on the ability of Fannie Mae to satisfy a judgment, Lead Plaintiffs respectfully submit that the Settlement reflected in the Stipulation is not only fair, reasonable, and adequate, but represents an outstanding recovery, as further described below and as will be demonstrated in connection with seeking final approval of the Settlement.

## II.      FACTUAL BACKGROUND

Beginning in September 2004, various plaintiffs filed thirteen securities class action complaints against Fannie Mae and certain of its officers in this district and others.  The Judicial

Panel on Multidistrict Litigation consolidated the lawsuits pursuant to 28 U.S.C. § 1407 and transferred all of the cases to District of Columbia.  The Court appointed Lead Plaintiffs in January 2005 and Lead Plaintiffs filed a Consolidated Complaint in March 2005.  In February 2006, the Court denied Fannie Mae's motion to dismiss.

Lead Plaintiffs filed the "Second Amended Consolidated Class Action Complaint" (the "Complaint") on August 14, 2006 against Fannie Mae and the Individuals and also added claims against Fannie Mae's auditor, KPMG.  Specifically, the Complaint alleged that the Settling Defendants and the Individuals publicly issued materially false and misleading financial reports and other statements that artificially inflated the price of Fannie Mae's securities, in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder. On September 28, 2006, KPMG filed a motion to dismiss, which was denied on January 24, 2007.

In January 2008, following motions and briefing, the Court certified a class generally composed of purchasers of Fannie Mae's common stock and call options and sellers of Fannie Mae's put options from April 17, 2001 through December 22, 2004 (the "Class Period").  A Notice of Pendency of Class Action was mailed to potential class members over several months in 2008.  The original mailing included 958,697 notices, with over 20,000 remailings based upon changes of address; 239 timely exclusions were received.

Fact discovery concluded on April 29, 2010, with over 67 million pages of documents produced and 108 fact witnesses deposed.  Expert discovery concluded on May 26, 2011; Lead Plaintiffs had 6 experts and Fannie Mae, KPMG, and the Individuals had 29 experts combined

(slightly less than an average of 6 each).  Discovery involved various motions, including issues that were addressed by the Court of Appeals.

The Parties filed eight summary judgment motions in August 2011: two by Plaintiffs, two joint motions by the Settling Defendants and certain Individuals, one motion by KPMG, and one each by the Individuals.  These were argued in June 2012 over the course of four days.  The Court granted summary judgment on the Individuals' motions on September 20, October 16 and November 20, 2012.  In each opinion, the Court found that Plaintiffs had not established a genuine issue of material fact as to alleged scienter.  At the time that the Parties reached this Settlement, no decision had yet been rendered with regard to defendants Fannie Mae and KPMG.

In a related proceeding, Lead Plaintiffs challenged a rule promulgated by FHFA and published in the Federal Register on June 20, 2011, that gives FHFA, as conservator, the power to prevent any payment by Fannie Mae of a monetary judgment should one be obtained in this Consolidated Action.  *See* Conservatorship and Receivership, 76 Fed. Reg. 35,724 (June 20, 2011).  That proceeding is pending.

After some unsuccessful and sporadic efforts at settlement, the Settling Defendants agreed to formal mediation in 2011, using the services of Fred F. Fielding, an experienced mediator with the law firm of Morgan, Lewis & Bockius LLP.  The first meeting with the mediator took place on June 8, 2011.  On March 20, 2013, after a number of meetings over the course of more than a year (during which the Settling Parties had continued to brief and exchange information), the mediator was able to effect an agreement in principle, which was memorialized in a Memorandum of Understanding signed on April 10, 2013.  Pursuant to the Memorandum of Understanding, the Settling Defendants will make a cash payment totaling $153,000,000 (one hundred and fifty-three million dollars) for the benefit of the Settlement Class

Members.  The money will be placed in an interest-bearing escrow account within 10 days of preliminary approval by the Court of the Stipulation, and interest on earnings from the account will become part of the Settlement Fund for the benefit of the Class.

Class Members are persons falling within the definition of the Class that have not timely and validly excluded themselves from the Class in accordance with the procedure previously established by the Court.[3]  The Class is the class certified in this Court's Order of January 7, 2008 and defined as:

> All purchasers of the publicly traded common stock and call options of Federal National Mortgage Association ("Fannie Mae"), and sellers of Fannie Mae publicly traded put options during the period from April 17, 2001, through December 22, 2004 (the "Class Period") who suffered damages thereby. Excluded from the Class are (i) the Defendants, (ii) any person who was an officer or director of Fannie Mae or any of its parents or subsidiaries during the Class Period, (iii) the members of the immediate family of each of the [former] Individual Defendants, (iv) any entity in which any Defendant had a controlling interest during the Class Period, (v) any parent or subsidiary of Fannie Mae, (vi) any incentive, retirement, stock or other benefit plan that benefited solely the [former] Individual Defendants; (vii) the legal representatives, heirs, predecessors, successors or assigns of any of the foregoing excluded persons and entities.

