## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | )<br>)  MDL No. 1668<br>) |
| In Re Fannie Mae Securities Litigation | )<br>)  Consolidated Civil Action No.: 1:04-CV-01639<br>)  Judge Richard J. Leon<br>) |

## LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs, the Ohio Public Employees Retirement System ("OPERS") and the State Teachers Retirement System of Ohio ("STRS") (collectively, "Lead Plaintiffs"), on behalf of themselves and the Court-certified Class, hereby respectfully move this Court for final approval of the proposed Settlement resolving all claims asserted in this securities class action litigation on behalf of the Class, and approval of the proposed Plan of Allocation.

A Memorandum in Support of this application accompanies this Motion; and a Proposed Judgment and Order of Dismissal Order, which grants Lead Plaintiffs' motion herein, is attached as Exhibit B to the parties' Stipulation of Settlement (Doc. #1089-2).

Respectfully submitted,

MARKOVITS, STOCK & DEMARCO, LLC

s/ W.B. Markovits
W.B. Markovits
s/Joseph T. Deters
Joseph T. Deters
Paul M. De Marco
Christopher D. Stock
119 East Court Street, Suite 530
Cincinnati, Ohio 45202

Telephone: (513) 651-3700
Facsimile: (513) 665-0219
E-mail: bmarkovits@msdlegal.com
E-mail: jdeters@msdlegal.com
E-mail: pdemarco@msdlegal.com
E-mail: cstock@msdlegal.com

*Special Counsel for the Attorney General of Ohio
and Lead Counsel for Lead Plaintiffs*

BERNSTEIN LIEBHARD LLP
Stanley Bernstein
Jeffrey Lerner
10 East 40th Street
New York, New York 10016
Telephone:  (212) 779-1414
Facsimile:  (202) 298-7678
Email:  Bernstein@bernlieb.com
Email:  lerner@bernlieb.com
*Special Counsel for the Attorney General of Ohio
and Co-Lead Counsel for Lead Plaintiffs*

COHEN MILSTEIN SELLERS & TOLL PLLC
Daniel S. Sommers (D.C. Bar #416549)
1100 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
dsommers@cohenmilstein.com
*Local Counsel for Lead Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | ) ) ) | MDL No. 1668 |
| In Re Fannie Mae Securities Litigation | ) ) ) ) ) | Consolidated Civil Action No.: 1:04-CV-01639<br>Judge Richard J. Leon |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION
<u>SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................................... 5

LEGAL ARGUMENT ................................................................................................................ 6

    I.   THE SETTLEMENT WARRANTS FINAL APPROVAL ................................................. 6

        A.  The Settlement is a Product of Arm's-Length Bargaining ............................................ 7

        B.  The Terms of Settlement in Relation to Strength of Lead Plaintiffs'
            Case Supports the Settlement............................................................................................ 8

        C.  The Status of the Litigation at the Time of Settlement Supports the Settlement........... 9

        D.  The Reaction of the Class Supports the Settlement ....................................................... 9

        E.  The Opinion of Experienced Counsel Supports the Settlement.................................. 10

    II.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE ...... 10

    III.   NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF
         RULE 23 AND DUE PROCESS ................................................................................ 11

CONCLUSION ......................................................................................................................... 13

CERTIFICATE OF SERVICE ................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Sec. Vanlines, Inc. v. Gallagher*,
   782 F.2d 1056 (D.C. Cir. 1986) ............................................................................... 6

*Brown v. Hornstein*,
   669 A.2d 139 (D.C. 1996) ....................................................................................... 7

*City of Monroe Emp. Ret. Sys. v. Bridgestone*,
   399 F.3d 651 (6th Cir. 2005) ................................................................................... 4

*Glazer Capital Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008) ................................................................................... 4

*Goozh v. Capitol Souvenir Co.*,
   462 A.2d 1140 (D.C. 1983) ..................................................................................... 7

*In re Initial Pub. Offerings Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) .................................................................... 11

