## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | ) ) )    **MDL No. 1668** |
| In Re Fannie Mae Securities Litigation | ) ) ) )    **Consolidated Civil Action No.: 1:04-CV-01639**    **Judge Richard J. Leon** |

## LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

Pursuant to the Court's June 7, 2013 Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, Setting Date for Hearing on Final Approval of Settlement, and Staying Non-Settlement Related Proceedings (Doc. #1090), and pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure and 15 U.S.C. §78u-4(a)(6), Court-Appointed Lead Counsel for Lead Plaintiffs Ohio Public Employees Retirement System ("OPERS") and the State Teachers Retirement System of Ohio ("STRS") (collectively "Lead Plaintiffs"), Markovits, Stock & DeMarco, LLC ("Lead Counsel"), respectfully move this Court for (a) an award of attorneys' fees in the amount of twenty-two percent (22%) of the Settlement amount, plus any accrued interest and net of expenses and administration costs and (b) reimbursement of $15,296,349.17 in litigation expenses actually incurred on behalf of Lead Plaintiffs and the Class in connection with the prosecution of this nine-year securities class action.

A Memorandum in Support of this application accompanies this Motion; and a Proposed Judgment and Order of Dismissal Order, which grants Lead Counsel's motion herein, is attached as Exhibit B to the parties' Stipulation of Settlement (Doc. #1089-2).

Respectfully submitted,

MARKOVITS, STOCK & DEMARCO, LLC

s/ W.B. Markovits

W.B. Markovits

s/Joseph T. Deters

Joseph T. Deters

Paul M. De Marco

Christopher D. Stock

119 East Court Street, Suite 530

Cincinnati, Ohio 45202

Telephone: (513) 651-3700

Facsimile: (513) 665-0219

E-mail: bmarkovits@msdlegal.com

E-mail: jdeters@msdlegal.com

E-mail: pdemarco@msdlegal.com

E-mail: cstock@msdlegal.com

*Special Counsel for the Attorney General of Ohio and Lead Counsel for Lead Plaintiffs*

BERNSTEIN LIEBHARD LLP

Stanley Bernstein

Jeffrey Lerner

10 East 40th Street

New York, New York 10016

Telephone:  (212) 779-1414

Facsimile:  (202) 298-7678

Email:  Bernstein@bernlieb.com

Email:  lerner@bernlieb.com

*Special Counsel for the Attorney General of Ohio and Co-Lead Counsel for Lead Plaintiffs*

COHEN MILSTEIN SELLERS & TOLL PLLC

Daniel S. Sommers (D.C. Bar #416549)

1100 New York Avenue, N.W.

Washington, D.C. 20005

Telephone: (202) 408-4600

Facsimile: (202) 408-4699

dsommers@cohenmilstein.com

*Local Counsel for Lead Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | ) ) ) | MDL No. 1668 |
| In Re Fannie Mae Securities Litigation | ) ) ) ) | Consolidated Civil Action No.: 1:04-CV-01639 Judge Richard J. Leon |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S
## MOTION FOR AN AWARD OF ATTORNEYS' FEES
## AND REIMBURSEMENT OF LITIGATION EXPENSES

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION & PRELIMINARY STATEMENT ................................................1

FACTUAL BACKGROUND......................................................................................4

LEGAL ARGUMENT...............................................................................................4

I.   PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD
     OF ATTORNEYS' FEES FROM THE COMMON FUND...............................................4

     A.  The Requested Attorneys' Fees Are Reasonable Under
         Either The Percentage-Of-Recovery Method Or The Lodestar Method ......................4

         1.  The Percentage-of-Recovery Method ...................................................................5

         2.  The Lodestar Cross-Check Method ......................................................................7

     B.  Other Factors Courts in this Circuit Consider Confirm that
         Lead Counsel's Attorney Fee Request is Reasonable....................................................9

         1.  The size of the fund created and the number of persons benefited.......................10

         2.  The absence of substantial objections by members of the
             Class to the Settlement terms and/or fees requested by
             Counsel to date supports the requested fee ........................................................11

         3.  The skill and efficiency of the attorneys involved
             support the requested fee ...................................................................................11

         4.  The complexity and duration of the litigation support the requested fee .............12

         5.  The risk of non-payment supports the requested fee ............................................14

         6.  The amount of time Plaintiffs' Counsel devoted
             to this Action supports the requested fee ...........................................................18

         7.  Awards in similar cases support the requested fee ...............................................18

i

II.  PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR
     REASONABLY-INCURRED OUT-OF-POCKET LITIGATION EXPENSES..............19

CONCLUSION..............................................................................................................................22

CERTIFICATE OF SERVICE ....................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ................................................................................. 15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) .................................................................................................. 15

*Bebchick v. Washington Metro. Area Transit*,
  805 F.2d 396 (D.C. Cir. 1986) .............................................................................. 6, 9

*Beckman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990) ...................................................................................... 14

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ..................................................................................................... 4

*Cohen v. Chilcott*,
  522 F. Supp. 2d 105 (D.D.C. 2007) ........................................................................... 6

*Consolidated Edison Co. v. Abraham*,
  No. Civ.A. 03-1991, 2005 WL 354483 (D.D.C. Jan. 26, 2005) ................................. 6

*Democratic Cent. Comm. of D.C. v. Washington Metro. Area Transit Comm'n*,
  3 F.3d 1568 (D.D.C. 1993) ......................................................................................... 3

*Dura Pharms Inc. v. Broudo*,
  544 U.S. 336 (2005) .................................................................................................. 15

*Freeport Partners, L.L.C. v. Allbritton*,
  CIV.A. 04-2030 (GK), 2006 WL 627140 (D.D.C. Mar. 13, 2006) ........................... 6

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) .......................................................................................... 7

*In re Alstom SA Sec. Litig.*,
  741 F. Supp. 2d 469 (S.D.N.Y. 2010) ...................................................................... 15

*In re Baan Co. Sec. Litig.*,
  288 F. Supp. 2d 14 (D.D.C. 2003) .................................................................... passim

iii

*In re Blech Sec. Litig.*,
    No. 94 CIV 7696, 2006 WL 661680 (S.D.N.Y. May 19, 2000)................................................. 8

*In re Enron Corp. Sec. Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) .................................................................................... 17