Settlement Class Members include all Class Members, plus those Class Members who excluded themselves and have since opted to rejoin the Class for settlement, as set forth in the Stipulation.

All attorneys' fees, costs and expenses attributable to the Class, including the costs of Notice, will be paid out of the $153,000,000 plus interest.  Following the execution of the Memorandum of Understanding, the signatories negotiated the specific terms of the proposed Settlement, as set forth in the Stipulation and related exhibits.

## III.    ARGUMENT

### A.  The Proposed Settlement Warrants Preliminary Approval

---

[3] Under the Court-approved Notice of Pendency of Class Action, any persons falling within the definition of the Class who wished to be excluded from the Class could have done so by submitting a timely written request to the Notice Administrator.

Approval of a proposed settlement is within the Court's discretion, to be exercised in accordance with public policy that strongly favors pretrial settlement of complex class action lawsuits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."). Pursuant to Fed. R. Civ. P. 23(e), a class action settlement must be found by the Court to be "fair, reasonable, and adequate," which is generally done through a two-step settlement approval process: preliminary approval and final approval. *See, e.g., Vista Healthplan, Inc. v. Bristol-Myers Squibb Co.*, 266 F. Supp. 2d 44 (D.D.C. 2003); *Newberg on Class Actions* §11.25 ("Courts preliminarily review proposed settlements for evidence of obvious deficiencies, any unfairness, and to determine whether it falls within a range of reasonableness before directing notice to the class and scheduling a fairness hearing, after which final approval may be granted after parties have had an opportunity to object and further brief the court on relevant issues.")

During the first step, a court must consider whether the settlement warrants preliminary approval, such that notice of the settlement should be sent to the proposed class and a fairness hearing held. In the second step, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness and adequacy of the proposed settlement, the Court considers whether the settlement warrants "final approval."

As explained by Judge Sweet:

> In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice. Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range

of possible approval, preliminary approval is granted.   Once preliminary approval is bestowed, the second step of the process ensues . . .

*NASDAQ*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also Meijer, Inc. v. Warner-Chilcott Holdings Co., III, Ltd.*, 565 F. Supp. 2d 49, 57 (D.D.C. 2008) (noting that "a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery") (internal citations omitted)); *Torres v. Gristede's Operating Corp.*, No. 04-cv-3316 (PAC), 2010 WL 257937, *2 (S.D.N.Y. June 1, 2010) ("[p]reliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties" [and] "[t]o grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness'"); *In re Vitamins Antitrust Litig.*, 199 U.S. Dist. LEXIS 21963, at *30 (D.D.C. 1999) (following Manual); *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

In essence, the Court should determine whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ*, 176 F.R.D. at 102; *Prudential*, 163 F.R.D. at 209 ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.").

### 1.   The Proposed Settlement is the Result of Well Grounded, Good Faith, Arms' Length Negotiations

A presumption of fairness applies to a proposed class settlement when the settlement is the product of arms' length negotiations conducted by experienced counsel knowledgeable in complex class litigation. *Meijer, Inc.*, 565 F. Supp. 2d at 57; *Wal-Mart*, 396 F.3d at 116; *see also*

*Leung v. Home Boy Rest., Inc.,* No. 07 Civ. 8779 (RJS), 2009 WL 398861, *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties").   There is absolutely no basis to question the fairness of the settlement, because it "is not the product of collusion between the parties."  *See Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998); *Thomas v. Christopher*, 169 F.R.D. 224, 240 (D.D.C. 1996) (court must determine that proposed settlement is "not the product of fraud or overreaching by, or collusion between, the negotiating parties"), *aff'd in part, rev'd in part*, 139 F.3d 227, 231 (D.C. Cir. 1998).

In this case, the Stipulation is the product of rigorous negotiations.  The Settling Parties took part in protracted negotiations for over a year, with multiple mediations before an experienced mediator.   Plaintiffs' Counsel were thorough and well-informed, having filed a detailed consolidated complaint, opposed motions to dismiss, engaged in extensive discovery including litigation relating to that discovery, opposed motions for summary judgment, and engaged in related litigation challenging a FHFA rule with potential effect on the case.  Plaintiffs had a clear and well-developed understanding of the strengths and weaknesses of their case before entering into the Stipulation.