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D.D.C. 2002) ............................................................................ 7, 10

*In re Toys "R" Us Antitrust Litig.*,
   191 F.R.D. 347 (E.D.N.Y. 2000) ........................................................................... 10

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ............... 10

*In re: Vitamins Antitrust Litig.*,
   2001–2 Trade Cas. (CCH), 2001 WL 856290 (D.D.C. July 19, 2001) ........... 6, 7, 10

*Luevano v. Campbell*,
   93 F.R.D. 68 (D.D.C. 1981) ..................................................................................... 9

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
   513 F.3d 702 (7th Cir. 2008) ................................................................................... 4

*Mayfield v. Barr*,
   995 F.2d 1090 (D.C. Cir. 1993) ............................................................................... 7

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ................................................................................................ 13

*Phillips v. Scientific–Atlanta, Inc.,*
    374 F.3d 1015 (11th Cir. 2004) .............................................................................. 4

*Pigford v. Glickman,*
    185 F.R.D. 82 (D.D.C. 1999) ......................................................................... 6, 7, 12

*Pigford v. Glickman,*
    206 F.3d 1212 (D.C. Cir. 2000)……………………………………………………...8

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,*
    365 F.3d 353 (5th Cir. 2004) .................................................................................. 4

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital,*
    531 F.3d 190 (2d Cir.2008) ..................................................................................... 4

*Thomas v. Albright,*
    139 F.3d 227 (D.C. Cir. 1998) ............................................................................ 6, 8

*U.S. v. D.C.,*
    933 F. Supp. 42 (D.D.C. 1996) .............................................................................. 6

## Rules

Fed.R.Civ.P. 23(c)(2) ................................................................................................ 12

Fed.R.Civ.P. 23(e) ............................................................................................... 6, 10

Fed.R.Civ.P. 23(e)(1)-(5) ........................................................................................... 6

## Legal Treatises & Other Academic Literature

ISS Securities Class Action Services,
    "SCAS Top 100 Settlements Report," (December 2012) ...................................... 12

*Manual for Complex Litigation (Third),*
    § 30.42 (1995) ......................................................................................................... 7

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs, the Ohio Public Employees Retirement System ("OPERS") and the State Teachers Retirement System of Ohio ("STRS") (collectively, "Lead Plaintiffs"), on behalf of themselves and the Court-certified Class,[1] submit this memorandum in support of final approval of the proposed Settlement[2] that will resolve the claims asserted in this securities class action litigation on behalf of the Class, and approval of the proposed Plan of Allocation.[3]

## PRELIMINARY STATEMENT

Subject to Court approval, and as described herein, Lead Plaintiffs, on behalf of themselves and the certified Class, have agreed to settle all claims asserted in the Consolidated Action in exchange for payment of $153,000,000 (the "Settlement Amount"), which has been deposited into interest-bearing escrow accounts. The Settlement is an outstanding result for the Class. If approved, the Settlement would represent the largest securities litigation class action recovery in the D.C. Circuit, and in the top 7% of all securities settlements since Congress

---

[1] The Class certified by the Court pursuant to an order issued January 7, 2008 consisting of the following:

> All purchasers of the publicly traded common stock and call options of Fannie Mae, and sellers of Fannie Mae publicly traded put options during the period from April 18, 2001 through December 22, 2004 (the "Class Period") who suffered damages thereby (the "Class"). Excluded from the Class are (i) the Settling Defendants, and the Individuals, who were previously dismissed from the case, (ii) any person who was an officer or director of Fannie Mae or any of its parents or subsidiaries during the Class Period, (iii) the members of the immediate family of each of the Individuals, (iv) any entity in which any Settling Defendant or Individual had a controlling interest during the Class Period, (v) any parent or subsidiary of Fannie Mae, (vii) any incentive, retirement, stock or other benefit plan that benefited solely the Individuals, and (vii) the legal representatives, heirs, predecessors, successors or assigns of any of the foregoing excluded persons and entities.