*In re First Databank Antitrust Litig.,*
    209 F. Supp. 2d 96 (D.D.C. 2002) ........................................................................................... 5

*In re IPO Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................................................................................... 8

*In re JDS Uniphase Corp. Sec. Litig.,*
    No C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ............................ 15

*In re LivingSocial Mktg. & Sales Practice Litig.,*
    No. 11-CV-0745, 2013 WL 1181489 (D.D.C. Mar. 22, 2013) ................................................ 7

*In re Lorazepam & Clorazepate Antitrust Litig.,*
    No. Civ.A.99-0790, 2003 WL 22037741, (D.D.C. June 16, 2003)................................... passim

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*
    No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)................................................ 3

*In re Newbridge Networks Sec. Litig.,*
    CIV. A. 94-1678-LFO, 1998 WL 765724 (D.D.C. Oct. 23, 1998) ................................. 6, 7, 10

*In re Tyco Intern. Ltd., Sec. Litig.*,
    MDL No. 02-1335, 2009 WL 873727 (D.N.H. Mar. 27, 2009) .............................................. 17

*In re Vitamins Antitrust Litig*.,
    No. MISC. 99-197(TFH), 2001 WL 34312839 (D.D.C. July 16, 2001) ....................... 6, 10, 13

*Katten by Thomas v. D.C.*,
    995 F.2d 274 (D.C. Cir. 1993) ................................................................................................. 3

*McKesson Corp. v. Islamic Republic of Iran*,
    No. 82-220(RJL), 2013 WL 1224808, (D.D.C. Mar. 27, 2013)................................................ 9

*Missouri v. Jenkins,*
  491 U.S. 274 (1989) ......................................................................................... 13

*Morrison v. Nat'l Austl. Bank Ltd.*,
  130 S. Ct. 2869 (2010) ..................................................................................... 15

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ........................................................................ 15

*Swedish Hosp. Corp. v. Shalala,*
  1 F.3d 1261 (D.C. Cir. 1993) .......................................................................... 5, 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ......................................................................................... 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .............................................................................. 3, 8


**Statutes**

15 U.S.C. §77u-4(a)(6) ........................................................................................... 5
15 U.S.C. §77z-1(a)(6) ............................................................................................ 5
15 U.S.C. §78u-4(a)(6) ........................................................................................... 1


**Rules**

Fed.R.Civ.P. 23(h) .................................................................................................. 1
Fed.R.Civ.P. 54(d)(2) .............................................................................................. 1


**Legal Treatises & Other Academic Literature**

ISS Securities Class Action Services,
  "SCAS Top 100 Settlements Report" (December 2012) ..................................... 10

NERA, "Recent Trends in Securities Class Action Litigation:
  2012 Full-Year Review," (January 2013) ......................................................... 13

NEWBERG ON CLASS ACTIONS
  § 14:6 (4th ed. 2012) .......................................................................................... 5

Renzo Comolli, Ron Miller, John Montgomery and Svetlana Starykh, "Recent Trends in
  Securities Class Action Litigation:  2012 Mid-Year Review" (NERA July 2012) .................. 15

Pursuant to the Court's June 7, 2013 Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, Setting Date for Hearing on Final Approval of Settlement, and Staying Non-Settlement Related Proceedings (Doc. #1090) ("Preliminary Approval Order"), Court-Appointed Lead Counsel for Lead Plaintiffs Ohio Public Employees Retirement System ("OPERS") and the State Teachers Retirement System of Ohio ("STRS") (collectively "Lead Plaintiffs"), Markovits, Stock & DeMarco, LLC ("Lead Counsel"), respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees and reimbursement of expenses pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure and 15 U.S.C. §78u-4(a)(6).

## INTRODUCTION & PRELIMINARY STATEMENT

The product of an extraordinary nine-year effort by Lead Counsel and Additional Class Counsel for Lead Plaintiffs ("Plaintiffs' Counsel"),[1] (collectively, "Lead Plaintiffs' Counsel") in which they overcame, among many other things, the U.S. Government's decision to place Fannie Mae into conservatorship, a rule promulgated by the Federal Housing Finance Agency ("FHFA") designed to thwart their ability to recover any damages whatsoever, and the Court's decisions granting summary judgment to the three Individual Defendants (Franklin D. Raines, J. Timothy Howard, and Leanne G. Spencer, collectively "the Individual Defendants"), Lead Counsel have achieved a Settlement providing for a recovery of $153,000,000 in cash (the "Settlement") for the benefit of the Class in this Action.  This recovery ranks as the largest securities litigation class action recovery in the D.C. Circuit, and in the top 7% of all securities settlements, since

---

[1] In addition to Lead Counsel, Plaintiffs' Counsel include the law firms of Bernstein Liebhard, LLP; Waite, Schneider, Bayless & Chesley, Co., L.P.A.; Berman DeValerio; Cohen Milstein Sellers & Toll PLLC; Statman, Harris & Eyrich, LLC; Francis P. Karam LLC; Grant & Eisenhofer P.A.; WeissLaw LLP; Bernstein Litowitz Berger & Grossmann LLP; Strauss Troy Co., LPA; Spector Roseman Kodroff & Willis, PC; Lockridge Grindal Nauen P.L.L.P.; Kohn, Swift & Graf, P.C.; Heins Mills & Olson, P.L.C.; Law Office of Klari Neuwelt; Climaco, Wilcox, Peca, Tarantino & Garofoli Co., LPA; Frankovitch, Anetakis, Colantonio & Simon; DataNav, LLC; Cummins & Brown LLC; Lowey Danneberg Cohen & Hart, P.C.; Barrett & Weber; and Federman & Sherwood.

1

Congress passed the Private Securities Litigation Reform Act of 1995 ("PSLRA").  But it did not come without a massive investment of resources, both time and treasure.  To successfully resolve this matter on behalf of the Class, Counsel was required to engage in intensive, protracted litigation, including conducting a massive amount of discovery, drafting and filing thousands and thousands of pages of briefing materials, and participating in more than a year of settlement negotiations – all while pitted against several of the largest and most well-respected law firms in the Country.