> **2.     The Proposed Settlement Falls Within the Range of Reasonableness and Warrants Issuance of Notice and a Hearing on Final Approval of Settlement**

Although Lead Plaintiffs believe that the claims asserted in the Consolidated Action are meritorious and the Class would ultimately prevail at trial, continued litigation against the Settling Defendants and the Individuals posed significant risks that made any recovery for the Class uncertain.  The fairness and adequacy of the Stipulation is underscored by consideration of

the obstacles that the Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the Consolidated Action.  *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 4526593, *10 (S.D.N.Y. Dec. 20, 2007).

Here, Lead Plaintiffs appreciate the unique and significant risks inherent in the Consolidated Action.  Pending summary judgment motions on loss causation, FAS 133 liability,[4] and the auditor liability of KPMG threaten to end the litigation, leaving the prospect of uncertain and costly appellate review.   If the Consolidated Action continues, Plaintiffs face substantial challenges in establishing that the Settling Defendants made untrue statements and omissions in violation of the Securities Exchange Act of 1934, particularly in light of the Court's rulings in granting summary judgment to the Individuals.   Even assuming Plaintiffs prevail on liability issues at trial, Settling Defendants still would have the opportunity to persuade a jury that any losses were attributable to causes other than Settling Defendants' alleged misstatements or omissions.   Defendant Fannie Mae, likely to be viewed as the primary defendant by a jury, is in conservatorship, making any ultimate recovery following trial problematic.   There are continual discussions in the political realm that Fannie Mae will be wound down, or that other actions may be taken that would prevent collection following a judgment.   Also pending is the challenge to the rule that FHFA promulgated, which, if valid, would allow it as conservator of Fannie Mae to refuse to pay any judgment.

When considering the Stipulation, Lead Plaintiffs weighed the certainty of an immediate cash recovery for the Class against the significant legal challenges Plaintiffs faced.   Under these circumstances, the proposed $153,000,000 settlement is fair, reasonable, and adequate.

---

[4] In their Complaint, Plaintiffs allege that Fannie Mae misapplied the hedge accounting requirements of FAS 133, an accounting standard that applies to derivatives.

### 3.    The Settlement Has No Obvious Deficiencies

There are no "grounds to doubt [the Stipulation's] fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys." *Prudential*, 163 F.R.D. at 209.  Lead Plaintiffs, like all other Class Members, will receive their *pro rata* distribution from the Net Settlement Fund in accordance with a Plan of Allocation that will be presented to the Court for approval.  The matter of attorneys' fees and payment of expenses is wholly separate from the Settlement and subject to the Court's oversight and approval.

Accordingly, nothing in the course of this Consolidated Action, the settlement negotiations, or the Stipulation itself raises fairness concerns.  Plaintiffs therefore request that the Court preliminarily approve the Settlement and set a date for the Settlement Fairness Hearing.

### B.    The Form And Manner Of Notice To The Class Should Be Approved

Federal Rule of Civil Procedure 23(e)(1) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal" (*i.e.*, the proposed Settlement reflected in the Stipulation). Here, the Settling Parties negotiated the form of the Notice to be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort from or through Defendant Fannie Mae's records.  In addition, the Claims Administrator[5] will send the Notice to nominee owners, such as brokerage firms, that commonly hold securities in "street name" for the benefit of their customers, who are the beneficial purchasers of the securities.  The Settling Parties further propose to supplement that mailed Notice with a Summary Notice to be transmitted through the

---

[5]   The proposed Claims Administrator is Garden City Group, Inc., which has more than 25 years of experience in class action administration and has handled some of the largest securities settlements in history.  *See generally* www.gcginc.com.

11

Wall Street Journal and a national business oriented newswire, or as otherwise ordered by the Court.  The Notice and Summary Notice are attached to the Stipulation as Exhibits A-1 and A-2.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."  Fed. R. Civ. P. 23(h)(1).  Here, Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Lead Counsel will apply to the Court for attorneys' fees of no more than 22% of the Settlement Fund, after costs and expenses, and expenses of no more than $17 million plus the costs of settlement administration, plus interest on those amounts.[6]  *See* Stipulation at Exhibit A-1.  This proposed fee amount is well within the range of reasonable attorneys' fees awarded for similar complex class action matters in the District of Columbia Circuit as well as other federal district courts.  *See, e.g., Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993) (approving fee award of 20% of recovery, noting that "a majority of common fund class action fee awards fall between twenty and thirty percent"); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 205-06 (D.D.C. 2011) (approving 22-25% of recovery, and citing cases with range of 20-33%).  *Bebchick v. Washington Metro Area Transit Comm'n*, 805 F.2d 396 (D.C. Cir. 1986) (approving fee award of 25% of recovery); *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (granting 33.3% fee on $586 million fund where fee resulted in a "negative" multiplier of 0.7, stating there was "no real danger of overcompensation" where the award represents a fractional multiplier, as is also the case here).  Furthermore, in securities class actions, the Private Securities Litigation Reform Act ("PSLRA") requires the notice of settlement to include: (1) "[t]he amount of the settlement proposed to be