Also excluded from the Class are any Persons who submitted a request for exclusion in connection with the previously mailed Notice of Pendency of Class Action (the "Class Notice") as set forth on Exhibit D to the Stipulation who do not opt-back into the Class.

[2] Unless otherwise indicated herein, capitalized terms shall have those meanings contained in the Stipulation of Settlement of Securities Action dated May 7, 2013 (the "Stipulation").

[3] Concurrently, Plaintiff's Lead Counsel is filing a motion for approval of an award of attorneys' fees and reimbursement of litigation expenses.

passed the Private Securities Litigation Reform Act of 1995 ("PSLRA").  As explained below, the Settlement, in addition to providing an extraordinary recovery for the certified Class, avoids the substantial risks and expense of taking this action to trial, including the risk of recovering less than the Settlement Amount, or no recovery, after substantial delay.  As detailed in the Joint Declaration of W.B. Markovits and Joseph T. Deters supporting this motion,[4] at the time the parties agreed to settle, Lead Plaintiffs and their counsel had extensively litigated the Consolidated Action and had a thorough understanding of the strengths and weaknesses of the claims.

Before the Settlement was agreed to, Lead Plaintiffs' Counsel had engaged in almost nine years of vigorous litigation, which included (a) conducting an extensive investigation into the Class's claims; (b) drafting three detailed Consolidated Complaints; (c) successfully opposing two rounds of Defendants' motions to dismiss, in which the parties' collective briefing (including exhibits) exceeded 3,900 pages; (d) obtaining class certification; (e) reviewing, coding, cataloging and analyzing over 67 million pages of documents; (f) drafting countless detailed issue and legal memoranda; (g) taking 123 fact witness depositions; (h) engaging and extensively working with six experts whose expert reports (including rebuttal reports and exhibits), in the aggregate, totaled nearly 4,700 pages; (i) taking the depositions of the approximately 29 expert witness Defendants designated; (j) navigating the myriad uncertainties surrounding the Federal Housing Finance Agency's ("FHFA's") decision to place Fannie Mae

---

[4] The Joint Declaration of W.B. Markovits and Joseph T. Deters in Support of (A) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, and (B) Lead Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration or "Joint Decl.") is an integral part of this submission and, for the sake of brevity in this Memorandum, Lead Plaintiffs respectfully refer the Court to the Joint Declaration for a detailed description of, among other things: the history of the Action; the nature of the claims asserted in the Action; the negotiations leading to the Settlement; the value of the Settlement to the Class, as compared to the risks and uncertainties of continued litigation; the terms of the Plan of Allocation for the Settlement proceeds; and a description of the services Lead Plaintiffs' Counsel provided for the benefit of the Class.  The Joint Declaration is attached hereto as Exhibit 1.

into conservatorship; (k) successfully opposing FHFA's motion to stay the litigation indefinitely, in which the parties' collective briefing exceeded 260 pages; (l) challenging the FHFA-promulgated rule limiting the ability of defrauded stock purchasers to recover from Fannie Mae – first at the administrative level, then before the Court in a related case (Case No. 1:11-cv-01543 (RJL)); and (m) briefing and arguing eight motions for summary judgment, in which the parties collective briefing (including the supplemental memoranda and exhibits filed in support thereof) totaled more than 3,800 pages. *See generally* Joint Decl., at ¶4-82.

Moreover, the Settlement was reached only after prolonged, arms'-length settlement discussions over the course of two years, facilitated by the experienced and highly-respected mediator Fred Fielding. *Id*. at ¶91. These discussions took place over a number of formal and informal mediation sessions, including numerous telephonic and in-person follow-up sessions. *Id*. Lead Plaintiffs, who are sophisticated institutional investors of the type favored by Congress when passing the PSLRA, have closely monitored and participated in this litigation from the outset, participated in the settlement negotiations, and recommend that the Settlement be approved. *Id*. Further, Lead Counsel, who have extensive experience in prosecuting securities class actions, strongly believe that the Settlement is in the best interests of the Class. *Id*. at ¶92.