These efforts were not without their risks and costs.  Lead Plaintiffs' Counsel undertook the prosecution of this Action on an entirely contingent basis, investing substantial time and funds without any guarantee of compensation or of recovering out-of-pocket expenses.  Given that more than 40% of all securities class actions have been dismissed on motions before trial (and when such cases actually do go to trial, defendants were as likely as plaintiffs to prevail),[2] the risks in prosecuting this securities litigation class action over nine years were great indeed. So were the out-of-pocket costs.  Plaintiffs' Counsel collectively spent approximately $15,296,349.17 on necessities such as experts in arcane accounting and internal controls issues, a document management system to house approximately 67 million pages of documents, travel for roughly 150 depositions plus court appearances and mediation efforts, internal and external copying, postage, conference call charges and on-line research – again, all with a significant risk of non-recovery.[3]  As set forth below, these requested expenses are reasonable because they are of the kind that are regularly reimbursed by courts within this Circuit and were necessary for the

---

[2] *See* Joint Declaration of W. B. Markovits and Joseph T. Deters in Support of (A) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration" or "Joint Decl."), at ¶142 (Doc. #1092-1).  The Joint Declaration also includes as exhibits the separate fee and expense declarations submitted by each of these firms, which contain additional details concerning the amount of time expended and expenses incurred by each in prosecuting the Consolidated Action.

[3] *See* Joint Decl., at Exhibit 9.

prosecution of this Action.   Accordingly, Lead Counsel respectfully requests the Court for reimbursement of $15,296,349.17 in litigation expenses actually incurred.

As a result of Lead Counsel's unprecedented Settlement result, counsel's extraordinary efforts in prosecuting this Action (described in greater detail below and in the Joint Declaration at ¶¶4-82), and the magnitude, complexity and duration of this particular class action, Lead Counsel seek an award of twenty-two percent (22%) of the Settlement Fund, plus any accrued interest, net of expenses and administration costs.   The requested attorneys' fees are at or below the range of fees commonly awarded in comparable settlements, whether considered as a percentage of the Settlement or on a multiplier basis.   Indeed, the requested fee represents a multiplier of approximately 0.31 on Plaintiffs' Counsel's total lodestar (*i.e.,* attorney hours multiplied by reasonable non-contingent hourly billing rates),[4] a negative or fractional multiplier that is well below the *positive* 3 to 4.5 multiplier range typically awarded in complex class actions with substantial contingency risks such as this one.[5]   In that it is significantly below the average complex class action fee award when measured as either a percentage of recovery or as a multiple of counsel's lodestar, Lead Counsel submits this fee request is reasonable; and, accordingly, Lead Counsel respectfully requests this Court to award attorneys' fees of 22% of the Settlement Fund, plus any accrued interest, net of expenses and administration costs.

Pursuant to the Preliminary Approval Order, more than one million copies of the Settlement Notice were mailed to potential Class Members and nominees beginning on June 28,

---

[4]   *See Democratic Cent. Comm. of D.C. v. Washington Metro. Area Transit Comm'n*, 3 F.3d 1568, 1573 (D.D.C. 1993).   An attorney's rate may generally be considered "reasonable" if it accords with the rates prevailing in the community for similar services by lawyers possessing similar skill, experience and reputation.   *Katten by Thomas v. D.C.*, 995 F.2d 274, 278 (D.C. Cir. 1993).   *See also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (hourly rates of $650-$850 for partners and $515 for senior associates were "not inordinate for top-caliber New York law firms.").
[5]   *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (upholding multiplier of 3.5 as reasonable on appeal and quoting district court's statement that "multipliers of between 3 and 4.5 have become common").

2013; and Summary Notice was published on that day in *The Wall Street Journal* and *PR Newswire*.[6]  The Settlement Notice advised potential Class Members that Lead Counsel would seek fees equal to 22% of the Settlement after expenses, and out-of-pocket expenses of up to $17 million.  *See* Joint Decl., at ¶¶84, 88. While the deadline set by the Court for Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date no Class Member has objected to the amount of attorneys' fees and expenses set forth in the Settlement Notice. *See* Joint Decl., at ¶¶129.

## FACTUAL BACKGROUND

In the interest of brevity, and to avoid unnecessary duplication, Lead Counsel will not rehash the factual background of this nine-year securities class action here.  Rather, they direct the Court to the accompanying Joint Declaration, which provides a detailed description of this Action's factual and procedural background, as well as the events that led to the Settlement.  *See, e.g.,* Joint Decl., at ¶¶4-82.

## LEGAL ARGUMENT

**I.    PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND.**

The Supreme Court has long recognized that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole," the "common fund."  *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980).

**A.    *The Requested Attorneys' Fees Are Reasonable Under Either The Percentage-Of-Recovery Method Or The Lodestar Method.***

---

[6] *See* Declaration of Jose C. Fraga Regarding The (A) Mailing of the Settlement Notice and Proof of Claim and Release; and (B) Publication of the Summary Notice ("Fraga Decl."), at ¶10 (attached as Exhibit 2 to the Joint Declaration).

In assessing the reasonable of attorneys' fee requests in the common fund context, courts will either look to the percentage of the settlement sought (the "percentage-of-recovery" method) or the size of the attorneys' fee lodestar in comparison to the fee request (the "lodestar cross check" method). The preferred approach in the D.C. Circuit is the percentage-of-recovery method. *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1265, 1271-72 (D.C. Cir. 1993).[7] As described below, however, Lead Counsel's fee request in this case is reasonable under both methods.

### 1. The Percentage-of-Recovery Method.

The D.C. Circuit has observed that "a majority of common fund class action fee awards fall between twenty and thirty percent." *Id. See also* Declaration of Brian T. Fitzpatrick in Support of Lead Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees ("Fitzpatrick Decl."), at ¶9 (attached as Exhibit 5 to the Joint Declaration). In securities class actions, attorneys' fees awarded routinely range from 20% to 33% of the settlement fund and commonly represent multipliers of 3 to 4.5 of counsel's lodestar. *See* 4 NEWBERG ON CLASS ACTIONS § 14:6 (4th ed. 2012) ("In the normal range of common fund recoveries in securities and antitrust suits, common fee awards fall in the 20 to 33 percent range"). Lead Counsel's request for an award of 22% of the common fund, therefore, is at the low end of the spectrum for common fund cases within this Circuit, where the 20-30% guideline set forth in *Swedish Hospital* is closely followed. *See, e.g., In re Baan Co. Sec. Litig.*, 288 F. Supp. 2d 14 (D.D.C. 2003) (approving 28%