---

[6] Pursuant to the retention agreement between Lead Counsel and the Ohio Attorney General, on behalf of Lead Plaintiffs, Lead Counsel may apply and seek an award of attorneys' fees and costs incurred in connection with its prosecution of the claims against the Settling Defendants and the Individuals.  The retention agreement sets a base minimum fee of 7.5-8.5% of the total recovery amount, after costs and expenses awarded to Lead Counsel.

distributed to the parties to the action, determined in the aggregate and on an average per share basis;" (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree;" (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members;" and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement."

The proposed Notice describes the Settlement and sets forth the aggregate amount of the Settlement Fund ($153,000,000) and the estimated average per share recovery; states the Settling Parties' disagreement over liability and damages; sets out the amount of attorneys' fees and expenses that Lead Counsel intend to seek in connection with final settlement approval; and describes the Plan of Allocation.  In addition, the Notice explains the nature, history and status of the Consolidated Action; sets forth the definition of the Class, describes the Class's claims and the classwide issues, discusses the rights of persons who fall within the definition of the Class, and summarizes the reasons the Settling Parties are proposing the Settlement.

Further, for those Class Members who wish to participate in the Settlement, the Notice and the Proof of Claim provide instruction on the process for completing and submitting the Proof of Claim.  The Notice also provides the name and mailing address for the Claims Administrator, Lead Counsel, and Counsel for the Settling Defendants.  The Summary Notice

also informs Class Members that copies of the Notice and Proof of Claim may be obtained by writing the Claims Administrator, or by accessing the documents on the website of the Claims Administrator.  Finally, the Notice sets forth the date, time and place of the Settlement Fairness Hearing, along with the procedures for objecting to or seeking exclusion from the Settlement.

Accordingly, the Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart*, 396 F.3d at 114.  The manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.  *See In re Warner Chilcott Ltd. Sec. Litig.,* No. 06 Civ. 11515, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

### C.  A Stay of Proceedings Is Appropriate

The Memorandum of Understanding and the Stipulation provide that the Settling Parties will jointly move this Court for a formal stay of all proceedings related to the Consolidated Action.  Under these circumstances – pending settlement and with the agreement of the parties – courts routinely stay proceedings.  *See, e.g., Chemical Mfrs. Ass'n v. United States Environmental Protection Agency*, 919 F.2d 158, 161 (D.C. Cir. 1990).  Therefore, Lead Plaintiffs request that this Court order a stay of all non-settlement proceedings related to the Consolidated Action until the Court renders a final decision regarding the approval of the Settlement.

## IV.  CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order.

Respectfully submitted,

OHIO ATTORNEY GENERAL
MICHAEL DeWINE

MARKOVITS, STOCK & DEMARCO, LLC
s/ W.B. Markovits
W.B. Markovits
s/Joseph T. Deters
Joseph T. Deters
Paul M. De Marco
Christopher D. Stock
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
E-mail: bmarkovits@msdlegal.com
E-mail: jdeters@msdlegal.com
E-mail: pdemarco@msdlegal.com
E-mail: cstock@msdlegal.com
*Special Counsel for the Attorney General of Ohio
and Lead Counsel for Lead Plaintiffs*

BERNSTEIN LIEBHARD LLP
Stanley Bernstein
Jeffrey Lerner
10 East 40th Street
New York, New York 10016
Telephone:  (212) 779-1414
Facsimile:  (202) 298-7678
Email:  Bernstein@bernlieb.com
Email:  lerner@bernlieb.com
*Special Counsel for the Attorney General of Ohio
and Co-Lead Counsel for Lead Plaintiffs*

COHEN MILSTEIN SELLERS & TOLL PLLC
Daniel S. Sommers (D.C. Bar #416549)
1100 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

15

dsommers@cohenmilstein.com
*Local Counsel for Lead Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 7, 2013 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF.

/s/ *Daniel S. Sommers*
Daniel S. Sommers (D.C. Bar #416549)