Lead Plaintiffs' and Lead Counsel's endorsement of the Settlement is informed by the thorough understanding of the strengths and weaknesses of the claims and defenses in the Action gained through their extensive and rigorous prosecution of this matter, as described above. Lead Counsel additionally considered: (a) the immediate cash benefit to Class Members under the terms of the Stipulation; (b) the difficulties and risks involved in proving the operative allegations – especially given the fact that the Court has already granted summary judgment motions filed by the three individual defendants on the basis that Lead Plaintiffs had offered no

evidence to create a genuine issue of material fact that any of the individual defendants acted with the requisite level of scienter; (c) the legal uncertainties associated with proving corporate scienter absent any showing of individual defendant scienter;[5] (d) the difficulties and risks of demonstrating corporate scienter with respect to Fannie Mae's implementation of FAS 133; (e) the difficulties and risks of demonstrating auditor scienter (a heightened standard) with respect to KPMG's participation in Fannie Mae's development and implementation of FAS 133; (f) the difficulties and risks of proving that the alleged fraud caused the Class's losses; (g) the probability that Lead Plaintiffs would be barred from introducing into evidence the findings and/or conclusions of the Rudman Report, the OFHEO Report, the 2006 OFHEO Report, and the Restatement, among other things; (h) the potential for adverse opinions on the outstanding summary judgment motions; (i) the attendant risks of litigation, especially in a complex action such as this, including the ability to maintain class status through to judgment; (j) the uncertainty in Lead Plaintiffs' theory of damages, even assuming that Lead Plaintiffs could establish liability as to the remaining Defendants; (k) the delays and uncertainties inherent in such litigation, including appeals; (l) the risk that Fannie Mae would be placed into receivership or liquidated entirely; and (m) the risk that the FHFA Rule would be upheld, denying the Class any damages to which it would otherwise be entitled. *Id*. at ¶¶93, 104.  That Lead Plaintiffs were able to obtain the $153 million Settlement in light of these risks is nothing short of extraordinary.

---

[5] Because the Court granted the Individual Defendants summary judgment, there is a distinct risk that the Court would find no scienter against Fannie Mae under the "corporate scienter" theory, which holds that absent some showing of individual scienter in the securities fraud context, there can be no corporate scienter.  While the Second, Sixth, Seventh and Ninth Circuits have rejected this theory, the Fifth and Eleventh Circuits have embraced it.  *Compare Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital,* 531 F.3d 190, 192 (2d Cir.2008); *City of Monroe Emp. Ret. Sys. v. Bridgestone,* 399 F.3d 651 (6th Cir. 2005); *Makor Issues & Rights, Ltd. v. Tellabs Inc.,* 513 F.3d 702, 708-09 (7th Cir. 2008); *Glazer Capital Mgmt., LP v. Magistri,* 549 F.3d 736 (9th Cir.2008), *with Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 366–67 (5th Cir. 2004); *Phillips v. Scientific– Atlanta, Inc.,* 374 F.3d 1015, 1018 (11th Cir. 2004).

On June 7, 2013, the Court issued an Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, Setting Date for Hearing on Final Approval of Settlement, and Staying Non-Settlement Related Proceedings (Doc. #1090) ("Preliminary Approval Order").  Pursuant to that Order, between June 28, 2013 and August 8, 2013 the Claims Administrator disseminated more than a million copies of the Settlement Notices and Proof of Claim Form to potential Class Members and Nominees. Joint Decl., at ¶87. Summary Notice was published on June 28, 2013 in *The Wall Street Journal* and on *PR Newswire. Id.* at ¶88.   To date, no objections to the Settlement have been received pursuant to the process set forth in the Notice disseminated on June 28, 2013, and there have been no objections to the proposed Plan of Allocation.

Lead Plaintiffs respectfully submit that both the Settlement and the Plan of Allocation are fair, reasonable and adequate and should be approved.