---

[7] Since *Swedish Hospital,* courts in this Circuit have consistently applied the percentage-of-recovery method to common fund attorneys' fee awards. *See, e.g., In re Baan Co. Sec. Litig.,* 288 F. Supp. 2d 14, 17 (D.D.C. 2003) (noting that "this Circuit has elected to use the percentage method"); *In re Lorazepam & Clorazepate Antitrust Litig.,* No. Civ.A.99-0790, 2003 WL 22037741, at *7 (D.D.C. June 16, 2003) (same); *In re First Databank Antitrust Litig.,* 209 F. Supp. 2d 96, 98 (D.D.C. 2002) (same). The PSLRA itself supports awarding attorneys' fees in securities cases using the percentage method, as it provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. §77u-4(a)(6); 15 U.S.C. §77z-1(a)(6).

of common fund); *In re Newbridge Networks Sec. Litig.,* CIV. A. 94-1678-LFO, 1998 WL 765724 (D.D.C. Oct. 23, 1998) (approving 30% of common fund); *Consolidated Edison Co. v. Abraham,* No. Civ.A. 03-1991, 2005 WL 354483 (D.D.C. Jan. 26, 2005) (awarding 30% of the settlement fund to plaintiffs' attorneys); *In re Vitamins Antitrust Litig*., No. MISC. 99-197(TFH), 2001 WL 34312839 (D.D.C. July 16, 2001) (approving 33 1/3% of common fund); *Bebchick v. Washington Metro. Area Transit,* 805 F.2d 396, 405 (D.C. Cir. 1986) (approving 25% of common fund); *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 123 (D.D.C. 2007) (approving 23% of common fund); *Lorazepam,* 2003 WL 22037741, at *8–9 (approving 30% of common fund). *See also*, at ¶11 (noting that "the vast majority of fee awards have been much higher than the award requested here"), ¶15 (collecting cases in which courts have awarded fees well above 22% in large settlements, including awards from judges in the D.C. Circuit) (attached as Exhibit 5 to Joint Declaration).

Along this spectrum of D.C. Circuit cases, Lead Counsel's application for attorneys' fees of 22% of the common fund falls near the low end for a case that was longer and more complex than the awards at the top end of the spectrum. For example, in *Swedish Hospital* an award of 20% was premised upon prior resolution of an underlying issue that eliminated the risk of zero recovery – a risk that was decidedly present in this case. *See In re Newbridge*, 1998 WL 765724, at *3. In a more recent case, *Freeport Partners, L.L.C. v. Allbritton*, CIV.A. 04-2030 (GK), 2006 WL 627140 (D.D.C. Mar. 13, 2006), the Court reduced a request award to the "low" end of the spectrum – 22% – because the case was not as difficult as some other cases at the higher end of the spectrum. The Court compared the case to *In re Baan,* where counsel who received 28% after conducting "over 25 depositions ... in different locations throughout the country," reviewing "over 300,000 pages" in discovery, and engaging in "considerable motions practice during the

almost five-year pendency of this case." *Id.*   The Court also compared the case to *In re Newbridge,* where counsel who received 30% of the settlement fund, "engaged in extensive motions practice and conducted considerable discovery" over the course of four years. *Id.*   And, finally, the Court compared the case to *In re Lorazepam,* where counsel who received 30% reached a settlement "only after 86 depositions [as opposed to approximately 150 here] . . . review and analysis of substantially more than a half-million pages of documents and approximately 92 CDs of data in electronic form [as opposed to 67 million pages of documents here], the filing . . . of at least 44 memoranda of law [considerably more filings here], an appeal to the D.C. Circuit [same here], and protracted and difficult settlement negotiations [same here]." *Id.*

Clearly, Lead Counsel's application for attorneys' fees is reasonable under the percentage-of-recovery method.  *See also* Fitzpatrick Decl., at ¶¶10, 11, 16, 17, 19 (noting, among other things, that (a) "an award here equal to 22% of what is left of the settlement after expenses have been subtracted is well within the range of reasonable fees;" (b) the "*vast* majority of fee awards in other cases exceed this percentage" (emphasis in original); (c) "the results here are commendable in light of the risks the class faced;" (d) "class counsel did well by the class in agreeing to this settlement;" and (e) their "substantial investments in time and money advocate in favor of generously compensating class counsel in this case").

### 2.   The Lodestar Cross-Check Method.

Courts within this and other circuits will often use the lodestar as a cross-check on the propriety of fees awarded under the percentage-of-recovery method.  *See In re LivingSocial Mktg. & Sales Practice Litig.*, No. 11-CV-0745, 2013 WL 1181489 (D.D.C. Mar. 22, 2013); *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43 (2d Cir. 2000).  Doing so in this case

confirms the reasonableness of a 22% fee award.   In cases of this nature, fees representing multiples above the lodestar are regularly awarded to reflect the contingency fee risk and other relevant factors.   As previously noted, in complex class actions with significant contingency risks, lodestar multipliers between 3 and 4.5 are commonly awarded.   *See Wal-Mart,* 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal and quoting district court's statement that "multipliers of between 3 and 4.5 have become common"); *In re Baan,* 288 F. Supp. 2d at 20 (finding that "a multiplier of 2.0 or less falls well within a range that is fair and reasonable").

This case is unusual in that it had a negative or fractional multiplier.   Plaintiffs' Counsel spent a total of 291,712.36 hours of attorney and other professional support time prosecuting this Action.   *See* Joint Decl., at ¶116.   Plaintiff's Counsel's lodestar is $94,116,403.77.   *Id.*   The requested 22% fee, which amounts to $29,152,612.27 (without interest) or 19% of the total Settlement, represents a multiplier of 0.31.   *Id.* at ¶125.   *See also* Fitzpatrick Decl., at ¶17 ("For point of reference, according to my empirical study, the mean and median multipliers that resulted in cases where fees were awarded using the percentage-of-the-fund method were 1.65 and 1.34, respectively.   In other words, class counsel in most other cases have received multipliers many times greater than the one that would result from the request here.") (internal citations omitted).