## FACTUAL BACKGROUND

In the interest of brevity, and to avoid unnecessary duplication, Lead Counsel will not rehash the factual background of this nine-year securities class action here.  Rather, they direct the Court to the accompanying Joint Declaration, which provides a detailed description of this Action's factual and procedural background, as well as the events that led to the Settlement.  *See, e.g.,* Joint Decl., at ¶¶4-82.  This memorandum will, instead, focus on the legal and factual matters relevant to approval of the Settlement and Plan of Allocation.

The terms of the Settlement provide for a Settlement Amount of $153,000,000, which has been placed in an interest-bearing segregated escrow account for the benefit of the Settlement Class.  The Settlement Fund will be used for the payment of taxes, notice and administrative costs, other costs approved by the Court, and for attorneys' fees and expenses.  The remainder

will be the "Net Settlement Fund."  The Net Settlement Fund will be distributed to Settlement Class Members who timely submit a valid Proof of Claim to the Claims Administrator ("Authorized Claimants").  Each Authorized Claimant will be allocated a percentage of the Net Settlement Fund based upon the relationship that each Authorized Claimant's claim bears to the total of all Authorized Claimant's claims, as explained in the Notice.  *Id*. at ¶¶106-111.

## LEGAL ARGUMENT

### I.   THE SETTLEMENT WARRANTS FINAL APPROVAL.

Under Rule 23 of the Federal Rules of Civil Procedure, no class action may be dismissed, settled or compromised without the approval of the Court. Fed.R.Civ.P. 23(e) provides in part that: "The claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Before giving its approval, the Court must provide adequate notice to all members of the class, allow for objections, conduct a fairness hearing and find, after notice and hearing, that the "settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Thomas v. Albright,* 139 F.3d 227, 231 (D.C. Cir. 1998); Fed. R. Civ. P. 23(e)(1)-(5).

Approval of a proposed class action settlement lies within the discretion of this Court. *In re: Vitamins Antitrust Litig.,* 2001–2 Trade Cas. (CCH) ¶ 73,361, 2001 WL 856290, at *1 (D.D.C. July 19, 2001); *U.S. v. D.C.,* 933 F. Supp. 42, 47 (D.D.C. 1996).  But the discretion to reject a settlement is "restrained by the 'principle of preference' that encourages settlements." *Pigford v. Glickman,* 185 F.R.D. 82, 103 (D.D.C. 1999).  "Few public policies are as well established as the principle that courts should favor voluntary settlements of litigation by the parties to a dispute."  *Am. Sec. Vanlines, Inc. v. Gallagher*, 782 F.2d 1056, 1060 (D.C. Cir. 1986) (enforcing settlement).  There is no question that the law favors settlements, and that

settlements should not be "lightly set aside." *Goozh v. Capitol Souvenir Co.,* 462 A.2d 1140, 1142 (D.C. 1983); *Brown v. Hornstein*, 669 A.2d 139, 142 (D.C. 1996). This is particularly so in class actions, "which are often complex, drawn out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr*, 995 F.2d 1090, 1092 (D.C. Cir. 1993).

There is no single, required test in this Circuit for determining whether a proposed class action settlement should be approved under Rule 23(e). *Pigford,* 185 F.R.D. at 98. Instead, courts consider the facts and circumstances of each case, and generally consider whether the proposed settlement is "fair, reasonable and adequate under the circumstances and whether the interests of the class as a whole are being served if the litigation is resolved by settlement rather than pursued." *Id.; Manual for Complex Litigation (Third),* § 30.42 at 238 (1995). Several factors that have been examined by courts in this Circuit in determining whether to approve settlements in class actions include: (1) whether the settlement is the result of arm's-length bargaining, (2) the terms of the settlement in relation to the strength of plaintiffs' case; (3) the status of the litigation at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel. *See In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 375-82 (D.D.C. 2002) (citing cases). Applying these factors, approval of the Settlement as fair and reasonable is warranted.