In such cases, courts have generally awarded a higher percentage of recovery.   *See, e.g., In re IPO Sec. Litig.,* 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (granting 33 1/3% recovery resulting in a negative multiplier of 0.7, and finding "no real danger of overcompensation" where the award represents a negative multiplier); *In re Blech Sec. Litig.,* No. 94 CIV 7696, 2006 WL 661680 (S.D.N.Y. May 19, 2000) (awarding 30% and confirming reasonableness in part because it was a fractional multiplier of lodestar).   Professor Fitzpatrick noted that "even if class

counsel's hours or hourly rate were *slashed in half*, the multiplier that would result from their fee request would still pale in comparison to multipliers in other cases.  Remarkably, this is the case even though class counsel was quite conservative in the calculation of their lodestar: although they were entitled to calculate it using current rates, they did so using their historic ones – a significant difference in a case that has lasted as long as this one."  Fitzpatrick Decl., at ¶17 (citing *Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396, 403 n.21 & 405 n.27 (D.C. Cir. 1986) (calculating lodestar in common fund case at current rates "[t]o help reduce the loss . . . resulting from the delay in payment for services rendered"); *McKesson Corp. v. Islamic Republic of Iran*, No. 82-220(RJL), 2013 WL 1224808, at *6 (D.D.C. Mar. 27, 2013) ("Both the Supreme Court and our Circuit have endorsed this 'current-rate' enhancement method as a means to compensate a prevailing party for harm resulting from delay in receiving payment.").   In this case, use of the percentage-of-recovery method with a lodestar cross-check confirms that the requested fee award of 22% is more than reasonable.

### B.      *Other Factors Courts in this Circuit Consider Confirm that Lead Counsel's Attorney Fee Request is Reasonable.*

This Circuit has not yet stated a specific list of factors to employ in assessing reasonableness in percentage-of-recovery cases.  Courts within this Circuit, however, have generally looked at the following factors: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.  *See, e.g., In re Baan,* 288 F. Supp. 2d at 17 (citing *In re Lorazepam*, 2003 WL 22037741,

at *8).  *See also* Fitzpatrick Decl., at ¶10.  As set forth below, Lead Counsel's attorney fee request is reasonable under each of these factors.

### 1.   The size of the fund created and the number of persons benefited.

The gross settlement fund of $153 million is the largest securities settlement in the history of this Circuit, according to ISS Securities Class Action Services, "SCAS Top 100 Settlements Report" (December 2012) (attached to Joint Decl. as Exhibit 3).  It would also rank as the sixty-fifth largest securities settlement in the PSLRA era (since January 1, 1996), putting it in the top 5% of securities class action settlements of all time.  *Id.*  It stands to benefit more than one million potential class members.  *See* Fraga Decl., at ¶9.  The $153 million recovery here represents 4-8% of the best-case scenario estimated by the class's damages expert if all of the various legal and factual contingencies in this case had been resolved in its favor.  *See* Joint Decl., at Exhibit 10 (estimating damages of between $2 and $4 billion).  This compares favorably with the "the median settlement" in "class actions brought under the PSLRA," which is "3.6% of estimated damages."  *See, e.g., In re Baan,* 288 F. Supp. 2d at 17.  Similarly, the size of the fund and the number of persons benefitted in this Action are well in excess of other cases within this Circuit that looked favorably upon this factor.  *See, e.g., In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001) (certifying a class of approximately 12,000 members); *In re Baan,* 288 F. Supp. 2d at 17 (noting that the class encompassed approximately 18,000 claimants); *In re Newbridge,* 1998 LEXIS 23238, at *6 (same).

Both the size of the fund, and the number of persons benefitted by it, therefore, weigh in favor of Lead Counsel's fee request in this case.  *See In re Vitamins Antitrust Litig.,* 2001 WL 34312839, at *11.

**2.    The absence of substantial objections by members of the Class to the Settlement terms and/or fees requested by Counsel to date support the requested fee.**

The Settlement Notice specifically stated that Lead Counsel would seek fees in the amount of 22%, after deduction of expenses.  The Settlement Notice went out on June 28, 2013, over a month and a half ago.  Lead Counsel recognizes that class members have until September 20, 2013 to object to the Settlement, but believe it is significant that no class member has objected to the requested fee pursuant to the process set forth in the Notice disseminated on June 28, 2013 to date.  This factor supports the fee request.

**3.    The skill and efficiency of the attorneys involved support the requested fee.**

Lead Plaintiffs' Counsel's skill and standing is reflected in part in the biographies supporting the declarations of counsel, which demonstrate that those firms include highly experienced practitioners in areas of complex class action and securities litigation.  *See also* Fitzpatrick Decl., at ¶18 (noting that "with respect to the skill of class counsel, I can say that, although I was not privy to the attorney-client relationships here, class counsel count among their number some of the most experienced and highly regarded securities lawyers in the United States").  But the skill, efficiency and tenacity of Lead Plaintiffs' Counsel is best reflected in their bringing this complex and difficult case to a resolution – while obtaining the largest securities settlement in this Circuit's history.  *See* Joint Decl., at ¶127.  Lead Plaintiffs' Counsel are actively engaged in complex federal civil litigation, particularly the litigation of securities class actions.  Our experience in the field allowed us to identify the complex issues involved in this case and to formulate strategies to effectively prosecute them.   We believe that our reputations as attorneys who will zealously carry a meritorious case through the trial and

11

appellate levels, as well as our demonstrated ability to vigorously develop the evidence in this case, placed us in a strong position in settlement negotiations with Defendants.

Moreover, throughout the case, Lead Plaintiffs' Counsel made every effort to operate as efficiently as possible and to avoid unnecessary duplication. At all times, Plaintiffs' Counsel carefully supervised and monitored the work assignments to ensure that the work quality was consistent and non-duplicative.  For instance, to ensure the document review, coding and cataloging process was conducted efficiently, Plaintiffs' Counsel created and distributed various tranches of documents for review and developed a uniform coding and cataloging system for the reviewing attorneys.  Plaintiffs' Counsel further audited these engagement attorneys to ensure that they were properly and efficiently carrying out these assignments and that there was no duplication of efforts between counsel.  *See* Joint Decl., at ¶28.  Further, to ensure an efficient deposition process, Plaintiffs' Counsel developed a deposition protocol with Defendants' Counsel.  Moreover, Plaintiffs' Counsel separated the deponents into various categories and assigned various teams to each category for deposition preparation.  In this manner, Plaintiffs' Counsel ensured that there was no duplication of efforts among Counsel, as well as ensuring that the deposition preparation functioned effectively and efficiently.  *Id*. at ¶35.