### A.     *The Settlement is a Product of Arm's-Length Bargaining.*

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *In re: Vitamins,* 2001 WL 856290, *2 (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Lead Counsel has represented to the Court that the settlement before it is the product of extensive and vigorous arm's-length bargaining, undertaken in good

faith with full knowledge of the case and its attendant risks.  *See* Joint Decl., at ¶91.  The settlement arose out of more than a year of adversarial negotiation including the exchange of information, numerous face-to-face meetings as well as telephone conferences.  *Id.*

The settlement was accomplished in no small part through the efforts of a capable and experienced mediator, Fred Fielding, who has kept the Court apprised of the status of mediation and can attest to the adversarial, non-collusive nature of the negotiations.  *Id.*   Lasting almost two years, the negotiation process was long and arduous.  The parties' mediation included formal in-person mediation sessions, for which detailed mediation statements were prepared and presentations made, as well as numerous informal consultations and negotiations.  *Id.* at ¶91.  Additionally, Lead Plaintiffs took an active role in the settlement process, precisely as the PSLRA intended.  *Id.* at ¶92.[6]  This factor supports approval.

### B.      The Terms of Settlement in Relation to Strength of Lead Plaintiffs' Case Supports the Settlement.

A "primary" factor a court should consider is an evaluation of the terms of the settlement in relation to the strength of the plaintiffs' case.  *See Pigford v. Glickman,* 206 F.3d 1212, 1217 (D.C. Cir. 2000), citing *Thomas v. Albright,* 139 F.3d at 231 ("The court's primary task is to evaluate the terms of the settlement in relation to the strength of plaintiffs' case.").   As described above and in the Joint Declaration, there was considerable risk going forward in this case.  *See, e.g.,* Joint Decl., at ¶¶93-99.  Trial, should it have been reached, would be costly and uncertain, and would have inevitably been followed by appeals.  By that time, Fannie Mae may not even be in existence.  While Lead Plaintiffs' Counsel believed and continue to believe in the merits of their case, the many and varied risks diminished the strength of the case going forward.  In the

---

[6] Although they recognize they might be entitled to reasonable litigation-related costs and expenses associated with their roles as Lead Plaintiffs (*see* 15 U.S.C. § 78u-4(a)(4)), OPERS and STRS have foregone this right for the benefit of the Class.

face of those risks, to obtain the largest securities settlement in this Circuit and one of the top seven percent under the PSLRA is nothing short of a remarkable recovery for Class Members. This factor strongly weighs in favor of approval.

### C.       The Status of the Litigation at the Time of Settlement Supports the Settlement.

A settlement may be questioned if arrived at too quickly, before the factual and legal development sufficient to provide both sides with information necessary for a reasonable assessment of the risks of continued litigation.  *See, Luevano v. Campbell,* 93 F.R.D. 68, 86 (D.D.C. 1981).   That question does not arise in this case.  The settlement was reached after years of litigation, though neither party had yet to face a trial (or the appeal to follow).  Moreover, the Court has already granted summary judgment motions filed by the three individual defendants on the basis that Lead Plaintiffs had offered no evidence to create a genuine issue of material fact that any of the individual defendants acted with the requisite level of scienter.  After almost nine years, years that included extensive factual development as well as legal rulings that defined the likely parameters of the case if it went to trial, Lead Plaintiffs were well aware of the risks of continued litigation.  *See* Joint Decl., at ¶¶93-99.  It is a certainty that experienced defense counsel were as well.  This factor strongly supports the proposed settlement.

### D.       The Reaction of the Class Supports the Settlement.

The reaction of the Class to date has been overwhelmingly positive.  Class Members began receiving notice on June 28, 2013, and between that time and this filing there have been no objections to the terms of the settlement.  Lead Counsel and the Claims Administrator have been contacted by more than 2,500 potential Class Members, and the Settlement has been favorably received.  *Id.* at ¶90.  Of course, settlements of this nature often attract "professional" or "serial" objectors, and there are likely to be some that arise prior to the September 20, 2013

deadline, but the fact that after mailing notice to almost a million potential Class Members and published notice to other potential Class Members we have seen no objections made pursuant to the process set forth in the Notice to date counsels in favor of approval. *Id*. at ¶¶87, 90, 129.