The significant time and effort devoted to this case by all of Plaintiffs' Counsel, and their commitment to the efficient management of the litigation, support approval of the requested award.  *See also* Fitzpatrick Decl., at ¶16 ("In short, I do not think it is hard to conclude that class counsel did well by the class in agreeing to this settlement.").

### 4. The complexity and duration of the litigation support the requested fee.

As set forth in great detail in the Joint Declaration (*see, e.g.,* Joint Decl., at ¶¶4-82), this securities class action was exceedingly complex, even by securities litigation standards.  *See also*

Fitzpatrick Decl., at ¶17 ("There is no doubt that this case has been complex, extraordinarily hard fought, and the product of substantial investment in both time and money by class counsel.").  It dealt with some of the most complicated accounting issues in the profession, involved a potentially-insolvent defendant, required litigation against the U.S. Government, and threatened to nullify any recovery Lead Plaintiffs were to obtain on the Class's behalf.  Moreover, the case's nine-year duration far exceeds the average securities litigation class action, which lasts approximately 2.3 to 3.1 years.  *See* NERA, "Recent Trends in Securities Class Action Litigation: 2012 Full-Year Review," at 25 (January 2013) (attached as Exhibit 4 to the Joint Declaration); *see also* Fitzpatrick Decl., at ¶17.  As such, Lead Plaintiffs' Counsel's nearly 300,000 hours of time, with a lodestar of more than $94 million,[8] was totally at risk for more than nine years.

Even the Court recognized that this has been a difficult case in "terms of the issues and the complexity of the matters involved."  Transcript of Status Hearing, May 29, 2013, at 20 (attached to the Joint Declaration as Exhibit 7).  Yet, the Court noted, it has been a "model example of how to conduct a very complex large piece of multi-District litigation," and Lead Counsel appreciates the Court's commendation of all parties involved for their "outstanding" work.  *Id.*  Lead Plaintiffs' Counsel, the defense counsel, and the Court all had to deal with arcane and complex accounting issues as well as numerous *sui generis* legal issues.  Lead Plaintiffs' Counsel were faced not only with complex and difficult accounting and legal issues, but with adversaries in defense counsel who are at the top of the defense bar.[9]  In addition, Plaintiffs' Counsel had to navigate the challenges created by the conservatorship and the

---

[8]  Typically the lodestar will be calculated based on current rather than historical rates, in part to account for the contingency risk.  *See Missouri v. Jenkins,* 491 U.S. 274, 283-84 (1989).  To be conservative, the lodestar presented in this case is based upon historical rates.

[9] *See In re Vitamins Antitrust Litig.,* 2001 WL 34312839, at *11 (quality of opposing counsel weighed in favor of requested fee).

attempted imposition of the FHFA Rule.  *See generally* Joint Decl., at ¶¶50-63 for a more detailed discussion of the FHFA Rule Challenge.

It is difficult to imagine a litigation of greater complexity and duration.  *See, e.g.,* Fitzpatrick Decl., at ¶17 (noting that "the issues at the heart of this case – the proper interpretation of complex accounting standards – are extremely arcane and technical, and the issues would have required any talented lawyer to invest millions of dollars and thousands of hours in research, education, and consultation with experts").  There is no question that had the Settlement not been reached, the factual and legal questions at issue would continue to be the subject of lengthy, complex and highly adversarial litigation – assuming, again, that Lead Plaintiffs' allegations would have survived the remaining outstanding summary judgment motions.  Numerous issues would be involved in proving liability, damages, materiality, and loss causation, as set forth above.  Significant risks remained related to Fannie Mae's conservatorship and the FHFA Rule Challenge.  These issues further confirm the magnitude and complexity of the legal battles Lead Counsel would continue to face.  These factors, and the others discussed at length in the Joint Declaration, further support Lead Counsel's fee request.

### 5.    The risk of non-payment supports the requested fee.

Frequently, plaintiffs' counsel take contingent cases such as this and, after expending hundreds of thousands of hours and many millions of dollars out of pocket, receive nothing.  The risk of non-payment in complex cases such as this one is real.  Even if one succeeds or is *en route* to success, there could be changes in the law or unexpected evidence that fells plaintiffs' case.  Courts have recognized the risk of non-payment in complex cases.  A judgment may be affirmed on appeal and still that is no assurance of recovery.  *See, e.g., Beckman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (dismissal of 11-year-old case by *en banc* decision following

jury verdict and affirmance by a First Circuit panel).  A sudden change in the law can eviscerate even a promising case;[10] and many cases have simply been lost after investment of thousands of hours of time and millions of dollars of costs at summary judgment or after trial.[11]  Indeed, the risk of non-payment in securities litigation cases is particularly acute.  As noted above, over the last four years, more than 40% of all securities class actions have been dismissed on motions before trial, and when the cases went to trial, defendants were as likely as plaintiffs to prevail.[12]  It is because of these factors that securities class action lawsuits generally carry with them a high risk of non-payment.

A high risk of non-payment generally counsels in favor of increasing the fee award to attorneys who secure a recovery for their client. *See In re Baan,* 288 F. Supp. 2d at 18. Courts are aware that without such an incentive, plaintiffs' lawyers might be less willing to take on cases that involve either unsettled legal issues or clients who might otherwise go unrepresented. Public policy is served, therefore, by awarding somewhat higher fees to lawyers who assume the risk of such representation.  Indeed, the Supreme Court has emphasized that private securities actions, such as this one, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313 (2007); *accord Dura Pharms Inc. v. Broudo*, 544 U.S. 336, 345 (2005) ("The securities statutes seek to maintain public confidence in the marketplace" and "[t]hey do so by deterring fraud, in part, through the availability of private securities fraud actions."); *Bateman Eichler, Hill*

---

[10] *See, e.g., In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469 (S.D.N.Y. 2010) (after completion of extensive foreign discovery, 95% of plaintiff's damage were eliminated by the Supreme Court's reversal of 40 years of unbroken circuit court precedent in *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869 (2010).

[11] *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of $81 million jury verdict against accounting firm); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re JDS Uniphase Corp. Sec. Litig.*, No C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict after four weeks of trial).