### E.     The Opinion of Experienced Counsel Supports the Settlement.

The opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *In re Lorazepam & Clorazepate Antitrust Litig.,* No. Civ.A.99-0790, 2003 WL 22037741, at *6 (D.D.C. June 16, 2003).   As reflected in the firm biographies accompanying the Joint Declaration, there is a wealth of experience among Plaintiffs' counsel in complex securities and class action litigation. *See* Joint Decl., at ¶¶130-33.   Also participating and approving of the settlement on the Plaintiffs' side was the Ohio Attorney General, committed to protecting the public interest.  *See In re Toys "R" Us Antitrust Litig.,* 191 F.R.D. 347, 351 (E.D.N.Y. 2000) ("Moreover, the participation of the State Attorneys General furnishes extra assurance that consumers' interests are protected."). As the Court well knows, defense counsel was as well comprised of highly capable, experienced counsel. *See* Joint Decl., at ¶144.  The opinion of all involved, experienced counsel supporting this Settlement as fair and reasonable weighs in favor of approval.[7]

## II.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE.

The Settlement Agreement provides for a Plan of Allocation.  *See* Joint Decl., at ¶¶106-111.  Pursuant to Fed.R.Civ.P. 23(e), this Court must determine, within its discretion, whether the plan of allocation is fair, adequate and reasonable. *In re Vitamins Antitrust Litig.,* No. 99-197 TFH, 2000 WL 1737867 (D.D.C. Mar. 31, 2000).   Settlement distributions that, like this one,

---

[7] *See also In re Veeco Instruments Inc. Sec. Litig.,* No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("Moreover, under the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . .is 'entitled to an even greater presumption of reasonableness . . . .'") (citation omitted).   In this case, OPERS and STRS both supervised and gave board approvals of the settlement.

apportion funds according to the relative amount of damages suffered by class member "have repeatedly been deemed fair and reasonable." *Id.* A plan of allocation is fair and reasonable as long as it has a "reasonable, rational basis." *In re Initial Pub. Offerings Sec. Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009).

In developing the Plan of Allocation under the supervision of Lead Counsel, Lead Plaintiffs' damage expert calculated the amount of estimated artificial inflation in the per share closing prices of Fannie Mae common stock and call options throughout the Class Period, as well as the artificial deflation in Fannie Mae put options, that allegedly was proximately caused by Defendants' alleged misrepresentations and material omissions. *See* Joint Decl., at ¶109. The damage expert's analysis entailed studying the price declines in Fannie Mae common stock in reaction to certain public announcements regarding Fannie Mae in which alleged misrepresentations and material omissions were alleged to have been revealed to the market (*i.e.*, "corrective disclosures"), adjusted to eliminate the effects attributable to general market and/or industry conditions. In this respect, artificial inflation tables were created and presented as part of the Settlement Notice for every trading day of the Class Period for both Fannie Mae common stock and call options, as well as an artificial deflation table for Fannie Mae put options. These tables will be utilized in calculating each claimant's Net Inflation Losses and/or Gains, and ultimately a claimant's overall Recognized Claim. *Id.*

In sum, the proposed Plan of Allocation was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants. Lead Plaintiffs respectfully submit that the proposed Plan of Allocation is fair and reasonable and should be approved.