[12] *See* Renzo Comolli, Ron Miller, John Montgomery and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation:  2012 Mid-Year Review" (NERA July 2012) at 21, 22, 37, attached as Exhibit 8 to the Joint Declaration.

*Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are a 'necessary supplement to [SEC] action.'") (citation omitted).  Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential.

In this case, the risk of non-payment was at its zenith.  Unlike counsel for the Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any of the nearly 300,000 hours they expended, or the $15,296,349.17 in litigation expenses they incurred over the nine years of litigation.  Plaintiffs' Counsel would not have been compensated for their time or expenses had they been unsuccessful.   In undertaking that responsibility, Plaintiffs' Counsel obligated themselves to ensure that sufficient dollars and attorney resources were dedicated to the prosecution of this litigation.  Investment of these resources limited Plaintiffs' Counsel's ability to staff other matters and to accept new profit-generating matters.  When Plaintiffs' Counsel undertook to act for Lead Plaintiffs and the Class, therefore, we were aware that the only way we could be compensated was to achieve a successful result.

As the Court is aware from the extensive briefing in the case, including the parties' respective motions for summary judgment and the briefing in the consolidated FHFA Rule Challenge Case, there were numerous, substantial risks relating to Lead Plaintiffs' ability to establish liability, loss causation and damages that made it far from certain that any recovery, let alone a recovery in the magnitude of the $153 million Settlement, would ultimately be obtained for the Class.  Rather than rehash them here, Lead Counsel will instead refer the Court to the Joint Declaration, specifically ¶¶93-99, where Lead Plaintiffs extensively detail those risks.  *See also* Fitzpatrick Decl., at ¶16 (detailing the myriad risks inherent in this "[un]usual securities

case"). Setting aside the risks discussed above, this Court itself expressed serious doubts during oral arguments at summary judgment as to whether Lead Plaintiffs' could have established scienter and loss causation as to Defendants in this case.

Defendants, for their part were represented by several of the most highly-respected defense firms in the country, with hundreds of attorneys in their litigation departments alone, who aggressively defended this case. At their depositions, Defendants' witnesses were well-prepared and of strong demeanor. Presenting these issues to a jury would have involved enormous time, expense and complexity against exceedingly well-funded and savvy Defense Counsel. Indeed, in litigating against the U.S. Government, Lead Counsel faced an opponent with no meaningful limit on the resources it could mount to defend Fannie Mae.

As Professor Fitzpatrick noted, "class counsel have put up over $15 million of their own money to pay expenses in this case . . ., money that they placed entirely at risk of loss had they not recovered something for the class. In the 688 federal class action settlements in my empirical study, there were only two where class counsel placed at risk as much of their own money as class counsel did here."[13] Fitzpatrick Decl., at ¶17. Recognizing this "extraordinary investment of time that was, again, at complete risk of being uncompensated had they not recovered something for the class," Professor Fitzpatrick stated that "these substantial investments in time and money advocate in favor of generously compensating class counsel in this case." *Id*. *See also In re Baan*, 288 F. Supp. 2d at 17-18 (awarding 28.5% in fees in securities class action where class counsel "had to review and analyze thousands of financial and accounting documents," "master complicated accounting principles," and "address difficult and

---

[13] *See In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 769 (S.D. Tex. 2008) ("The Court has previously approved six expense reimbursement motions and awarded a total of $39 million to plaintiffs' counsel. Counsel estimates that an additional $6 million has been incurred and will be the subject of future reimbursement requests."); *In re Tyco Intern. Ltd., Sec. Litig.*, MDL No. 02-1335, 2009 WL 873727, at *6 (D.N.H. Mar. 27, 2009) (approving $28.9 million in expenses).

novel legal questions," including "considerable motions practice during the almost five-year pendency of [the] case").

Taking into account the magnitude and risk of non-payment in this securities litigation case, the requested fee is reasonable and justified.

### 6.    The amount of time Plaintiffs' Counsel devoted to this Action supports the requested fee.

As discussed above, Plaintiffs' Counsel devoted a tremendous amount of time to this case – nearly 300,000 hours, and did so steadfastly in the face of increasing adversity.  *See* Joint Decl., Exhibit 6.  The efforts expended by Plaintiffs' Counsel were extensive, time-consuming, challenging and undertaken in the face of substantial risks, as detailed above.  *See also* Fitzpatrick Decl., at ¶17.  Lead Counsel believes that the persistence and quality of those efforts were responsible for the superior result achieved in this case.  This factor supports the fee requested.  *Id.*

### 7.    Awards in similar cases support the requested fee.

As discussed in Section I.A.1. above, the case law within this Circuit relating to common fund cases illustrates that the requested award of 22% is on the low end of the spectrum.  *See also* Fitzpatrick Decl., at ¶11.   As such, awards in similar cases support the requested fee.

* * *

In sum, given the complexity and magnitude of this Action, the risks associated with it, the responsibility undertaken by Lead Plaintiffs' Counsel, the difficulty of proof on liability and damages, Fannie Mae's placement into conservatorship, the FHFA Rule denying payment to securities class action members, the experience of Lead Plaintiffs' Counsel and Defendants' Counsel, and the contingent nature of Lead Plaintiffs' Counsel's agreement to prosecute this

Action, Lead Counsel respectfully submit that the requested attorneys' fees are reasonable and should be approved.

## II.     PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR REASONABLY-INCURRED OUT-OF-POCKET LITIGATION EXPENSES.

Lead Counsel are also requesting reimbursement of the out-of-pocket expenses necessarily incurred and advanced by Lead Plaintiffs' Counsel in the prosecution of the litigation in the amount of $15,296,349.17.  The chart set forth in Exhibit 9 of the Joint Declaration details the expenses – broken down by category – Lead Plaintiffs' Counsel incurred and underwrote during the prosecution of this Action, all of which was at risk in this litigation.  These expenses, as set forth in Exhibit 9 of the Joint Declaration, are a necessary part of litigation of this magnitude and scale and were essential to enable Lead Plaintiffs to achieve the results now before the Court – the $153 million Settlement.  Courts have typically found that such expenses are reimbursable from a fund recovered by counsel for the benefit of the class.