**III.  NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS.**

Potential settlement class members must be given the "best notice practicable under the circumstances." *Pigford,* 185 F.R.D. at 101 (quoting Fed.R.Civ.P. 23(c)(2)). In this case, class members have received more than adequate notice and have been given sufficient opportunity to be heard on the fairness of the proposed settlement.  Lead Counsel, with approval of the Court, retained The Garden City Group ("GCG") as Claims Administrator.  GCG provided the original notice following certification of the Class, and is one of the leaders of the industry, having been involved in 37 of the top 100 securities class action settlements following the PSLRA—more than any other firm.  *See* ISS Securities Class Action Services, "SCAS Top 100 Settlements Report," at 21 (December 2012) (attached as Exhibit 3 to the Joint Declaration).  Lead Counsel and GCG developed a comprehensive plan that included notice through first class mail, through publication, and on websites.  *See* Joint Decl., at ¶¶83-90.

The Settlement Notice was disseminated in a manner to reach as many putative class members as was practicable as quickly as possible.  Notice of the proposed Settlement was provided promptly – three weeks after the June 7, 2013 preliminary approval.  Joint Decl., at ¶88. More than one million Settlement Notices were sent by First Class mail using the best possible source for names and addresses of Class Members.  *Id.* at ¶87.  Summary Notice was published in *The Wall Street Journal* and on *PR Newswire.  Id.* at ¶88.  The Settlement Notice and related documents are available on GCG's website, Lead Counsel's website, and a website dedicated to the case (www.fanniemaesecuritieslitigation.com).

Attached as Exhibit A to the Stipulation of Settlement (Doc. #1089-2), the Settlement Notice summarizes in plain language the terms of the Settlement and Class Members' rights in connection with the Settlement.  Among other information, the Settlement Notice contains a thorough description of the Settlement, the Plan of Allocation and Class Members' rights to: (i)

12

participate in the Settlement; (ii) object to the Settlement, Plan of Allocation or request for attorneys' fees and reimbursement of expenses; or (iii) opt-back into the Class.  Potential Class Members are provided with multiple means of addressing any questions they might have.  A "Frequently Asked Questions" on GCG's and MSD's website addresses many questions that, based on GCG's experience, are asked in this type of case.  Potential Class Members with questions can call a toll-free number for GCG, can call a toll-free number for Lead Counsel, or can contact either via dedicated email addresses (questions@fanniemaesecuritieslitigation.com and fannie@msdlegal.com).  There have been relatively few inquiries to date, suggesting that the terms of the Settlement and the options available to putative Class Members are clear.  *See* Joint Decl., at ¶90.

The combination of individual first-class mail to all Class Members who could be identified with reasonable effort, supplemented by publication notice in several widely-circulated publications, was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  Accordingly, the notice program here was reasonable.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully requests this Court to grant their Motion for Final Approval of Class Settlement Action and Approval of Plan of Allocation.

Respectfully submitted,

MARKOVITS, STOCK & DEMARCO, LLC

s/ W.B. Markovits
W.B. Markovits
s/Joseph T. Deters
Joseph T. Deters

13

Paul M. De Marco
Christopher D. Stock
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
E-mail: bmarkovits@msdlegal.com
E-mail: jdeters@msdlegal.com
E-mail: pdemarco@msdlegal.com
E-mail: cstock@msdlegal.com

*Special Counsel for the Attorney General of Ohio and Lead Counsel for Lead Plaintiffs*

BERNSTEIN LIEBHARD LLP
Stanley Bernstein
Jeffrey Lerner
10 East 40th Street
New York, New York 10016
Telephone:  (212) 779-1414
Facsimile:  (202) 298-7678
Email:  Bernstein@bernlieb.com
Email:  lerner@bernlieb.com

*Special Counsel for the Attorney General of Ohio and Co-Lead Counsel for Lead Plaintiffs*

COHEN MILSTEIN SELLERS & TOLL PLLC
Daniel S. Sommers (D.C. Bar #416549)
1100 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
dsommers@cohenmilstein.com

*Local Counsel for Lead Plaintiffs*

14

## CERTIFICATE OF SERVICE

I certify that on August 16, 2013 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF.

s/ Daniel S. Sommers
Daniel S. Sommers (D.C. Bar #416549)
COHEN MILSTEIN SELLERS & TOLL PLLC