Relevant to incurred expenses, Lead Counsel required each Counsel to certify, prior to submitting their expenses, that they (a) provided detailed, itemized expense back-up, including the name of the attorney incurring the expense (if applicable) and a detailed description of the expense; (b) did not charge the Class for overhead, such as support staff, office space or furniture rental for document review; (c) reduced any and all hotel charges to a standardized, reasonable rate; (d) reduced any and all flight charges to coach class; (e) reduced any and all ground transportation to reasonable rental rates or taxi cab fare; (f) limited any and all meals to reasonable food charges without alcohol, and limited to participating personnel (not spouses or significant others); (g) ensured that any tips are reasonable and customary; (h) limited all internal copying costs to $0.15 per page, and ensured all external copying costs are reasonable and supported by appropriate documentation; (i) ensured that the Class has not been charged for

secretarial/administrative overtime; (j) ensured that the Class has not been charged for equipment rental unless required in connection with an out-of-town trip; and (k) ensured that the Class has not been charged for borrowing costs or interest on borrowing.

Included in the amount of expenses is $6,693,528.38 paid or payable to Lead Plaintiffs' experts and consultants. This encompasses nearly 44% of Plaintiffs' Counsel's total expenses. As detailed in the Joint Declaration, Plaintiffs' Counsel worked extensively with experts. *See* Joint Decl., at ¶152. Experts were necessary in connection with issues such as FAS 133, FAS 91 and FAS 115 and other GAAP accounting issues, loss causation, GAAS and other auditing issues, damages, and internal controls. Experts assisted Lead Plaintiffs in discovery, motion practice, and mediation. Experts were also necessary in assisting Plaintiffs' Counsel in connection with the 29 experts Defendants designated in this case. And, critically, experts were indispensable in connection with Lead Plaintiffs' FHFA Rule Challenge. Post-settlement, Lead Plaintiffs' damages experts assisted Lead Counsel in preparing the Plan of Allocation. Lead Counsel believes that the expert expenses were of fundamental importance in achieving the Settlement at issue. *Id.*

Over nine years of prosecuting this case, Plaintiffs' Counsel also incurred significant travel expenses related to, among other things, the nearly 150 depositions taken in this case, settlement negotiations, and scores of hearings and status conferences with the Court. *Id.* at ¶153. Although Lead Counsel placed caps on travel expenses (*see id.* at ¶151), Plaintiffs' Counsel incurred a total of $972,425.62 expenses related to travel prosecuting this Action. In other words, approximately 6.4% of Plaintiffs' Counsel's total expenses related to their travel on behalf of the Class. *Id.* at ¶153.

In addition, Plaintiffs' Counsel obtained, reviewed and analyzed more than 67 million pages of documents from Defendants and numerous non-parties. *Id*. at ¶154. In order to effectively and efficiently review and analyze the documents, Plaintiffs' Counsel were required to enlist the services of a document management system. Plaintiffs' Counsel ultimately settled on Xerox Litigation Services to host the database. Plaintiffs' Counsel's document database and outside copying costs represent an additional, substantial expense incurred by Plaintiffs' Counsel on behalf of the Class. A total of $965,620.22 expenses, or approximately 6.3% of Plaintiffs' Counsel's total expenses relate to these efforts. *Id*.

Plaintiffs' Counsel also incurred $71,776.86 for mediator fees. *Id*. at ¶155.

The expenses for which reimbursement is sought by Lead Counsel do not include the Claims Administrator expenses associated with providing Court-ordered notice to the Class and administering claims. Those amounts will be requested separately on behalf of the Claims Administrator, after the settlement administration is complete. *Id*. at ¶156.

From the beginning of the case, Plaintiffs' Counsel recognized that they might not recover any of their expenses, and, at the very least, would not recover anything until the Action was successfully resolved. *Id*. at ¶157. Plaintiffs' Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate them for the lost use of the funds advanced to prosecute this Action. *Id*. Thus, Plaintiffs' Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action. *Id*. Lead Counsel – and, at Lead Counsel's request, an independent audit consultant – carefully reviewed all expenses submitted to ensure that they accurately reflected costs necessarily incurred in obtaining the Settlement. *Id*. Lead Counsel identified potential issue with expenses submitted; and, further,

21

required each Counsel certify that they followed the Time and Expense Submission Guidelines Lead Counsel developed.  *Id.*

As the Notice indicates, approval of the Settlement and Plan of Allocation is separate from the approval of Lead Counsel's application for an award of fees and expenses.  Any determination with respect to Plaintiffs' Counsel's application for an award of fees and expenses will not affect the Settlement, if approved.

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests this Court to grant their motion for an award of attorneys' fees of 22% of the Settlement Fund, plus any accrued interest, net of Plaintiffs' Counsel's expenses and administration costs, and for reimbursement of Plaintiffs' Counsel's out-of-pocket litigation costs and expenses in the amount of $15,296,349.17, plus any accrued interest.

Respectfully submitted,

MARKOVITS, STOCK & DEMARCO, LLC

s/ W.B. Markovits
W.B. Markovits
s/Joseph T. Deters
Joseph T. Deters
Paul M. De Marco
Christopher D. Stock
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
E-mail: bmarkovits@msdlegal.com
E-mail: jdeters@msdlegal.com
E-mail: pdemarco@msdlegal.com
E-mail: cstock@msdlegal.com

22

*Special Counsel for the Attorney General of Ohio and Lead Counsel for Lead Plaintiffs*

BERNSTEIN LIEBHARD LLP
Stanley Bernstein
Jeffrey Lerner
10 East 40th Street
New York, New York 10016
Telephone:  (212) 779-1414
Facsimile:  (202) 298-7678
Email:  Bernstein@bernlieb.com
Email:  lerner@bernlieb.com
*Special Counsel for the Attorney General of Ohio and Co-Lead Counsel for Lead Plaintiffs*

COHEN MILSTEIN SELLERS & TOLL PLLC
Daniel S. Sommers (D.C. Bar #416549)
1100 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
dsommers@cohenmilstein.com
*Local Counsel for Lead Plaintiffs*

23

## CERTIFICATE OF SERVICE

I certify that on August 16, 2013 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF.

s/ Daniel S. Sommers
Daniel S. Sommers (D.C. Bar #416549)
COHEN MILSTEIN SELLERS & TOLL PLLC
